UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMERICAN GENERAL LIFE INSURANCE
COMPANY,

       Plaintiff,

Case No.:  8:15-cv-00192-EAK-AEP

vs.

KEVIN H. BECHTEL and LIFE BROKERAGE
PARTNERS, LLC

       Defendants.
_____/

## DEFENDANTS, KEVIN H. BECHTEL AND LIFE BROKERAGE PARTNERS RENEWED MOTION FOR SUMMARY JUDGMENT

Defendants, Kevin H. Bechtel (hereinafter "Bechtel") and Life Brokerage Partners, LLC (hereinafter "LBP"), by and through their undersigned counsel, and pursuant to Rule 56 of The Federal Rules of Civil Procedure, move for Summary Judgment against American General Life Insurance Company (hereinafter "American General") on Counts One and Two of its Complaint against Bechtel and LBP.

## SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment where the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). A fact is "material" if it might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law determines what facts are material and irrelevant factual disputes must be discounted. *Id.* at 248–249. Conclusory allegations are insufficient to defeat a summary judgment motion. *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 888 (1990).

1

The moving party bears the initial burden of providing the Court with the basis for the motion and identifying evidence that demonstrates the absence, prima facie, of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, where the moving party does not bear the burden of proof, it may make the prima facie showing simply by demonstrating the absence of evidence sufficient to establish an essential element of the claim for which its opponent bears the burden of proof. *Id.* at 322, 325. Once this initial threshold is met, the non-moving party has the affirmative burden of coming forward with specific material facts evidencing the need for trial. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).

I. **THE 2003 CONTRACT ATTACHED TO AMERICAN GENERAL'S COMPLAINT PLAINLY STATES THAT LIFE BROKERAGE EQUITY GROUP, INC., IS THE CONTRACTING PARTY AND THEREFORE HAS NO BEARING ON THE INSTANT DISPUTE**

Under Florida law and general contracting law, in order for a person to be held responsible for breaching a contract, the party seeking enforcement of the contract must plead and prove: 1) that there is a valid contract between the parties; 2) that the other party breached the contract; and 3) that the non-breaching party has suffered damages. *Warfield v. Stewart,* 2007 WL 3378548 at 6-7 (M.D. Fla 2007) (citing *Rollins, Inc. v. Butland,* 951 So.2d 860, 876 (Fla.2nd DCA 2006).

American General's Amended Complaint attached two documents it alleges to be contracts at issue in this case. The first contract American General attached to its Amended Complaint, plainly states that Life Brokerage Equity Group, Inc. (hereinafter "LBEG") is the contracting party. It therefore has no bearing on the instant dispute. This fact is clear from the face of the "Agency Agreement" document in which Bechtel clearly indicated he was signing as "VP" on behalf of LBEG, and the contract plainly sets forth the tax identification number on the document for LBEG. In the space on the 2003 contract there is a space for Bechtel's personal social security number, it was intentionally left blank by LBEG. Clearly the document was executed by Bechtel as an officer

2

LBEG and not in his individual capacity. **Ex. A, Amended Complaint., Ex. 1; Ex L, Bechtel Affidavit, Para. 2,3 4 and 5.**

The intention of the parties to contract LBEG as an agency, and not Bechtel individually, was moreover made further clear by the documents surrounding the 2003 contract. For example, in the "AIG American General Appointment Application", a true and correct copy of which is attached hereto as **Ex. B**, Part 1 the box next to "I am an officer of the below corporation" has been checked:

> Business Phone Number: 727 771 7(
> ☒ I am an officer of the below corporation.

See AG Sasoni 01132.

In addition, in part 2, which is labeled "Corporate Applicants Required Information" the section plainly states "Individual Applicants Do Not Complete This Section":

> Part 2 Corporate Applicants Required Information
> Please Print Clearly                                   Individual Applicants Do Not Complete This Section
> Tax ID Number  65-0972017
> Corporate Name:  Life Brokerage Equity Group

**See Ex. B, AG Sasoni 01132.** However, Bechtel completed part 2, demonstrating that the plain intention of the parties was that Bechtel was seeking appointment on behalf of LBEG from American General, and not on behalf of himself individually. In part 4 of the 2003 application entitled "Licensing and State Appointment Request" the application plainly states that Bechtel was seeking to be contracted as an agency representative of LBEG because the box is clearly marked "Contracted as: . . . Agency", and yet the box for "Individual" was left blank:

> Part 4. Licensing and State Appointment Request
> Attach copies of licenses for all requested state appointments. Provide appropriate fees for nonresident appointments.
> Social Security Number: [redacted]
> Applicant Name: Kevin Bechtel
> Licensed for: ☒ Life  ☒ Health   Contracted as: ☐ Individual  ☒ Agency

3

**See Ex. B, AG Sasoni 01133.** The straightforward reason the box for individual was left blank was to plainly indicate that Bechtel was not to be contracted as an individual, and instead was only to be contracted as LBEG's agency principal.

Against the clear and unambiguous language contained in the forms that American General drafted, there is simply no evidence, Bechtel intended to contract with American General on behalf himself, individually.

The only other contract which American General pleads as the basis for its Amended Complaint, is the 2007 Agency Agreement, which American General has plead is between American General and LBP, and not Bechtel individually. **Ex. C, Klotz Depo., P.36, lines 11-16.**

Based upon the foregoing there is no contract between Bechtel and American General and as such Bechtel is entitled to Final Summary Judgment as to all counts.

**II. IN THE EVENT THE COURT DETERMINES THERE IS A QUESTION OF FACT AS TO WHETHER THE 2003 AGENCY AGREEMENT WAS EXECUTED BY BECHTEL AS A PRINCIPAL OF LBEG, IT DOES NOT MATTER BECAUSE AMERICAN GENERAL AGREED THAT ALL RIGHTS, PRIVILEGES, DUTIES AND OBLIGATIONS UNDER THE 2003 AGENCY AGREEMENT WERE ASSIGNED TO LBEG**

At the same time that Bechtel Executed the 2003 Agency Agreement on behalf of LBEG, the parties and American General executed an Assignment of Contract that, with American General's permission, assigned all any of Bechtel's "rights, privileges, duties and obligations" to LBEG. **Ex. D, 2003 Assignment of Contract.** This was done because it was never intended that Bechtel would be conducting business on behalf of himself individually. The contemporaneously executed Assignment of Contract unequivocally provides:

> "This Assignment removes from Assignor [Bechtel] any and all . . . duties and obligations under the Contract and places them with Assignee [LBEG] as if the Contract had been executed by Assignee [LBEG]."

4

In order for American General to be successful in its claims against Bechtel, individually, it must prove the following: 1. That there is an existing contract between Bechtel and American General; 2. That if there was a contract between Bechtel and American General that the contract was not assigned by Bechtel to LBEG with American General's permission.

In the event this Honorable Court finds that the Contract in 2003 is a contract between Bechtel, individually and American General - which Bechtel argues is belied by the terms within the agency agreement and application - then American General must still overcome the 2003 Assignment of Contract "removing from" Bechtel and placing with LBEG "all duties and obligations" under the Contract, with American General's express consent.

To overcome the plain and unambiguous terms of the 2003 Agency Agreement executed by Bechtel on behalf of LBEG, which is further supported by 2003 Assignment of Contract removing any duties and obligations from Bechtel and assigning them to LBEG, American General has now come up with yet another unsupported theory, i.e., that the 2003 Assignment of Contract was subsequently released and/or abandoned by Bechtel when well after the Sasoni policies were issued, he entered into a separate contract (that did not include American General) on September 30, 2008. Based upon the alleged applicability of the September 30, 2008 agreement between LBEG and Bechtel (hereinafter "2008 Cardinal Marketing Agreement"), American General seeks to ignore the capacity in which Bechtel plainly executed the 2003 Agency Agreement, and the terms of the 2003 Assignment of Contract American General executed, in order to enforce a selective portion of the General Terms and Conditions against Bechtel in his individual capacity.

However, doing so would require the Court to also ignore another portion of those General Terms and Conditions. The portion that American General would need the Court to also ignore is the prohibition against Bechtel and LBEG unilaterally changing party responsible for the duties

and obligations under the 2003 Agency Agreement. The General Terms and Conditions specifically state:

> "Neither the agreement, any duties or delegation under this agreement, nor the commissions or fees accruing hereunder, nor any interest herein, nor any right or claim created hereby or arising by reason of the REPRESENTATIVE acting hereunder, shall be assignable [from LBEG to Bechtel] except upon the written consent of the insurer."

**See Ex. A, Amended Complaint, Ex. 1, 2003 General Terms, Paragraph VII (E).**

Although the 2003 Assignment of Contract plainly complies with Paragraph VII (E) of the General Terms in that it was entered into with the express written consent of American General, American General's latest novel theory regarding the September 30, 2008 Cardinal Marketing Agreement has no such express written consent by American General to support it. **See Ex. E, 2008 Cardinal Marketing Agreement.**

In order to prove that Bechtel and LBEG "released and/or abandoned" the 2003 Assignment of Contract, American General will first need the Court to modify the General Terms and Conditions to delete Paragraph VII (E)'s express written consent requirement, and then American General must also prove at trial: 1) the acts of the party are inconsistent with the existence of a contract; and 2) are acquiesced by the other party. *Dean Witter Reynolds, Inc. v. Fluery,* 138 F.3d 1339, 1342 (11th Cir. 1998)(citing *McMullen v. McMullen,* 185 So.2d 191, 193 (Fla. 2DCA 1966).

As stated above, in its efforts to prove abandonment of the 2003 Assignment of Contract, American General relies upon the 2008 Cardinal Marketing Agreement (hereinafter "Cardinal Agreement") between Bechtel and Gary Richardson and 4 other closely held entities (Cardinal Marketing Group, Broker Dealer Services, Life Brokerage Financial Group, and Life Brokerage Equity Group), none of whom are party to this lawsuit. **See Ex. E.**

6

As an initial matter, American General is not a party to the 2008 Cardinal Marketing Agreement, and therefore Paragraph VII (E) the General Terms was never satisfied. Moreover, the terms of the 2008 Cardinal Marketing Agreement do not contemplate American General at all, nor do they mention the Sasoni life insurance policies, or the 2003 Assignment of Contract. **See Ex. F, Richardson Affidavit, Para. 4.** In addition, abandonment of a contract implies that one party or the other has abandoned a contract and there is a dispute between the two parties as to whether a contract exists. In fact, a case cited to by American General in its Renewed Motion for Summary Judgment, actually supports Bechtel's Renewed Motion for Summary Judgment. American General cited to the case of *Gallagher v. Dupont,* 918 So.2d 342, 347 (Fla. 5th DCA 2005) for the proposition that Bechtel and LBEG modified the 2003 Assignment of Contract with the 2008 Cardinal Marketing Agreement. While *Gallagher* does stand for the proposition that a written contact can be modified by the subsequent conduct of the parties to the written contract, it also stands for the proposition that a third party cannot enforce the provisions of a written contract that it is not a party to even if it derives some benefit from it. *Gallagher* at 347. In addition, it is settled Florida law that a person or entity not in privity of contract with another party/entity cannot sue to enforce the contract. *See id; See also Dirocco v. Victory Marketing Agency, LLC, et al.,* 2016 WL 1266932, 3 (Fla. M.D. 2016); *Companion Prop. & Cas. Ins. Co. v. Category 5 Management Group*, 189 So.3d 905, 908 (Fla. 1st DCA 2016).

In the present case, the 2008 Cardinal Marketing Agreement does not include American General as a party. Because American General is not in privity of contract with Bechtel in in the 2008 Cardinal Marketing Agreement, American General cannot enforce the terms of it against Bechtel. *See Id.* Based upon the foregoing there is no dispute as to material facts on American General's claims against Bechtel and that American General cannot prove its case against Bechtel

at trial. Therefore, Summary Judgment should be granted in Bechtel's favor and against American General.

III. **AMERICAN GENERAL CANNOT PROVE THAT THE "SPECIMEN" TERMS AND CONDITIONS IT CONTENDS ARE PART OF THE 2007 AGENCY AGREEMENT BETWEEN ITSELF AND LBP WERE EVER PROVIDED TO LBP OR THAT LBP WAS AWARE OF THEM PRIOR TO THE 2007 AGENCY AGREEMENT BEING EXECUTED BY LBP**

Pursuant to Florida law, in order for a person to be held responsible for breaching a contract, the party seeking enforcement of the contract must plead and prove: 1) that there is a valid contract between the parties; 2) that the other party breached the contract; and 3) that the non-breaching party has suffered damages. *Warfield v. Stewart,* 2007 WL 3378548 at 6-7 (M.D. Fla 2007) (citing *Rollins, Inc. v. Butland,* 951 So.2d 860, 876 (Fla.2nd DCA 2006).

Regarding the 2007 Agency Agreement, there is no dispute as to any material facts that the "specimen" terms and conditions were not part of the 2007 Agency Agreement, and there is no reference within the 2007 Agency Agreement to suggest that is was subject to the "specimen" terms and conditions. **See Ex. G, 2007 Agency Agreement**. Therefore, LBP is entitled to Summary Judgment in its favor and against American General.

American General claims that in 2007, it stopped saving the terms and conditions within the agents contracting files at American General whenever they were submitted as part of the contracting documents by an agency. **See Ex. H, Lohman Depo, P.41-42, lines 12-7.** American General has alleged in various pleadings that LBP should have either received the "specimen" terms and conditions with the 2007 Agency Agreement it signed or that it should have gotten them from the American General's website on its own, even though the 2007 Agency Agreement makes no reference to American General's website for any additional terms and conditions. **See Ex. G.**

8

In this case, there were only four persons/entities that might have had any evidence of whether LBP was ever presented with terms and conditions for the 2007 Agency Agreement.

The first entity that should have had evidence that LBP was presented with the additional terms and conditions to the 2007 Agency Agreement if that ever occurred, is American General. To date, American General has produced no evidence that it ever provided LBP with terms and conditions prior to LBP signing the 2007 Agency Agreement. **See Ex. C, Klotz Depo., P. 31, lines 19-24; P. 40-41, lines 20-8.**

The second person that should have evidence that LBP was presented with the additional terms and conditions if that ever occurred, is John Ekberg of Financial Energy Insurance Group, Inc., an agent for American General, which was in the up-line for LBP's business. At Mr. Ekberg's deposition that was taken in this case, he produced 28 pages from his LBP agent file. The "specimen" terms and conditions that American General relies upon in its Amended Complaint against LBP are not contained in any of the 28 pages. **See Ex. I, Ekberg Depo, Exh. 1.** Additionally, Mr. Ekberg could not testify that LBP ever saw or were provided the "specimen" terms and conditions prior to LBP executing the 2007 Agency Agreement. **See Ex. J, Ekberg Depo, P. 34, lines 4-17.**

The third person that might have had evidence that LBP was presented with the specimen terms and conditions as part of the 2007 Agency Agreement is Gary Richardson of Life Brokerage Financial Group. Mr. Richardson produced 25 pages of documents that American General requested as they relate to this case. **See Ex. K, Richardson Depo., Exh. 1.** The "specimen" terms and conditions for the 2007 Agency Agreement between LBP and American General are not contained within the 25 pages of documents produced by Mr. Richardson at his deposition in this matter. **See Ex. K, Richardson Depo., Exh. 1.**

Finally, the last entity that would have evidence that LBP was presented with the "specimen" terms and conditions as part of the 2007 Agency Agreement, is LBP itself. However, LBP's contracting file with American General does not have any terms and conditions attached to the 2007 Agency Agreement. **See Ex. L, Bechtel Affidavit, Para. 12; See Ex. M, Derousie Affidavit, Para. 1, 8, and 9.**

Furthermore, as stated above, once American General realized no one had any evidence that the specimen terms and conditions were presented to LBP as part of the 2007 Agency Agreement, American General changed its allegations in this case to LBP should have obtained the terms and conditions on American General's website. **See American General, Renewed MSJ, P. 15-17.**

According to Jana Klotz, American General's representative and John Ekberg, only agencies that had already contracted at the IMO level or above would have access to the contracting documents at issue in this case. **See Ex. C, Klotz Depo, P. 32, lines 14-17; See Ex. J, Ekberg Depo, P. 38, lines 15-24.** At the time of the 2007 Agency Agreement, LBP was just formed and had not been contracted with American General at all, let alone at the IMO level, it would have been impossible for LBP to access the specimen terms and conditions that are only available after an IMO agreement has been entered into. **See Ex. L, Bechtel Affidavit, Para. 11**. Moreover, notwithstanding American General's claims regarding broad knowledge among agencies regarding the online access to contracting documents, even experienced IMO level agents with American General were not aware that contracting documents were available online with American General. **See Ex. N, Richardson Depo, P. 53, line 15 to P. 56, line 13.**

Finally, Vanessa Nally Derousie was the Director of Licensing and Contracting for LBP in 2007. **See Ex. M, Derousie Affidavit, Para. 2.** She was in charge of obtaining LBP's IMO

10

contract with American General.  **See Ex. M, Derousie Affidavit, Para. 3, 4.**  She was not aware that the contracting documents were available on the American General website and was not instructed by anybody at American General that they were available on the website.  **See Ex. M, Derousie Affidavit, Para. 10.**  Consequently, she contacted American General's contracting department and had them forward her directly the necessary application and contracting documents that America General required for LBP to obtain an IMO contract.  **See Ex. M, Derousie Affidavit, Para. 5, 6.**  According to Ms. Derousie, American General sent her the appointment application, a one page Agency Agreement and an Assignment of Commissions form.  **See Ex. M, Derousie Affidavit, Para. 8.**  She then completed the blanks in the appointment application for LBP and had Bechtel execute the Agency Agreement on behalf of LBP as well as an Assignment of Commissions for LBP and returned the documentation that American General provided to American General through John Ekberg.  **See Ex. M, Derousie Affidavit, Para. 8.**  In October 2007, Ms. Derousie had still not received an executed copy of the 2007 Agency Agreement back from American General.  **See Ex. M, Derousie Affidavit, Para. 11, 12.**  As such she contacted John Ekberg who sent her a fax dated October 29, 2007 in which he informed her that he would contact American General and obtain a copy of the executed 2007 Agency Agreement with compensation schedules.  **See Ex. M, Derousie Affidavit, Para. 11, 12.**  Prior to Ms. Derousie leaving her employment with LBP in 2009, she had still never received an executed copy of the 2007 Agency Agreement.  **See Ex. M, Derousie Affidavit, Para. 12.**  Indeed, the 2007 Agency Agreement which American General attached to its complaint to this day, has never been countersigned, nor has American General furnished any evidence that its contracting department ever informed Ms. Derousie or anyone else at LBP that the 2007 Agreement was subject to the "specimen" terms and conditions that took American General almost six (6) months to produce in

this case (Bechtel and LBP in its Response to American General's Renewed Motion for Summary Judgment mistakenly stated that it was a year and a half before American General produced the "specimen" terms and conditions when it was actually approximately six (6) months).

Based upon the foregoing, it is clear that there are no genuine issues of material fact that: 1) The 2007 Agency Agreement between LBP and American General did not contain the "specimen" terms and conditions; 2) That the 2007 Agency Agreement did not reference that it was subject to the "specimen" terms and conditions, 3) That LBP lacked the requisite access to log onto American General's website to obtain the "specimen" terms and conditions because it was not an IMO at the time it executed the 2007 Agency Agreement; 4) That even if LBP did have access to the American General website, LBP was not aware the "specimen" terms and conditions were available on American General's website and were not informed by American General that they were; and 5) that none of the persons who should have had evidence that the specimen terms and conditions were presented to LBP as part of the 2007 Agency Agreement in fact had any evidence that that had occurred. Because American General has no evidence to support its allegations and no evidence to contradict the facts set forth above, LBP is entitled to Summary Judgment in its favor and against American General.

**IV.  KEVIN H. BECHTEL AND LIFE BROKERAGE PARTNERS, LLC ARE ENTITLED TO FINAL SUMMARY JUDGMENT AS AMERICAN GENERAL FAILED TO FILE ITS CAUSE OF ACTION AGAINST THEM WITHIN THE APPLICABLE STATUTE OF LIMITATIONS**

Pursuant to Florida law, a party must bring a cause of action for breach of a written contract within five (5) years of when the alleged breach occurred. *Fla. Stat. § 95.11(2); See Nguyen v. JP Morgan Chase Bank, NA* (11th Cir. Fla. 2013).

On or about October 19, 2009, American General filed a lawsuit in Dade County, Florida (Case No. 2009-57024-CA-01) against Kevin Bechtel, Life Brokerage Partners, LLC and

numerous other defendants based upon the two life insurance policies that are the basis of the litigation before this Honorable Court. Among other claims in the Complaint, American General alleged that Bechtel and LBP breached its contract with American General by failing to refund commissions they earned on the Sasoni policies. **See Ex. O, 2009 American General Complaint,** Paragraph 93. Although American General does not allege the date of the alleged breach in its 2009 lawsuit, it is clear that the alleged breach had to occur before the filing of its Complaint in Dade County, Florida, which was on or before October 19, 2009. **See Ex. O.** Therefore, either American General was committing a fraud upon the court in 2009 with its allegations in its Complaint, in which case it should be barred from recovering here, or the alleged breach occurred prior to October 19, 2009, which is more than five (5) years prior to the American General filing this lawsuit against Bechtel and LBP, which was filed on or about March 24, 2015.

Due to the fact that there are no genuine issues of material fact as to whether any alleged breach of the alleged contract in this case took place prior to five (5) years of American General filing its Complaint in this case, it was not filed within the appropriate statute of limitations permitted for such cause of action and therefore its claims against Bechtel and LBP must fail as a matter of law.

**V. SHOULD THIS HONORABLE COURT FIND THAT AMERICAN GENERAL, BECHTEL AND LBP ENTERED INTO A CONTRACT WITH THE TERMS AND CONDITIONS AS ALLEGED BY AMERICAN GENERAL, BECHTEL AND LBP ARE STILL ENTITLED TO SUMMARY JUDGMENT DUE TO THE FACT THAT AMERICAN GENERAL NEVER RETURNED PREMIUMS AS IS REQUIRED BY THE TERMS AND CONDITIONS AND THEREFORE DID NOT SATISFY ALL CONDITIONS PRECEDENT PRIOR TO FILING THIS LAWSUIT**

Pursuant to Florida law, all conditions precedent must be completed or substantially completed in order to be successful in a breach of contract action. *Green Tree Serv., LLC v. Milam*, 177 So.3d 7 (Fla. 2nd DCA 2015).

In the present case, assuming this Honorable Court finds that there is a valid written contract between American General and either Bechtel or LBP, this Honorable Court must still grant Bechtel and LBP Final Summary Judgment. According the terms of the contract that American General is alleging that is between it and Bechtel and LBP, conditions precedent to this lawsuit are that American General rescind the Sasoni life insurance policies and refund all premiums paid to it on the policies. **See Ex. A., Amended Complaint, "Specimen" Terms and Conditions, Paragraph V (F)**. American General has failed to provide any evidence that it refunded premiums. In fact, the allegation it makes its Complaint that it refunded premiums is not supported by any of the documents received in discovery nor from any of the deposition testimony.

In fact, in the Delaware case that was settled pursuant to a Settlement Agreement **(See Ex. Q)**, there is no mention of return of premiums and in fact the amount that was paid by American General is specifically set out in the Settlement Agreement as:

> Solely to settle disputed claims and to avoid further costs in connection with the claims; and it is not an admission of any liability, wrongdoing, or misrepresentation on the part of any Party or that any Party performed or failed to perform any act in violation of any law, regulation or the rights of any Party whatsoever, or that the claims asserted in the Lawsuits are valid.

**See Ex. P**, Paragraph 13.

Furthermore, $1,368,000.00 in premiums were paid to American General on the Sasoni life insurance policies. **See Ex. A, Amended Complaint**. Pursuant to the Settlement Agreement from the Delaware case, American General paid far is excess of that sum in order to acquire the policies back from the policy holder when settling its dispute. **See Ex. P**, Paragraph 2.

Due to the fact that American General failed to refund the premiums paid to it for the Sasoni life insurance policies and instead settled a disputed claim by acquiring the policies from the owner for far in excess of the premiums paid, it has failed to complete or even substantially

complete all condition precedents to bringing this cause of action. **See Ex. A**, **Paragraph V(F)**. As such, because there are no genuine issues of material fact as to whether all conditions precedent were performed by American General prior to bringing this cause of action, Bechtel and LBP are entitled to Final Summary Judgment.

## CONCLUSION

Summary Judgment is appropriate in this case due to the fact there are no genuine issues of material fact on the following:

1. There is no contract between Bechtel, individually, and American General or in the alternative, that contract was been assigned to LBEG contemporaneously with its execution in 2003;

2. The 2007 "Agency Agreement" does not attach or refer to "specimen" terms and conditions, and therefore such terms and conditions cannot serve as a basis for breach of the 2007 Agency Agreement;

3. The applicable statute of limitations expired prior to American General pursuing this action for breach; and

4. American General did not refund the premiums paid on the Sasoni life insurance policies, and instead purchased the policies from the policy holder for a sum far in excess of the premiums paid, American General has therefore failed to complete the conditions precedent required to bring this lawsuit.

WHEREFORE, the Defendants, Kevin H. Bechtel and Life Brokerage Partners, LLC respectfully request that this Honorable Court enter final summary judgment in favor of Kevin H. Bechtel and Life Brokerage Partners, LLC and against American General Life Insurance Company.

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFTY that a true and correct copy of the foregoing Notice was served by email or the CM/ECF system on David Donahue, Esq., Bressler, Amery & Ross, P.C., ddonahue@bressler.com, this 2nd day of May, 2017.

                                       By: /s/ Richard C. Millian
                                       Attorney for Defendants
                                       **The Millian Law Group**
                                       13513 Prestige Place, Suite 101
                                       Tampa, FL 33635
                                       Telephone:  813-200-5894
                                       Facsimile:  813-333-7374
                                       Email:       rick@millianlaw.com