# Exhibit I

John Ekberg
January 16, 2017

1          UNITED STATES DISTRICT COURT
                     FOR THE
2              MIDDLE DISTRICT OF FLORIDA

3   AMERICAN GENERAL LIFE
    INSURANCE COMPANY,
4
              Plaintiff,
5
    -vs-                    Civil Action No. 8:15-cv-192-T-AEP
6
    KEVIN H. BECHTEL, ET AL.,
7
              Defendants.
8   _____/

9

10

11          DEPOSITION OF JOHN EKBERG

12         Taken on Behalf of the Plaintiff

13

14      DATE TAKEN:   January 16, 2017

15          TIME:   10:01 a.m. to 11:03 a.m.

16         PLACE:   U.S. Legal Support, Inc.
                    444 Seabreeze Boulevard, Suite 433
17                  Daytona Beach, Florida

18

19

20

21

22

23

24         Stenographically Reported by:
              Jennifer Lynn Harris, RPR
25         Registered Professional Reporter

U.S. LEGAL SUPPORT
(813) 876-4722

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Middle District of Florida

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE CO. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  8:15-cv-192-T-AEP |
| KEVIN H. BECHTEL, et al., | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:        John Ekberg, 1083 Hampstead Lane, Ormond Beach, FL 32174

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: US Legal Support<br>444 Seabreeze Blvd., Suite 433<br>Daytona Beach, FL 32117 | Date and Time:<br>01/16/2017 10:00 am |
|---|---|

The deposition will be recorded by this method: _____

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: All documents related to any contract or agreement between you, Kevin Bechtel, or Gary Richardson that reference American General Life Insurance Company or one of its affiliates.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    01/10/2017

        CLERK OF COURT

                                                OR    *Javid V. Donahue*

_____          _____
*Signature of Clerk or Deputy Clerk*                   *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   American General Life Insurance Company                        , who issues or requests this subpoena, are:

David P. Donahue, Bressler Amery & Ross PC, 2001 Park Place, Suite 1500, Birmingham, AL 35203; One SE 3rd Avenue, 19th Floor, Miami, FL 33131; (205) 820-8244; ddonahue@bressler.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Δ π EXHIBIT  1
Deponent *Ekberg*
Date *1-16-17* Rptr. *J.H.*
WWW.DEPOBOOK.COM

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  8:15-cv-192-T-AEP

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

     ☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____

_____ on *(date)* _____ ; or

     ☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## john ekberg

| | |
|---|---|
| **From:** | "john ekberg" <john_flenergy@bellsouth.net> |
| **To:** | <Theresa_Taylor@aigag.com> |
| **Cc:** | <Pat_Russo@aigag.com> |
| **Sent:** | Friday, April 13, 2007 4:13 PM |
| **Subject:** | Fw: Kevin Bechtel 0WD11 |

Hi Theresa.....thanks for all your help now and in the past!

Kevin Bechtel's new contract is an IMO contract with commissions assigned to the corporation, Life Brokerage Partners.

Sandy assigned the corporation the number 3P263 and Kevin's Producer number 3P264.  If these are changed for any reason, please notify us.

This IMO will be under Gary Richardson's new MO contract.

John Ekberg - NMO # 0T781

(888) 568-3344
----- Original Message -----
From: <Pat_Russo@aigag.com>
To: <john_fienergy@bellsouth.net>
Cc: <Theresa_Taylor@aigag.com>; <Patti_Newall@agfg.com>
Sent: Friday, April 13, 2007 11:21 AM
Subject: Kevin Bechtel 0WD11


> I'm forwarding this on to Theresa but what about the pending policy
> question and the list of business Theresa is wanting?  Also, someone needs
> to confirm that  her memo is accurate.
>
>
> Pat Russo
> AIG/American General
> Southeast Regional Office Marketing Coordinator
>
> (800) 787-9937, ext. 6324
> (214) 654-6326 fax
> pat_russo@aigag.com
>
> Check out our website with up to date status & messaging
> system@http://www.aiglifebrokerage.com
>
>
>
>
>             "john ekberg"
>             <john_fienergy@bel        To:
> <Pat_Russo@aigag.com>
>             lsouth.net>               cc:
>                                       Subject:  Re: Kevin Bechtel
> 0WD11

Ekberg 000001

Page 2 of 4

```
>            04/13/2007 09:41
>            AM
>
>
>
>
>
> Good morning.
>
> This contract (and Gary's) is to be set-up in Kevin Bechtel's name with an
> assignment to the corporation.
>
> FYI.....Kevin's partner and President of Life Brokerage Partners is Ravi
> Malick.  Here are there new email addresses:
>
>            Kevin Bechtel (Principal of Record)
> kbechtel@lifebrokeragepartners.com
>            Ravi Malick
> rmalick@lifebrokeragepartners.com.
>
> Thank you
>
> John Ekberg - NMO # 0T781
>
> (888) 568-3344
> ----- Original Message -----
> From: <Pat_Russo@aigag.com>
> To: <fienergy@bellsouth.net>; <john_fienergy@bellsouth.net>
> Cc: <Patti_Newall@agfg.com>; <Dennis_Monroe@aigag.com>;
> <Theresa_Taylor@aigag.com>; <pauline_baker@aigag.com>
> Sent: Friday, April 13, 2007 9:23 AM
> Subject: Kevin Bechtel 0WD11
>
>
>>
>> Sandy/John - Before Kevin's paperwork can be completed by Milwaukee,
>> either
>> your office, Gary's or Kevin's must respond to Theresa's "Memo Of
>> Understanding" and answer all related questions and provide the policy
>> information she requires.  If you would like for Theresa and I to work
>> directly with Kevin, we'll need his e-mail address.  I have an e-mail
>> address for him but it is the one with LBEG so I'm not sure it is still
>> good.  As you can see, I haven't even copied Gary on this e-mail because
> I
>> wanted to touch base with you first.
>>
>> Please advise how you would like for me to proceed or if you would like
> to
>> take control.
>>
>>
>> Pat Russo
>> AIG/American General
>> Southeast Regional Office Marketing Coordinator
```

4/13/2007

Ekberg 000002

```
>>
>> (800) 787-9937, ext. 6324
>> (214) 654-6326 fax
>> pat_russo@aigag.com
>>
>> Check out our website with up to date status & messaging
>> system@http://www.aiglifebrokerage.com
>>
>> ----- Forwarded by Pat Russo/DALLAS/USLIFE on 04/13/2007 08:11 AM -----
>>
>>            Theresa
>>            Taylor@USLIFE       To:    Pat
>> Russo/DALLAS/USLIFE@AGFG, Patti Newall/DALLAS/USLIFE@AGFG, Michael
>>
>> Justus/BROOKFIELD/USLIFE@AGFG, Andrew Skrobis/Milwaukee/USLIFE@USLIFE,
>> Doug
>>            04/12/2007 05:11
>> Krimmer/Milwaukee/USLIFE@USLIFE
>>            PM          cc:    Pauline
>> Baker/Milwaukee/USLIFE@USLIFE
>>                            Subject:  Kevin Bechtel
>> 0WD11
>>
>>
>>
>>
>> Memo of Understanding
>>
>> Moving to an IMO level under Gary's 0PU67 as an individual with an
>> assignment to Life Brokerage Financial Group.  Need to verify that,
>> because Part 2 is completed on the paperwork, which is the corporation
>> section, along with an assignment sent in.  Please verify if this is to
>> remain as an individual with an assignment to Life Brokerage, or should
>> it be set up as a corporation
>>
>> Downline will also be moved
>>
>> Compensation changes:
>>    Life Product - no change will remain as is
>>    Specialty Products from "J" to "E"
>>    Annuity products from "D" to "S"
>>    A&H products from "D" to "S"  first year & "D" to "J" renewal
>>
>> Bonus change to 35.5% (4 Million { ), is this to be RETRO or NON RETRO
>> - nothing was indicated
>>
>> Is this change to apply to pending policies (approx 5) - nothing
>> indicated on paperwork
>>
>> There was a request that a list  of inforce policies would be sent in
> to
>> be transferred from Life Brokerage Equity Group to Kevin's new contract
>> - that has not been received
>>
```

4/13/2007

Ekberg 000003

>> There was another request that a list of pending cases that should be
>> transferred to Kevin's new contract - that also has not yet been
>> received
>>
>>
>> Please review and respond immediately if you are in agreement, so that we
>> can make the changes and let New Business know.
>>
>>
>> Thank You,
>>
>> Theresa Taylor
>> Contract Maintenance - Supervisor
>> 414-286-1766
>> 414-212-0474 (Fax)
>> Theresa_Taylor@aigag.com
>> ==========================================================
>> PRIVILEGED AND CONFIDENTIAL
>> The information in this e-mail (and any attachments) is confidential.  If
>> you are not the intended recipient, you must not read, use or disseminate
>> this information. Although this e-mail and any attachments are believed
> to
>> be free of any virus or other defect that might affect any computer
> system
>> into which it is received and opened.  It is the responsibility of the
>> recipient to ensure that it is virus free and no responsibility is
>> accepted
>> by American International Group, Inc., for any loss or damage arising in
>> any way from its use.
>
>

# IMO Organization Profile Sheet

RECRUITER

RECRUITER AGENCY #_____

Agency Principal: **Kevin Bechtel**          Agency Name: **Life Brokerage Partners LLC**
Address: **3982 Tampa Rd.**          City: **Oldsmar**          State: **FL**
Office Phone: **727-791-9080**     Fax: **813-792-6187**     E-mail Address: **Kbechtel@lifebrokeragepartners.c**
Website: **www.lifebrokeragepartners.com**
Business Type:    ☐ Sole Proprietor    ☐ Partnership    ☐ Corporation    ☑ LLC
Are you a member of any National Marketing Organization, Formal Study Group, or other organization?

If so, please name: _____

States of Operation: _____ Securities Licensed?: ☐ Yes  ☑ No   Type: _____

1) Key Office Staff (Primary Contacts in the agency other than the Principals) (IMO only) _____

| | |
|---|---|
| Life Business **Kevin Bechtel ☑** | E-mail address **Kbechtel@lifebrokeragepartners.co** |
| Annuity Business ✓ | E-mail address |
| Variable Business ✓ | E-mail address |
| A & H Business ✓ | E-mail address |
| Licensing & Contracting **Vanessa Nally** | E-mail address **vnally Lifebrokeragepartners.com** |
| Illustrations and Proposals **Joe Morais** | E-mail address **jmorais@Lifebrokeragepartners.com** |
| U/W & Pending Business **Vicki McDougal** | E-mail address **vmcdougal@Life brokeragepartners.com** |
| Advanced Sales | E-mail address |

2) Number of Employees: **45**   Number of Producers in Hierarchy **200** (In-House) **0** (Detached) **200**

   How many will you contract with AIG Life Brokerage? **100+**

3) Are you currently contracted /appointed with any other AIG American General Companies?  ☑ Yes  ☐ No
   If yes, which one? **American General**
   Agency Code No. **0N67**

4) Primary Life Companies (current carriers)

| Company | Paid Annualized Premiums | |
|---|---|---|
| | This Year | Last Year |
| 1. JP | 7MM | 5MM |
| 2. AXA | 7MM | 3MM |
| 3. AG | 3MM | 15MM |

**WE KNOW LIFE.™**



Ekberg 000005

# IMO/BGA Organization
# Profile
# Sheet Page 2

5) Percentage of activities engaged in: Personal Production: __0__ % Mgmt/Administration: __50__ % Recruiting: __50__ %

6) The following producer services are required for all IMO/BGA appointments?

Indicate who will provide each service:

| | Your Office | Vendor* | 3rd Party* |
|---|---|---|---|
| 1) Screen, quality control and submit all Licenses & Contracting paperwork | ☑ | ☐ | ☐ |
| 2) Screen, quality control and submit all applications and required new business forms | ☑ | ☐ | ☐ |
| 3) Provide pending case management services | ☑ | ☐ | ☐ |
| 4) Provide case design and illustration support | ☑ | ☐ | ☐ |
| 5) Provide all forms, supplies, and marketing materials | ☑ | ☐ | ☐ |
| 6) Provide product training and marketing support | ☑ | ☐ | ☐ |

How will new business be submitted:

Submission service via:

☐ Image and Data
☑ Image only
☐ Fax-in
☐ Overnight Service
☐ U.S. Postal Service

*if using a vendor or 3rd party, please provide their name and contact information

_____
_____
_____
_____
_____

First 12 months Sale Projections for AIG Life Brokerage:
(Show as paid annualized premiums by product line for the first 12 months under contract)

| | Premium | Number of Cases |
|---|---|---|
| Term Life | $ 2 MM | 200 |
| Fixed Universal Life | $ 37 MM | 500 |
| Indexed Universal Life | $ 0 | |
| Variable Universal Life | $ 0 | |
| Supplemental Health Products | $ 0 | |
| Deferred Annuities | $ 0 | |
| SPIAs | $ 3 MM | 10 |

EFT:   Required for IMO level. Attach EFT form to contracting paperwork.

Do you use an Agency Management System? ☑ Yes   ☐ No

If yes:   ☐ IIT "GA System"     ☑ Agency Works     ☐ EZ Data     ☐ Other_____

### AIG Life Brokerage
Midwest Operations Center ◆ 750 Virginia Street, Room 222 ◆ Milwaukee, WI 53204-1539 ◆ 888-653-5463
Distributing products issued by: AIG Annuity Insurance Company, American General Life Insurance Company
*Members of American International Group, Inc.*
AIG Life Brokerage is a division of American International Companies.®

AGLC100809-REV0604

Ekberg 000006

# Commitment
# Letter



This is to confirm my commitment of __5,000,000__ of paid annualized life premium credits in conjunction with my Agency Agreement with AIG Life Brokerage.

Credit for contract validation and Brokerage Life productivity bonus may be earned on products written with American General Life as follows:

- 100% of paid first-year annualized premium credit on term including term conversions;
- 100% of paid first-year annualized premium credit on whole life including interest sensitive;
- 100% of paid first-year annualized target premium on fixed, indexed, and variable universal life;
- 10% of paid first-year premium in excess of target on fixed and indexed universal life;
- 100% of paid first-year annualized premium credit on Accident and Health products;
- 10% of paid first-year premium on single premium and flexible premium annuities. The combined qualifying credit from annuity business may not exceed 25% of the total life production credit.

Credit for split cases will be allocated according to the percentage designated on the application at time of issue. The personal production of the agency principal counts toward agency production. If contracted in a calendar year a pro-rata amount will be determined, and then any calendar year thereafter, bonus, if applicable, will be adjusted for any variation between bonus paid and bonus earned with corresponding recovery of excess bonus payments.

The Productivity Bonus is paid based on Representative's actual production. If this production does not meet required levels, the Productivity Bonus may be reduced or removed. American General Life Insurance Company will be the sole authority in determining production amounts and the Productivity Bonus paid, and reserves all rights with regard to the Productivity Bonus program, including termination and/or modification of the program at any time without notice.

Kevin Bechtel
_____
Principal's Name

Life Brokerage Partners LLC
_____
Corporate Name (if applicable)

_____          3/07
Signature of Principal                                              Date

_____          _____
Regional Vice President                                          Date

**AIG Life Brokerage**
Midwest Operations Center  ◆  750 Virginia Street, Room 222  ◆  Milwaukee, WI 53204-1539  ◆  888-653-5463
Distributing products issued by: American General Life Insurance Company
*Member of American International Group, Inc.*
AIG Life Brokerage is a division of American International Companies.®

AGLC100810 REV 0306

Ekberg 000007

 **AMERICAN GENERAL**



AIG Life Brokerage
A division of the American International Companies.℠

**Appointment Application**

## Part 1   Individual and Principal of Corporation.   This is Required Information.

Please Print Clearly

Social Security Number: **REDACTED**

Name: _Bechtel_ _Kevin_ _H_
                Last Name               First Name      Middle Initial

Date of Birth: _10_ _10_ _1973_ Sex: ☑ Male ☐ Female
         month      day     year

Resident/Home: _5148 Jewell Terr._
                                   Physical Address

_Palm Harbor_ _FL_ _34685_
City                      State       Zip

Resident/Home Phone Number: ____ E-Mail _Kbechtel@life.brokeragepartners.c_

Business Address: _3982 Tampa Rd._ _Oldsmar_ _FL_ _34677_
              Physical Address          City        State      Zip

Business Phone Number: _727·791·9080_     Fax Number _813·792·6187_

☑ I am an officer of the below corporation.

## Part 2   Corporate Applicants Required Information.

Please Print Clearly                     Individual Applicants Do Not Complete This Section

Tax ID Number _20-8344089_

Corporate Name: _Life Brokerage Partners LLC_

Corporate Address: _3982 Tampa Rd._
_Oldsmar_ _FL_ _34685_
     City                         State      Zip

Corporate Phone Number: _727·791·9080_    State Incorporated: _FL_

Fax Number: _813·792·6187_    E-Mail: _Kbechtel@life.brokeragepartners.com_

Primary Officer for Corporate Records: _Kevin Bechtel_

Background information reported on page – should provide information for the Officer of the corporation.

## Part 3   Recruiter Section - IMO/BGA Only.  *Complete ONLY when address used is NOT the above business address*

Primary mailing address, phone contact, e-mail and faxes will be communicated to the following:

☐ All Home Office Mail and other Communication will be directed to other than the above. Please direct to:

Agency Name: _Life Brokerage Financial Group_   Agency Code Number: _____

Business Address: _3982 Tampa Rd_   Commission Address: _3982 Tampa Rd._
_Oldsmar FL 34677_          _Oldsmar FL 34677_
 City   State     ZIP              City    State     ZIP

Fax Number: _813·792·6187_     Phone Number: _727·791·9080_

E-Mail Address: _Chopskin@lbfg-net_    ☐ Please check when commission check is mailed directly to agent's business address.

AGLB1058                             1                                Rev0406

 **AMERICAN GENERAL**

**Appointment Application**

AIG Life Brokerage
A division of the American International Companies.®

## Part 4   Licensing and State Appointment Request

Attach copies of licenses for all requested state appointments. Provide appropriate fees for nonresident appointments.

Social Security Number: REDACTED

Applicant Name: Kevin Bechtel

Licensed for: ☑ Life   ☑ Health      Contracted as: ☑ Individual   ☑ Agency

Resident State: FL      Resident License Number: A017162

Nonresident Appointment State(s): See attached
Attach applicable fees and licenses for states listed above.

*FLORIDA residents must specify the Florida county where their business office is located:* Pinellas

*NON-RESIDENT FLORIDA agents soliciting in Florida must list the county(s) in Florida in which they intend to personally solicit:*

## Part 5   Variable Licensing - Complete ONLY when variable appointment is requested.

Please complete the following ONLY when requesting variable appointment.

Who is your Broker/Dealer? _____

CRD Number: _____

Circle all current NASD licenses that you hold:   6   7   22   24   26   63   Other: _____

### Independent Wholesaler Election

Some broker-dealers may permit third-party wholesaling firms to offer certain services and support to registered representatives in order to facilitate sales of American General Life Insurance Company (AGL) variable universal life products. These firms are referred to by AGL as Independent Wholesalers (IW). In order for you to sell AGL's variable universal life insurance products through an IW, an IW agreement must be in place with the BGA/IMO and your broker-dealer must be informed, pursuant to NASD Rule 3030, of your IW election. Additionally, this IW Election Form must be submitted to AIG Life Brokerage, which documents your IW election. If you wish to obtain support through an IW, please indicate your election below.

☐ IW Election: _____
(Name of IW Firms and Code Number)

## Part 6   Errors and Omissions Insurance Coverage

IMO candidates, attach copy of E & O Certificate. All others, please complete the following:

A. Name of Carrier: Calsurance

B. Policy Number: CAPO013104-00

C. Name of Insured: Kevin Bechtel / Life Brokerage Partners LLC

D. Coverage Amounts (include both per act and aggregate amounts):
   Per Act: 3 million
   Aggregate: 3 million

E. Expiration Date (month/date/year): 4.1.07

Ekberg 000009

 **AMERICAN GENERAL**                                      **Appointment Application**

AIG Life Brokerage
A division of the American International Companies.®

## Part 7   Background Information Required On All Applicants

If this is a corporate application, the questions should be answered by and about the agency principal.

Social Security Number:   REDACTED

### CONFIDENTIAL HISTORY/BACKGROUND INFORMATION

Please provide complete details for any "yes" answers in the Remarks section. Attach additional documentation as necessary.

1. Have you ever been convicted of or plead guilty or no contest to:
   a. Any Felony?                                                                           ☐ Yes   ☑ No
   b. Any Misdemeanor?                                                                      ☐ Yes   ☑ No
   c. A violation of federal or state securities or investment related regulations?         ☐ Yes   ☑ No

2. Are you currently under investigation by any legal or regulatory authority?              ☐ Yes   ☑ No

3. Do you now owe money to any life or health insurance company?                            ☐ Yes   ☑ No

4. Have you or a firm in which you were a partner, officer or Director been declared bankrupt or been party to a bankruptcy or receivership proceeding, or have you had a salary garnished or had liens or judgements against you?                                                                                   ☐ Yes   ☑ No

5. Has any insurance company or securities broker-dealer terminated your contract or permitted you to resign for reason other than lack of sales?                                                            ☐ Yes   ☑ No

6. Have you ever been the subject of a consumer-initiated complaint or proceeding by any self-regulatory body or any securities commodities or insurance regulatory body or organization or employer?   ☐ Yes   ☑ No

7. Has a bonding company ever denied, paid out on or revoked a bond for you?                 ☐ Yes   ☑ No

8. Have you ever had a claim filed against your professional liability or errors and omissions insurance coverage?                                                                          ☐ Yes   ☑ No

9. Has any insurance department, government agency or self-regulatory authority ever denied, suspended, revoked, censured or barred your license or registration or disciplined you with fines or by restricting your activities?                                                                         ☐ Yes   ☑ No

REMARKS SECTION: Details of "yes"

_____
_____
_____
_____
_____
_____
_____

Ekberg 000010

Attached you will find the withdrawal. The tax was all ready paid last year. The IRS agent who did my audit went on maternity leave and did not note the file as paid in full. A new agent took over and automatically filed a lien to include interest and penalty without checking for payment. I got notification on June 21 from the IRS and it was withdrawn the next business day. Please note that it was not released but 100% withdrawn. A mistake.

To complete your underwriting file I have attached:

1. The entire tax amount paid per the audit and estimates for 05.

As you will find this lien was a mistake and was not supposed to be reported. I have contacted Equifax and they have no record.


Kevin Bechtel

Life Brokerage Partners, LLC

3982 Tampa Road

Oldsmar, FL 34677

Toll Free: 888. 577. 5234

Fax: 813.792.6178

Cell: 727. 647. 4100

**kbechtel@lifebrokeragepartners.com**

**www.lifebrokeragepartners.com**

Ekberg 000011

**Internal Revenue Service**

**Department of the Treasury**

Kevin Bechtell
1825 Regal Mist Loop
Trinity, FL. 34655

Person to Contact:
Cathleen Curry
Contact Telephone Number:
904-665-0840
Contact Fax Number:
904-665-1848
Employer Identification Number:
94-9450
Contact Address:
400 West Bay Street, Stop 5710
Jacksonville, FL. 32202

Date: 06/28/2006

Dear Mr. Bechtel,

The Internal Revenue Service filed a Notice of Federal Tax Lien against your property on June 5th 2006. This notice is being withdrawn under the provisions of Internal Revenue Code section 6323(j).

Enclosed is a copy of the Withdrawal of Filed Notice of Federal Tax Lien that we have mailed for recording.

The withdrawal of the Notice of Federal Tax Lien does not affect the statutory lien provided by Internal Revenue Code section 6321; it simply relinquishes any lien priority obtained by the Internal Revenue Service when the notice was filed.

If you have any questions, please call the person whose name and phone number are shown above.

Sincerely,

*Maxine C. Lindsay*

Maxine A. Lindsay, Badge #59-02442
Manager, Advisory Unit
South Atlantic Territory, SB/SE

Enclosure:
Form 10916(c)

Letter 4026 (11-2005)
Catalog Number 47462E

Ekberg 000012

**IRS** Department of the Treasury
Internal Revenue Service
PO BOX 145585 STOP 8420G
CINCINNATI, OH 45250-5585

CERTIFIED MAIL

7105 5678 7104 6128 9613

Letter Date:  06/15/2006
Taxpayer Identification Number:
REDACTED
Contact Person:
L KEITH
Employee Identification Number:
59-01027
Contact Telephone Number:
(813) 515-2213

KEVIN H BECHTEL
1625 REGAL MIST LOOP
TRINITY, FL 34655-4976

## Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320

We filed a Notice of Federal Tax Lien on 06/08/2006

| Type of Tax | Tax Period | Amount Owed |
|---|---|---|
| 1040 | 12/31/1997 | 14729.47 |
| 1040 | 12/31/1999 | 14102.04 |
| 1040 | 12/31/2000 | 14145.35 |

The lien attaches to all the property you currently own and to all property you may acquire in the future. It also may damage your credit rating and hinder your ability to obtain additional credit.

You have a right to request a hearing with us to appeal this collection action and to discuss your payment method options. To explain the different collection appeal procedures available to you, we've enclosed Publication 1660, *Collection Appeal Rights*.

If you want to request a hearing, please complete the enclosed form 12153, *Request for a Collection Due Process Hearing*, and mail it to:

Internal Revenue Service
3848 W COLUMBUS DRIVE
STOP 5226
TAMPA, FL 33607

You must request your hearing by   07/17/2006.

We'll issue a Certificate of Release of the Federal Tax Lien within 30 days after you pay the full amount owed. To get the current amount owed, contact the person whose name and telephone number appear at the top of this letter.

(over)

Letter 3172(DO) (Rev. 11-2005)
Catalog No. 26767T

Ekberg 000013

**Form 10916(c)**
(Rev. 10-2000)

12459

**Department of the Treasury – Internal Revenue Service**

# Withdrawal of Filed Notice of Federal Tax Lien

| Serial Number | For Optional Use by Recording Office |
|---|---|
| 255519505 | |

Area:
SMALL BUSINESS/SELF EMPLOYED AREA #3
Lien Unit Phone: (800) 913-6050

I certify that the following-named taxpayer, under the provisions of section 6323(j) of the Internal Revenue Code, is entitled to the issuance of this notice of withdrawal of the filed Notice of Federal Tax Lien for these taxes and additions. The withdrawal of this notice of lien does not affect the statutory lien provided by IRC section 6321; it simply relinquishes any lien priority obtained by the Internal Revenue Service when the notice was filed. The proper official in the office where the Notice of Federal Tax Lien was filed on **June 12, 2006** is authorized to annotate the records to show the withdrawal of the notice of lien for these taxes and additions.

Name of Taxpayer  KEVIN H. BECHTEL

Residence      1825 REGAL MIST LOOP
               TRINITY, FL 34655-1976

**COURT RECORDING INFORMATION:**

| Liber | Page | UCC No. | Serial No. |
|---|---|---|---|
| 7093 | 1080 | n/a | 2006119330 |

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/1997 | XXX-XX-4024 | 07/14/2003 | 08/13/2013 | 14725.47 |
| 1040 | 12/31/1997 | XXX-XX-4024 | 09/19/2005 | 10/19/2015 | 16152.04 |
| 1040 | 12/31/1999 | XXX-XX-4024 | 09/19/2005 | 10/19/2015 | 16195.35 |
| 1040 | 12/31/2000 | XXX-XX-4024 | 09/19/2005 | 10/19/2015 | ************* |

Place of Filing

CLERK OF CIRCUIT COURT
PASCO COUNTY
DADE CITY, FL 33525

| Total | $ | 47025.86 |
|---|---|---|

This notice was prepared and signed at      JACKSONVILLE, FL      , on this,

the  23RD  day of  June  ,  2006  .

Signature  R. A. Mitchell

Title  Director, Campus Compliance Operations

Cat. No. 24606T          Part 2 - Taxpayer Copy          Form 10916(c) (Rev. 10-2000)

Ekberg 000014



## AIG Life Brokerage
A division of the American International Companies.®

**Appointment Application**

---

### Part 8    Signature of Individual -or- Principal of Corporation

Social Security Number: REDACTED

I have read and received, as of the date indicated below, the notice concerning investigative consumer reports, as required by law. I understand that in signing this form, I hereby authorize the American General Life Companies that I have requested appointments with (hereinafter collectively referred to as the "American General Affiliates") to investigate my background, including my credit history and interviews with former employers and/or primary insurance company. I authorize the American General Affiliates and Individuals named in the application to give the American General Affiliates any information regarding me that they have available. I agree that if any of my answers to the questions in Part 7 change, I will notify, in writing, American General Affiliates within 10 business days of the incident which would cause an answer to change. I understand that falsification of information or failure to update the answers on this application may result in termination of appointment(s) with all American General Affiliates. In addition, I hereby authorize the American General Affiliates to report information about earnings and debit balances to any credit bureau or similar organization.

I further authorize American General Affiliates, to verify my previous employment and securities registration history through the CRD system. I hereby authorize American General Affiliates to share background, licensing and applicant data with their affiliates. I acknowledge that I have received and reviewed the "Compliance Manual" for the American General Life Companies, and/or "Operations Manual" and I agree to abide by those principles, as amended or supplemented from time to time, in representing any of the Companies that appoint me.

Date: 3 / 1 / 07        Signature: _____
                                Signature of Individual -or- Principal of Corporation

---

### Part 9    Signature of Recruiter

The undersigned [recommending representative or General Agent] by executing this applicant recommends the applicant to American General Affiliates as a suitable person to represent the companies. The recommending individual or General Agent also agrees to supervise and assume responsibility for the applicant, if appointed by American General Affiliates, in accordance with the terms of his/her Contract.

Signature: _____        Date: 3 / 1 / 07
               Signature of Recruiter

Print Name: Gary Richardson _____        Agent/Agency Code # _____
               Print Name of Recruiter                              Required

---

### Part 10    Home Office Section

Signature: _____        Date: _____ / _____ / _____
               (Additional signatures, if required, RVP)

Print Name: _____        Regional Code Number _____

Home Office Approval: _____        Date: _____ / _____ / _____
                          (If required)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Remove and leave Part 11 with applicant.

---

### Part 11    Fair Credit Reporting Act - Notice of Proposed Investigative Consumer Report

Pursuant to the Fair Credit Reporting Act, this notice is to inform you that as a component of our contracting and appointing process, each company with which you have requested an appointment may request an investigative consumer report which may include information related to your character, general reputation, personal characteristics, and mode of living. You have the right to request in writing, within a reasonable period of time after receipt of this notice, a complete disclosure of the scope of the investigation requested and a written summary of your rights under the Fair Credit Reporting Act. Send your request to: Licensing and Contracting Department, 750 W. Virginia St. Milwaukee, WI 53204. Disclosure information must be in writing and mailed to you, along with the written summary of your rights, within five (5) business days after receipt of your written request. Also each company with which you have requested an appointment may share the information contained in the investigative report and other information in your file with its affiliates, unless you send a written request to the above-described address directing that this information not be disclosed or shared with affiliates.

Ekberg 000015

 **AMERICAN GENERAL**        **Appointment Application**

AIG Life Brokerage
A division of the American International Companies.®

## Part 12   Upline Data - To be completed by individual recruiting applicant.

Applicant Name: **Kevin Bechtel**     Applicant Social Security Number: **REDACTED**
Please Print

Direct Upline Name: **Gary A Richardson**     Agency Code Number: **3P-261**
Please Print

## Part 13   AGL Commission Section - Must be completed.

Contract Level Requested   ☑ IMO ☐ BGA   ☐ MGA   ☐ MGA 1 ☐ GA   ☐ GA 1 ☐ GA 2 ☐ Agent/Producer

**Commission Level for American General Life**

| Life Products: | | | |
|---|---|---|---|
| | First Year Level: | **5** | *If First Year is selected, Renewal Level must also be indicated.* |
| | Renewal Level | **J** | |
| (HO Approval) | Productivity Bonus Level | **35.5   4 AA** | |

Specialty Products:     First Year/Renewal Level     **E**
(Street Max = J)

AGL Annuity Deferred & Immediate:   First Year/Renewal Level     **5**
A & H:     First Year Level     **5**    *If First Year is selected, Renewal Level must also be indicated.*
    Renewal Level     **J**

## Part 14   Additional Forms Section

Annualization:   Please attach annualization form when requesting annualization. (Available on a limited basis.)

Electronic Funds Transfer (EFT)   Please attach EFT form and a copy of a voided check when requesting to receive commissions electronically.

Appointment, Bonus and Annualization require Home Office Approval.

AGLB1058           5           Rev0406

Ekberg 000016



## AGENCY AGREEMENT

*Each life insurance company's products are separately underwritten and independently supported by the representative company. The below listed companies are members of the American International Group, Inc.*

Life Brokerage Partners LLC.

Last Name **Bechtel**     FOR     First Name **Kevin**     Middle Initial **H**

If Representative is a Corporation, the full Corporate name must appear above, and an authorized officer must sign and indicate the officer's title.

Individual
Social Security Number _____ **REDACTED** _____

Corporation
Tax Identification Number **20-8344089** _____

**Representative**

Signature _____     Title **Owner** _____

**American General Life Companies**

Contract Date _____     _____
To be completed by Home Office     Home Office Authorized Signator

American General Life Insurance Company, Houston, TX
AGLB1056-1105     A division of the American International Companies.®

**WE KNOW LIFE.°**



 **AMERICAN GENERAL**



**Assignment of Commissions**

**American General Life Insurance Company**
*A member company of American International Group, Inc.*
P.O. Box 401 • Milwaukee, WI 53201-0401

Agent Code No. _____

FOR VALUE RECEIVED, the undersigned hereby transfers, sets over and assigns unto _____

_Life Brokerage Partners LLC_____ (TAX ID & SS# _20 - 834489_ )
(an individual), (a corporation), (a partnership), (a sole proprietorship)

of _3982 Tampa Rd Oldsmar FL 34677_____ (address)

an amount equal to _100 %_____ percent of any and all commissions, renewal commissions, allowances and fees which may hereafter accrue in favor of the undersigned by virtue of the agency contract now in force between the undersigned and American General Life Insurance Company, it being understood and agreed that this assignment shall be subject to any present indebtedness or any which may hereafter accrue to be due and owing American General Life Insurance Company.

The undersigned hereby represents and warrants that said commissions and allowances are not now assigned, and the undersigned hereby will forever warrant and defend his right to receive the same, this instrument to remain in full force and effect until same is released by the assignee by an instrument in writing furnished said Insurance Company.

The undersigned hereby authorizes and directs said Insurance Company to pay over any such commissions and allowances to said assignee, subject to the conditions hereof, and it is agreed that any payment so made will be a full and complete discharge of said Insurance Company's obligation to the extent of any payment so made.

IN WITNESS WHEREOF, the undersigned has hereunto set his hand and seal at _Oldsmar, FL_

_____/_____, this ___1st___ day of _March_____, 20 _07_ .

By: _____
    Signature of Assignor

Received and replaced on file this _____day of_____, 20 _____.

AMERICAN GENERAL LIFE INSURANCE COMPANY

By:_____
    President & CEO

1-2033
81601000-1075-0701

REV0104

Ekberg 000018

FLORIDA DEPARTMENT OF FINANCIAL SERVICES
**KEVIN HANS BECHTEL**
**License Number A017162**
IS LICENSED TO TRANSACT THE FOLLOWING CLASSES OF INSURANCE



RESIDENT

The United States Life Insurance Company in the City of New York

# General Agent Agreement

AIG American General

Ekberg 000020

Effective this _____ day of _____ 20_____, between The United States Life Insurance Company in the City of New York ("The Company") and _____ ("The General Agent") whose address is _____.

## 1. APPOINTMENT; AUTHORITY

The Company appoints the General Agent to procure and submit to the Company applications for all types of insurance and annuities issued by the Company.

The General Agent is authorized to appoint Producers provided they are properly licensed by the appropriate insurance regulatory authority. As used herein, Producer shall mean any person who procures, supervises or otherwise participates in the procurement of applications for insurance and annuities for the Company.

## 2. PRODUCERS

a) The General Agent shall submit to the Company a copy of every Contract into which he enters with each Producer he appoints. Such Contracts shall be on forms approved by the Company.

The General Agent shall promptly notify the Company, in writing, upon termination of any Contract with a Producer. The Company reserves the right to require the General Agent to cancel the appointment of any Producer.

b) The General Agent shall be responsible to the Company for the acts of his Producers and his employees, and shall promptly report to the Company, in writing, any known or alleged misappropriation of funds by such Producers or employees regardless of whether such known or alleged misappropriation is with respect to funds of this Company or funds of any other person or company.

c) The Company agrees to be and is hereby authorized and directed by the General Agent to make payment on his behalf following termination of this Agreement to Producers for compensation earned by them pursuant to the terms of the applicable Contract with the General Agent on file with the Company.

## 3. COMPENSATION

The compensation of the General Agent shall be in the form of commissions, bonuses and other allowances, if any, on business written by him and his Producers in accordance with the Schedule of Compensation in effect at the time of application for such business, which current Schedule is made part of this Agreement. The commission schedule may be changed by the Company at any time, with respect to business written thereafter, upon written notice to the General Agent.

## 4. GENERAL PROVISIONS

a) The General Agent agrees to comply with all applicable insurance laws and regulations and with all the published rules, regulations and instructions of the Company now in force and such as may be hereafter adopted.

b) If the Company shall, either during the continuance of this Agreement or after its termination, return the premium on any policy, the General Agent agrees to repay the Company on demand any compensation received by the General Agent on premium so returned.

c) All monies or other property belonging to the Company, while in the custody of the General Agent, shall be held by him in a fiduciary capacity and shall be reported and transmitted to the Company in accordance with its instructions.

d) The General Agent shall maintain accurate records of his transactions on behalf of the Company in a form satisfactory to the Company. Such books and records shall be open for examination by authorized representatives of the Company and shall remain the property of the Company. The General Agent shall return all undelivered policies to the Company for cancellation in accordance with its instructions.

e) The General Agent, his Producers and his employees shall have no authority to make, alter or modify any policy or receipt, nor to waive a forfeiture or any provision or condition of any policy issued by the Company, nor to incur any liability on behalf of or against the Company, except as expressly provided herein or otherwise authorized in writing by the Company. The General Agent is not authorized and agrees not to publish, issue or circulate any advertising material, circular or pamphlet relating to the Company or its products unless the same shall have been approved in writing by an officer of the Company.

f) If any lawsuit shall be brought against the Company in consequence of any unauthorized action or statement of the General Agent, his employees or his Producers, all costs and damages arising therefrom shall be paid by the General Agent.

g) The General Agent agrees to reimburse the Company for any payments made or costs incurred as a result of any claim made by a Producer or an employee of the General Agent against the Company.

h) The Company shall have a prior lien on any and all sums of money due or to become due to the General Agent under this or any prior Agreement with the Company for any indebtedness, obligation or liability of the General Agent to the Company; and the Company may at any time offset against such sums of money the amount of any such indebtedness, obligation or liability.

It is understood that any "advance" or "commission advance" made by the Company to the General Agent shall be a loan which shall create an indebtedness of the General Agent to the Company repayable upon demand. It is further understood that any "advance" or "commission advance" or other loan made by the Company to a Producer of the General Agent shall be a loan which shall create an indebtedness of the Producer to the Company. This indebtedness of the Producer shall become an indebtedness of the General Agent to the Company if the Company is not able to satisfy the indebtedness of the Producer by offset against present or future compensation payable to the Producer by the Company. The Company can require an immediate repayment of any indebtedness regardless of whether or not future compensation payable to the General Agent appears to be adequate to offset such indebtedness.

In the event the Company is required to pursue collection procedures in order to collect any indebtedness, the General Agent agrees to be liable for any and all Company expense so incurred.

i) The General Agent shall pay all expenses incurred by him in the performance of this Agreement.

Ekberg 000021

j) The General Agent may not assign any of his rights or interests hereunder without the written consent of an authorized officer of the Company. Any assignment shall be subject to the right of reduction or set off as provided in paragraph 4(h) above.

k) The failure of the Company to exact strict compliance with the terms of this Agreement, or the failure to declare any default when same shall become known to it, shall not operate as a waiver of such terms nor release the General Agent from his obligation to perform this Agreement strictly in accordance with its terms.

l) The Company reserves the right to discontinue writing all or any part of its business in any jurisdiction upon written notice thereof to the General Agent.

m) It is expressly understood and agreed that this Agreement contains all of the promises, inducements, and representations between the parties. This Agreement cannot be changed by any oral promise or statement. No written modification will bind the Company unless signed by its President.

n) The General Agent agrees to obtain Errors and Omissions coverage in accordance with the rules of the Company now in force and as such may hereafter be adopted.

**5. RELATIONSHIP**

It is understood and agreed that the General Agent shall be considered an independent contractor. As such, the General Agent shall be free to exercise his own independent judgment as to the persons he solicits, the time and place of solicitation and the Producers he appoints. No other provision of this Agreement nor any rule or regulation of the Company shall be construed to abridge this freedom or create the relationship of employer and employee between the Company and the General Agent or between the Company and a Producer or employee of the General Agent.

**6. TERMINATION**

a) The violation by the General Agent of any of the provisions of this Agreement, or, the General Agent's withholding or converting to his own use funds or property of the Company, an applicant or insured, shall constitute an automatic breach of this Agreement, which shall forthwith terminate, and all rights of the General Agent to compensation hereunder or otherwise payable on termination of this Agreement shall be forfeited. It is expressly agreed that prior termination of this Agreement shall not terminate this provision.

b) This Agreement shall automatically terminate upon (i) the death or disability of the General Agent, if the General Agent be an individual, (ii) the dissolution of the partnership, if the General Agent be a partnership, or (iii) the dissolution of the corporation, if the General Agent be a corporation. Disability of the General Agent shall mean the total and permanent disability of the General Agent as evidenced by the receipt of, or qualification for, Social Security disability benefits.

c) This Agreement, unless otherwise terminated as provided above, may be terminated either by the Company or the General Agent by giving the other party thirty days notice in writing at the last known address of such other party.

Termination of this Agreement shall automatically terminate any previous Agreement between the Company and the General Agent.

d) Upon termination, the Company may assign a servicing agency of its choosing in connection with any business written by the General Agent or his producers; however, such assignment will not of itself affect the vesting of existing business.

**7. COMPENSATION AFTER TERMINATION**

If this Agreement be terminated other than as provided in Paragraph 6(a) hereof, the General Agent shall receive compensation with respect to premiums paid to and accepted by the Company on and after the effective date of such termination as follows:

a) On business written by the General Agent and his Producers under this Agreement, the compensation will be as provided in the Schedule of Compensation of this Agreement.

b) On business written by the General Agent and his Producers prior to the date of this Agreement, the compensation will be as provided under the terms of any previous Agreements, except as otherwise provided in the Schedule of Compensation. Any payment becoming due the General Agent under the terms of this Paragraph shall continue to be subject to Paragraph 4(h) hereof.

**8. PRIOR AGREEMENTS**

This Agreement is substituted in place of all prior verbal or written Agreements between the Company and the General Agent and the provisions hereof shall be applicable to all business written by the General Agent and his Producers prior to the Date of this Agreement except as may be otherwise specifically provided herein.

Executed in duplicate by the Company and the General Agent to be effective as of the day and year written above, which is the Date of this Agreement.

The United States Life Insurance Company
in the City of New York

_Kevin Bechtel_
Name of General Agent

_[signature]_

General Agent

By _____

Authorized Officer

_Vanessa V Ra[illegible]_
Witness To General Agent

00860004-1026 Rev0304

Ekberg 000022

**The United States Life Insurance Company in the City of New York**
A member company of American International Group, Inc.
830 Third Avenue, New York, NY 10022

**AMENDMENT TO GENERAL AGENT AGREEMENT**

THIS AMENDMENT, effective the __1st__ day of __March__ , __07__ , made by and between
YEAR
The United States Life Insurance Company in the City of New York (hereinafter called the Company) and
__Kevin Bechtel__ (hereinafter called the
General Agent) hereby amends and is attached to and forms a part of General Agent Agreement, dated
____, as follows:

Section 1. of the Schedule of Compensation is hereby modified as follows:

Until ____, the expense allowance payment provided in Section 1. shall be considered compensation for agency development. The payment of such additional compensation does not require vouchers evidencing expenses but is paid subject to New York Insurance Law Section 4228(e)(4) and will not be used in any way to pay renewal commissions to Producers at rates higher than specified in Section 1. No additional compensation will be payable after the termination of the General Agent Agreement, for any reason whatsoever, on or before
____.

It is further understood and agreed that this Amendment does not alter, amend or modify said General Agent Agreement, other than as herein set forth, and is subject otherwise to all the terms and conditions of said General Agent Agreement.

Executed this _____ day of ____, _____.
YEAR

The United States Life Insurance Company
in the City of New York

__Kevin Bechtel__
Name of General Agent

____
General Agent                                    By ____
Authorized Officer

00850004-1097                                                                RevO605

Ekberg 000023

**The United States Life Insurance Company in the City of New York**
*A member company of American International Group, Inc.*

**ASSIGNMENT OF COMMISSIONS**

In consideration of one dollar the receipt of which is hereby acknowledged _Kevin Bechtel_
_____ (hereinafter called Assignor), hereby assign(s), transfer(s), releases(s) and set(s) unto
_Life Brokerage Partners LLC_(hereinafter called Assignee), present forwarding address _3882 Tampa_
_Rd Oldsmar FL 34677_____, (his, their, its) heirs, executors, administrators, successors
and assigns, all of Assignor's right, title, interest, claim and demand, in and to_____
commissions which may now be payable, or may hereafter become due and payable under the terms of the agreement between
Assignor and_____.
General Agent of The United States Life Insurance Company in the City of New York,

And Assignor hereby give(s) unto Assignee (his, their, its) heirs, executors, administrators, successors and assigns, full
power and authority for Assignee's own use and benefit, to ask, demand or collect all commissions assigned herein and
to receipt therefor as fully as Assignor might or could if the said commissions were paid to Assignor.

Further, Assignor hereby certifies that this assignment is being made

      ☑ Because Assignee will service the policies herein described.
      ☐ To satisfy an indebtedness.

Executed this____1st____ day of _March_ _____ _07_
                                                            YEAR

Witness _Vonune V Malle_       _____  3·1·07
                                           SIGNATURE OF ASSIGNOR       DATE

Witness _Vans___       _____  3·1·07
                                           SIGNATURE OF ASSIGNEE       DATE

Approved by: _____
                           AUTHORIZED SIGNATURE OF GENERAL AGENT

This Assignment is a direction to pay someone other than the Assignor. It does not affect the General Agent Agreement
between the Company and the General Agent. This Assignment is received and recorded subject to any and all prior
Assignments of record and to the Company's and the General Agent's right of offset as provided in the agreement
between the Assignor and the General Agent. The Company assumes no responsibility as to the validity or effect of this
Assignment.

Dated:

                                       The United States Life Insurance Company
                                       in the City of New York

                                       _____

The United States Life Insurance Company in the City of New York



AIG American General

Ekberg 000025

The United States Life Insurance Company in the City of New York
AIG American General
**PRODUCER'S CONTRACT**

THIS CONTRACT is made this _____ day of _____,

by and between _____ General Agent of The United States Life

Insurance Company in the City of New York and _____
(hereinafter called "The Producer")

## 1. AUTHORITY

a) The General Agent appoints the Producer to solicit and procure applications for all types of insurance and annuities issued by the Company subject to the terms, conditions, and limitations set forth herein.

b) The Producer shall be free to exercise his own judgment as to the persons whom he will solicit and the time and place of such solicitations but shall comply with and be bound by the rules of the Company not interfering with such freedom of action of the Producer. Nothing contained herein shall be construed to create the relationship of employer and employee between the Company or the General Agent and the Producer.

c) The Producer has no authority to do and agrees not to do or attempt to do the following: (1) to make, alter or discharge any contract, policy or receipt, nor to waive any forfeiture provisions or condition thereof; (2) to receive any monies on behalf of the Company except initial premiums and then only upon strict compliance with the terms and conditions of the receipts, policies or contracts issued by the Company and with the rules of the Company; (3) to rebate or offer to rebate any part of a premium; (4) to issue or circulate any advertising material, circular or pamphlet relating to the Company unless the same shall have been authorized and approved in writing by the Company; (5) to make any misrepresentation or incomplete comparison for the purpose of inducing a policyholder in this or any other company to convert, lapse, forfeit or surrender his insurance therein; (6) to bind or obligate the Company or subject the Company to any liability unless specifically authorized in writing by the Company; (7) to endorse any checks payable to the General Agent or the Company.

## 2. COMPENSATION

a) The General Agent agrees to pay to the Producer the commissions shown in the Commission Schedule in effect at the time of application for the policies, a copy of which is attached hereto, in accordance with the Company's rules and subject to the terms and conditions of this Contract, on premiums covering insurance policies hereafter issued by the Company on applications submitted by the Producer through the General Agent, when and as such premiums are paid to and accepted by the Company.

b) The Producer shall have no claim for commissions on any business unless the Producer actually solicited the application and his name appears thereon as Agent. It is agreed that the Producer shall have no claim against the Company for commissions under this Contract except as provided under the terms of the Agreement of the Company annexed hereto.

c) The Commission Schedule may be changed at any time, with respect to business written thereafter, upon written notice from the General Agent to the Producer.

d) Any monies due the Producer hereunder shall be subject to reduction or offset for any indebtedness of the Producer to the General Agent or the Company.

e) If the Company shall, either during the continuance of the Contract or after its termination, return the premium on any policy for any reason, the Producer agrees to repay all commissions received on premiums so returned to the General Agent or the Company upon demand.

f) If any policy shall terminate for non-payment of premium and be reinstated subsequently, the Producer shall not be entitled to any further commissions on such policy unless it is reinstated by the Producer himself during the continuance of this Contract.

## 3. GENERAL PROVISIONS

a) The Producer agrees to comply with all applicable insurance laws and regulations and with all the published rules, regulations and instructions of the Company now in force and such as may hereafter be adopted.

b) The Producer specifically agrees to indemnify and to save the General Agent and the Company harmless against or from liability of any type for judgments, litigation costs, damages, attorney's fees, fines, penalties or other losses or expenses incurred by the General Agent or Company resulting from or growing out of any unauthorized act by the Producer, the Producer's employees or representatives.

c) The Producer shall maintain in good order the records and accounts of business transacted on behalf of the Company for inspection by, or delivery to the General Agent or the Company upon request.

d) No assignment of the commissions or other rights accruing under this Contract shall be binding upon the General Agent or the Company unless consented to in writing by the General Agent and the Company; any such assignment shall be subject to the right of reduction or setoff as provided in paragraph 2(d) above.

e) If, subject to the written consent of the Company, the Agreement between the General Agent and the Company is assigned to a successor General Agent, the successor General Agent shall be substituted for and in the place of the General Agent under this Contract and shall assume all liability for payment of the commissions hereunder and such payment shall release the General Agent named herein from any and all liability therefor.

f) All premiums received by the Producer for the Company shall be immediately paid over to the General Agent.

g) This Contract shall supersede any and all previous agreements between the General Agent and the Producer with respect to any individual life insurance policies, group policies, and annuity contracts written after the date of this Contract.

h) The failure of the General Agent to enact strict compliance with the terms of this Contract or the failure to declare any default when the same shall become known to the General Agent, shall not operate as a waiver of such conditions nor release the Producer from his obligation to perform this Contract strictly in accordance with its terms.

i) The Company reserves the right to discontinue writing all or any part of its business in any jurisdiction upon written notice thereof by the General Agent to the Producer and neither the Company nor the General Agent shall incur liability to the Producer by reason of the Company doing so.

Ekberg 000026

## 4) TERMINATION

a) Any violation of any sections of paragraphs 1(c) or 3(f) of this Contract, or, the Producer's withholding or converting to his own use funds or property of the General Agent or the Company, an applicant, or insured, shall effect an immediate termination of this Contract and a forfeiture of any and all commissions and other rights which would otherwise accrue to the Producer. It is expressly agreed that prior termination of this Contract shall not terminate this provision.

b) This Contract shall automatically terminate upon (i) the death of the Producer, if the Producer be an individual (ii) the dissolution of the partnership, if the Producer be a partnership, or (iii) the dissolution of the corporation, if the Producer be a corporation.

c) This Contract, unless otherwise terminated as provided in sections 4(a) or 4(b) above, may be immediately terminated by either the General Agent or the Producer upon the mailing of written notice to the other party at the last known address of such other party.

## 5) SPECIFIC PROVISIONS - INDIVIDUAL INSURANCE

a) No commissions will be allowed on premiums waived on account of total and permanent disability of the insured.

b) If a policy is changed or converted to a new policy or if a new policy is issued and a previously existing policy on the same life is terminated within six months before or after the issue of the new policy, the commissions payable on the new policy shall be determined by the rules of the Company current at the time of such change, conversion or new business.

c) If this Contract be terminated other than as provided in paragraph 4(a) hereof, the Producer shall receive commissions as provided in the Commissions Schedule with respect to premium paid to and accepted by the Company on and after the date of such termination subject to all rules of Paragraph 2 of this Contract.

## 6) SPECIFIC PROVISIONS - GROUP INSURANCE

a) The first year commission rate shall apply to premiums for each policy covering the period of one year (or any part thereof) from the effective date of each policy; the renewal commission rate shall apply to premiums for each policy year thereafter so long as the Producer is legally authorized to solicit such insurance by the insurance department having jurisdiction over the policies.

b) Renewal commissions will continue to be paid so long as the Producer (1) is legally authorized to solicit such insurance by the insurance department having jurisdiction over the policies; (2) is continuously and actively engaged as an Agent, Broker, or Producer in the insurance business; (3) is recognized by the policyholder as Agent, Broker or Producer of record; (4) services the policies covered by this Contract in a manner satisfactory to the Company; and (5) this Contract remains in force.

c) In the event of the extension of any of the policies to cover persons not included on the effective date of the policy or in the event the existing policy is revised to increase the schedule of insurance or add a new benefit for those already insured, this Producer Contract shall not apply to premiums for such additional insurance but commissions shall be paid in accordance with the rules of the Company existing on the date of the extension or addition.

d) Commission adjustments will be made at the end of each premium paying period. Except as provided in the preceding paragraph, if the original premium for any premium paying period has been increased by net adjustments during said period, additional commission will be allowed upon the net increase; if it has been decreased, a refund of commission must be made by the Producer and such refund commission

shall be a first charge against any commissions accrued or to accrue under any insurance policy in the Company and may be deducted therefrom.

## 7) AGREEMENT OF THE COMPANY

THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK hereby agrees that, in the event the Agreement between the General Agent and the Company is terminated,

a) it will pay directly to the Producer the commissions which may thereafter become due and payable to the Producer under this Producer's Contract;  b) the Producer without further action or notice, may continue to submit applications for policies and contracts issued by the Company directly to the Company or such representative as may be designated by the Company to receive them until this Producer's Contract shall be otherwise terminated; c) unless this Producer's Contract is terminated as provided in paragraphs 4(a) or 4(b) or by either the Producer or the Company giving written notice of termination to the other party, it shall continue in force as between the Company and the Producer the same terms and conditions as set forth in the Contract.

## CONTINUING SERVICE FEE AGREEMENT - INDIVIDUAL LIFE INSURANCE

This Agreement, effective the same date of the Producer's Contract is between the Producer and THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK (hereafter called "The Company")

Subject to the terms and conditions herein provided, the Company will pay to the Producer, a Service Fee on business written by the Producer and issued by the Company.

1. Service Fee.  In order to qualify for the Service Fee, the Producer must have completed the Basic Qualification hereafter described. The Service Fee will be paid during the calendar year immediately following the calendar year in which the Basic Qualification has been completed and in  any calendar year thereof which is immediately preceded by a calendar year in which the Producer has earned at least $1200.00 of the first year commissions.  If, however, the Producer be an individual and completes the Basic Qualification, then beginning on his retirement date, hereinafter defined, the Service Fee will be paid each calendar year thereafter so long as the Producer shall live. The retirement date of an individual shall be the first day of January of the earliest calendar year (1) following his 65th birthday and (2) immediately preceded by seven calendar years in which the Producer has earned not less than $1200.00 first year commissions in each of four thereof.

The Service Fee shall be payable only on individual life insurance policies and annuity contracts having issue dates on or after the beginning of the first calendar year which is credited to the Basic Qualification, issued by the Company on applications solicited by the Producer and on which his name appears as Agent.  The Service Fee shall be equal to 2% of the premiums accruing on such policies and contracts after the tenth policy or contract year thereof as shall be paid to and accepted by the Company during any calendar year in which the Service Fee is payable.

00860004-1037 Rev0304

Ekberg 000027

**2. Basic Qualification.** In order to qualify for the Service Fee, the Producer must have earned first year commissions on business written for the Company of at least $600.00 in each calendar year for two calendar years followed by first year commissions of at least $1200.00 in each calendar year for any succeeding calendar years. PROVIDED, HOW-EVER, that if the Producer fails to earn at least $600.00 of first year commissions in each calendar year for any two consecutive calendar years, he shall not receive any credit toward his Basic Qualification for any calendar year prior thereto. Only calendar years after the effective date of this Agreement shall be credited toward the Basic Qualification.

**3. Disability.** If, in the sole judgment of the Company, the Producer is totally disabled for a period of 60 days or more in any calendar year, the requirement for qualification in such calendar year may be reduced proportionately.

**4. First Year Commissions.** For the purpose of this Agreement first year commissions shall mean first year commissions earned by the Producer on first year premiums on individual life insurance policies and annuity contracts issued by the Company on applications solicited by the Producer and on which his name appears as Agent. For the purpose of this Agreement first year commissions shall be earned when such first year premiums are actually due and paid to and accepted by the Company.  The Company's determination of first year commissions which are to be taken into account for the purpose of this Agreement shall be final and binding upon the Producer.

**5. Payment of Service Fee.** Any Service Fee accruing hereunder shall be paid quarterly unless the Company elects to pay on some other basis but in no event less frequently than annually.

**6. Termination of Service Fee.** Accrual of all Service Fees shall cease upon termination of the Producer's contract. Any such termination shall not affect the payment of any Service Fees which have accrued prior thereto, unless termination has been in accordance with section 4(a) of the Producer's Contract.

**7. Nonassignability.**  The Producer may not assign this Agreement or any right or interest which may accrue to him hereunder, it being an express condition of this Agreement that it shall not be subject to assignment.

**8. Independent Agreement.**  This Agreement shall be deemed separate and independent from any General Agent, District Agent, Producer, Agent or Broker Agreement between the Producer and the Company or any General Agent or District Agent of the Company and shall not affect, modify or limit in any way the rights or obligations of the respective parties under such General Agent, District Agent, Producer, Agent or Broker Agreement.

**9. Relationship.**  Nothing contained herein shall be construed to create relationship of employer and employee between the Company and the Producer, it being understood that the Producer is not obligated hereunder to solicit applications on behalf of the Company, and that he shall be free to exercise his own judgment as to the persons whom he will solicit and the time and place of such solicitations.

**10. Modification or Termination of Agreement.**  The Company reserves the right to change, modify or terminate this Agreement upon prior written notice to the last known address of the Producer provided, however, that no such change, modification or termination shall affect the Producer's rights hereunder which have accrued prior to the effective date of such change, modification or termination.

IN WITNESS WHEREOF, the parties hereto have duly executed the foregoing Producer's Contract and Continuing Service Fee Agreement on the day and year written above.

Signature of General Agent as party to the Producer's Contract

_____
_GENERAL AGENT_

Signature of Producer as party to both the Producer's Contract and Continuing Service Fee Agreement

_____
_PRODUCER_

Signature of Individual authorized on behalf of Company for the Agreement of the Company annexed to the Producer's Contract and as a party to the Continuing Service Fee Agreement.

The United States Life Insurance Company
In the City of New York

_____
_AUTHORIZED SIGNATURE_

830 Third Avenue
New York, NY 10022
(212) 709-6000

The United States Life Insurance Company
in the City of New York

00850004-1037 Rev0304

AIG American General

Ekberg 000028