# Exhibit K

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
CASE NO.: 8:15-cv-00192-EAK-AEP


AMERICAN GENERAL LIFE INSURANCE COMPANY,

            Plaintiff,

VS.

KEVIN H. BECHTEL, et al,

            Defendants.

---

DEPOSITION OF:            GARY RICHARDSON

TAKEN BY:                 DAVID DONAHUE, ESQUIRE

TAKEN:                    January 19, 2017

TIME:                     9:30 a.m. - 12:00 p.m.

PLACE:                    Verbatim Professional Reporters
                          2202 N. Westshore Boulevard
                          Suite 200
                          Tampa, FL 33607

REPORTED BY:              CHARLENE M. EANNEL, RPR
                          Court Reporter, Notary Public

                          PAGES 1 - 94


VERBATIM PROFESSIONAL REPORTERS, INC.
601 CLEVELAND STREET, SUITE 380
CLEARWATER, FL 33755
(727)442-7288

**Gary Richardson**

| | |
|---|---|
| From: | john ekberg [john_fienergy@bellsouth.net] |
| Sent: | Wednesday, January 16, 2008 2:59 PM |
| To: | Gary Richardson |
| Cc: | HEUMAN, BOB |
| Subject: | 2008 AIG Bonus Compensation |
| Attachments: | AIG Stand Alone Authorization.pdf; AIGLBG 2008 Bonus Schedules.pdf |

I have absolutely terrific news!. Because of our long, happy and successful tenure with AIGLBG we have received an exemption to be considered a **"Stand Alone"** entity. As you can see from the Stand Alone and the NMO Bonus Structures that were introduced in December, there is quite an advantage to being considered Stand Alone. For example, at your 5 million bonus level which Dennis and I have requested for your MO contract, the Stand Alone production bonus for traditional products is 37.00% versus the 34.00% paid to an IMO/MO in the NMO structure.

I know you will put this additional 3.00% to good use!.

As you can see from the email authorizing our **"Stand Alone"** status, this applies to you and the existing people (Kevin, Burt, etc.) that we have contracted now. New IMOs will be given the production bonus from the NMO schedule and your bonus for those entities will also be paid on the NMO bonus structure. So, it may be useful to make some smaller entities MGAs under the current contract......but you always have the option of hiring new IMOs with the NMO bonus structure.

Please review all of your downline currently receiving production bonus from the Home Office and tell me what level you want them on for 2008:

Life Brokerage Partners, LLC # 3P263 (Was 4 million in 07. Earned the 3 million level).
Burt Snover # 3Y869 (Was 350K level. Paid for 535K)   **34%**
Pro Integrity Ins. Agcy, Inc. # OVQ92 (Was at 100K "D" level) ~~same~~
Tim Kelly # 4C834 (Was at 100K "F" level)   ~~34%~~ same
Robert Willey # 0NV59 (Was 100K "D" level)   same
Thomas Maquire # 0ZP36 (Was 100K "D" level).   same

D = 8%
F = 13%

Broker Dealer Services, Inc. # 3SZ28 (Was 600K. Paid for 51K in '07).

This great news coupled with the restoration of the 5 points for Select-A-Term base commissions puts us in a wonderful position for 2008 and beyond.

Please give me your 2008 bonus levels as soon as possible. Thank you!

John Ekberg (888) 568-3344



1

## john ekberg

| | |
|---|---|
| From: | <Pat_Russo@aigag.com> |
| To: | <john_fienergy@bellsouth.net> |
| Cc: | <Dennis_Monroe@aigag.com>; "Financial Energy Ins. Group" <fienergy@bellsouth.net>; <Patti_Newall@aigag.com>; <Paul_Hoecker@aigag.com> |
| Sent: | Wednesday, January 16, 2008 1:45 PM |
| Attach: | LifeBonus Standalone Packet 01-2008.pdf |
| Subject: | Bonus Grid - Need Response From Ekberg |

Sorry for the delay in responding John but Dennis is on a plane as we speak
and I wanted to talk to Lori Payne before I got back to you. I just wanted
to be sure that I gave you the correct information so here's the scoop!

It has been decided by the powers that be that your NMO Contract be
considered a "Stand Alone Account" therefore the Stand Alone bonus levels
apply. It is important however that you understand that the bonus levels
only apply to your existing MO and IMO hierarchies. In other words, your
NMO contract is "grandfathered" as a Stand Alone Account. Should you
contract a new IMO or MO, then at that time, you will be assigned a new NMO
code number and new IMOs and MOs will fall under the "National Account"
guidelines and bonus structure.
(See attached file: LifeBonus Standalone Packet 01-2008.pdf)


Pat Russo
AIG/American General
Southeast Regional Office Marketing Coordinator

(800) 787-9937, ext. 6324
(214) 654-6326 fax
pat_russo@aigag.com

Check out our website with up to date status & messaging
system@http://www.aiglifebrokerage.com


            "john ekberg"
            <john_fienergy@bel      To:     <Dennis_Monroe@aigag.com>,
<Pat_Russo@aigag.com>
            lsouth.net>             cc:     "Financial Energy Ins. Group"
<fienergy@bellsouth.net>,
                                            <Patti_Newall@aigag.com>
            01/16/2008 10:12        Subject: Re: Bonus Grid - Need Response From
Ekberg
            AM


Sorry Dennis, Pat and Patti.......I am so confused. In order for me to

Effective January 2008

**AIG** AMERICAN GENERAL

Distributing products issued by:
American General Life Insurance Company
A member of American International Group, Inc.

# LIFE PORTFOLIO
# PRODUCTIVITY BONUS
## STANDALONE SUMMARY

Following is a summary of First-Year Annualized Bonus for
American General Life Products. [1]

| STANDALONE PRODUCTIVITY BONUS LEVEL [2] | LIFE PORTFOLIO | | | |
|---|---|---|---|---|
| | All Term, Elite ULs & ContinULs | | Platinum ULs | |
| Paid Annualized First-Year Premium | 2007 | 2008 | 2007 | 2008 |
| $ 100,000/3% | 3.00 | no change | 2.00 | no change |
| $ 100,000/5% | new level | 5.00 | new level | 2.00 |
| $ 100,000/6% | 3.00 | no change | 3.00 | no change |
| $ 100,000/10% | new level | 10.00 | new level | 3.00 |
| $ 100,000/13% | 13.00 | no change | 4.00 | no change |
| $ 150,000 | 16.00 | no change | 4.00 | no change |
| $ 250,000 | 17.00 | no change | 5.00 | no change |
| $ 350,000 | 18.00 | no change | 6.00 | no change |
| $ 400,000 | 20.00 | no change | 7.00 | no change |
| $ 500,000 | 22.00 | no change | 8.00 | no change |
| $ 600,000 | 25.00 | no change | 9.00 | no change |
| $ 700,000 | 26.00 | no change | 10.00 | no change |
| $ 800,000 | 28.00 | no change | 11.00 | no change |
| $ 900,000 | 29.00 | no change | 12.00 | no change |
| $ 1,000,000 | 30.00 | no change | 13.00 | no change |
| $ 1,250,000 | 31.00 | no change | 14.00 | no change |
| $ 1,500,000 | 32.00 | no change | 15.00 | no change |
| $ 1,750,000 | 33.00 | no change | 16.00 | no change |
| $ 2,000,000 | 34.00 | no change | 17.00 | no change |
| $ 3,000,000 | 35.00 | no change | 18.00 | no change |
| $ 4,000,000 | 35.50 | 36.00 | 19.00 | 19.00 |
| $ 6,000,000 | 36.00 | 37.00 | 20.00 | 20.00 |
| $ 6,500,000 | | | | |
| $ 7,000,000 | 37.00 | 38.00 | 22.00 | 21.00 |
| $ 8,000,000 | 37.50 | 39.00 | 22.50 | 22.00 |
| $ 9,000,000 | | | | |
| $ 10,000,000 | 38.50 | 40.00 | 23.50 | 23.00 |
| $ 15,000,000 | 39.00 | 41.00 | 24.00 | 24.00 |
| $ 20,000,000 | 39.50 | 42.00 | 24.50 | 25.00 |
| $ 25,000,000 | | | | |

(1) First Year Annualized Bonus: The productivity bonus is paid as a percentage of
commissionable policy premium and is annualized.

(2) The Productivity Bonus is paid based on Representative's actual production. If this
production does not meet required levels, the Productivity Bonus may be reduced or
removed. American General Life Insurance Company will be the sole authority in determining
production amounts and the Productivity Bonus paid, and reserves all rights with regard to
the Productivity Bonus program, including termination and/or modification of the program at
any time without notice.

Bonus is not available on VUL, Annuities, A&H and products on Specialty Schedules.

AGLB-SBLP-PB - Rev 01-2008
©2008 American International Group, Inc.
All rights reserved

This summary is subject to change at any time.



AIG Life Brokerage

Distributing products issued by:
American General Life Insurance Company
AIG Life Brokerage is a division of the
American International Companies.®
Member of American International Group, Inc.

Effective January 2004

## AIG LIFE BROKERAGE
# SUPPLEMENTAL LIFE PRODUCTS
# FIRST YEAR/RENEWAL/EXCESS
## IMO/BGA SUMMARY

This is a summary of available commissions. The actual commission schedule will govern in
the event of any conflict between this summary and the applicable schedule.
Pick one schedule for Supplemental Business. Choice applies to both First Year and
renewal commissions.

| PRODUCT PORTFOLIO | FIRST-YEAR, RENEWAL & EXCESS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | $10M Level | | $5M Level | | $5M Level | | $2M Level | | $2M Level | |
| | S | | A | | B | | C | | D | |
| American General Life[2] | First Year | R & E* | First Year | R & E* | First Year | R & E* | First Year | R & E* | First Year | R & E* |
| Platinum Provider Ultra | 117 | 4.00 | 114.5 | 4.00 | | | 112 | 4.00 | | |
| Platinum Provider Ultra G | 117 | 4.00 | 114.5 | 4.00 | | | 112 | 4.00 | | |
| Platinum Protector G | 117 | 0/2.00 | 114.5 | 0/2.00 | | | 112 | 0/2.00 | | |
| Platinum Accumulator [3] | 107 | 4.00 | 104.5 | 4.00 | | | 102 | 4.00 | | |
| Platinum Survivor Ultra | 112 | 4.00 | 109.5 | 4.00 | | | 107 | 4.00 | | |
| Platinum Survivor Ultra G | 112 | 4.00 | 109.5 | 4.00 | | | 107 | 4.00 | | |
| Platinum Protector Survivor G | 104 | 0/3.00 | 103.0 | 0/3.00 | | | 102 | 0/3.00 | | |
| Platinum Provider Ultra 500 | 117 | 4.00 | 114.5 | 4.00 | | | 112 | 4.00 | | |
| Platinum Accumulator 500 [3] | 107 | 4.00 | 104.5 | 4.00 | | | 102 | 4.00 | | |
| Platinum Survivor Ultra 500 | 112 | 4.00 | 109.5 | 4.00 | | | 107 | 4.00 | | |

| PRODUCT PORTFOLIO | FIRST-YEAR, RENEWAL & EXCESS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | IMO/BGA Entry Level | | $100,000 | | | | | | |
| | E | | F | | G | | H | | I | |
| American General Life[2] | First Year | R & E* | First Year | R & E* | First Year | R & E* | First Year | R & E* | First Year | R & E* |
| Platinum Provider Ultra | 110 | 4.00 | | | 105 | 2.75 | 100 | 2.50 | 95 | 2.25 |
| Platinum Provider Ultra G | 110 | 4.00 | | | 105 | 2.75 | 100 | 2.50 | 95 | 2.25 |
| Platinum Protector G | 110 | 0/2.00 | | | 105 | 0/1.75 | 100 | 0/1.50 | 95 | 0/1.50 |
| Platinum Accumulator [3] | 100 | 4.00 | | | 95 | 2.75 | 90 | 2.50 | 85 | 2.25 |
| Platinum Survivor Ultra | 100 | 4.00 | | | 95 | 2.75 | 90 | 2.50 | 85 | 2.25 |
| Platinum Survivor Ultra G | 100 | 4.00 | | | 95 | 2.75 | 90 | 2.50 | 85 | 2.25 |
| Platinum Protector Survivor G | 100 | 0/3.00 | | | 95 | 0/2.60 | 90 | 0/2.40 | 85 | 0/2.20 |
| Platinum Provider Ultra 500 | 110 | 4.00 | | | 105 | 2.75 | 100 | 2.50 | 95 | 2.25 |
| Platinum Accumulator 500 [3] | 100 | 4.00 | | | 95 | 2.75 | 90 | 2.50 | 85 | 2.25 |
| Platinum Survivor Ultra 500 | 100 | 4.00 | | | 95 | 2.75 | 90 | 2.50 | 85 | 2.25 |

* Renewal and Excess

(1) For Supplemental Life business select one schedule to pay First Year Base Renewals and Excess.
Schedules S thru I need home office approval.

(2) AGL pays no commissions on aviation extra premiums or any temporary extra premiums of seven years
duration or less. For table ratings above Table 6, first year commissions are paid on the basis of
Table 6 premiums.

(3) Commission reductions apply to Platinum Accumulator and Platinum Accumulator 500 for insureds
over issue age 65.

ANGLB-SSup1 - Rev 02-2005
©2004 American International Group, Inc.
All rights reserved

Effective January 2004

 **AMERICAN GENERAL**

AIG Life Brokerage

Distributing products issued by:
American General Life Insurance Company
AIG Life Brokerage is a division of the
American International Companies.®
Member of American International Group, Inc.

# AIG LIFE BROKERAGE
## SUPPLEMENTAL LIFE PRODUCTS
## FIRST YEAR/RENEWAL/EXCESS
## IMO/BGA SUMMARY

This is a summary of available commissions. The actual commission schedule will govern in
the event of any conflict between this summary and the applicable schedule.
Pick one schedule for Supplemental Business. Choice applies to both First Year and
renewal commissions.

| PRODUCT PORTFOLIO | FIRST-YEAR, RENEWAL & EXCESS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **American General Life[2]** | Agent[4] Street Max | | | | | | | | | |
| | J | | K | | L | | M | | N | |
| | First Year | R & E* | First Year | R & E* | First Year | R & E* | First Year | R & E* | First Year | R & E* |
| Platinum Provider Ultra | 90 | 2.00 | 85 | 1.75 | 80 | 1.50 | 75 | 1.25 | 70 | 1.00 |
| Platinum Provider Ultra G | 90 | 2.00 | 85 | 1.75 | 80 | 1.50 | 75 | 1.25 | 70 | 1.00 |
| Platinum Protector G | 90 | 0/1.50 | 85 | 0/1.25 | 80 | 0/1.00 | 75 | 0/1.00 | 70 | 0/1.00 |
| Platinum Accumulator [3] | 80 | 2.00 | 75 | 1.75 | 70 | 1.50 | 65 | 1.25 | 60 | 1.00 |
| Platinum Survivor Ultra | 80 | 2.00 | 75 | 1.75 | 70 | 1.50 | 65 | 1.25 | 60 | 1.00 |
| Platinum Survivor Ultra G | 80 | 2.00 | 75 | 1.75 | 70 | 1.50 | 65 | 1.25 | 60 | 1.00 |
| Platinum Protector Survivor G | 80 | 0/2.00 | 75 | 0/1.75 | 70 | 0/1.50 | 65 | 0/1.25 | 60 | 0/1.00 |
| Platinum Provider Ultra 500 | 90 | 2.00 | 85 | 1.75 | 80 | 1.50 | 75 | 1.25 | 70 | 1.00 |
| Platinum Accumulator 500 [3] | 80 | 2.00 | 75 | 1.75 | 70 | 1.50 | 65 | 1.25 | 60 | 1.00 |
| Platinum Survivor Ultra 500 | 80 | 2.00 | 75 | 1.75 | 70 | 1.50 | 65 | 1.25 | 60 | 1.00 |

| PRODUCT PORTFOLIO | FIRST-YEAR, RENEWAL & EXCESS | | | | | |
|---|---|---|---|---|---|---|
| **American General Life[2]** | P | | Q | | T | |
| | First Year | R & E* | First Year | R & E* | First Year | R & E* |
| Platinum Provider Ultra | 65 | 0.00 | 60 | 0.00 | 55 | 0.00 |
| Platinum Provider Ultra G | 65 | 0.00 | 60 | 0.00 | 55 | 0.00 |
| Platinum Protector G | 65 | 0.00 | 60 | 0.00 | 55 | 0.00 |
| Platinum Accumulator [3] | 55 | 0.00 | 50 | 0.00 | 45 | 0.00 |
| Platinum Survivor Ultra | 55 | 0.00 | 50 | 0.00 | 45 | 0.00 |
| Platinum Survivor Ultra G | 55 | 0.00 | 50 | 0.00 | 45 | 0.00 |
| Platinum Protector Survivor G | 55 | 0.00 | 50 | 0.00 | 45 | 0.00 |
| Platinum Provider Ultra 500 | 65 | 0.00 | 60 | 0.00 | 55 | 0.00 |
| Platinum Accumulator 500 [3] | 55 | 0.00 | 50 | 0.00 | 45 | 0.00 |
| Platinum Survivor Ultra 500 | 55 | 0.00 | 50 | 0.00 | 45 | 0.00 |

\* Renewal and Excess

(1) For Supplemental Life business select one schedule to pay First Year Base Renewals and Excess.
Schedules S thru I need home office approval.

(2) AGL pays no commissions on aviation extra premiums or any temporary extra premiums of seven years
duration or less. For table ratings above Table 6, first year commissions are paid on the basis of
Table 6 premiums.

(3) Commission reductions apply to Platinum Accumulator and Platinum Accumulator 500 for insureds
over issue age 65.

(4) Agent = MGA, GA or Producer, Street Max = J

AIGLD-SSup2 - Rev 02-2005
©2004 American International Group, Inc.
All rights reserved

Effective May 2004



AIG Life Brokerage

Distributing products issued by:
American General Life Insurance Company
AIG Life Brokerage is a division of the
American International Companies.®
Member of American International Group, Inc.

# AIG LIFE BROKERAGE
## BROKERAGE LIFE PORTFOLIO
## FIRST YEAR COMMISSIONS
### IMO/BGA SUMMARY

This is a summary of available commissions. The actual commission schedule will govern in the event of any conflict between this summary and the applicable schedule.
For Brokerage Life Portfolio, select 3 schedules for (1) First Year Base, (2) Renewals/Excess Over Target and (3) First Year Bonus.

| PRODUCT PORTFOLIO | | AGENT FIRST-YEAR COMMISSIONS [1] | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| American General Life [2] | | S | A | B | C | D | E | F | G |
| ContinUL - Eff 6/15 | UL | 90 | 85 | 80 | 75 | 70 | 65 | 60 | 55 |
| Elite UL G | UL | 90 | 85 | 80 | 75 | 70 | 65 | 60 | 55 |
| Elite UL | UL | 90 | 85 | 80 | 75 | 70 | 65 | 60 | 55 |
| Elite Survivor G | 2nd/Die UL | 80 | 75 | 70 | 65 | 60 | 55 | 50 | 45 |
| Elite Survivor | 2nd/Die UL | 80 | 75 | 70 | 65 | 60 | 55 | 50 | 45 |
| Elite Indexed UL | Indexed UL | 90 | 85 | 80 | 75 | 70 | 65 | 60 | 55 |
| LTG Ultra-30 [3] / LTG Ultra C-30 | Level Term | 105 | 100 | 95 | 90 | 85 | 80 | 75 | 70 |
| LTG Ultra-20 [3] / LTG Ultra C-20 | Level Term | 105 | 100 | 95 | 90 | 85 | 80 | 75 | 70 |
| LTG Ultra-15 [3] / LTG Ultra C-15 | Level Term | 95 | 90 | 85 | 80 | 75 | 70 | 65 | 60 |
| LTG Ultra-10 [3] / LTG Ultra C-10 | Level Term | 75 | 70 | 65 | 60 | 55 | 50 | 45 | 40 |
| ROP Term 30, 20, 15 | Level Term | 95 | 90 | 85 | 80 | 75 | 70 | 65 | 60 |

(1) "Agent" = MGA, GA or Producer

(2) AGL pays no commissions on aviation extra premiums or any temporary extra premiums of seven years durations or less. For table ratings above Table 6, first year commissions are paid on the basis of Table 6 premiums.

(3) No first-year base, renewal or bonus paid on policy fee.

For VUL compensation consult your Broker Dealer

Platinum VM5+, Supplemental products, and A & H products have separate compensation schedules, consult your regional office.

Agent Street Max = S

AIGLB-5BLP-FY - Rev 02-2005
©2004 American International Group, Inc.
All rights reserved

This summary outlines commission information for products issued by various issuing companies. Agents and their uplines must be appointed with each respective legal entity to sell its products. This summary is subject to change at any time.



AIG Life Brokerage

Distributing products issued by:
American General Life Insurance Company
AIG Life Brokerage is a division of the
American International Companies.©
Member of American International Group, Inc.

Effective January 2004

## AIG LIFE BROKERAGE
# BROKERAGE LIFE PORTFOLIO
# PRODUCTIVITY BONUS LEVELS
## IMO/BGA SUMMARY

Following is a summary of First-Year Annualized Bonus for
American General Life Products.[4]

| PRODUCTIVITY BONUS LEVEL | | AMERICAN GENERAL LIFE BROKERAGE PRODUCT PORTFOLIO |
|---|---|---|
| **Paid Annualized First-Year Premium** | | **Fixed Life** |
| | $ 100,000/C | 5.00 |
| | $ 100,000/D | 10.00 |
| | $ 100,000/F | 15.00 |
| | $ 150,000 | 16.00 |
| | $ 200,000 | 18.00 |
| | $ 250,000 | 19.00 |
| | $ 300,000 | 19.50 |
| IMO/BGA Minimum (01/2004) | $ 350,000 | 20.00 |
| | $ 400,000 | 21.00 |
| | $ 450,000 | 22.00 |
| | $ 500,000 | 24.00 |
| | $ 550,000 | 24.50 |
| | $ 600,000 | 25.50 |
| | $ 650,000 | 26.50 |
| | $ 700,000 | 27.50 |
| | $ 750,000 | 29.00 |
| | $ 800,000 | 29.50 |
| | $ 850,000 | 30.00 |
| | $ 900,000 | 30.50 |
| | $ 950,000 | 31.00 |
| | $ 1,000,000 | 32.00 |
| | $ 1,250,000 | 33.00 |
| | $ 1,500,000 | 34.00 |
| | $ 1,750,000 | 35.00 |
| | $ 2,000,000 | 36.00 |
| | $ 3,000,000 | 36.50 |
| | $ 4,000,000 | 37.00 |
| | $ 5,000,000 | 37.50 |
| | $ 6,000,000 | 38.00 |
| | $ 7,000,000 | 38.50 |
| | $ 8,000,000 | 39.00 |
| | $ 9,000,000 | 39.50 |
| | $ 10,000,000 | 40.00 |
| | $ 15,000,000 | 41.00 |
| | $ 20,000,000 | 41.50 |
| | $ 25,000,000 | 42.00 |

(4) First Year Annualized Bonus:  The IMO/BGA bonus is paid as a percentage of commissionable
policy premium and is annualized.

Bonus is not available on VUL, Platinum VM5+, Annuities, A & H and Supplemental
Life Products.

AIGLB-58LP-PB - Rev 02-2005
©2004 American International Group, Inc.
All rights reserved

This summary outlines commission information for products issued by various issuing companies.
Agents and their uplines must be appointed with each respective legal entity to sell its products.
This summary is subject to change at any time.



**AIG** Life Brokerage

Distributing products issued by:
American General Life Insurance Company
AIG Life Brokerage is a division of the
American International Companies.®
Member of American International Group, Inc.

Effective May 2004

## AIG LIFE BROKERAGE
# BROKERAGE LIFE PORTFOLIO RENEWALS/EXCESS OVER TARGET
## IMO/BGA SUMMARY

This is a summary of available commissions. The actual commission schedule will govern in the event of any conflict between this summary and the applicable schedule. Pick Renewal/Excess Schedule. Maximum initial producer total compensation cannot exceed Level S.

| PRODUCT PORTFOLIO | | TERM RENEWALS (RENEWAL YEARS 2-10) [5] | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| American General Life | | J** | K** | S | A | B | C | D | E | F | G |
| LTG Ultra-30 [6][7] / LTG Ultra C-30 [7] | Level Term | 2.00 | 1.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| LTG Ultra-20 [6][7] / LTG Ultra C-20 [7] | Level Term | 2.00 | 1.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| LTG Ultra-15 [6][7] / LTG Ultra C-15 [7] | Level Term | 2.00 | 1.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| LTG Ultra-10 [6][7] / LTG Ultra C-10 [7] | Level Term | 2.00 | 1.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| ROP Term 30, 20, 15 [7] | Level Term | 4.00 | 3.00 | 2.00 | 1.75 | 1.50 | 1.25 | 1.00 | 0.75 | 0.50 | 0.25 |

| PRODUCT PORTFOLIO | | UL RENEWALS (RENEWAL YEARS 2-10) [5] AND EXCESS OVER TARGET | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| American General Life | | J** | K** | S | A | B | C | D | E | F | G |
| ContinUL - Eff 6/15 | UL | 4.00 | 3.00 | 2.00 | 1.75 | 1.50 | 1.25 | 1.00 | 0.75 | 0.50 | 0.25 |
| Elite UL G | UL | 4.00 | 3.00 | 2.00 | 1.75 | 1.50 | 1.25 | 1.00 | 0.75 | 0.50 | 0.25 |
| Elite UL | UL | 4.00 | 3.00 | 2.00 | 1.75 | 1.50 | 1.25 | 1.00 | 0.75 | 0.50 | 0.25 |
| Elite Survivor G | 2nd/Die UL | 4.00 | 3.00 | 2.00 | 1.75 | 1.50 | 1.25 | 1.00 | 0.75 | 0.50 | 0.25 |
| Elite Survivor | 2nd/Die UL | 4.00 | 3.00 | 2.00 | 1.75 | 1.50 | 1.25 | 1.00 | 0.75 | 0.50 | 0.25 |
| Elite Indexed UL | Indexed UL | 4.00 | 3.00 | 2.00 | 1.75 | 1.50 | 1.25 | 1.00 | 0.75 | 0.50 | 0.25 |

(5) Renewal Commissions: Changes in renewals are prospective from the date of change forward, never retroactive. Renewal levels for downline appointed representatives must be equal to or less than the appointor's renewal level.

(6) No first-year base, renewal or bonus paid on policy fee.

(7) Renewal only, Excess does not apply.

**Renewal schedules J & K available to NMO, IMO, and BGA only.

Platinum VM5+, Supplemental products, and A & H products have separate compensation schedules, consult your regional office.

AIGLB-SBLP-FE - Rev 02-2005
©2004 American International Group, Inc.
All rights reserved

This summary outlines commission information for products issued by various issuing companies. Agents and their uplines must be appointed with each respective legal entity to sell its products. This summary is subject to change at any time.


**AIG** AMERICAN GENERAL

AIG Life Brokerage

Distributing products issued by:
American General Life Insurance Company
AIG Life Brokerage is a division of the
American International Companies.®
Member of American International Group, Inc.

Effective January 2004

# AIG LIFE BROKERAGE
## SUPPLEMENTAL LIFE PRODUCTS
## FIRST YEAR/RENEWAL/EXCESS
### IMO/BGA SUMMARY

This is a summary of available commissions. The actual commission schedule will govern in
the event of any conflict between this summary and the applicable schedule.
Pick one schedule for Supplemental Business. Choice applies to both First Year and
renewal commissions.

| PRODUCT PORTFOLIO | \$10M Level S | | \$5M Level A | | \$5M Level B | | \$2M Level C | | \$2M Level D | |
|---|---|---|---|---|---|---|---|---|---|---|
| **FIRST-YEAR, RENEWAL & EXCESS** | | | | | | | | | | |
| American General Life[1] | First Year | R & E* | First Year | R & E* | | | First Year | R & E* | | |
| Platinum Provider Ultra | 117 | 4.00 | 114.5 | 4.00 | | | 112 | 4.00 | | |
| Platinum Provider Ultra G | 117 | 4.00 | 114.5 | 4.00 | | | 112 | 4.00 | | |
| Platinum Protector G | 117 | 0/2.00 | 114.5 | 0/2.00 | | | 112 | 0/2.00 | | |
| Platinum Accumulator [3] | 107 | 4.00 | 104.5 | 4.00 | | | 102 | 4.00 | | |
| Platinum Survivor Ultra | 112 | 4.00 | 109.5 | 4.00 | | | 107 | 4.00 | | |
| Platinum Survivor Ultra G | 112 | 4.00 | 109.5 | 4.00 | | | 107 | 4.00 | | |
| Platinum Protector Survivor G | 104 | 0/3.00 | 103.0 | 0/3.00 | | | 102 | 0/3.00 | | |
| Platinum Provider Ultra 500 | 117 | 4.00 | 114.5 | 4.00 | | | 112 | 4.00 | | |
| Platinum Accumulator 500 [3] | 107 | 4.00 | 104.5 | 4.00 | | | 102 | 4.00 | | |
| Platinum Survivor Ultra 500 | 112 | 4.00 | 109.5 | 4.00 | | | 107 | 4.00 | | |

| PRODUCT PORTFOLIO | IMO/BGA Entry Level $100,000 E | | F | | G | | H | | I | |
|---|---|---|---|---|---|---|---|---|---|---|
| **FIRST-YEAR, RENEWAL & EXCESS** | | | | | | | | | | |
| American General Life[2] | First Year | R & E* | | | First Year | R & E* | First Year | R & E* | First Year | R & E* |
| Platinum Provider Ultra | 110 | 4.00 | | | 105 | 2.75 | 100 | 2.50 | 95 | 2.25 |
| Platinum Provider Ultra G | 110 | 4.00 | | | 105 | 2.75 | 100 | 2.50 | 95 | 2.25 |
| Platinum Protector G | 110 | 0/2.00 | | | 105 | 0/1.75 | 100 | 0/1.50 | 95 | 0/1.50 |
| Platinum Accumulator [3] | 100 | 4.00 | | | 95 | 2.75 | 90 | 2.50 | 85 | 2.25 |
| Platinum Survivor Ultra | 100 | 4.00 | | | 95 | 2.75 | 90 | 2.50 | 85 | 2.25 |
| Platinum Survivor Ultra G | 100 | 4.00 | | | 95 | 2.75 | 90 | 2.50 | 85 | 2.25 |
| Platinum Protector Survivor G | 100 | 0/3.00 | | | 95 | 0/2.60 | 90 | 0/2.40 | 85 | 0/2.20 |
| Platinum Provider Ultra 500 | 110 | 4.00 | | | 105 | 2.75 | 100 | 2.50 | 95 | 2.25 |
| Platinum Accumulator 500 [3] | 100 | 4.00 | | | 95 | 2.75 | 90 | 2.50 | 85 | 2.25 |
| Platinum Survivor Ultra 500 | 100 | 4.00 | | | 95 | 2.75 | 90 | 2.50 | 85 | 2.25 |

* Renewal and Excess

(1) For Supplemental Life business select one schedule to pay First Year Base Renewals and Excess.
Schedules S thru I need home office approval.

(2) AGL pays no commissions on aviation extra premiums or any temporary extra premiums of seven years
duration or less. For table ratings above Table 6, first year commissions are paid on the basis of
Table 6 premiums.

(3) Commission reductions apply to Platinum Accumulator and Platinum Accumulator 500 for insureds
over issue age 85.

AGLB-SSsp1 - Rev 02-2005
©2004 American International Group, Inc.
All rights reserved

FEB 20 2002  15:12          ALL AMERICAN LIFE                    1 505 195 404

3/9/02 8:00AM          3/9/ 05AM
5044 12 03879          5044 12 00401

**16**

## American General Life Brokerage Group Appointment Application For:

All American Life Insurance Company, American General Annuity Insurance Company,
American General Life Insurance Company, The Old Line Life Insurance Company of America

Members American General Financial Group

New applicants must complete parts 1,2,3 and 4 in their entirety. (Part 5 to be retained by applicant.) Parts
4, 7, and 8 are to be completed by the person recommending the applicant. All proposals should be
submitted at the SAME TIME. SEPARATE OR MISSING INFORMATION WILL RESULT IN PROCESSING DELAYS.

**AMERICAN GENERAL FINANCIAL GROUP**

American General Financial Group
is the marketing name for American General
Corporation and its subsidiaries

---

### Part 1   Applicant Data

Social Security Number: √ 33-27-5589

Full Name: RICHARDSON          GARY          A
_____Last Name_____First Name_____Middle Initial

Business Address: 2963 GULF-TO-BAY BLVD     STE 208
_____CLEARWATER, FL     34685

Residence Address: 3867 MULLENHURST DR
_____PALM HARBOR, FL   34685

Bus Phone: (727) 791-9080     Fax Number: (727) 712-1459
Home Phone: (727) 937-3892    Internet E-Mail Address: GRICHARDSON@LBEG.NET
Date of Birth: 7/18/60     Sex ☑ Male ☐ Female
Spouse's Name: CINDY          SS#

If applicant is a corporation or partnership, agency principal(s) must complete separate
Appointment Application forms.

Company Name: LIFE BROKERAGE EQUITY GROUP
Principal(s) Gary Richardson   Title: President   SS #: 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

State of Incorporation: FL          Tax I.D.: 65-0972017

---

### Part 2   Licensing And State Appointment Request

Licensing and Contracting Information:

Licensed for:    ☑ Life       ☐ Health    ☑ Variable Annuity   ☑ Variable Life
Contracted as:   ☐ Individual  ☐ Agency

Attach copies of licenses for all requested state appointments. Provide appropriate fees for nonresident appointments.
(Non-resident fees not required for American General Annuity Insurance Company.)

Resident State: FL          Resident License Number: D042632
Nonresident states (indicate state licenses attached): _____

Are you currently NASD registered? ☑ Yes   ☐ No
If Yes, who is your Broker/Dealer? INTERSECURITIES     CRD Number: _____
Circle all current NASD licenses that you hold:
☑6  7  ⑰ ㉔ 26 ㊹  Other: 62

Errors and Omissions Insurance Coverage (required for all contract levels)
☑ Yes - I have E & O coverage (copy of current certification enclosed)
     Name of carrier: Continental Casualty     Expiration Date: 4/1/02
☐ No - I am enclosing an application for the American General Life Insurance Companies Plan

---

*American General Annuity Insurance Company is licensed in all states and the District of Columbia except New York and New Hampshire.
The other companies listed above are licensed in 49 states (excluding New York) and the District of Columbia.

-- 1 --

ACLB 1000-0300

FEB-29-2002  15:12          ALL AMERICAN LIFE                    1 303 793 3454   P.05

**American General Life Brokerage Group**
**Appointment Application**

AMERICAN
GENERAL
FINANCIAL GROUP

Part 3  Confidential History

Social Security Number: ___ 

Confidential history/background information (Write "Yes" or "No" in blanks — If Yes, explain below)
(All answers will be verified against Background Investigation/Credit check reports.)

Yes/No

1. Have you ever been convicted of or plead guilty or no contest to a felony?

2. Have you ever been convicted of or plead guilty or no contest to a misdemeanor?

3. Are you currently under investigation by any legal or regulatory authority?

4. Do you now owe money to any life or health insurance company?

5. Have you or a firm in which you were a partner, officer or director been declared bankrupt or been party to a bankruptcy or receivership proceeding, or had a salary garnished or had liens or judgments against you?

6. Has any insurance company or securities broker-dealer terminated your contract or permitted you to resign for a reason other than lack of sales?

7. Has any insurance department, government agency or self-regulatory authority ever denied, suspended, revoked, censured or barred your license or registration or disciplined you with fines or by restricting your activities?

8. Have you ever been the subject of a consumer-initiated complaint or proceeding by any self-regulatory body or any securities commodities or insurance regulatory body or organization or employer?

9. Has a bonding company ever denied, paid out on or revoked a bond for you?

10. Have you ever had a claim filed against your professional liability or errors and omissions insurance coverage?

Details of "Yes" Answers

APPARENTLY SO. I FOUND OUT A COUPLE OF DAYS AGO THAT I HAVE A MISDEMEANOR FOR WATERING MY LAWN ON A NON-WATERING DAY

- 2 -

Form W-9 (Rev. 11-99)

FEB 28 2002  15:13          ALL AMERICAN LIFE                    1 303 793 3454   P.07
3/8/02 8:00AM                    3/8/02 8:05AM
50441200388I                    50441200401 7

# American General Life Brokerage Group
# Appointment Application

**AMERICAN**
**GENERAL.**
**FINANCIAL GROUP**

## Part 4   Signatures

Social Security Number: 433.27.5589

I have read and received, as of the date indicated below, the notice concerning investigative consumer reports, as required by law. I understand that in signing this form, I hereby authorize the American General companies that I have requested appointments with (hereinafter collectively referred to as the "American General Affiliates") to investigate my background, including my credit history and interviews with former employers and/or primary insurance company. I authorize the American General Affiliates and individuals named in this application to give the American General Affiliates any information regarding me that they have available. I agree that if any of my answers to the questions in part three change, I will notify, in writing, American General Affiliates within 10 business days of the incident which would cause an answer to change. I understand that falsification of information or failure to update the answers on this application may result in termination of appointment(s) with all American General Affiliates. In addition, I hereby authorize the American General Affiliates to report information about earnings and debit balances to any credit bureau or similar organization.

I further authorize American General Affiliates, to verify my previous employment and securities registration history through the CRD system.

I hereby authorize American General Affiliates to share background, licensing and applicant data with their affiliates.

I acknowledge that I have received and reviewed the "Customer Service and Compliance Manual for Producers and Employees for the American General Life Companies" and/or "Operations Manual" and I agree to abide by those principles, as amended from time to time, in representing any of the Companies that appoint me.

Date: 02/15/02          Signature: _Gary A. Richardson_

The undersigned (recommending representative or General Agent) by executing this application recommends the applicant to American General Affiliates as a suitable person qualified to represent the companies. The recommending individual or General Agent also agrees to supervise and assume responsibility for the applicant, if appointed by American General Affiliates, in accordance with the terms of his/her Contract.

Signature: _____          Date: 2/22/02
            (Signature of person recruiting applicant)

Print Name: JOHN D. EKBERG          Agent #: OT781

Signature: _____          Date: 2/28/02
            (Signature of 2nd level RVP, if any)

Print Name: BERNIe RADOCHONSKI, RVP          Agent #: FVPQ5

Home Office Approval: _W.O. June_          Date: 3/4/02
                       (if required)

✂ - - - - - - - - - - - - - - - -  Remove and leave Part 5 with applicant.  - - - - - - - - - - -

## Part 5   Preliminary Information Request Form

In compliance with the Fair Credit Reporting Act, as amended, we advise you that we may, as part of our normal procedure for processing your application, request that an investigative consumer report be prepared whereby information is obtained through personal interviews with your neighbors, friends, former employers, primary insurance company or others with whom you are acquainted. This inquiry includes information as to your character, general reputation, personal characteristics and mode of living. You have the right to make a written request to your primary appointing company, within a reasonable period of time to receive additional detailed information about the nature and scope of this investigation, if one is made. Such requests should be directed to the primary appointing company.

-- 5 --

AG 1498-8101

FEB-28-2002  15:14       ALL AMERICAN LIFE          1 303 793 3454   P.08

3/9/02 8:00AM
56441200...

# American General Life Brokerage Group
## Appointment Application
*(to be completed by recruiter)*

**AMERICAN GENERAL FINANCIAL GROUP**

## Part 6  Recruiter Data

*(To be completed by individual recruiting the Applicant)*

Date: **02/22/02**    Applicant Name: **LIFE BROKERAGE EQUITY GROUP**

Applicant's Social Security Number: **65-0972017**

Recruiter Name (please print) **JOHN D. EKBERG**

Title **Level / 3-NMO**    Recruiter Agent or Agency Code # **OT981**

## Part 7  Primary Appointing Company And Affiliated Company Appointment Request

Please check your primary appointing company. All appointments require Home Office approval.
☒ The Old Line Life Insurance Company of America

Request for affiliated company appointments:
☐ All American Life Insurance Company
☒ American General Life Insurance Company
☒ American General Annuity Insurance Company

## Part 8  Company Specific Contract and Commission Information

The Old Line Life Insurance Company
Licensing and Contracting Dept.
750 W. Virginia St.
Milwaukee, WI 53204
800-653-0963 Ext. 3002
Fax: 800-337-0961

**PLACE IN Region 5**

NMO:
Contract level requested:     ☒ IMO*  **5**   ☐ MGA*   ☐ GA   ☐ Producer
Commission level requested:   **5** First Year    **5** Renewal    **0** Bonus Level
* Annualization:    ☐ Yes  ☒ No   If yes, indicate level: _____

* Annualization is available on a limited basis (if applicable, supplement must be submitted with contract).
* Appointment, Bonus, and Annualization levels require Home Office approval.

To receive commissions via electronic funds transfer, enclose authorization form.

**IMPORTANT:** Unless otherwise indicated, Commission levels for Affiliated Company appointments will be assigned base and renewal commission levels selected for the Old Line Life Insurance Company.

| Company Name | Commission Level |
|---|---|
| All American Life Insurance Company | |
| American General Annuity Insurance Company | BMC |
| American General Life Insurance Company | MGR105 |
| | |
| | |

-7-

AGL01238-0249

FEB-28-2002   15:11        ALL AMERICAN LIFE                1 303 793 3454    P.02

# FINANCIAL ENERGY INSURANCE GROUP, INC.

TOLL FREE: (888) 588-3344        LOCAL (386) 437-6950        FACSIMILE (386) 437-8153

## 9 PAGES

**To:**     Bernie Radochonski

**From:**   John Ekberg

**Re:**     New MGA7 contract

**Date:**   February 22, 2002

Following is the contract for Life Equity Brokers Group.  Gary Richardson is the principal.

This organization receives business from approximately 550 producers. Approximately two-thirds of the producers are in Florida.

Gary Richardson is very positive about having a relationship with the American General Brokerage Group.  Old Line will be the primary term carrier and I anticipate that we can get a substantial amount of UL business also.

Because of the size of this group, the make-up of the producers and the production potential, I am requesting that we utilize the MGA-7 contract level to give them the flexibility that they need to maximize recruiting and production.

Thanks for all your help.  It appears the MGA-7 level will allow us to significantly increase our production for the second half of 2002 and beyond.

*SPECIAL DEALS*

1083 HAMPSTEAD LANE, ORMOND BEACH, FL 32174



FED-09-2002  15:14        ALL AMERICAN LIFE        1 303 793 3454   P.09
3/9/02 8:00AM        3/8/   :05AM
504412003889        504412004026



BAD COPY



FLORIDA DEPARTMENT OF INSURANCE

BAD COPY

MAR 15 2002 2:09PM    FEIG......ISI                          727-712-1... NO. 1081   P. 2   p.2
03/...UYANO ZTO FEIG......OLD LINE LIFE

707 North Eleventh Street • PO Box 401
Milwaukee WI 53201 0401
888 862 5663

## THE OLD LINE LIFE Insurance Company of America

### An American General Company

### ASSIGNMENT OF COMMISSIONS

Agent Code No. **#OPU67**

FOR VALUE RECEIVED, the undersigned hereby transfers, sets over and assigns unto _____

*Life Brokerage Equity Group* (TAX ID & SS # _65-0972017_
(an individual), (a corporation), (a partnership) (a sole proprietorship)
of _2963 Gulf To Bay Blvd, Suite 208, Clearwater, FL 33759_ (address)

an amount equal to _100_ percent of any and all commissions, renewal commissions, allowances and fees which may hereafter accrue in favor of the undersigned by virtue of the agency contract now in force between the undersigned and The Old Line Life Insurance Company of America, it being understood and agreed that this assignment shall be subject to any present indebtedness or any which may hereafter accrue to be due and owing The Old Line Life Insurance Company of America.

The undersigned hereby represents and warrants that said commissions and allowances are not now assigned, and the undersigned hereby will forever warrant and defend his right to receive same, this instrument to remain in full force and effect until same is released by the assignee by an instrument in writing furnished said Insurance Company.

The undersigned hereby authorizes and directs said Insurance Company to pay over any such commissions and allowances to said assignee, subject to the conditions hereof, and it is agreed that any payment so made will be a full and complete discharge of said Insurance Company's obligation to the extent of any payment so made.

IN WITNESS WHEREOF, the undersigned has hereunto set his hand and seal at _Clearwater, FL_
___ this _15th_ day of _March_ in _2002_.

By: _____
    Signature of Assignor

STATE OF _FLORIDA_
COUNTY OF _Pinellas_

Personally came before me this _15th_ day of _March_
is _2002_, the above named _GARY A. Richardson_
to me known to be the person(s) who executed the foregoing instrument and acknowledged the same.

_Sheila F. Exum_
Notary Public
County _Pinellas_

My commission expires _12/17/2005_

SHEILA F. EXUM
My Comm Exp. 12/17/2005
No. DD 079401

Received and placed on file this _____ day of _____, 19 _____

THE OLD LINE LIFE INSURANCE COMPANY OF AMERICA

By: _____
    President & CEO

MaMAR.18/2010A87:09PM   FEIG& ISI                               727-712-1 NO. 7081   P. 3   P.3
03/18/2012 14:03:10:0VAM_270 FEIG     OLD LINE LIFE                    J.1078 P. J
 00445100094†

## ASSIGNMENT OF AGENT CONTRACT            B04579L ~H.G.L

For value received, GARY A. Richardson an agent under an Agent Contract, (to be commenced as defined by the company) with the
company named in the CONSENT TO ASSIGNMENT below ("American General Life") and hereinafter called Assignor, assigns Assignor's Agent
Contract ("Contract") in its entirely to LIFE Brokerage Equity hereinafter called Assignee. This Assignment removes from Assignor any
and all rights, privileges, duties, and obligations under the Contract and places them with Assignee as if the Contract had been originally executed by
Assignee, it is expressly understood among the parties to this Assignment that American General Life reserves the right to offset any indebtedness now
or in the future owed to it by Assignee against amounts payable to Assignee under the Contract.  GARY~Richardson

Assignor, under the terms of this Assignment, has received full power and authority, for Assignee's own benefit and conduct of business, all rights,
privileges, duties and obligations as fully as if Assignee were the original party to the Contract provided, however, that no transfer of Assignee's rights
hereunder, whether voluntary, involuntary, or by operation of law, shall be binding upon American General Life (AGL) until actual written notice of such
transfer has been received by it.

Executed this ___15___ day of __March__, w 2002

_[signature]_                                          _[signature] Sheila L. Epson_
ASSIGNOR                                                Witness

## ASSIGNEE AGREEMENT

Assignee has received the assignment of the Agent Contract ("Contract") executed between Assignor and American General Life named in the
CONSENT TO ASSIGNMENT below ("American General Life"). In exchange for AGL's consent to the assignment, Assignee agrees as follows:

1. Assignor shall be the sole individual who may produce business under the Contract.

2. Assignor and Assignee agree that Assignor is entitled to receive payment of any and all non qualified deferred compensation benefits which may
   be payable as a result of production under the Contract, and Assignee has no present or future right to such compensation;

3. Assignee is the holder of all rights, privileges, duties, and obligations under the Contract, Assignee shall assure that Assignor produces business in
   a manner compatible with the terms of the Contract. The Contract may be terminated for acts of Assignor or Assignee in violation of the Contract
   and

4. AGL is authorized to enroll Assignor in AGL's errors and omissions program, if available, and to deduct from earnings due Assignee
   under the assigned Contract, premiums necessary to enroll Assignor in such program.

Executed this ___15___ day of __March__, w 2002
ASSIGNEE: Life BroKerage Equity Group
By: _[signature]_                           Title: President

## CONSENT TO ASSIGNMENT

American General Life hereby consents to the foregoing assignment, subject to the terms, provisions and conditions above stated or referred to.

Executed this _____ day of _____, 19 _____
AMERICAN GENERAL LIFE INSURANCE COMPANY

By: _____      Title: _____



**AMERICAN
GENERAL**
FINANCIAL GROUP

All American Life Insurance Company
The Old Line Life Insurance Company of America

March 15, 2002

Gary Richardson
c/o Life Brokerage Equity Group
Suite 208
2963 Gulf To Bay Blvd.
Clearwater, FL  34685

YOUR AGENT CODE IS:  0PU67

Dear Gary,

I would like to welcome you as a valued member of the American General Brokerage
Group field force.  American General Brokerage Group distributes products through a
number of life insurance companies that are part of American General Financial Group,
one of the largest financial services organizations in the United States.  As a valued
member of our field force, you have joined an established company that is committed to
financial integrity, service and long-term growth.

Your state appointment authorizing you to submit applications for our company has
been approved by your *resident* Department of Insurance.

**It is important that no *non-resident* business be solicited in any state until you
have received written notice that the licensing and appointment requirements of
that state have been satisfied.**  Please feel free to call our Licensing Department at 1-
888-653-5463, extension 3001 with any questions you may have regarding your
appointment status.

Remember to include your code number on new business applications to ensure timely
underwriting and commission accounting processing.  As you begin your association
with our company, you will certainly have questions or concerns that need to be
addressed.  Please feel free to contact Bernie Radochonski, Regional Vice President, at
800-392-8103 for any assistance you may need.



All American Life Insurance Company
The Old Line Life Insurance Company of America

Enclosed is a copy of your newly executed contract. Please take a moment to review this agreement and become familiar with its terms and conditions. We look forward to many years of a mutually beneficial and prosperous relationship.

Sincerely,

Richard A. Hollar
President
American General Life Companies, Brokerage Group

RAH/dv

Enclosures

c:  0T781 - John Ekberg

FEB 20 2002 13:11          ALL AMERICAN LIFE                    1 3( 93 3454  P.03
504454 005046             3/9/02 8:05AM
                          504412 004024                        **BAD COPY**



**AMERICAN**
**GENERAL**
FINANCIAL GROUP

*American General Financial Group*
*is the marketing name for American General and*
*its subsidiaries held by subsidiaries*

All American Life Insurance Company, Springfield, IL
American General Annuity Insurance Company, Amarillo, TX
American General Life Insurance Company, Houston, TX
The Old Line Life Insurance Company of America, Milwaukee, WI

## AGENCY AGREEMENT

Both life insurers' company's products are separately underwritten and independently supported by the representative company. The above-listed companies are members of the American General Financial Group.

American General Financial Group is the marketing name for American General Corporation and its subsidiaries. American General Corporation is not responsible for financial obligations of those corporations.

FOR

Last Name _RICHARDSON_     First Name _GARY_     Middle Initial _A_

_LIFE  BROKERAGE  EQUITY  GROUP_

If Representative is a Corporation, the full Corporate name must appear above, and an authorized officer must sign and indicate the officer's title.

**Individual**
Social Security Number _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_

**Corporation**
Tax Identification Number _65-0972017_

**Representative**

Signature _[signature]_          Title _President_

**Primary Company**

The Old Line Life Insurance Company of America, Inc.

Contract Date _MARCH 15, 2002_          _[signature]_
To be completed by Home Office          Home Office Authorized Signature

* This Agency Agreement may not be used to contract banks, credit unions or thrifts to American General Annuity Insurance Company and, if submitted for that purpose, will not be accepted. This Agency Agreement may not be used to replace an in force American General Annuity Insurance Company Agency Contract and, if submitted for that purpose, will not be accepted.



TABLE OF CONTENTS

Paragraph

Recitals

Definitions

I.    Authorized Acts
II.   Limitation of Authority
III.  Advertising
IV.   Relationship
V.    Compensation
VI.   Vesting
VII.  General Provisions
VIII. Termination
IX.   Amendment
X.    Personal Guarantee
XI.   Effective Date
XII.  Investigation Notice
XIII. Federal Crime Control Act

Schedules

A. Commission Schedule – Primary Company

B. Appointment Application

RECITALS

Representative ("REPRESENTATIVE") has executed an Appointment Application requesting appointments with one or more life insurance subsidiaries of American General Corporation.

The Appointment Application designates one of the life insurers as a Primary Appointing Company (the "Primary Company").

This Agreement together with the Appointment Application and Commission Schedules for each separate life insurer that appoints REPRESENTATIVE comprise the REPRESENTATIVE's contract with each of the insurers that appoints REPRESENTATIVE.

Execution of this Agreement by the Primary Company and the REPRESENTATIVE evidences their agreement to transact business in accordance with the terms and conditions set forth in this Agreement.

If REPRESENTATIVE requested appointment with one or more affiliates of the Primary Company in the Appointment Application, or a subsequent amendment to that form, REPRESENTATIVE's execution of this Agreement evidences REPRESENTATIVE's agreement to transact business with each affiliated insurer in accordance with the terms and conditions set forth in this Agreement. Each affiliated insurer that appoints REPRESENTATIVE and sends a company commission schedule to REPRESENTATIVE has agreed to transact business with REPRESENTATIVE according to the terms and conditions of this agreement.

## DEFINITIONS

A. Primary Company – the Primary Company is designated in the Appointment Application as the Primary Company. The Primary Company's responsibilities include executing the REPRESENTATIVE Agreement, performing background checks and providing convention credits and other sales incentives, if any, to REPRESENTATIVE.

B. Affiliated Company – the Affiliated Company(ies) is any other life insurance subsidiary of American General Corporation that is identified in the Appointment Application, appoints REPRESENTATIVE and provides a company commission schedule as evidence of its agreement to transact business with REPRESENTATIVE according to the terms of this Agreement.

C. Insurer – the term Insurer as used in this Agreement refers to each of the life insurance companies that appoints REPRESENTATIVE, including the Primary Company.

D. Jurisdiction – Eligibility for, or receipt of, override compensation on another Representative's business.

## I. AUTHORIZED ACTS

A. The REPRESENTATIVE is authorized to conduct Insurer's business for the Insurer's products covering such classes of risks as the Insurer may authorize and in those states where the product is approved and REPRESENTATIVE is licensed and appointed as required by state law. If REPRESENTATIVE is a corporation, then the principal(s) of such corporation must also be licensed individually, if required pursuant to appropriate state law.

B. The REPRESENTATIVE is authorized to collect and promptly remit to the Insurer the first premium on business produced by the REPRESENTATIVE in accordance with the Insurer's rules and regulations.

C. The REPRESENTATIVE will promptly deliver issued policies in accordance with Insurer's policies and procedures.

D. All monies, settlements, or documents received by the REPRESENTATIVE for, or on, behalf of the Insurer shall be received by the REPRESENTATIVE in a fiduciary capacity and immediately paid over or delivered to the Insurer, except as may be otherwise directed in writing by the Insurer.

## II. LIMITATION OF AUTHORITY

The REPRESENTATIVE is without authority to perform any act or thing other than that expressly granted in this agreement and expressly agrees not to perform any of the following acts:

1. Make, modify, alter or discharge any policy.
2. Extend the time payment of any premium.
3. Waive any forfeiture.
4. Guarantee dividends or interest rates.
5. Incur any debt or liability in the name of the Insurer.
6. Withhold, commingle or convert to the use of the REPRESENTATIVE or the benefit of others, any monies, securities, policies or receipts belonging to the Insurer, the applicant, or the insured, or fail to promptly submit to the Insurer any applications for policies.
7. Accept or deposit any check or draft for premiums made payable to other than the Insurer.
8. Unless in the best financial interest of the policyowner, directly or indirectly induce or attempt to induce any policyowners of Insurer to relinquish, surrender, replace or lapse their policies.

## III. ADVERTISING / USE OF LOGO

REPRESENTATIVE may, at REPRESENTATIVE's expense, advertise Insurer's products, provided the text of all advertising, including any form of sales/promotional material such as, but not limited to; business cards, stationery or other indications of agency under this agreement and including the use of the name "American General," the American General logo or the name of any insurer is approved in writing by the company before use.

## IV. RELATIONSHIP

The relationship between the Insurer and the REPRESENTATIVE shall be that of principal and independent contractor, and nothing contained herein shall be construed as creating the relationship of employer and employee for any purpose, including tax purposes. REPRESENTATIVE agrees to be responsible for all taxes as a self-employed independent contractor. The REPRESENTATIVE shall be free to exercise independent judgment as to the time and manner in which the REPRESENTATIVE shall perform the services authorized under this agreement. Any material supplied by the Insurer is for the purpose of supporting the activities of the REPRESENTATIVE.

## V. COMPENSATION

A. Subject to the provisions hereof and the rules of the Insurer, the full compensation of the REPRESENTATIVE shall be payable at the applicable rate set forth in the Schedule of Commission in effect at the date the first full premium is received by the Insurer, which Schedule of Commission and all amendments, supplements and replacements thereof and thereto are hereby made a part of this agreement.

B. Commission is subject to change at any time by written notice by the Insurer to the REPRESENTATIVE, but no such change shall affect commissions on any policy issued prior to the effective date of such change.

C. If commission rates are not now shown in the Schedule of Commission, including conversions, replacements or, the exercise of re-entry provisions or, if special premium rate quotations are made, commission rates shall be such as may be fixed by the Insurer as of the time when issue is effective in accordance with rates and practices of the Insurer then in effect.

D. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall lapse because of nonpayment of premium and shall be replaced or reinstated, any commissions on the new or reinstated policy shall be payable only at the sole discretion of the Insurer.

E. To be entitled to commissions, if any, the REPRESENTATIVE's name or the name of another Representative under your jurisdiction must appear as soliciting agent on the application for insurance. Disputes respecting commissions shall be subject to decision and settlement by the Insurer and the Insurer's decision shall be final and binding upon the parties involved.

F. Whenever, in the judgment of the Insurer, it shall become advisable to recall any policy issued before delivery thereof is made, the REPRESENTATIVE shall promptly refund to the Insurer any commissions received on account of such policy. Whenever, after delivery, the Insurer shall effect or procure the surrender, rescission or cancellation of any policy and refund premiums paid thereon, the Insurer shall have the right to charge back commissions and demand that the REPRESENTATIVE repay such commissions to the Insurer. If the Insurer shall refund or waive the premium or premiums under the provisions of any disability waiver of premium rider, the REPRESENTATIVE shall lose all rights to commission and persistency fees as applied to such refunded or waived premiums, and shall repay any amounts advanced. An Insurer may include in its Commission Schedule, which is incorporated as a part of this agreement, guidelines describing more specifically the circumstances under which it will charge back commissions on certain products. In the absence of such guidelines, the Insurer's rights shall be as described in this Section V. Compensation.

G. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall be converted or replaced, any commissions on the new policy shall be subject to adjustment and payable only at the sole discretion of the Insurer.

H. Except where prohibited by any State, the REPRESENTATIVE is responsible for all license fees, including those of its Representatives. The Insurer's discretion shall govern with respect to whether the Insurer shall charge to the REPRESENTATIVE's commission or other compensation account the cost of obtaining and renewing the REPRESENTATIVE's and its Representatives' license or licenses and/or appointment fees. This practice is subject to change at the discretion of the Insurer.

I. Policy applications for any Insurer will be issued and commissions paid by the Insurer.

## VI. VESTING

A. As long as this agreement remains in effect, all first year and renewal commissions shall be paid as they accrue; however, any such payments are subject only to the schedule of commissions in effect at the date the first full premium is received by the Insurer, the provisions and rules of the Insurer regarding minimum first year and renewal commissions required to issue a check.

B. During any consecutive 12-month period following the termination of this agreement, total renewal commissions are less than the minimum required by the Insurer, vesting automatically terminates and no additional commission payments will be due from the Insurer.

C. In the event this agreement is terminated by the death of the REPRESENTATIVE, all first year and renewal commissions shall be paid as they accrue, subject only to the terms and conditions of paragraphs A and B immediately above. In the absence of a properly executed beneficiary designation on file with the Insurer, all such payments, if any, shall be made to the surviving spouse and at the death of the surviving spouse to the estate of said spouse. If the REPRESENTATIVE dies leaving no surviving spouse, such monies will be paid to the estate of the REPRESENTATIVE; provided however, that if the REPRESENTATIVE is a corporation or a partnership, all such payments will be paid to said corporation or partnership.

## VII. GENERAL PROVISIONS

A. The Insurer may make such changes and decisions as it deems advisable in the conduct of its business, including the discontinuance of any policy form or the withdrawal from any territory, and the Insurer shall incur no liability to the REPRESENTATIVE by reason of its doing so.

B. The Insurer shall have the right to test market any of its products on a select basis and at the discretion of the Insurer.

C. The REPRESENTATIVE shall indemnify and hold the Insurer harmless against or from any and all expense, costs, causes of action, and damages including without limitation, reasonable attorney fees, resulting from or growing out of any unauthorized or negligent act of commission or omission by the REPRESENTATIVE or its employees, directors, officers, or Representatives under its jurisdiction. This provision shall survive termination of this agreement.

The Insurer shall have prior right and offset to all commissions and fees payable hereunder toward any indebtedness and/or other obligations due from the REPRESENTATIVE or anyone under the Jurisdiction of the REPRESENTATIVE to any Primary Company and/or Affiliated Company/ies with interest at the legal rate. This prior right and offset shall not be extinguished by the termination of this agreement. Following the termination of any Representative under the Jurisdiction of the REPRESENTATIVE, should the amount in any commission account of that Representative be insufficient to repay any amount due the Insurer, the debit will become the responsibility of the REPRESENTATIVE, in accordance with the Insurer's then current debit collection procedure.

E. Neither the agreement, any duties or delegation under this agreement, nor the commissions or fees accruing hereunder, nor any interest herein, nor any right or claim created hereby or arising by reason of the REPRESENTATIVE acting hereunder, shall be assignable, except upon the written consent of the Insurer.

F. Forbearance or failure of the Insurer to insist upon performance of this agreement or to enforce its rights hereunder, shall not constitute a waiver of its rights or privileges hereunder or of its subsequent right to insist upon such performance.

G. This agreement, including the Appointment Application and any Commission Schedule(s) incorporated as part of the Agreement, contains all promises, inducements and representations between the parties. This agreement supersedes any and all previous agreements between the parties herein pertaining to the solicitation of the Insurer's products and the payment of monies to the REPRESENTATIVE provided, however, that rights or obligations which have already accrued (and would survive termination) under any previous contract between the Insurer and the REPRESENTATIVE shall not be hereby impaired.

H. The Insurer reserves the right to decline or modify any application for insurance.

I. This agreement shall not be effective until executed by the Primary Company. Once this agreement is effective with the Primary Company, it may become effective with Affiliated Company/ies as described herein.

J. Should the REPRESENTATIVE, at any time, violate any provision of Section III of this agreement, entitled Limitation of Authority, or commit any fraud upon Insurer or its policyholders; have a license as agent or broker revoked for cause after notice and hearing by a state insurance department or otherwise act to prejudice materially the interests of Insurer, the REPRESENTATIVE shall, at the option of the Insurer, forfeit any and all rights to all commissions and monies that the REPRESENTATIVE might otherwise have under this agreement, vested or not. It is expressly agreed that termination of this agreement shall not terminate this provision.

K. The REPRESENTATIVE agrees to maintain complete and accurate records of the marketing and sale of the Insurer's products. The Insurer reserves the right to inspect such records and other documents in each REPRESENTATIVE's files that relate to the marketing, attempted sale or sale of the Insurer's products. If the Insurer chooses to inspect such records, it will endeavor to do so during normal business hours and after giving reasonable notice, unless, in the judgment of the Insurer, unusual circumstances require inspection at other times or inspection without prior notice. This provision shall survive termination of this agreement for a period of two (2) years.

L. For as long as this agreement is in force, the REPRESENTATIVE will maintain Errors and Omissions (E&O) coverage and will provide the Insurer annually proof of such E&O coverage in a manner acceptable to the Insurer.

M. If the REPRESENTATIVE is served with a regulatory inquiry or legal papers involving Insurer business; the REPRESENTATIVE shall immediately notify the Insurer by sending to that Insurer's Compliance Officer, a copy of the papers, served by overnight delivery, by the end of the business day next following the day of receipt by the REPRESENTATIVE.

N. The REPRESENTATIVE is responsible for assuring that any Representative under the Jurisdiction of the REPRESENTATIVE: (1) become fully informed as to the provisions and benefits of each product offered by the Insurer for which the Representative conducts Insurer business; (2) represent such products adequately and fairly to prospective purchasers; and (3) act in compliance with the Insurer's policies and procedures as set out in the Customer Service and Compliance Manual, Operations Manual, or otherwise communicated to the REPRESENTATIVE, including, without limitation, those regarding suitability of sales inquiries and compliance with the Insurer's principles and code of ethical market conduct.

O. When the Insurer assigns to the REPRESENTATIVE any agency not recruited by the REPRESENTATIVE, then the Insurer may reassign that agency to another upline of the Insurer's choice at any time and without the necessity of a release from the REPRESENTATIVE. If the Insurer wishes to remove any agency recruited by the REPRESENTATIVE from the Jurisdiction of the REPRESENTATIVE, the Insurer will negotiate a release; however, such release will not be unreasonably withheld by the REPRESENTATIVE.

P. REPRESENTATIVE is not entitled to participate in any REPRESENTATIVE benefit programs except those which are provided by the Primary Company. REPRESENTATIVE is not eligible to participate in, or to receive any benefits from, any programs provided by the Affiliate Company/ies.

Q. Disputes arising under this Agreement shall be subject to the laws of the state where the Insurer engaged in the dispute is located.

R. The area within which the REPRESENTATIVE shall have the right to represent the Insurer is not assigned exclusively to the REPRESENTATIVE.

S. REPRESENTATIVE agrees to conform to all regulations of the Insurance Department and the Insurance laws in the state(s) in which the REPRESENTATIVE is conducting Insurer's business.



311970218-36P
504454 005051

## TERMINATION

This agreement shall automatically terminate upon the death of REPRESENTATIVE if REPRESENTA-TIVE is an individual or upon dissolution of REPRESENTATIVE if REPRESENTATIVE is a corporation or a partnership.

This agreement shall terminate upon the revocation or non-renewal of the REPRESENTATIVE's license.

This agreement may be terminated with or without cause by any Insurer (subject to provisions D and E below) or the REPRESENTATIVE by sending written notice of such termination to the last known address of the other party.

Upon termination, the REPRESENTATIVE shall immediately pay in cash to the Insurer all sums that are due or become due hereunder and shall immediately deliver to the Insurer all materials connected with the business of the Insurer and belonging to the Insurer. Such materials include, but are not limited to, rate cards, letters, records, computer software, general supplies or any and all other indications of agency provided by the Insurer. It is expressly agreed that termination of this agreement does not release the REPRESENTATIVE from continuing liability to the Insurer for immediate repayment of any and all unearned first year commissions or bonuses.

E. Termination of this agreement by the Primary Company terminates all contracts with Affiliated Company/ies without specific notice to the REPRESENTATIVE required by the Insurer. However, any Affiliated Company may terminate its agency relationship with the REPRESENTATIVE, which will not, of itself, terminate the Primary Company agency relationship. Upon termination, the Insurer may assign a servicing agency; however, such assignment will not of itself affect the vesting of existing business.

F. Termination of this agreement automatically terminates any previous agreement to represent the Insurer that terminated the Agreement.

## IX. AMENDMENT

This contract cannot be changed by any oral promise or statement and no written modification will bind the Insurer unless approved by the President of the Insurer making the modification.

## X. PERSONAL GUARANTEE

Each and every individual who signs this agreement warrants that they have authority to bind the entity on whose behalf they are signing.

## XI. EFFECTIVE DATE

The agreed effective date will be the date that this agreement to represent is signed and acknowledged by the Primary Company as hereinafter specified.

## XII.  INVESTIGATION NOTICE

The undersigned hereby authorizes the Primary and Affiliated Company/ies to conduct an investigation concerning character, credit reputation and personal traits and releases those contacted and the Insurer from any liability with respect to the content of the information provided and any resulting action by the Insurer including the sharing of such information or the termination of this agreement to represent.

## XIII. FEDERAL CRIME CONTROL ACT

A. Undersigned warrants it:

1. has not been convicted of any criminal felony involving dishonesty or breach of trust or

2. has obtained written authorization to engage in the business of insurance from the Insurance Department in the state where REPRESENTATIVE resides which REPRESENTATIVE agrees to produce upon Insurer request.

B. The REPRESENTATIVE agrees to update the representations in the Confidential History/Background Information Section of Part 4 of the Appointment Application by notifying the Primary Company in writing within thirty (30) days, if there should be a change in the response to any question in the Information Section of Part 4 of the Appointment Application.

A-GLH 1054-0100