# Exhibit O

IN THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY,
FLORIDA

AMERICAN GENERAL LIFE
INSURANCE COMPANY,

Plaintiff,                                    CASE NO.: 2009-57024-CA-01

v.

THE MICHAEL SASONI 2007-1 INSURANCE
TRUST, AND MICHAEL SASONI 2007-2
INSURANCE TRUST, by and through their
Trustees; MARSHA   S.   BRIGHT   and
CHRISTIANA BANK & TRUST CO., as
Trustees of the MICHAEL SASONI 2007-1
INSURANCE TRUST and MICHAEL SASONI
2007-2 INSURANCE TRUST; MICHAEL
SASONI,   individually;   STEPHEN   B.
WECHSLER, individually and as principal of
the The Wechsler Financial Group, Inc.; THE
WECHSLER   FINANCIAL   GROUP, INC.;
KEVIN   BECHTEL,   individually   and   as
principal of Life Brokerage Partners, LLC; and
LIFE BROKERAGE PARTNERS, LLC

Defendants.

_____/

## COMPLAINT & DEMAND
## FOR JURY TRIAL

Plaintiff, AMERICAN GENERAL LIFE INSURANCE COMPANY ("American

General"), sues Defendants, THE MICHAEL SASONI 2007-1 INSURANCE TRUST and THE

MICHAEL SASONI 2007-2 INSURANCE TRUST, by and through their Trustees; MARSHA

S. BRIGHT and CHRISTIANA BANK & TRUST CO., as Trustees of the MICHAEL SASONI

2007-1 INSURANCE TRUST and the MICHAEL SASONI 2007-2 INSURANCE TRUST;

MICHAEL SASONI, individually; STEPHEN B. WECHSLER, individually and as principal of

The Wechsler Financial Group, Inc.; THE WECHSLER FINANCIAL GROUP, INC.; KEVIN BECHTEL, individually and as principal of Life Brokerage Partners, LLC; and LIFE BROKERAGE PARTNERS, LLC, separately and severally, and alleges:

## INTRODUCTION

1.     This is an action for declaratory relief and rescission of two life insurance policies procured by improper and fraudulent means, and procured for improper and undisclosed purposes.   American General issued policy numbers UM0044158L and UN0044159L (the Policies) in August 2007 insuring the life of defendant MICHAEL SASONI (the "Insured") for a total combined face amount of $20,000,000, unknowingly relying upon documents submitted by Defendants in a fraudulent scheme designed to procure life insurance on an individual for which there is no insurable interest and sell the Policies to investors who are unrelated to the Insured and who are speculating on the life of the Insured. American General issued the Policies based upon a facially appropriate application.   American General has now discovered that the transaction was part of a scheme perpetrated by (a) the Insured, along with (b) defendants Stephen Wechsler, The Wechsler Financial Group, Inc., Kevin Bechtel, and Life Brokerage Partners, LLC (collectively, the "Brokers"), and by (c) defendants Marsha S. Bright and Christiana Bank and Trust Co. (collectively, the "Trustees"), as trustees of the insurance trusts named above (the "Trusts"), which was designated as the ostensible owner of the Policies.

2.     This scheme consisted of a plan to recruit older persons to pose as applicants for and proposed owners of large-face-amount life insurance policies that were never meant to be retained by the ostensible owners after issuance.  Instead, the Policies procured in this case were actually procured by the true owners of the Policies -- the Brokers, the Trusts, the Trustees and/or their unnamed investors (some of whom later may be added as parties as American

2

General discovers their identities) -- in an effort to avoid the insurable interest requirements of state law so that they could hold and/or ultimately sell the Policies to third-party investors seeking to wager on the life of the Insured. Defendants' procurement of the Policies was without a legitimate insurable interest and based upon fraudulent misrepresentations that void the Policies under state laws of (1) misrepresentation and rescission and (2) insurable interest.

## JURISDICTION AND VENUE

3.    This action is an action in part for declaratory and other equitable relief based on Fla. Stat. §§ 86.011, 627.404, and 627.409(1) and for damages in excess of the jurisdictional limits of this Court under Fla. Stat. § 26.012.

4.    Venue in this judicial district is proper pursuant to Fla. Stat. §§ 47.011 and 47.051 because the cause of action accrued, and at least one Defendant resides or conducts business in Miami-Dade County Florida.

5.    This Court has personal jurisdiction over all Defendants because each of the Defendants participated in a conspiracy to commit a tortious act within the State of Florida and caused injury to Plaintiff in the State of Florida.

## PARTIES

6.    Plaintiff American General is an insurance company organized under the laws of Texas with its principal place of business in Houston, Texas. American General is licensed and authorized to engage in the business of, among other things, selling life insurance in the State of Florida and has at all times complied with Florida law governing the insurance business in the State.

7.    Upon information and belief, Defendant MICHAEL SASONI is a citizen of the State of Florida, residing in Miami-Dade County.

3

8.      The MICHAEL SASONI 2007-1 Insurance Trust and the MICHAEL SASONI 2007-2 Insurance Trust are trusts subject to the ownership and control of their Trustees set forth in the following paragraph who, on information and belief, are citizens of the State of Delaware.

9.      Upon information and belief, Defendants Marsha S. Bright ("Bright") in her capacity as trustee, and Christiana Bank and Trust Co. ("Christiana Bank"), are citizens of the State of Delaware, with their principal place of business in Delaware.  Bright and Christiana Bank are the trustees of the Trusts set forth in the preceding paragraph, which currently own and hold the Policies.

10.     Upon information and belief, Defendant Stephen Wechsler ("Wechsler") is a citizen of the State of New York, with his principal place of business in New York, New York, and is the principal of The Wechsler Financial Group, Inc.  Wechsler was appointed with American General under an independent brokerage contract at all times relevant to the transactions and events set forth in this action.

11.     Upon information and belief, Defendant The Wechsler Financial Group, Inc. is a New York Corporation with its principal place of business in New York, New York.

12.     Upon information and belief, Defendant Kevin Bechtel ("Bechtel") is a citizen of the State of Florida, with his principle place of business in Oldsmar, Florida, and is the principal of Life Brokerage Partners, LLC.  Bechtel was appointed with American General under an independent brokerage contract at all times relevant to the transactions and events set forth in this action.

13.     Upon information and belief, Defendant Life Brokerage Partners, LLC, ("Life Brokerage") is a Florida Limited Liability Company with its principal place of business in Oldsmar, Florida.

4

## BACKGROUND
### Stranger-Originated Life Insurance

14. Over the last decade, a secondary market has emerged in which speculative investors have sought to obtain, and in many cases have succeeded in obtaining, a pecuniary interest in life insurance policies insuring the lives of strangers. Although there are other varieties of secondary market transactions, the most problematic speculative scenario is where the insured and/or policy owner intends at inception for the policy or a beneficial interest in the entity that owns the policy to be sold to speculators.

15. These speculators do not acquire an interest in a life insurance policy insuring the lives of persons with whom they have a familial relationship, or in whose longevity they possess a legally recognized interest; instead, these speculators purchase policies that insure the lives of strangers -- or, in many cases, purchase beneficial interests in insurance trusts or ownership in shell corporations that own those policies -- in the expectation that they will profit by the death of the insured.

16. Such arrangements are commonly referred to as IOLI, which stands for "investor-originated life insurance," or STOLI or SOLI, which stands for "stranger-originated life insurance," sometimes known as "stranger-owned life insurance." (These transactions are referred to as "STOLI" herein.)

17. STOLI transactions often run afoul of state insurable interest laws and universal public policy, which protect the integrity of life insurance by requiring that a policy owner have a cognizable interest in the longevity of the insured at the time the policy is issued.

18. Speculators, who are the true intended owners of STOLI policies, attempt to circumvent the law and public policy by carefully constructing their transactions in order to hide these impermissible investments.

5

19.     The speculators must first find a relatively older and high-net-worth individual (or persons willing to fraudulently inflate their financial status) willing to participate in the investment transactions. Logically, the STOLI investors seek out the highest anticipated rates of return when choosing the life insurance policy on which they will speculate. This means the typical life insurance policy to which speculators gravitate insures the life of an individual approaching age seventy or older, with a net worth -- or a fraudulently misrepresented net worth -- of over one million dollars. Often purposefully manipulating their reported net worth, individuals in such an age range can obtain large-face-amount policies and, actuarially speaking, are expected to have a relatively limited lifespan.

20.     The speculators must also determine the resale value of the policy in the secondary market; this value is based largely upon the life expectancy of the prospective insured. The shorter the expected lifetime of the prospective insured, the more valuable the policy is to those who would gamble on his or her life. Prior to the resale of a policy, the prospective insured often submits to a life expectancy analysis, the results of which are provided to putative investors.

21.     Once the speculators locate an individual who meets their investment profile, and more importantly, agree to collaborate in the STOLI arrangement, an application is submitted for one or more insurance policies. The speculators typically pay most or all of the prospective insured's costs, including premium payments. Some speculators even agree to pay the prospective insured a fee upon the issuance of the policy.

22.     In many cases, the policy application indicates that a third-party entity, such as a trust, a shell corporation, or a limited partnership, will be the owner and beneficiary of the life insurance proceeds. This permits the speculators to acquire an interest in this holding entity –

and, most importantly, in the death benefit that later will be disbursed – while hiding the facts of their ownership from the insurer.

23.     Another way the investors obtain ownership of the policy is to loan the insured the funds to pay the premium for a finite period of time, usually for the two-year contestability period. Once this contestability period has expired, the insured can either repay the loan or assign the policy to the investors in satisfaction of the loan, thus completing the transaction. The loan is structured in a way to encourage the insured to assign the policy to the investors by, among other things, loaning the funds with exorbitant fees and interest rates.

24.     While there are many other variations, all STOLI programs have one thing in common: their objective is to give investors who have no insurable interest in the life of the insured a stake in the life insurance policy of a complete stranger that is intended to produce a windfall to the investor that becomes more valuable the earlier the insured dies.

## FACTS

25.     During the time of the transactions described herein, Wechsler and Bechtel were appointed as independent brokers authorized to procure and submit applications from prospective insureds for the issuance of a life insurance policy by American General, subject to underwriting and approval by American General.

26.     In or around August 2007, the Brokers procured and submitted an application for life insurance seeking coverage on behalf of the Insured, which resulted in American General's issuing the Policies on the life of the Insured for a total combined face amount of $20,000,000.

27.     Set out in more detail below, as part of the application process for the Policies, the Insured, the Brokers, and the Trustees, answered detailed questions on the life insurance application necessary for the underwriting of the Policies.

28.   As part of the completion of the life insurance application, the Insured and the Trustees swore to the truthfulness of their representations contained in that application by their signature with the following agreement:

> I have read the above statements or they have been read to me. They are true and complete to the best of my knowledge and belief. I understand that this application: (1) will consist of Part A, Part B, and if applicable, related forms; and (2) shall be the basis for any policy issued. I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) it is within its contestable period; and (2) such misrepresentation materially affects the acceptance of the risk.
> 
> . . . .
> 
> I understand and agree that no agent is authorized to: accept risks or pass upon insurability; make or modify contracts; or waive any of the Insurer's rights or requirements.

29.   Likewise, the Financial Questionnaire completed and signed by the Insured and the Trustees contained the following agreement:

> All of the above answers are full, complete and true to the best of my knowledge and belief, and are a confirmation of, and form a part of, the application for insurance.

30.   Likewise, Part A of the Policy application contains a certification for the broker to complete. Defendant Wechsler signed the certifications on the Policy application:

> I certify that the information supplied by the proposed Insured(s)/owner has been truthfully and accurately recorded on the Part A application.

31.   The Insured and Trustees obtained the Policies, on the basis of the application and other required and related documents, naming the Trusts as the ostensible owners and beneficiaries.

32.   American General issued the Policies in August 2007, which bear a policy date of August 3, 2007, for a total combined face amount of $20 million, as a result of an application

8

dated on or about August 1, 2007 submitted to American General by the Brokers, naming the MICHAEL SASONI 2007-1 Insurance Trust as the ostensible owner and beneficiary of Policy Number UM0044158L and the MICHAEL SASONI 2007-2 Insurance Trust as the ostensible owner and beneficiary of Policy Number UM0044159L. The application also indicated that the purpose of the insurance was "financial planning." American General relied upon this information in determining whether to issue the Policies. This representation was false.

33. The Insured was 70 years old as of the policy date.

34. On or about August 1, 2007, in Part A of the application for the Policies, the Insured, Brokers, and Trustees represented the Insured's household income to be $3,270,000, and his net worth to be $65,500,000. Upon information and belief, these representations were false. American General relied upon this information in determining whether to issue the Policies.

35. On or about August 1, 2007, in the Financial Questionnaire portion of the application for the Policies, the Insured and Trustees represented the Insured's household income to be $3,270,000, and his net worth to be $65,500,000. Upon information and belief, these representations were false. American General relied upon this information in determining whether to issue the Policies.

36. Wechsler expressly represented as part of the underwriting process, on or about August 1, 2007, that: (1) the Insured was not "receiving any cash payment, borrowing funds in excess of those required to pay the scheduled premiums and interest or receiving any other consideration as an inducement to participate in this transaction," and (2) "there is no prearranged agreement to transfer the policy nor will the policyholder have a prearranged option

or right of first refusal to transfer the policy to a third party." Upon information and belief, these representations were false.

37. Upon information and belief, the Insured did not make, and has not made, any premium payments on the Policies. The funds advanced to pay for the Policies were loaned and/or procured by the Brokers, Trustees, and/or unnamed investors.

38. In connection with the Policies, both Wechsler and Bechtel received substantial monetary commissions.

39. The Brokers and Trustees solicited the Insured to take part in a fraudulent STOLI scheme whereby the Insured would apply to American General for life insurance for which he would not pay and would not keep but, instead, would sell -- through the aid of the Brokers, Trust, and Trustees -- to investors who have no insurable interest in the life of the Insured.

40. The Trusts, though the ostensible original owners of the Policies, are not the true owner of the Policies but, instead, are pass-through owners designed to deliver ownership and interest in the Policies to the true owners of the Policies who are named and or unnamed investors with no insurable interest in the life of the Insured. As a result, Defendants and/or other unnamed investors have invested in and are wagering on the lives of other persons. These STOLI transactions clearly violate state law and public policy.

41. Defendants' intent for the Policies, from the beginning of the transaction, was to transfer and/or sell the Policies to companies, investors, investor groups, or other third parties who are strangers with no insurable interest in the lives of the Insured.

42. Defendants represented to American General that the Insured's designated beneficiaries, through the Trust, were the Policies' true beneficiaries. These representations were

false. Instead, the true applicants for, and owners and beneficiaries of the Policies were, and are, other named and/or unnamed investors who have no insurable interest in the life of the Insured.

43.     As part of the STOLI scheme, the Brokers and the Trustees conspired in or around August 2007, with an individual known as Frank Pellicone, purporting to be a provider of underwriting inspection reports, to submit false and/or fraudulent information on and/or verification of the Insured's financial and professional status, representing among other things, that the Insured's net worth was $65,500,000, that his annual income was $3,270,000, and that he had lived in his Aventura residence for twenty years. Upon information and belief, this information was false.

44.     Actual controversies exist between the parties as to whether (a) the Policies are void *ab initio* because (1) Defendants materially misrepresented the true facts in the Policies' applications and/or the Policies were procured by fraudulent means and (2) the Policies lacked a lawful insurable interest; and as to whether (b) American General is entitled to (1) retain the premiums paid on the Policies and to (2) receive commission chargebacks from the Brokers in connection with the Policies. A declaratory judgment on these issues will completely resolve the controversies among the parties.

## COUNT ONE
### Declaratory Judgment for Rescission of the Policies Based on Misrepresentation
### (Against the Insured, the Trust and the Trustees)

45.     American General realleges and incorporates by reference herein all preceding paragraphs in this Complaint.

46.     American General is entitled to rescind the Policies based on the material misrepresentations set out herein.

47. American General is entitled to rescind the Policies pursuant to Fla. Stat. § 627.409(1), which provides in pertinent part:

> (1)  Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a representation and is not a warranty. A misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the following apply:
>
> (a)  The misrepresentation, omission, concealment, or statement is fraudulent or is material either to the acceptance of the risk or to the hazard assumed by the insurer.
>
> (b)  If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

(Emphasis added).

48.  The Insured, the Trust and the Trustees made misrepresentations, omissions, and concealments of fact and/or incorrect statements in the Policy application and as part of the negotiations for the Policies' issue. American General was entitled to, and did, rely on the truthfulness and accuracy of the representations made in the Policy application, and during the application process, in issuing the Policies.

49.  The Insured's, the Trusts', and the Trustees' misrepresentations, omissions, concealments of fact and/or incorrect statements were fraudulent, and/or material, and/or American General would not have issued the Policies had it known the true facts surrounding the Policy transactions, facts that the Insured, the Trusts, and the Trustees were required to disclose pursuant to the Policies' requirements and/or other requirements.

12

50.   An actual controversy exists between the parties as to whether the Policies are void *ab initio* because the Insured, the Trusts, and the Trustees materially misrepresented the true facts in the Policy application and/or the Policies were procured by fraudulent means. Such misrepresentations and/or omissions constitute a failure of condition precedent for coverage under the Policies. Moreover, pursuant to state law, including Fla. Stat. § 627.409(1), the misrepresentations are grounds for rescission of the Policies. A declaratory judgment on this issue will completely resolve the controversy among the parties.

51.   American General is entitled to a judicial declaration stating (a) that the Policies did not take effect because the Insured, the Trusts, and the Trustees failed to perform a condition precedent for coverage under the Policies; (b) that the Policies were void *ab initio* as a result of the material misrepresentations made by the Insured, the Trusts, and the Trustees in the Policy applications; or (c) that application of Fla. Stat. § 627.409(1) requires rescission.

52.   As a result of the misrepresentations and concealment by the Insured, the Trusts, and the Trustees, American General has been forced to expend money and resources, among other ways, in its underwriting and issuance of the Policies, in its administration and servicing of the Policies, in its investigation of the misrepresentations, suppressions and concealments set forth herein, and in bringing this action for relief. Thus, American General is entitled to retain the premiums paid on the Policies by way of disgorgement and/or offset of damages incurred by American General as a result of the Insured's, the Trusts', and the Trustees' fraud.

53.   Although in this and other Counts herein American General has demonstrated its entitlement to retain the premiums paid on the Policies at issue in this action and has sought a declaration from this Court accordingly, American General hereby constructively tenders the premiums on the Policies to this Court and stands ready to pay the premiums into the Court

registry should the Court so require. American General respectfully states that it is seeking a declaratory judgment that it is entitled to retain the premiums is in no way intended to waive American General's entitlement to rescind and/or void the Policies.

**WHEREFORE**, premises considered, American General respectfully requests an Order including or directing the following relief:

a.    For a declaratory judgment stating that the Policies did not take effect for failure of the performance of a condition precedent because the Insured, the Trusts, and the Trustees materially misrepresented the true facts in the Policy applications;

b.    In the alternative, for a declaratory judgment stating that the Policies were void *ab initio* as a result of the Insured's, the Trusts', and the Trustees' material misrepresentations upon which American General relied;

c.    In the alternative, for a declaratory judgment stating that the application of Fla. Stat. § 627.409(1) requires rescission of the Policies;

d.    For an award of American General's costs incurred in this action;

e.    For a declaration that American General is entitled to retain premiums paid on the Policies; and

f.    For other such relief the Court deems proper, just and equitable.

## COUNT TWO
### Declaratory Judgment for Rescission and/or
### Voiding of the Policies Based on Lack of Insurable Interest
### (Against the Insured, the Trust, and the Trustees)

54. American General realleges and incorporates by reference herein paragraphs 1-44 of the Complaint as if set forth fully herein.

55. The Policies lack a lawful insurable interest. The Policies are illegal wagering contracts under state laws and public policy.

56. The Policies violate Fla. Stat. § 627.404.

57. The Defendants made statements, declarations, and representations that were untrue relative to the insurable interest in the Insured's life. American General relied in good faith on those untrue misrepresentations, omissions, and concealments of fact and/or incorrect statements in the Policy applications. As a result, American General has been damaged by, among other things, issuing Policies that is void under state laws and public policy.

58. The STOLI scheme described herein perpetrated by all Defendants violates the letter and spirit of state law on insurable interest and is inconsistent with the public policy of prohibiting the wagering on the lives of others.

59. An actual controversy exists between the parties as to whether the Policies are void *ab initio* because of the Insured's, the Trusts', and the Trustees' misrepresentations of the true facts relevant to insurable interest and because the procurement of the Policies violate state law and public policy. Such misrepresentations and/or omissions and/or violation of state law and public policy constitute a failure of condition precedent for coverage under the Policies. A declaratory judgment on this issue will completely resolve the controversy among the parties.

60.    American General is entitled to a judicial declaration stating (a) that the Policies did not take effect because the Insured, the Trusts, and the Trustees failed to perform a condition precedent for coverage under the Policies; or in the alternative (b) that the Policies are void *ab initio* as a result of the material misrepresentations made by the Insured, the Trusts, and the Trustees in the Policy applications on which American General relied and/or as a result of the Policies' violation of state law and public policy.

61.    As a result of the misrepresentations and concealment by the Insured, the Trusts, and the Trustees in furtherance of this STOLI scheme, American General has been forced to expend money and resources, among other ways, in its underwriting and issuance of the Policies, in its administration and servicing of the Policies, in its investigation of the misrepresentations, suppressions and concealments set forth herein, and in bringing this action for relief.   Thus, American General is entitled to retain the premiums paid on the Policies by way of disgorgement and/or offset of damages incurred by American General as a result of the Insured's, the Trusts', and the Trustees' fraud.

62.    Although in this and other Counts herein American General has demonstrated its entitlement to retain the premiums paid on the Policies at issue in this action and has sought a declaration from this Court accordingly, American General hereby constructively tenders the premiums on the Policies to this Court and stands ready to pay the premiums into the Court registry should the Court so require.   American General respectfully states that its actions in seeking a declaratory judgment that it is entitled to retain the premiums is in no way intended to waive American General's entitlement to rescind and/or void the Policies.

**WHEREFORE**, premises considered, American General respectfully requests an Order including or directing the following relief:

16

a.       For a declaratory judgment stating that the Policies did not take effect for failure of the performance of a condition precedent because the Insured, the Trusts, and the Trustees materially misrepresented the true facts in the Policy applications and/or the Policies violate state law and public policy;

b.       In the alternative, for a declaratory judgment stating that the Policies were void *ab initio* as a result of the Insured's, the Trusts', and the Trustees' material misrepresentations upon which American General relied in good faith and/or as a result of the Policies' violation of state law and public policy;

c.       In the alternative, for a declaratory judgment stating that the application of Fla. Stat. § 627.409(1) requires rescission of the Policies;

d.       In the alternative, for a declaratory judgment stating that the application of Fla. Stat. § 627.404 renders the Policies void;

e.       For an award of American General's costs incurred in this action;

f.       For a declaration that American General is entitled to retain premiums paid on the Policies; and

g.       For other such relief the Court deems proper, just and equitable.

## COUNT THREE
### Rescission and/or Voidance of Policies and Disgorgement
### Based on Fraud and Misrepresentation
### (Against all Defendants)

63.     American General realleges and incorporates by reference herein paragraphs 1-44 of the Complaint as if set forth fully herein.

64.   To induce American General to issue the Policies, Defendants represented to American General that the proposed Insured had a certain financial net worth and insurance needs, as alleged specifically herein, justifying the sizable insurance coverage sought.

65.   Said representations were false.   The true facts were that the Insured's net worth and insurance needs were substantially less than that represented.

66.   Further, to induce American General to issue the Policies, Defendants caused false and/or fraudulent information to be submitted to American General from third parties regarding the Insured's income, net worth, and insurance needs.

67.   Defendants' representations were in fact false.   The true facts were that the Policies were purchased with the intent that it would benefit the Brokers, Trustees, and/or unnamed investors.  Further, the Trust's purported ownership of the Policies were not intended ultimately to benefit the Insured or his designated beneficiaries, but instead benefited the remaining Defendants and unnamed investors.

68.   Prior to issuing the Policies, American General did not know that these representations were false, but believed them to be true and, reasonably and in good faith, relied upon them. Had American General (1) known the truth regarding the Insured's actual net worth and insurance needs, and/or (2) known the truth of Defendants' purpose in procuring the Policy - - to engage in an unlawful STOLI scheme in violation of state insurable interest and misrepresentation laws and in violation of public policy -- American General would not have issued the Policies.

69.   Defendants took actions, did things, and engaged in the unauthorized and unlawful activities alleged above and incorporated herein as part of Defendants' STOLI scheme, knowing

18

the representations made to American General were false, in furtherance of their scheme and with the intent to deceive American General and to induce it to issue the Policies.

70.    In performing the acts herein alleged in furtherance of their scheme, Defendants intentionally misrepresented and/or concealed from American General material facts known to the Defendants with the intention of inducing American General to issue the Policies in violation of state law thereby making American General liable for unlawful insurance coverage and depriving American General of its money.

71.    As a result of the misrepresentations and concealment by Defendants, American General has been forced to expend money and resources, among other ways, in its underwriting and issuance of the Policies, in its administration and servicing of the Policies, in its investigation of the misrepresentations, suppressions and concealments set forth herein, and in bringing this action for relief. Thus, American General is entitled to retain the premiums paid on the Policies by way of disgorgement and/or offset of damages incurred by American General as a result of Defendants' fraud.

72.    Although in this and other Counts herein American General has demonstrated its entitlement to retain the premiums paid on the Policies at issue in this action and has sought a declaration from this Court accordingly, American General hereby constructively tenders the premiums on the Policies to this Court and stands ready to pay the premiums into the Court registry should the Court so require. American General respectfully states that its seeking a declaratory judgment that it is entitled to retain the premiums is in no way intended to waive American General's entitlement to rescind and/or void the Policies.

WHEREFORE, premises considered, American General respectfully requests an Order including or directing the following relief:

19

a.    For a declaratory judgment stating that the Policies did not take effect for failure of the performance of a condition precedent because the Defendants materially misrepresented the true facts in the Policy applications;

b.    In the alternative, for a declaratory judgment stating that the Policies were void *ab initio* as a result of the Defendants' material misrepresentations upon which American General relied in good faith;

c.    In the alternative, for a declaratory judgment stating that the application of Fla. Stat. § 627.409(1) requires rescission of the Policies;

d.    In the alternative, for a declaratory judgment stating that the application of Fla. Stat. § 627.404 renders the Policies void;

e.    For an award of American General's costs incurred in this action;

f.    For disgorgement of any and all proceeds and profits obtained by Defendants as a result of their fraudulent scheme;

g.    For a declaration that American General is entitled to retain premiums paid on the Policies; and

h.    For other such relief the Court deems proper, just and equitable.

**COUNT FOUR**
**Civil Conspiracy**
**(Against all Defendants)**

73.    American General realleges and incorporates by reference herein paragraphs 1-44 of the Complaint as if set forth fully herein.

74.    Defendants consist of multiple parties, not all of whom necessarily had knowledge of the entire scheme or plan herein, but all of whom committed acts in furtherance of an overall scheme known by the Brokers, the Trustees, and certain others.

75.   In or around May – August 2007, some or all of Defendants agreed together to devise and execute a scheme to solicit elderly insureds, including the Defendant Insured, and procure life insurance policies well in excess of said insureds' net worth with an intent to avoid state insurable interest laws.

76.   The Insured engaged in multiple overt acts set out herein in furtherance of this conspiracy, including, but not limited to, meeting with the Brokers, misrepresenting information on insurance applications, causing third parties to submit false and/or fraudulent information to American General with the intent to induce American General to issue the Policies, establishing two Trusts to obtain ownership of the Policies, and working with unnamed financers to secure and pay premium payments to American General through third-party sources.

77.   The Trusts and Trustees engaged in multiple overt acts set out herein in furtherance of this conspiracy, including, but not limited to, meeting with the Brokers and/or Insured, misrepresenting information on insurance applications, causing third parties to submit false and/or fraudulent information to American General with the intent to induce American General to issue the Policies, establishing Trusts to obtain ownership of the Policies, and working with unnamed financers to secure and pay premium payments to American General through third-party sources.

78.   The Brokers engaged in multiple overt acts set out herein in furtherance of this conspiracy, including, but not limited to, meeting with the Insured, Trustees and financers, misrepresenting information on insurance applications, causing third parties to submit false and/or fraudulent information to American General with the intent to induce American General to issue the Policies, aiding in the establishment of the Trusts to obtain ownership of the Policies,

21

and working with unnamed financers to secure and pay premium payments to American General through third-party sources.

79.     In addition to directly violating state law, said scheme consisted of numerous fraudulent acts and misrepresentations on the part of Defendants set out herein.

80.     American General was damaged by said conspiracy, as it paid substantial monetary commissions and is now responsible for issuing Policies that it has since learned violate state insurable interest laws.

81.     As a result of the misrepresentations and concealment by Defendants, American General has been forced to expend money and resources, among other ways, in its underwriting and issuance of the Policies, in its administration and servicing of the Policies, in its investigation of the misrepresentations, suppressions and concealment set forth herein, and in bringing this action for relief. Thus, American General is entitled to retain the premiums paid on the Policies by way of disgorgement and/or offset of damages incurred by American General as a result of Defendants' fraud.

82.     Although in this and other Counts herein American General has demonstrated its entitlement to retain the premiums paid on the Policies at issue in this action and has sought a declaration from this Court accordingly, American General hereby constructively tenders the premiums on the Policies to this Court and stands ready to pay the premiums into the Court registry should the Court so require. American General respectfully states that its seeking a declaratory judgment that it is entitled to retain the premiums is in no way intended to waive American General's entitlement to rescind and/or void the Policies.

WHEREFORE, premises considered, American General respectfully requests an Order including or directing the following relief:

a.     For a declaratory judgment stating that the Policies did not take effect for failure of the performance of a condition precedent because the Defendants materially misrepresented the true facts in the Policy applications;

b.     In the alternative, for a declaratory judgment stating that the Policies were void *ab initio* as a result of Defendants' material misrepresentations upon which American General relied in good faith;

c.     In the alternative, for a declaratory judgment stating that the application of Fla. Stat. § 627.409(1) requires rescission of the Policies;

d.     In the alternative, for a declaratory judgment stating that the application of Fla. Stat. § 627.404 renders the Policies void;

e.     For an award of money damages to be determined at trial;

f.     For an award of American General's costs incurred in this action;

g.     For a declaration that American General is entitled to retain premiums paid on the Policies; and

h.     For other such relief the Court deems proper, just and equitable.

**COUNT FIVE**
**Aiding and Abetting Fraud**
**(Against the Brokers and the Trustees)**

83.   American General realleges and incorporates by reference herein paragraphs 1-44 of the Complaint as if set forth fully herein.

84.   As alleged herein, the Insured (1) made fraudulent misrepresentations to American General and (2) engaged in fraudulent acts and/or fraudulently concealed from American General facts material to the risk on the Policies.

85.   Acting with the intent to perpetrate a fraud and in furtherance of the fraud perpetrated on American General, the Brokers substantially aided and assisted the Insured in carrying out this fraudulent STOLI scheme in or around May – August 2007 by assisting the Insured in his fraudulent communications and representations to American General, including causing third parties to submit false and/or fraudulent information to American General with the intent to induce American General to issue the Policies, and by marketing and providing an organized method of engaging in and furthering said STOLI scheme. At all times relevant hereto, the Brokers knew that the above-mentioned actions were in furtherance of the fraudulent STOLI scheme.

86.   Acting with the intent to perpetrate a fraud and in furtherance of the fraud perpetrated on American General, the Trustees substantially aided and assisted the Insured in carrying out this fraudulent STOLI scheme in or around May – August 2007 by establishing and serving as trustees for the Trust to conceal the absence of an insurable interest in connection with the Policies and by facilitating the premium payments on the Policies made to American General. At all times relevant hereto, the Trustees knew that the above-mentioned actions were in furtherance of the fraudulent STOLI scheme.

87.   American General was damaged by said aiding and abetting fraud, as it paid substantial monetary commissions and is now responsible for issuing Policies that it has since learned violate state insurable interest laws.

88.   As a result of said aiding and abetting fraud, American General has been forced to expend money and resources, among other ways, in its underwriting and issuance of the Policies, in its administration and servicing of the Policies, in its investigation of the misrepresentations, suppressions and concealment set forth herein, and in bringing this action for relief.   Thus,

24

American General is entitled to retain the premiums paid on the Policies by way of disgorgement and/or offset of damages incurred by American General as a result of the Brokers' and the Trustees' aiding and abetting fraud.

89.   Although in this and other Counts herein American General has demonstrated its entitlement to retain the premiums paid on the Policies at issue in this action and has sought a declaration from this Court accordingly, American General hereby constructively tenders the premiums on the Policies to this Court and stands ready to pay the premiums into the Court registry should the Court so require.   American General respectfully states that its seeking a declaratory judgment that it is entitled to retain the premiums is in no way intended to waive American General's entitlement to rescind and/or void the Policies.

WHEREFORE, premises considered, American General respectfully requests an Order including or directing the following relief:

a.   For a declaratory judgment stating that the Policies did not take effect for failure of the performance of a condition precedent because the Defendants materially misrepresented the true facts in the Policy applications;

b.   In the alternative, for a declaratory judgment stating that the Policies were void *ab initio* as a result of Defendants' material misrepresentations upon which American General relied in good faith;

c.   In the alternative, for a declaratory judgment stating that the application of Fla. Stat. § 627.409(1) requires rescission of the Policies;

d.   In the alternative, for a declaratory judgment stating that the application of Fla. Stat. § 627.404 renders the Policies void;

e.   For an award of money damages to be determined at trial;

f.    For an award of American General's costs incurred in this action;

g.    For a declaration that American General is entitled to retain premiums paid on the Policies; and

h.    For other such relief the Court deems proper, just and equitable.

## COUNT SIX
### Declaratory Judgment for Determination and Payment of Commission Chargebacks Owed on the Policies by Brokers to American General (Against the Brokers)

90.    American General realleges and incorporates by reference herein paragraphs 1-44 of the Complaint as if set forth fully herein.

91.    Commissions paid to Wechsler and/or his corporate entities named herein in connection with the Policies:  Amount to be determined at Trial.

92.    Commissions paid to Bechtel and/or his corporate entities named herein in connection with the Policies:  Amount to be determined at Trial.

93.    As a result of American General's decision to rescind and/or void the Policies and constructively tender the premiums as set out herein, the Brokers are not entitled to the commissions they have received in connection with the Policies.

94.    The commission sums paid to the Brokers in connection with the Policies were sums that neither the Brokers nor any broker general agent was entitled to receive by reason of American General's decision to rescind the Policies and the fact that the Policies are void.

95.    American General has been forced to expend money and resources, among other ways, in its underwriting and issuance of the Policies, in its administration and servicing of the Policies, in its investigation of the misrepresentations, suppressions and concealment set forth herein, and in bringing this action for relief.  Thus, American General is entitled to retain the

premiums paid on the Policies by way of disgorgement and/or offset of damages incurred by American General.

96.     Although in this and other Counts herein American General has demonstrated its entitlement to retain the premiums paid on the Policies at issue in this action and has sought a declaration from this Court accordingly, American General hereby constructively tenders the premiums on the Policies to this Court and stands ready to pay the premiums into the Court registry should the Court so require. American General respectfully states that its seeking a declaratory judgment that it is entitled to retain the premiums is in no way intended to waive American General's entitlement to rescind and/or void the Policies

**WHEREFORE,** premises considered, American General respectfully requests an Order including or directing the following relief:

      a.    For a declaratory judgment stating that American General is entitled to commission chargebacks against the Brokers, plus interest thereon, according to proof as presented at trial;

      b.    For an award of American General's attorneys' fees and costs incurred in this action;

      c.    For a declaration that American General is entitled to retain premiums paid on the Policies;

      d.    For a declaration that American General is entitled to apply sums otherwise payable to the Brokers against the wrongfully credited commission amounts set out herein; and

      e.    For other such relief the Court deems proper, just and equitable.

## COUNT SEVEN
### Breach of Contract
### (Against Brokers)

97.  American General realleges and incorporates by reference herein paragraphs 1-44 of the Complaint as if set forth fully herein.

98.  American General entered into valid and enforceable written agreements with each Broker named herein that pertain to the conduct and facts alleged herein.

99.  Brokers each have breached said contracts with American General.

100.  As a direct, actual and proximate result of Brokers' breaches of their contracts, American General has been damaged as set out herein.

101.  American General has retained the undersigned counsel to bring this action and is obligated to pay a reasonable fee for their services. American General seeks recovery of costs, disbursements and reasonable attorneys' fees incurred in bringing this action pursuant to the governing agreements.

**WHEREFORE,** premises considered, and without waiver of any rights to compensatory and exemplary damages, American General respectfully requests an Order including or directing the following relief:

a.  For an award of money damages to be determined at trial;

b.  For disgorgement of any and all proceeds and profits obtained by Brokers as a result of their breaches of contracts or other improper conduct in connection with the Policies;

c.  For an award of interest, costs, and attorneys' fees, and other, general and further relief at law or in equity to which American General is entitled under the circumstances.

## COUNT EIGHT
### Negligence
### (Against Brokers)

102. American General realleges and incorporates by reference herein paragraphs 1-44 of the Complaint as if set forth fully herein.

103. Brokers were under a duty of care to American General to procure the Policies in a manner consistent with Brokers' contracts with American General and in a manner consistent with state law and public policy.

104. Brokers breached that duty of care as set out herein.

105. As a direct, actual and proximate result of Brokers' breach of the duty of care, American General has been damaged as set out herein.

106. American General has retained the undersigned counsel to bring this action and is obligated to pay a reasonable fee for their services. American General seeks recovery of costs, disbursements and reasonable attorneys' fees incurred in bringing this action pursuant to the governing agreements.

**WHEREFORE,** premises considered, and without waiver of any rights to compensatory and exemplary damages, American General respectfully requests an Order including or directing the following relief:

a. For an award of money damages to be determined at trial;

b. For disgorgement of any and all proceeds and profits obtained by Brokers as a result of their negligence in connection with the Policies;

c. For an award of interest, costs, and attorneys' fees, and other, general and further relief at law or in equity to which American General is entitled under the circumstances.

## COUNT NINE
### Fraud
### (Against All Defendants)

107.   American General realleges and incorporates by reference herein paragraphs 1-44 of the Complaint as if set forth fully herein.

108.   Defendants made false statements or omissions of material fact to American General, as set out with particularity throughout this Complaint, in connection with the procurement of the Policies.

109.   Defendants made these false statements and/or omissions of material fact either willfully with intent to deceive or in reckless disregard of their falsity or materiality, and with the intent that American General act in reliance upon their false statements and/or omissions of material fact.

110.   American General in fact relied to its detriment on Defendants' false statements and/or omissions of material fact.

111.   American General has been damaged, as set out herein, as a direct, actual and proximate result of the Defendants' fraud.

WHEREFORE, premises considered, American General respectfully requests an Order including or directing the following relief:

a.   For an award of money damages, including punitive damages, to be determined at trial;

b.   For disgorgement of any and all proceeds and profits obtained by the Brokers, Trusts, and Trustees as a result of their fraud in connection with the Policies;

c.   For an award of interest and costs and other, general and further relief at law or in equity to which it is entitled under the circumstances.

30

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues so triable.

DATED: July 31, 2009.

ACKERMAN, LINK & SARTORY, P.A.
222 Lakeview Avenue
Suite 1250 – Esperante
West Palm Beach, Florida 33401
Telephone: (561) 838-4100
Facsimile: (561) 838-5305
E-mail: gross@alslaw.com

By: _____

SCOTT J. LINK
Florida Bar No. 602991
DAVID P. ACKERMAN
Florida Bar No. 374350
GLORY P. ROSS
Florida Bar No. 0582506

AND

### Of Counsel

MAYNARD COOPER & GALE, PC
Michael D. Mulvaney, Esq.
Christopher C. Frost, Esq.
1901 Sixth Avenue North, Suite 2400
Birmingham, AL 35203
Telephone: (205) 254-1000
Facsimile: (205) 254-1999

*Attorneys for Plaintiff*

3.
VOID
1-5
7-9

IN THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2009-57024-CA-01

AMERICAN GENERAL LIFE INSURANCE COMPANY,

     Plaintiff,

v.

THE MICHAEL SASONI 2007-1 INSURANCE TRUST, AND MICHAEL SASONI 2007-2 INSURANCE TRUST, by and through their Trustee; CHRISTIANA BANK & TRUST CO., as Trustee of The MICHAEL SASONI 2007-1 INSURANCE TRUST and MICHAEL SASONI 2007-2 INSURANCE TRUST; MICHAEL SASONI, individually; STEPHEN B. WECHSLER, individually and as principal of the Wechsler Financial Group, Inc.; WECHSLER FINANCIAL GROUP, INC.; KEVIN BECHTEL, individually and as principal of Life Brokerage Partners, LLC; and LIFE BROKERAGE PARTNERS, LLC

     Defendants.

_____/

**FILED**
OCT. 2 5 2012
CLERK, CIRCUIT & COUNTY COURTS

## PLAINTIFF'S NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE

Plaintiff American General Life Insurance Company, pursuant to Florida Rule of Civil Procedure 1.420(a)(1)(A), hereby voluntarily dismisses the above-captioned action without prejudice.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by E-mail this 1st day of October, 2012 to:

David H. Charlip, Esq.
Charlip Law Group, LC
Aventura Bayview
17501 Biscayne Blvd., Suite 510
Aventura, FL 33169
Primary: dcharlip@charliplawgroup.com
Secondary: arivero@charliplawgroup.com
Secondary: rfarkas@charliplaw.com
*Counsel for Defendant Michael Sasoni,
Individually*

Jonathan Galler
Proskauer Rose LLP
One Boca Place, Suite 340 W
2255 Glades Road
Boca Raton, FL 33431
Primary: jgaller@proskauer.com
*Counsel for Defendants The Michael Sasoni 2007-1
Trust, Michael Sasoni 2007-2 Insurance Trust and
Christiana Bank & Trust Co., as Trustee*

Charles G. Geitner
Hinshaw & Culbertson LLP
100 South Ashley Drive, Suite 500
Tampa, FL 33602
Primary: cgeitner@hinshawlaw.com
Secondary:zharrington@hinshawlaw.com
Secondary: psantivasci@hinshawlaw.com
*Counsel for Defendants Kevin Bechtel and Life
Brokerage Partners*

Ackerman, Link & Sartory, P.A.
*Attorneys for Plaintiff*
777 S. Flagler Drive, Suite 800 East
West Palm Beach, Florida 33401
Telephone: (561) 838-4100
Facsimile: (561) 838-5305

BY: _____

David P. Ackerman (FBN: 374350)
Primary: dackerman@alslaw.com
Secondary: klee@alslaw.com
Scott J. Link (FBN: 602991)
Primary: slink@alslaw.com
Lanelle K. Meidan (FBN: 94280)
Primary: lmeidan@alslaw.com
Secondary: Stephen@alslaw.com

And

2

Bk 28308 Pg 2272 CFN 20120723481 10/11/2012 09:31:47 Pg 2 of 3 Mia-Dade Cty, FL

**Of Counsel**
MAYNARD COOPER & GALE, PC
Michael D. Mulvaney,
MMulvaney@maynardcooper.com
David P. Donahue,
DDonahue@maynardcooper.com
1901 Sixth Avenue North, Suite 2400
Birmingham, AL 35203
Telephone: (205) 254-1000
Facsimile: (205) 254-1999

*Attorneys for Plaintiff*

BJ1725.DOC