UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | : : : |
| Plaintiff, | : : |
| v. | : CASE NO.: 8:15-CV-192-T-AEP |
| KEVIN H. BECHTEL and LIFE BROKERAGE PARTNERS, LLC, | : : : : |
| Defendants. | : |

**PLAINTIFF AMERICAN GENERAL LIFE INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT**

COMES NOW, the Plaintiff, American General Life Insurance Company ("American General"), and hereby submits the following Memorandum of Law in Opposition to Defendant Kevin Bechtel ("Bechtel") and his single-member LLC, Life Brokerage Partners' ("LBP") Renewed Motion for Summary Judgment. (Doc. 127) As set forth below, not only is Defendants' motion due to be denied but American General is entitled to judgment as a matter of law as previously set forth in its Renewed Motion for Summary Judgment (Doc. 102).

**ARGUMENT**

**I. Defendants are Not Entitled to Summary Judgment as to the 2003 Agency Agreement.**

Based on the weakest of inferences, Defendants maintain that "there is no contract between Bechtel and American General" and "[t]he document referenced as Exhibit A to the Amended Complaint is actually a contract between American General and LBEG." (Doc. 127 at p. 2) As set out below, Defendants are not entitled to summary judgment because any assertion that the 2003

Agency Agreement was between Life Brokerage Equity Group ("LBEG") and American General is both illogical and overwhelmingly contradicted by the record in this case.

### A. The 2003 Agency Agreement does not "plainly state" that Life Brokerage Equity Group is the contracting party.

The very first point raised by Defendants in their Renewed Motion for Summary Judgment is that the 2003 Agency Agreement "**plainly states** that Life Brokerage Equity Group, Inc. is the contracting party and therefore has no bearing on the instant dispute." Doc. 127 at p.2 (emphasis added). Defendants make this unequivocal and rather remarkable statement despite the fact that the name "Life Brokerage Equity Group" does not appear anywhere in the Agreement. Defendants base this statement on the fact that the letters "VP" appear in the 2003 Agency Agreement in the blank marked "Title" and the corporate tax identification number of LBEG is provided rather than Bechtel's individual social security number. Yet the same page of the Agency Agreement they rely upon also states, "**if Representative is a Corporation, the full corporate name must appear above**." *See* Aff. of Jalen V. Lohman at Ex. A, attached hereto as Exhibit A. In fact, the only name that actually does appear within the four corners of the 2003 Agency Agreement is that of Kevin Bechtel. *Id.*

The evidence shows that American General can distinguish an agency agreement entered into with an entity from an agreement entered into with an individual agent based on the company's practice of placing the entity's name on the signature page. Klotz Depo. at 36:11-37:8, attached as Ex. B. Not surprisingly, the 2002 Agreement with LBEG, the 2007 Agency Agreement with LBP and the 2007 Agency Agreement with Life Brokerage Financial Group ("LBFG") each have the name of the entity on the signature page while the 2003 Agreement only has Bechtel's name. *See* Comparison of Signature pages of 2002 Agency Agreement with LBEG, 2007 Agency

Agreement with LBP and 2007 Agency Agreement with LBFG with the signature page of the 2003 Agency Agreement, attached as Exhibit C.

### B. The 2003 Agency Agreement is between Bechtel and American General, was in effect at all times pertinent to this matter and should be enforced.

Beyond the fact that the face of the 2003 Agency Agreement itself actually "plainly states" that Kevin Bechtel is the contracting party, Defendants' claims are also totally unsupported and refuted by the record in this case. First, it is undisputed that LBEG entered into an Agency Agreement with American General the year before in 2002 with Gary Richardson as its principal. *See* Supplemental Affidavit of Jalen V. Lohman at Ex. 3, attached hereto as Exhibit D.  In 2003, there would have been no need or reason for American General to enter into another, duplicate, contract with LBEG.   Nor does the record reflect that LBEG or anyone associated with LBEG requested that the 2003 Agency Agreement replace the existing agreement between LBEG and American General.   Instead, the record is clear that LBEG requested that Kevin Bechtel be contracted "as an officer" of LBEG – not *as* LBEG (as Gary Richardson was).   Supp. Lohman Aff. at Ex. 1.  In fact, the only significance to LBEG's request that Bechtel be contracted "as an officer" of LBEG would be that American General could accept Bechtel's signature (in addition to Gary Richardson's) as that of LBEG's on issues related to the appointment of downline agents.

Moreover, if the 2003 Agency Agreement was truly between LBEG and American General as Defendants maintain, then the Assignment of Agency Contract document that Kevin Bechtel simultaneously executed would be superfluous and make no sense.  Regardless of whether the Assignment of Agency Contract document was intended to serve as an assignment of the entire contract or just the commissions earned by Bechtel – either way, Defendants' argument requires that they also take the untenable position that LBEG assigned its own contract to itself.  Rather

3

than actually admit the glaring inconsistency between the record and their argument that LBEG was the contracting party, Defendants prefer to avoid the issue altogether and flatly state:

> At the same time that Bechtel [e]xecuted the 2003 Agency Agreement on behalf of LBEG, the parties and American General executed an Assignment of Contract that, with American General's permission, assigned all any [sic] **of Bechtel's** "rights, privileges, duties and obligations" to LBEG.

Doc. 127, p. 4 (emphasis added). Again, if the 2003 Agency Agreement was "plainly" between American General and LBEG from the outset, what "rights, privileges, duties and obligations" would Bechtel have had to assign to LBEG at that time or to LBP in 2007?

Fortunately, reconciling these contradictions is not necessary because the evidence is overwhelming that the 2003 Agency Agreement was entered into between Kevin Bechtel and American General. Specifically, the record reflects:

- American General's Corporate Representatives, Jalen Lohman and Jana Klotz, both testified that the 2003 Agency Agreement is between American General and Kevin Bechtel. Lohman Aff. at ¶ 5, Deposition of Jana Klotz at 36:11-37:8, attached hereto as Exhibit B.

- At the time LBEG submitted the appointment application for Kevin Bechtel in 2003, LBEG had an existing Agency Agreement with American General dating back to 2002. Lohman Supp. Aff. at ¶ 7.

- The application for the 2002 Agency Agreement was transmitted to American General from John Ekberg along with a memo stating, "Following is the contract **for Life Brokerage Equity Group**. **Gary Richardson is the principal**." Lohman Supp. Aff. at Ex. 3. Thereafter, American General approved the appointment and assigned a single agent code (OPU67) to cover both Richardson and LBEG.

- By contrast, the 2003 Agency Agreement was sent to American General by personnel from LBEG with the instruction: "Attached is contracting **for Kevin Bechtel.** Kevin is to be appointed as an officer of Life Brokerage Equity Group, agent OPU67." Lohman Supp. Aff. at Ex. 1 (emphasis added). American General thereafter approved Bechtel's application, assigned him a unique agent code (OWD11) that was placed under the OPU67 agent code previously assigned to Richardson and LBEG. *Id*.

- Bechtel previously identified the identical 2003 Agency Agreement as part of *his personal* contracting application package in a deposition taken in 2011 in another

4

      case. *See* 2011 Deposition of Kevin Bechtel at 51:1-52:3, attached hereto as Exhibit E.

- During the same 2011 deposition, Bechtel also admitted that, in 2007 he had an individual contract with American General in addition to the contract between LBP and American General. *Id*. at 41:8-14, 62:3-9.

- Bechtel admitted in the Answer in this case and in a previous Complaint filed against American General in Delaware that <u>he was appointed as an agent of American General</u>.  Answer at ¶'s 8 and 10 (Doc. 18); Delaware Complaint, Lohman Aff. at Ex. J.

- Multiple documents in American General's records that show that Bechtel's OWD11 and 3P264 agent codes were classified as an "individual" contract rather than as a "corporation," while the 3P263 agent code assigned to LBP and the 3P261 agent code assigned to LBFG were classified as contracts with a "corporation." **See** Documents attached hereto as Exhibit F.
- American General sent separate letters of termination to Kevin Bechtel and to LBP in 2008. See Termination Letters, attached hereto as Exhibit G.

    In order for summary judgment to be entered in favor of Defendants on this issue, a reasonable juror would have to *willfully ignore* all of the documentary evidence and testimony provided by American General in this case as well as the contradictory sworn testimony provided by Bechtel in a previous case. Indeed, this Court would have to overlook such evidence before even finding that a material question of fact exists as to the proper parties to the 2003 Agency Agreement.

      **C. LBEG and Bechtel Abandoned and/or Modified the 2003 Assignment of Agent Contract by Mutual Consent.**

    As noted above, at the same time Bechtel executed the 2003 Agency Agreement, he also executed a document entitled "Assignment of Agent Contract." According to its language, Bechtel purportedly assigned his entire contract with American General to LBEG (as opposed to just the commissions earned).[1]  The Court's original Summary Judgment Order of September 20, 2016

---

[1] Jana Klotz previously testified in this case that during the 2003 timeframe, American General used the "Assignment of Agent Contract" form interchangeably with the "Assignment of Commissions" form. Unless an "Assignment of

5

(Doc. 81) found that in the absence of a release, the 2003 assignment created questions of fact as to Bechtel's individual ability to assign his commissions to LBP in 2007 as well as his personal liability to return the commissions earned by him through his 2003 Agency Agreement.  Although this argument had not previously been advanced by Defendants prior to the Court's Order, Defendants now argue that even if the 2003 Agency Agreement is found to be between American General and Kevin Bechtel, the 2003 Assignment of Agency Contract nevertheless insulates Bechtel from individual liability in this case.

      1. Defendants rely on an improper "straw man" argument to avoid addressing the conduct of the parties which clearly indicates that the 2003 Assignment of Agency Contract was abandoned or modified.

In a transparent attempt to deflect attention from the evidence in the record demonstrating that LBEG and Bechtel both intended to abandon the 2003 Assignment of Agency Contract, Defendants have mischaracterized American General's position by stating that the 2003 Assignment of Agency Contract was abandoned "by Bechtel when well after the Sasoni policies were issued, he entered into a separate contract [referred to by Defendants as the 2008 Cardinal Marketing Agreement]." Doc. 127 at p. 5.  Defendants then go on to use this "straw man" argument to explain why American General is not a third party beneficiary of the 2008 Cardinal Marketing Agreement and why it is not entitled to enforce its terms.[2]  **To be clear: American**

---

Agent Contract" form was accompanied by some indication that the agent was selling his agency, merging with another agency or other similar circumstances, American General treated it as a simple assignment of commissions. Klotz Depo. at 18:8-22:21.

[2] Courts routinely reject similar "straw man" or "fallacy of diversion" type arguments.  *See Hayas v. GEICO Gen Ins. Co.*, 2014 U.S. Dist. LEXIS 155205, *8-9 (M.D. Fla.)(rejecting position of party characterized as "a straw man argument"); *Palm Partners, LLC v. City of Oakland Park,* 102 F.Supp.3d 1334, 1346 (S.D. Fla. 2015)(rejecting argument made by Plaintiff in opposition of motion for summary judgment as "nothing more than a straw man that distracts from [the real issue presented]"); *see also Apodaca v. Discover Fin. Servs.*, 417 S.Supp.2d 1220, 1229 (D. N.M. 2006)("I reject this argument because it employs the fallacy of diversion, also known as the "straw man fallacy. Under this fallacy, [defendant] avoids disputed factual issues by minimizing or distorting Plaintiff's claim . . . . [h]aving minimized or distorted Plaintiff's claim . . . [defendant] then proceeds to refute it . . . .").

**General does not and has not claimed that the 2008 Cardinal Marketing Agreement, in and of itself, evidences that Bechtel and LBEG abandoned the 2003 Assignment of Agent Contract.** Rather, as set out below, American General has merely provided evidence of the conduct of the parties which unequivocally demonstrates their intent to abandon or modify the 2003 Assignment of Agent Contract. The references to the 2008 Cardinal Marketing Agreement simply affirm the actions the parties had previously taken and decisions the parties had previously made.

> 2. The evidence in this case unequivocally establishes that LBEG and Bechtel abandoned and/or modified the 2003 Assignment of Agent Contract by mutual consent.

What Defendants seek to avoid and what the evidence makes clear is that, even in the absence of a formal release, all of the interested parties, including Bechtel, fully intended for the 2003 assignment to LBEG (whether the intent was to assign the entire contract or just the commissions) to be released and acted at all times as though it was. The abandonment of a contract may be effected by the acts of one of the parties thereto where (1) the acts of that party are inconsistent with the existence of the contract and (2) are acquiesced in by the other party. *See Yacht Ventures, LTD. v. Global Marine Group, LLC*, 2008 U.S. Dist. LEXIS 60753 (S.D. Fla)(*citing Dean Witter Reynolds, Inc. v. Fleury*, 138 F.3d 1339, 1342 (11th Cir. 1998) and *McMullen v. McMullen,* 185 So. 2d 191, 193 (Fla. 2d DCA 1966)). Importantly, abandonment of a contract may be determined from the conduct of the parties. *See Sinclair Refining Co. v. Butler*, 172 So. 2d 499 (Fla. 3d DCA 1965); *Kuharske v. Lake County Citrus Sales*, 44 So. 2d 641 (Fla. 1949); *see also* 11 Fla. Jur. Contracts § 224 (2016). Similarly, it is well settled that a written contract may be modified by the subsequent conduct or course of dealing of the parties. *See Rhodes v. BLP Assocs.*, 944 So. 2d 527 (Fla. 4th DCA 2006); *St. Joe Corp. v. McIver*, 875 So. 2d

375, 382 (Fla. 2004); *Gallagher v. Dupont*, 918 So. 2d 342, 347 (Fla. 5th DCA 2005); *White v. Ocean Bay Marina, Inc.*, 778 So. 2d 412 (Fla. 3rd DCA 2001); *Franklin Life Ins. Co. v. Davy*, 753 So. 2d 581, 586 (Fla. 1st DCA 1999); *Beach Higher Power Corp. v. Granados*, 717 So. 2d 563, 565 (Fla. 3rd DCA 1998).

In this case, the conduct of the parties leaves no room for doubt as to their intention to abandon or modify the 2003 Assignment of Agency Contract. First, on February 28, 2007, <u>10 days before</u> Bechtel assigned his individual commissions to LBP, Bechtel and Richardson dissolved LBEG. See 2008 Articles of Dissolution of Life Brokerage Equity Group, Inc., attached hereto as Exhibit H. LBEG's dissolution is also memorialized in the 2008 Cardinal Marketing Agreement. *See* 2008 Agreement at p. 2, attached hereto as Exhibit I. The 2008 Cardinal Marketing Agreement makes clear that Bechtel and Richardson were the only members of LBEG and that "[n]o other party has any rights or interests in LBEG," which confirms Gary Richardson's testimony that he and Bechtel were the only shareholders of LBEG and that their consent was all that would have been required to bind LBEG *Id.* It also clearly states that as of February 28, 2007,

> "LBEG was dissolved for all practical business purposes <u>but the entity remains in order to clear up outstanding liabilities and</u> <u>collect renewal commissions owed to it from its previous business operations</u>."

*Id*. (emphasis added). In other words, the parties contemplated and agreed that LBEG would <u>not</u> receive commissions from the sale of any <u>new</u> policy of insurance *after* the dissolution date and would only be entitled to receive payment of <u>renewal</u> commissions on policies sold *before* the dissolution date. The dissolution of LBEG and the subsequent agreement of its only members clearly evidence an intent to release any prior assignment of Bechtel's Agreement going forward.

Second, whether accomplished through a release, abandonment or modification, the evidence is overwhelming that in 2007, LBEG and Bechtel mutually desired that any continued

8

assignment of Bechtel's contract or commissions on future policies to LBEG be extinguished. They acted accordingly in all respects as though it was since that time. Richardson and Bechtel no longer wished to do business together. Even before they *both* requested contractual changes and separate agreements with American General, they *both* took action to dissolve LBEG and *both* created separate entities to carry on their separate business interests. Even more compelling is the fact that after the requested changes were placed into effect, American General paid commissions on the Sasoni policies to LBP and not to LBEG, yet there is no record or claim that LBEG believed that it was entitled to receive them. In his deposition, Gary Richardson agreed that the commissions paid for the Sasoni policies reflected the changes that he and Bechtel requested for themselves and LBEG in 2007. *See* Deposition of Gary Richardson at 49:12-51:20, attached hereto as Exhibit J. In fact, the evidence also reveals several instances in 2007 and 2008 where LBEG actually *returned commissions* it (mistakenly) received from American General for the sale of policies linked to Bechtel's individual contract and new agent code - commissions that LBEG would have clearly been entitled to receive had the 2003 Assignment of Agency Contract remained in place. See documents attached as Exhibit K. Finally, other than the language in "Assignment of Agent Contract" document itself, Defendants have offered no evidence or testimony showing either that the parties intended for Bechtel's contract to be assigned to LBEG in its entirety in 2003 or that the parties intended for the 2003 assignment (of whatever it was supposed to be) to remain in effect past the dissolution of LBEG in February 2007.[3] The evidence demonstrating a clear intent to abandon or modify the 2003 Assignment of Agent Contract has not been refuted and Defendants are clearly not entitled to summary judgment as to the 2003 Agency Agreement.

---

[3] As noted by the Court in its Order of September 20, 2016, even Bechtel testified that it would not surprise him if American General's records indicated that he assigned his commissions to LBP in 2007 and that he would have wanted such an assignment in place at that time. (Doc. 81 at p. 13).

## II. Defendants are Not Entitled to Summary Judgment as to the 2007 Agency Agreement Between LBP and American General.

Similarly, Defendants seek summary judgment based on their assertion that the 2007 Agency Agreement with LBP identified by American General in its Amended Complaint is "not the contract between the parties." Doc. 127 at pp. 8-10. Although Defendants do not dispute that LBP entered into an agency agreement with American General in 2007, Defendants claim that they were "never presented with" the terms and conditions of the contract. However, even if the Court believes Defendants' story that American General did not specifically provide them with copy of the terms and conditions of the 2007 Agency Agreement or even if it determines that a question of fact exists, because Defendants were clearly on notice of the existence of additional terms and conditions, they are nevertheless bound by them. In fact, in order for Defendants to prevail on their Renewed Motion for Summary Judgment, this Court would need to find that the *only* conclusion that a reasonable juror could reach is that Bechtel was somehow under the reasonable impression that he (on behalf of LBP) entered into an Agency Agreement with American General *with literally no terms and conditions – not even terms that required American General to pay commissions*. A reasonable juror simply could not reach such a conclusion based on the evidence in this case.

                a. Bechtel and LBP were on notice of the terms and conditions of the 2007 Agency Agreement.

Defendants clearly seek to limit the Court's inquiry to the narrow question of whether American General can "prove" that it provided Defendants with a complete copy of the 2007 Agency Agreement. However, this limited question does not end the inquiry of whether or not the terms and conditions contained in the 2007 Agency Agreement may be enforced in this case. When faced with the question of whether terms and conditions of an agreement may be enforced

where one side of the agreement claims that they either did not see the terms or were not made aware of their existence, courts look to the reasonableness of the efforts to disclose the terms and conditions made by the party seeking their enforcement as well as the efforts to protect their own interest made by the party seeking to avoid the enforcement of the terms and conditions.  Courts in this state routinely hold that when a party is placed on notice of the existence of terms and conditions, they are deemed to have acknowledged and agreed to be bound by them by accepting the benefits conferred by the contract.  See *Williams v. Metropcs Wireless, Inc.*, 2010 U.S. Dist. LEXIS 39225 (S.D. Fla. April 21, 2010); *Wexler v. Rich*, 80 So. 3d 1097, 1100-1101 (Fla. Dist. Ct. App. 4th Dist. 2012) (quoting *Mfrs.' Leasing, Ltd. v. Fla. Dev. & Attractions, Inc.*, 330 So. 2d 171, 172 (Fla. 4th DCA 1976) (Florida adheres to the principle that a "party has a duty to learn and know the contents of a proposed contract before he signs"").  The law in Florida is clear that a party who accepts the benefits under a contract cannot escape its burdens. *See Specialty Nat'l Ins. Co. v. U-Save Auto Rental of Am. Inc.*, 2008 U.S. Dist. LEXIS 108505 (M.D. Fla.)(*citing Hartford Accident & Indemnity Co. v. L&T, Inc.*, 455 So. 2d 1074, 1074 (Fla. 1st DCA 1984)).  Moreover, whether or not a party chooses to access the terms and conditions and whether or not that party chooses to read them, does not control.  *See Sabino v. Kerzner International Bahamas, Ltd.*, 2014 U.S. Dist. LEXIS 180090, *13-14 (S.D. Fla.)(The reasonableness of the notification cannot depend on whether the party being notified chooses to read the agreement before entering into it; something over which Defendants, for all practical purposes, do not control.); *Myhra v. Royal Caribbean Cruises, Inc.*, 695 F.3d 1233, 1246 n. 42 (11th Cir. 2012) (whether a party chose to avail themselves of the notices and to read the terms and conditions is not relevant); *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Benton*, 467 So. 2d 311, 312 (Fla. Dist. Ct. App. 5th Dist. 1985) (quoting *Allied Van Lines, Inc. v. Bratton*, 351 So.2d 344, 347 (Fla. 1977) ("No party to a

11

written contract in this State can defend against its enforcement on the sole ground that he signed it without reading it.").

Most importantly, courts consider whether the party seeking to avoid application of specific terms and conditions was provided with **prior notice** of their existence. *See Son v. Kerzner Int'l Resorts, Inc.*, 2008 U.S. Dist. LEXIS 67482, *15 (S.D. Fla.)(finding prior notice of similar terms and condition based on documents executed by plaintiff during previous stay at defendant hotel sufficient notice to plaintiff of existence of additional terms and conditions applicable to subsequent stay); *see also Horberg v. Kerzner Int'l Resorts, Inc.*, 2007 U.S. Dist. LEXIS 97693, *5-6 (S.D. Fla.). The undisputed evidence in this case is as follows:

- The 2007 Agency Agreement produced by American General in this case contains the terms and conditions associated with the form / version number "AGLB- 1056-1105" noted on the signature page executed by Bechtel. Lohman Aff. at ¶6.

- American General's form contracts were available online. Richardson Depo. at 33:21-34:11; Deposition of John Ekberg at 16:21-17:11, 40:1-40:22, attached as Exhibit L; Klotz Depo. at 39:16-40:3, Lohman Supp. Aff. at ¶12.

- Both John Ekberg and Gary Richardson acknowledged that American General utilized form Agency Agreements and it was possible to determine the precise terms and conditions that went along with a signature page by referring to the version number and viewing terms and conditions of that particular version of the agreement – because those agreements were available online. Richardson Depo. at 48:4-49:3; Ekberg Depo. at 18:15-19:2.

- American General did not negotiate or alter the terms and conditions of the form Agency Agreements. Ekberg Depo. at 16:17-17:17.

- The Agency Agreement with American General previously executed by Bechtel in 2003 contained terms and conditions which are practically identical as the 2007 Agency Agreement.

- On at least eleven separate occasions from August 2005 through June 2006, Vanessa Nally (Derousie) with LBEG and later with LBP, provided American General with signed copies - *complete with all of the terms and conditions* - of the *exact same* form Agency Agreement (AGLB- 1056-1105) that Defendants (and Ms. Nally-Derousie) now claim they knew nothing about only a few months later in

      March 2007. Full Agency Agreements sent to American General by Vanessa Nally are attached as Exhibit M.

- These same Agent Agreements were transferred from LBEG hierarchy to LBP's hierarchy in 2007 at Bechtel and LBP's request in conjunction with the requested contract changes. Lohman Aff. at Exhibit D.

- Richardson, Ekberg, Klotz and Lohman each testified that it would not be reasonable for an agent as experienced as Bechtel to believe that his or LBP's contract with American General consisted of only a signature page. Richardson Depo at 48:23-49:3, 58:15-59:2; Ekberg Depo at 40:23-41:5, Lohman Supp. Aff. at ¶16.

- Bechtel *previously admitted* that he did not believe that the Agency Agreement that he signed in 2007 on behalf of LBP consisted only of a signature page. *See* Deposition of Kevin Bechtel at 102:2-102:14, attached hereto as Exhibit N.

Defendants do not claim that American General somehow prevented them from reviewing the additional terms and conditions nor do they claim that they attempted to determine whether there were additional terms and conditions but were unsuccessful. Further, it remains undisputed that at all times Bechtel – whether with LBEG or LBP – had access to the full version of the Agency Agreements with American General because they were available online;[4] a fact further supported by LBEG's initial submission to American General of the <u>full version</u> of the Agency Agreements for at least eleven separate agents from December 2005 through June 2006 as part of its effort to secure American General appointments for them. *See* Exhibit N.

In response to evidence previously provided by American General that the form agency agreements were available online, Defendants submitted new affidavits from Bechtel and Vanessa Nally Derousie. Without disputing that the form Agency Agreements were available online, they both claim that LBP never received a version of the 2007 Agency Agreement that included terms

---

[4] Defendants also argue that because LBP had not yet been contracted with American General that it would not have had access to American General's website. Of course, this convenient bit of legal fiction overlooks the fact that Bechtel was an officer of Life Brokerage Equity Group and the fact that Vanessa Nally was employed with LBEG in its licensing and contracting department throughout their transition from LBEG to LBP. It's it undisputed that during all relevant times LBEG had access to American General's website.

and conditions nor were they made aware that the full version of the form Agency Agreement was available online. Doc. 127 at Exhibits L and M.  Remarkably, both Bechtel and Nally-Derousie appear to state under oath that they were <u>also unaware</u> that the Agency Agreement contained any terms and conditions and consisted of any more than a mere signature page! *See* Bechtel Affidavit at ¶ 8 ("Prior to executing the 2007 'Agency Agreement' I was not aware that there were 'specimen' terms and conditions that went along with the 'Agency Agreement'"); Nally-Derousie Affidavit at ¶ 13 ("Prior to reviewing the 'specimen' terms and conditions in preparation for this affidavit, I had never seen them . . . .").

In light of the evidence in this case, it is simply incredible that Bechtel and LBP are asking this Court to allow them to avoid their responsibilities to American General based on sworn testimony where they not only claim that they "were not presented with" the terms and conditions of the 2007 Agreement but also that they were not even aware that the Agency Agreement included terms and conditions.  As an experienced life insurance professional, Bechtel was plainly aware of and, at an absolute minimum, possessed constructive notice that life insurance agency agreements, in general, contain actual terms and conditions and do not consist of mere signature pages.  Bechtel also clearly possessed <u>actual</u> notice that this *particular* form of Agency Agreement contained these *particular* terms and conditions.  In fact, the testimony from Bechtel and Nally-Derousie that they were not aware that the 2007 Agency Agreement contained *any* terms and conditions is so patently false and so completely contradicted by the record that this Court should either strike it from their affidavits or disregard it completely.

In this case, not only are Defendants not entitled to summary judgment, there are no questions of material fact preventing the Court from granting judgment as a matter of law in American General's favor.

### III. The Statute of Limitations Applicable to American General's Claims for Breach of Contract Did not Begin to Run Until July of 2014, at the Earliest, When the Sasoni Policies Were Rescinded.

Defendants also assert that American General's present suit is untimely, arguing the limitations period applicable to claims for breach of contract began to run in 2009 when American General filed suit against Bechtel, LBP, and others in Dade County, Florida in conjunction with its claim that the Sasoni Policies were due to be rescinded. In that case, as demonstrated by a reading of the Complaint as a whole, American General's breach of contract claim was premised on Defendants' failure of their contractual duties to (1) indemnify American General for expenses and costs (including attorney's fees) incurred as a result of any act or omission of the agents, (2) failing to assure that any representative under the jurisdiction of the agent act in compliance with American General's policies and procedures and (3) follow the applicable insurance laws in the state(s) where the agent does business.[5] In a *separate count*, American General requested relief in the form of a *declaratory judgment* seeking a rescission of the policies and ordering the repayment of commissions. *See* Dade County Complaint, at ¶¶ 90-101, Ex. K to Lohman Aff. In other words, the breach of contract claim contained in the 2009 Dade County complaint was premised on a *different* set of facts and related to *different* contractual provisions than what is at issue in the present case.

Pursuant to Florida law, the statute of limitations for a breach of contract claim based on a written instrument is five years. Fla. Stat. § 95.11(2)(b). "[A] cause of action on a contract accrues and the statute of limitations begins to run from the time of the breach of the contract." *State Farm Mut. Auto Ins. Co. v. Lee*, 678 So. 2d 818, 821 (Fla. 1996). American General's claims for breach

---

[5] *See* Section VII(C), (N) and (S) of the 2003 and 2007 Agency Agreements. Lohman Aff. at Ex. A and B.

15

of contract are based on Section V(F) of both Agency Agreements. Specifically, that provision states:

> Whenever, after delivery, the Insurer shall effect or procure the surrender, rescission or cancellation of any policy and refund premiums paid thereon, the Insurer shall have the right to charge back commissions and demand that the REPRESENTATIVE repay such commission to the Insurer."

Lohman Aff. at Ex. A and B. In this case, there was no breach of Section V(F) of the Agency Agreements until the Sasoni Policies were actually rescinded and Defendants refused to return commissions owed to American General. The Sasoni Policies were rescinded pursuant to a Rescission and Release Agreement entered into with the owners of the Sasoni Policies that was signed in July 2014. *See* Rescission and Release Agreement, attached hereto as Exhibit P. As a result, the earliest the breach of Section V(F) of the Agency Agreements could have occurred was on or about July 2014, when the policies were rescinded and commissions were due to be returned to American General.

Further, to the extent Defendants attempt to somehow argue that <u>all</u> claims asserted by American General pursuant to the Agency Agreements accrued in 2009, Defendants are again incorrect. In *Abbott Laboratories, Inc. v. General Electric Capital*, 765 So. 2d 737 (Fla. Dist. Ct. App. 2000), the court found that Plaintiffs' two distinct claims for breach of contract accrued at different times, resulting in one of the claims being barred by the limitations period while the other, based on subsequent events, was not. In this case, the breach of contract claim arising out of Section V(F) of the Agreements did not accrue until Defendants refused to abide by the terms of Section V(F) requiring them to return commissions. To argue a breach of contract claim arising out of Section V(F) of the Agreement accrued in 2009 is nonsensical as the Sasoni Policies were not rescinded until 2014. It is the rescission of the policies, return of premium, demand for repayment, and the subsequent refusal by Defendants to do so which started the running of the

five-year statute of limitations period. American General's claims in this case are timely and Defendants' request for summary judgment on this basis should be denied.

## IV. **American General has satisfied all conditions precedent to bringing this action.**

Finally, as a last ditch effort to convince this Court that summary judgment should be granted in Defendants' favor, Defendants, without offering any evidence or legal authority, assert that the premiums paid for the Sasoni Policies were not refunded and thus American General did not satisfy all conditions precedent to establish its entitlement to a return of commissions. In support of their argument, Defendants assert two main points, neither of which comes close to supporting such a position: (1) the amount paid to the owners of the Sasoni Policies as part of the Rescission and Release Agreement was *in excess* of the premiums paid on the Policies, and (2) the Rescission and Release Agreement refers to the amount paid as the "settlement amount," as opposed to a "premium refund." As set out below, however, it is undisputed that American General rescinded the Sasoni Policies and refunded the premium payments as part of resolving the claims between it and the owners.

First, <u>no language in the Agency Agreements supports the conclusion that a settlement amount in excess of the premiums refunded in conjunction with a rescission does not satisfy the requirement that all premiums are refunded</u>. As Defendants and this Court are well aware, settlement amounts are often calculated based on multiple factors. For example, a single settlement agreement may relate to multiple claims, include interest and attorneys' fees, or compensate a party in various agreed-upon terms specific to the case and circumstances. As this case demonstrates, rescissions of life insurance policies seldom occur in a vacuum and often involve other issues. Thus, in the absence of any language expressly limiting American General's right to charge back commissions to situations where a premium refund and not a penny more was

17

made (despite any unique circumstances that led to the rescission), a settlement amount above the amount of premiums refunded should in no way result in a finding that all conditions precedent were not met. Second, despite Defendants' claims that "American General has failed to provide any evidence that it refunded premiums," American General has submitted evidence proving that it internally processed $1,368,000 of the total settlement as a premium refund. Jalen Lohman testified in his affidavit that "[t]he settlement amount – which included a full refund of the $1,368,000 in premiums received for the Sasoni Policies, was processed as a premium refund in September 2014." Lohman Aff. at ¶ 19. Defendants have offered *no evidence* to the contrary.

The Southern District of New York was recently presented with this exact issue and held that payment in excess of the premium amount was of no consequence to the agent's obligation to return commissions. In *American General Life Insurance Company v. David Gottdenger*, 2016 U.S. Dist. LEXIS 7767 (S.D. N.Y. Jan. 21, 2016), the defendant agent and American General entered into an Agency Agreement containing identical language to the Agreements at issue in the present matter. In 2005 and 2006, Gottdenger submitted two life insurance applications and received commission payments from American General on the policies. *Id.* at *3. American General subsequently initiated a lawsuit for alleged material misrepresentations in the policy applications, and American General and the policy holders reached a Confidential Settlement Agreement and Release rescinding the 2006 policy. *Id.* at *4. Following the rescission and refunding of the premiums, American General demanded repayment of the commission payments from Defendant pursuant to Section (V)F of the agreement. *Id.* Similar to the Defendants in the present case, the agent in the *Gottdenger* case contended he was only obligated to repay the commissions "if <u>only</u> the premiums were refunded," and was not obligated to repay the commissions where the insurer pays a portion of the policy amount in addition to refunding the

18

premiums. *Id.* at *8. The Court disagreed with Gottdenger, finding the (identical) language found in section (V)F of agreement was clear and unambiguous, and it was "<u>of no consequence whether [American General] paid any portion of the policy amounts, or offered any other consideration, to the policy holder in order to procure the rescission of the 2006 Policy</u>." *Id.* Likewise, it is of no consequence that the settlement amount paid pursuant to the Rescission and Release Agreement was in excess of the premiums paid on the Sasoni Policies.

As demonstrated above, it is simply immaterial that the premiums refunded through the Rescission and Release Agreement were not explicitly designated as such in that Agreement and it is undisputed that American General has met all conditions precedent for its breach of contract claim.

## CONCLUSION

For the foregoing reasons, Plaintiff American General respectfully requests that this Court enter an order denying Defendants' Renewed Motion for Summary Judgment.

Dated this the 24th day of May, 2017.

        Respectfully submitted,

        /s/ *David P. Donahue*
        David P. Donahue
        Florida Bar No. 119885

        Attorney for Plaintiff American General Life Insurance Company

**OF COUNSEL:**

**BRESSLER, AMERY & ROSS, P.C.**
2001 Park Place, Suite 1500
Birmingham, AL  35203
Tel:  205.719.0400
Fax:  205.719.0500
Email:  ddonahue@bressler.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of May, 2017, the foregoing document was electronically mailed and/or filed using the CM/ECF system and/or by U.S. mail, postage prepaid and properly addressed, to all counsel of record as follows:

Richard C. Millian, Esq.
**The Millian Law Group**
13513 Prestige Place, Suite 101
Tampa, FL  33635
Email:  rick@millianlaw.com

                                       /s/ *David P. Donahue*
                                       **OF COUNSEL**