# EXHIBIT D

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | : : : | |
| Plaintiff, | : : | |
| v. | : : | CASE NO. 8:15-CV-00192-EAK-AEP |
| KEVIN H. BECHTEL and LIFE BROKERAGE PARTNERS, LLC, | : : : | |
| Defendants. | : | |

## SUPPLEMENTAL AFFIDAVIT OF JALEN V. LOHMAN

STATE OF TEXAS

COUNTY OF HARRIS

Before me, the undersigned authority, personally appeared Jalen V. Lohman, who being deposed under oath, says as follows:

1.      My name is Jalen V. Lohman. I am Vice President of Licensing and Compensation for American General Life Insurance Company ("American General").  I am a resident of the State of Texas and am over 18 years of age. The following is based upon my personal knowledge, a review of company records and knowledge obtained in my capacity as corporate representative.

2.      On February 17, 2003, Ruth Peters from Life Brokerage Equity Group ("LBEG") sent an 11 page fax to American General attaching contracting

1

information for Kevin Bechtel and requesting that Bechtel be individually appointed as an agent of American General as an officer of LBEG. *See* February 17, 2003 fax at p. 1, attached as Exhibit 1, hereto. LBEG's existing agency code was OPU67. The fax from LBEG contained an appointment application noting that the applicants name as Kevin Bechtel and the recruiter as Gary Richardson. Richardson was the President of LBEG. The fax also contained the first page of an Agency Agreement in Bechtel's name that was executed by Bechtel. Exhibit A at p. 9.

3.     At the time that the LBEG fax was received, it was common practice for Master General Agents ("MGA") like Richardson and LBEG to submit appointment paperwork to American General for their prospective downline agents. As was the case with LBEG's fax, it was also common for the appointment materials submitted to include only a signature page of an Agency Agreement executed by the prospective applicant.

4.     In response to Bechtel's appointment application, American General assigned Bechtel the agent code of OWD11 and executed the Agency Agreement.

5.     On March 4, 2003, Richard A. Hollar, who was at that time the President and CEO of the AIG Life Brokerage marketing platform, sent a letter to Bechtel informing him that his agent code was OWD11, enclosing a copy of his

2

Agency Contract and welcoming him as a new agent. *See* March 4, 2003 letter, attached as Exhibit 2, hereto.

6.     Contrary to the recent testimony of Kevin Bechtel, LBEG already had a contract with American General prior to receipt of the February 17, 2003 fax. LBEG originally entered into an Agency Agreement with American General almost one year earlier in March of 2002. *See* Application and Contracting documents for LBEG, attached as Exhibit 3, hereto. The recruiter / upline agent of LBEG was John Ekberg with Financial Energy Insurance Group. *Id.* at p. 2.

7.     Similarly, on or about March 26, 2007, American General received a request from John Ekberg with Financial Energy Insurance Group, for new contracts to be made. *See* John Ekberg memo of March 26, 2007, attached as Exhibit 4, hereto. Ekberg informed American General that Richardson and Bechtel are "applying for contracts for newly formed entities that came out of the current Life Brokerage Equity Group." He also indicated that the two proposed contracts were enclosed. *Id.*

8.     Ekberg also sent an email to American General on March 26, 2007, informing them that Richardson and Bechtel's new contracts would be sent to their attention via overnight delivery. *See* March 26, 2007 email, attached as Exhibit 5, hereto.

3

9.     As part of the contracting process, American General also received an appointment application on behalf of Life Brokerage Partners, whose principal was indicated as Kevin Bechtel, as well as an executed Agency Agreement for Life Brokerage Partners.

10.    In response to these requests, American General approved the Agency Agreement requested for Life Brokerage Partners and assigned it an agency code of 3P263. The company also assigned a new individual agency code of 3P264 for Kevin Bechtel.

11.    American General's business practice at that time was to sign the Agency Agreement on behalf of the company and return a fully executed version to the agent.

12.    In 2007 MGA's had online access to complete of standard form Agency Agreements like the agreements at issue in this case. Moreover, it was equally common for either complete contracts or executed signature pages to be submitted to the company as part of the contracting and appointment process.

13.    The reason that only the signature pages from Agency Agreements were sometimes provided to the company with applications for appointment is because the agency agreements utilized by American General at that time were form agreements containing identical contractual terms. As such, there was no question about the terms and conditions that applied to each appointment.

4

14.   American General does not and did not utilize Agency Agreements that have no terms and conditions and merely consist of a signature page.

15.   American General would never intentionally permit an agent to submit business or pay commissions to an agent who did not have a contract with the company.

16.   It is simply impossible that an agent as experienced as Bechtel, who had been contracted with American General for nearly four years, would be under the impression or mistaken belief that the Agency Agreement between American General and Life Brokerage Partners would consist of only a signature page.

**Further the affiant sayeth not.**

Jalen V. Lohman

Sworn to and subscribed before me
this the _23_ day of February, 2016:



Notary Public

My commission expires: _06-26-2016_

```
DEVON L. HENSON
Notary Public
STATE OF TEXAS
My Comm. Exp. 06-26-2016
```

5

# EXHIBIT 1

**(to Supplemental Affidavit of Jalen V. Lohman)**

2963 Gulf to Bay Blvd Suite 330
Clearwater, Fl. 33759
(727) 791-9080 (800) 965-LBEG
Fax (727) 712-1459

**Life Brokerage
Equity Group**



| To: | Contracting | From: | Ruth Peters |
|---|---|---|---|
| **Fax:** | 800-337-0961 | **Pages:** | 11 (including cover) |
| **Phone:** | | **Date:** | 2/17/2003 |
| **Re:** | Ruth Peters | **CC:** | |

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

● **Comments:**

To whom it may concern:

Attached is contracting for Kevin Bechtel. Kevin is to be appointed as an officer of Life Brokerage Equity Group, agent **OPU67**. All commissions are to be annualized and paid to LBEG at the IMO/BGA +20 level. If you have any questions, please give me a call.

Thanks,

Ruth Peters
Life Brokerage Equity Group
rpeters@lbeg.net
(727) 791-9083
(800) 965-5234
Fax (727) 712-1459

2/18/03:07  5:45PM  Life Brokerage Equity Group          No.6388  P. 2
505933004425

# AIG AMERICAN GENERAL     REDACTED          Appointment Application

**AIG Life Brokerage**
Member of American International Group, Inc.

## Part 12  Recruiter Data   To be completed by individual recruiting applicant.

Applicant Name: KEVIN H. BECHTEL          Applicant Social Security Number:
_____Please Print_____

Recruiter Name: GARY A. RICHARDSON____     Agency Code Number: ODU67
_____Please Print_____

Title: PRESIDENT_____
_____Please Print_____

## Part 13  Appointment Requests

Please check appointment companies. All appointments require Home Office Approval.

☑ The Old Line Life Insurance Company of America.

☑ American General Life Insurance Company

☑ American General Annuity Insurance Company.

## Part 14  Commission Section - Must be completed

Contract Level Requested  ☐ IMO/BGA  ☐ MGA  ☐ GA  ☐ Agent/Producer

**Commission Level for Old Line Life AND American General Life**
(SPIA commission level is included under this section)

| Commission Level Requested: | First Year Level: | _____ |
|---|---|---|
| | Renewal Level | _____ |
| (HO Approval) | Productivity Bonus Level | _____ |

**Commission Level for AIG Annuity**
(Deferred Annuities Only under this section)

Commission Level Requested: _____

## Part 15  Additional Forms Section

Annualization:  ☐ Yes  ☐ No
   Annualization is available on a limited basis. (if applicable, annualization agreement MUST be submitted with contract)

Electronic Funds Transfer (EFT)   Please attach EFT form when requesting to receive commissions electronically.

## Appointment, Bonus and Annualization require Home Office Approval.

AGLB 1058 Rev1002                           7

AG SASONI 01136

# REDACTED

2/18/03  5:45PM   Life Brokerage Equity Group                    No.6388   P. 3
505933004421

**AIG** | **AMERICAN GENERAL**                    **Appointment Application**   **16**

**AIG Life Brokerage**
Member of American International Group, Inc.

---

## Part 1   Individual and Principal of Corporation   This is Required Information

Please Print Clearly

Social Security Number: ▓▓▓▓▓▓▓▓

Name: __Bechtel__ / __Kevin__ / __H__
        Last Name        First Name       Middle Initial

Date of Birth: __10__ / __10__ / __73__    Sex: ☑ Male   ☐ Female
       month      day      year

Resident/Home: __12925   Tar  Flower   dr__
                          Physical Address

__Tampa__   __FL__   __33626__
City                   State       Zip

Resident/Home Phone Number: __813  854  5554__    E-Mail __kbechtel @ lbeg. net__

Business Address: __2963  Gulf  to  Bay  Blvd  suite  330  Clearwater__
         Physical Address              City          State __FL__    Zip __33759__

Business Phone Number: __727  791  9080__    Fax Number __727  712  1459__

☑ I am an officer of the below corporation.

---

## Part 2   Corporate Applicants Required Information

Please Print Clearly                         Individual Applicants Do Not Complete This Section

Tax ID Number __65-0972017__

Corporate Name: __Life  Brokerage  Equity  Group__

Corporate Address: __2963  Gulf  to  Bay  Blvd  Ste  330__
__Clearwater__    __FL__    __33759__
    City                    State       Zip

Corporate Phone Number: __727  791  9080__    State Incorporated: __FL__

Fax Number: __727  712  1459__    E-Mail: __kbechtel @ lbeg. net__

Primary Officer for Corporate Records: _____

Background information reported on page – should provide information for the Officer of the corporation.

---

## Part 3   Recruiter Section - IMO/BGA Only

Primary mailing address, phone contact, e-mail and faxes    Complete ONLY when address used is **NOT** the above address.
will be communicated to the following:

All Home Office Mail and other Communication will be directed to:

Agency Name: __LIFE BROKERAGE EQUITY GROUP__   Agency Code Number: __OPU 64__

Address: __2963 GULF-TO-BAY Blvd., SUITE 330__
__CLEARWATER ,__              __FL__   __33759__
    City                      State       Zip

Fax Number: __727-712-1459__    Phone Number:: __727-791-9080__

E-Mail Address: __rpeters @ lbeg. net__    ☑ Please check when commission check is
                                       mailed directly to agent's business address.

AGLB 1058 Rev1002             1

AG SASONI 01132

2 18 (031:07P    5:45PM    Life Brokerage Equity Group                No.6388   P. 4
50593300 4422

**AIG** **AMERICAN GENERAL**          **REDACTED** Appointment Application

**AIG Life Brokerage**
Member of American International Group, Inc.

## Part 4.  Licensing and State Appointment Request

Attach copies of licenses for all requested state appointments. Provide appropriate fees for nonresident appointments.

Social Security Number: ▓▓▓▓▓▓▓▓▓▓

Applicant Name: _Kevin Bechtel_

Licensed for: ☒ Life  ☒ Health    Contracted as: ☐ Individual  ☒ Agency

Resident State: _FL_    Resident License Number: _A017162_

Nonresident Appointment State(s): _____
     Attach applicable fees and licenses for states listed above

## Part 5   Variable Licensing - Complete ONLY when variable appointment is requested.

Please complete the following ONLY when requesting variable appointment.

Who is your Broker/Dealer? _151_

CRD Number: _____

Circle all current NASD licenses that you hold: ⑥  7   22   24   26   63   Other: _____

**Independent Wholesaler Election**

Some broker-dealers may permit third-party wholesaling firms to offer certain services and support to registered representatives in order to facilitate sales of the Products. These firms are referred to by AGLD as Independent Wholesalers (IW). In order for you to sell AGLD's variable universal life insurance products through an IW, an IW agreement must be in place, your broker-dealer must be informed, pursuant to NASD Rule 3030, of the IW election and this Election Form must be submitted to AIG Life Brokerage that documents your IW selection. If you wish to obtain support through an IW firm, please indicate your election below.

☐ IW Election: _____
          (Name of IW Firms and Code Number)

## Part 6   Errors and Omissions Insurance Coverage (required at BGA/IMO Only)

☒ Yes - I have E&O Coverage (Copy of current Certification enclosed).

☐ No - I do not have E&O Coverage

fat

AGLB 1058 Rev1002                          2

AG SASONI 01133

2/18/031:07P
505933004423

 **AMERICAN GENERAL**    REDACTED          **Appointment Application**

**AIG Life Brokerage**
Member of American International Group, Inc.

## Part 7  Background Information Required On All Applicants

If this is a corporate application, the questions should be answered by and about the agency principal.

Social Security Number: ▓▓▓▓▓▓▓▓▓▓▓

### CONFIDENTIAL HISTORY/BACKGROUND INFORMATION

Please provide complete details for any "yes" answers in the Remarks section. Attach additional paper if required.

1. Have you ever been convicted of or plead guilty or no contest to:
   a. A Felony? ☐ Yes ☑ No
   b. A Misdemeanor? ☐ Yes ☑ No
   c. A violation of federal or state securities or investment related regulations? ☐ Yes ☑ No

2. Are you currently under investigation by any legal or regulatory authority? ☐ Yes ☑ No

3. Do you now owe money to any life or health insurance company? ☐ Yes ☑ No

4. Have you or a firm in which you were a partner, officer or Director been declared bankrupt or been party to a bankruptcy or receivership proceeding, or have you had a salary garnished or had liens or judgements against you? ☐ Yes ☑ No

5. Has any insurance company or securities broker-dealer terminated your contract or permitted you to resign for reason other than lack of sales? ☐ Yes ☑ No

6. Have you ever been the subject of a consumer-initiated complaint or proceeding by any self-regulatory body or any securities commodities or insurance regulatory body or organization or employer? ☐ Yes ☑ No

7. Has a bonding company ever denied, paid out on or revoked a bond for you? ☐ Yes ☑ No

8. Have you ever had a claim filed against your professional liability or errors and omissions insurance coverage? ☐ Yes ☑ No

9. Has any insurance department, government agency or self-regulatory authority ever denied, suspended, revoked, censured or barred your license or registration or disciplined you with fines or by restricting your activities? ☐ Yes ☑ No

**REMARKS SECTION: Details of "yes"**

_____
_____
_____
_____
_____
_____
_____

AGLB 1058 Rev1002                          3

AG SASONI 01134

FEB 17 2003 5:45PM   Life Brokerage Equity Group          No.6388   P. 6

2/18/031:07G
505933004424

**AIG** AMERICAN GENERAL          **REDACTED**          **Appointment Application**

**AIG Life Brokerage**
Member of American International Group, Inc.

### Part 8   Signature of Individual -or- Principal of Corporation

Social Security Number: ▉

    I have read and received, as of the date indicated below, the notice concerning investigative consumer reports, as required by law. I understand that in signing this form, I hereby authorize the American General Life Companies that I have requested appointments with (hereinafter collectively referred to as the "American General Affiliates") to investigate my background, including my credit history and interviews with former employers and/or primary insurance company. I authorize the American General Affiliates and individuals named in the application to give the American General Affiliates any information regarding me that they have available. I agree that if any of my answers to the questions in Part 7 change, I will notify, in writing, American General Affiliates within 10 business days of the incident which would cause an answer to change. I understand that falsification of information or failure to update the answers on this application may result in termination of appointment(s) with all American General Affiliates. In addition, I hereby authorize the American General Affiliates to report information about earnings and debit balances to any credit bureau or similar organization.
    I further authorize American General Affiliates, to verify my previous employment and securities registration history through the CRD system.
    I hereby authorize American General Affiliates to share background, licensing and applicant data with their affiliates. I acknowledge that I have received and reviewed the "Compliance Manual" for the American General Life Companies, and/or "Operations Manual" and I agree to abide by those principles, as amended or supplemented from time to time, in representing any of the Companies that appoint me.

Date: 2 / 1 / 03          Signature: _NR_
                                       Signature of Individual -or- Principal of Corporation

### Part 9   Signature of Recruiter

The undersigned [recommending representative or General Agent] by executing this applicant recommends the applicant to American General Affiliates as a suitable person to represent the companies. The recommending individual or General Agent also agrees to supervise and assume responsibility for the applicant, if appointed by American General Affiliates, in accordance with the terms of his/her Contract.

Signature: _____          Date: 2 / 1 / 03
    Signature of Recruiter

Print Name: _Gary A. Richardson_          Agent/Agency Code # O P V 67
    Print Name of Recruiter          Required

### Part 10   Home Office Section

Signature: _____          Date: ___ / ___ / ___
    (Additional signatures, if required, RVP, RM)

Print Name: _____          Regional Code Number _____

RSM Name: _____
    (Only when directly involved)

Home Office Approval: _____          Date: ___ / ___ / ___
    (If required)

*Remove and leave Part 11 with applicant.*

### Part 11   Fair Credit Reporting Act - Notice of Proposed Investigative Consumer Report

Pursuant to the Fair Credit Reporting Act, this notice is to inform you that as a component of our contracting and appointing process, each company with which you have requested an appointment may request an investigative consumer report which may include information related to your character, general reputation, personal characteristics, and mode of living. You have the right to request in writing, within a reasonable period of time after receipt of this notice, a complete disclosure of the scope of the investigation requested and a written summary of your rights under the Fair Credit Reporting Act. Send your request to: Licensing and Contracting Department, 750 W. Virginia St. Milwaukee, WI 53204. Disclosure information must be in writing and mailed to you, along with the written summary of your rights, within five (5) business days after receipt of your written request. Also each company with which you have requested an appointment may share the information contained in the investigative report and other information in your file with its affiliates, unless you send a written request to the above-described address directing that this information not be disclosed or shared with affiliates.

AGLB 1058 Rev1002          4

AG SASONI 01135

2/18/03 3:07P
505933004428

2/18/03  .5:46PM    Life Brokerage Equity Group          No.6388   P. 7

| Form **W-9** (Rev. January 2002) Department of the Treasury Internal Revenue Service | **Request for Taxpayer Identification Number and Certification** | Give form to the requester. Do not send to the IRS. |
|---|---|---|

**Name**

Business name, if different from above

*Life Brokerage Equity Group*

Check appropriate box: ☐ Individual/ Sole proprietor  ☒ Corporation  ☐ Partnership  ☐ Other ▶ ............... ☐ Exempt from backup withholding

Address (number, street, and apt. or suite no.)

*2963 Gulf to Bay Blvd.*

Requester's name and address (optional)

City, state, and ZIP code

*Clearwater, FL 33759*

List account number(s) here (optional)

*(left margin, rotated)* Print or type    See Specific Instructions on page 2

---

**Part I   Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 2. For other entities, it is your employer identification number (EIN). If you do not have a number see How to get a TIN on page 2.

Note: If the account is in more than one name, see the chart on page 2 for guidelines on whose number to enter.

Social security number
☐☐☐ - ☐☐ - ☐☐☐☐

or

Employer identification number
6 5 - 0 9 7 2 0 1 4

**Part II   Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

Certification Instructions.   You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 2.)

| Sign Here | Signature of U.S. person ▶ *V/L* | Date ▶ *2-1-03* |
|---|---|---|

**Purpose of Form**

A person who is required to file an information return with the IRS must get your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to give your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

If you are a foreign person, use the appropriate Form W-8. See Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities.

Note! If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

What is backup withholding?   Persons making certain payments to you must under certain conditions withhold and pay to the IRS 30% of such payments after December 31, 2001 (29% after December 31, 2003). This is called "backup withholding." Payments that may be subject to backup withholding include interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

Payments you receive will be subject to backup withholding if:

1. You do not furnish your TIN to the requester, or

2. You do not certify your TIN when required (see the Part II instructions on page 2 for details), or

3. The IRS tells the requester that you furnished an incorrect TIN, or

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions on page 2 and the separate Instructions for the Requester of Form W-9.

**Penalties**

Failure to furnish TIN.   If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

Civil penalty for false information with respect to withholding.   If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

Criminal penalty for falsifying information.   Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

Misuse of TINs.   If the requester discloses or uses TINs in violation of Federal law, the requester may be subject to civil and criminal penalties.

AGLB 1058 Rev1002

Cat. No. 10231X
5

Form **W-9** (Rev. 1-2002)

AG SASONI 01138

Form W-9 (Rev. 1-2002)                                                                 Page 2

## Specific Instructions

**Name.** If you are an individual, you must generally enter the name shown on your social security card. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first and then circle the name of the person or entity whose number you enter in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your social security card on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name" line.

**Limited liability company (LLC).** If you are a single-member LLC (including a foreign LLC with a domestic owner) that is disregarded as an entity separate from its owner under Treasury regulations section 301.7701-3, enter the owner's name on the "Name" line. Enter the LLC's name on the "Business name" line.

**Other entities.** Enter your business name as shown on required Federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name" line.

**Exempt from backup withholding.** If you are exempt, enter your name as described above, then check the "Exempt from backup withholding" box in the line following the business name, sign and date the form.

**Individuals** (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from backup withholding for certain payments, such as interest and dividends. For more information on exempt payees, see the instructions for the Requester of Form W-9.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8.

**Note:** If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.

## Part I—Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box.

If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS Individual Taxpayer Identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see How to get a TIN below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However the IRS prefers that you use your SSN.

If you are an LLC that is disregarded as an entity separate from its owner (see Limited liability company (LLC) above), and are owned by an individual, enter your SSN (or "pre-LLC" EIN, if desired). If the owner of a disregarded LLC is a corporation, partnership, etc., enter the owner's EIN.

**Note:** See the chart on this page for further clarification of name and TIN combinations.

**How to get a TIN.** If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office. Get Form W-7,

Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can get Forms W-7 and SS-4 from the IRS by calling 1-800-TAX-FORM (1-800-829-3676) or from the IRS Web Site at www.irs.gov .

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

**Note:** Writing "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

**Caution:** A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.

## Part II—Certification

To establish to the withholding agent that you are a U.S. person or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 3, and 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required), in the case of a disregarded entity, the person identified on the Name line must sign. Exempt recipients, see Exempt from backup withholding above.

**Signature requirements.** Complete the certification as indicated in 1 through 5 below.

1. **Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

2. **Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

3. **Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

4. **Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

5. **Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA or Archer MSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to give your correct TIN to persons who must file information returns with the IRS to report interest, dividends, and certain other income paid to you, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA or Archer MSA. The IRS uses the numbers for identification purposes and to help verify the accuracy of your tax return. The IRS may also provide this information to the Department of Justice for civil and criminal litigation, and to cities, states, and the District of Columbia to carry out their tax laws.

You must provide your TIN whether or not you are required to file a tax return. Payers must generally withhold 30% of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to a payer. Certain penalties may also apply.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account [1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor [2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee [1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner [1] |
| 5. Sole proprietorship | The owner [3] |

| For this type of account: | Give name and EIN of: |
|---|---|
| 6. Sole proprietorship | The owner [3] |
| 7. A valid trust, estate, or pension trust | Legal entity [4] |
| 8. Corporate | The corporation |
| 9. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 10. Partnership | The partnership |
| 11. A broker or registered nominee | The broker or nominee |
| 12. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name, but you may also enter your business or "DBA" name. You may use either your SSN or EIN (if you have one).

[4] List first and circle the name of the legal trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.)

**Note:** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed

AGLB 1058 Rev1002

⊕

6

AG SASONI 01139

505933004431

All American Life Insurance Company, Springfield, IL
American General Annuity Insurance Company, Amarillo, TX
American General Life Insurance Company, Houston, TX
The Old Line Life Insurance Company of America, Milwaukee, WI

**AMERICAN GENERAL**
FINANCIAL GROUP

American General Financial Group
is the marketing name for American General
Corporation and its subsidiaries

## AGENCY AGREEMENT

*Each life insurance company's products are separately underwritten and independently supported by the representative company. The above-listed companies are members of the American General Financial Group.*

*American General Financial Group is the marketing name for American General Corporation and its subsidiaries. American General Corporation is not responsible for financial obligations of these corporations.*

FOR

Last Name __Bechtel__  First Name __Kevin__  Middle Initial __H__

If Representative is a Corporation, the full Corporate name must appear above, and an authorized officer must sign and indicate the officer's title.

**Individual**
Social Security Number _____

**Corporation**
Tax Identification Number __65 - 0972017__

**Representative**

Signature __KB__  Title __VP__

**Primary Company**
The Old Line Life Insurance Company of America, Inc.

Contract Date _____
To be completed by Home Office

_____
Home Office Authorized Signator

\* This Agency Agreement may not be used to contract banks, credit unions or thrifts to American General Annuity Insurance Company and, if submitted for that purpose, will not be accepted. This Agency Agreement may not be used to replace an in force American General Annuity Insurance Company Agency Contract and, if submitted for that purpose, will not be accepted.

AGLB1056-0100

Received Time Jan. 20 2:40PM

AG SASONI 01140



2/18/03 1:07P  5:46PM  Life Brokerage Equity Group  No.6388  P. 10
505933004433

BAD COPY

FLORIDA DEPARTMENT OF INSURANCE

BAD COPY

AG SASONI 01141

01/01/2003 2:59 PAGE 2/2 RightFAX

**CERTIFICATE OF INSURANCE** — ISSUE DATE (MMDD/YY) 2003

THIS CERTIFICATE IS ISSUED TO THE AGENT, GENERAL AGENT, REGISTERED REPRESENTATIVE, REGISTERED OR INVESTMENT ADVISER SPECIFIED BELOW (THE "INSURED") AND TO THE CERTIFICATE HOLDER INDICATED BELOW. IT SUMMARIZES SPECIFIC COVERAGE INFORMATION APPLICABLE TO THE INSURED UNDER THE POLICY. IT CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICY BELOW.

| INSURED | PRODUCER |
|---|---|
| KEVIN BECHTEL<br>2969 GULF-TO-BAY BLVD STE 330<br>CLEARWATER, FL 33759 | AON Risk Services, Inc. of New York<br>685 Third Avenue, 13th Floor<br>New York, NY 10017<br><br>POLICYHOLDER<br>Aegon USA, Inc./InterSecurities, Inc.<br>4333 Edgewood Road NE<br>Cedar Rapids , IA 52499 |

**COMPANY AFFORDING COVERAGE:** Continental Casualty Company

COVERAGE: THIS IS TO CERTIFY THAT THE POLICY OF INSURANCE LISTED BELOW (the "POLICY") HAS BEEN ISSUED TO THE INSURED FOR THE SPECIFIED POLICY PERIOD AND PROVIDES COVERAGE TO THE INSURED SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICY. THE TOTAL POLICY AGGREGATE LIMIT OF LIABILITY SHOWN MAY BE REDUCED BY CLAIMS PAID ON BEHALF OF ALL INSUREDS OF THE POLICYHOLDER INCLUDING THE INSURED SPECIFIED ABOVE.

| Policy Number | Policy Effective Date | Policy Expiration Date |
|---|---|---|
| 161600837 | 4/1/02 | 4/1/03 |

| Type of Insurance | Limit of Liability for Coverage(s) Elected<br>(Defense within the Limit) | Retention(s) for Coverage(s) Elected<br>(each claim) |
|---|---|---|
| Registered Representatives and Registered Investment Advisers of Policyholder | $1,250,000 per Claim<br><br>$3,000,000 per Rep Aggregate<br><br>$ 25,000,000  total policy aggregate limit of liability for all Insureds | $ 500 for Company Sponsored Business (Damages Only)<br><br>$ 2,500 for All Other Products (Damages Only)<br><br>$ 5,000 for Registered Representative Activities (Damages & Defense Costs) |

SPECIAL ITEMS   * This is a claims made and reported Professional Liability policy. The policy expiration date for an Insured will be 4/1/03 or the date the Insured's contract with InterSecurities, Inc. is terminated, whichever is earlier.

| CERTIFICATE HOLDER (this section is specifically designated for verification of insurance purposes only and not for the Insureds) | CANCELLATION |
|---|---|
|  | SHOULD THE ABOVE DESCRIBED POLICY BE CANCELED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL 30 (THIRTY) DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE COMPANY, ITS AGENTS OR REPRESENTATIVES.<br><br>Authorized Representative: |

BM/ch/Agicert9.doc

AG SASONI 01142

# EXHIBIT 2

**(to Supplemental Affidavit of Jalen V. Lohman)**



**AMERICAN GENERAL**

3/12/0 16:01P
506017 102673

March 4, 2003

Kevin Bechtel
Life Brokerage Equity Group
Suite 330
2963 Gulf to Bay Blvd.
Clearwater, FL  33759

YOUR AGENT CODE IS: 0WD11

Dear Kevin,

I would like to welcome you as a valued member of the AIG Life Brokerage field force. AIG Life Brokerage distributes products through a number of life insurance companies that are part of American International Group, Inc., one of the largest financial services organizations in the United States. As a valued member of our field force, you have joined an established company that is committed to financial integrity, service and long-term growth.

Your state appointment authorizing you to submit applications for our company has been approved by your *resident* Department of Insurance.

It is important that no *non-resident* business be solicited in any state until you have received written notice that the licensing and appointment requirements of that state have been satisfied. Please feel free to call our Licensing Department at 1-888-653-5463, extension 3001 with any questions you may have regarding your appointment status.

Remember to include your code number on new business applications to ensure timely underwriting and commission accounting processing. As you begin your association with our company, you will certainly have questions or concerns that need to be addressed. Please feel free to contact Dennis Monroe, Regional Vice President, at 800-787-9937 for any assistance you may need.

Enclosed is a copy of your newly executed contract. Please take a moment to review this agreement and become familiar with its terms and conditions. We look forward to many years of a mutually beneficial and prosperous relationship.

Sincerely,

*R.A. Hollar*

Richard A. Hollar
President & CEO, AIG Life Brokerage

RAH/
Enclosures

c:  0PU67 - Gary Richardson

**Midwest Operations Center**
750 W. Virginia Street • Milwaukee, WI 53204 • 414.285.1500 • Toll Free 1.888.653.5463

LC119

AGL / BECHTEL  000012

# EXHIBIT 3

**(to Supplemental Affidavit of Jalen V. Lohman)**

FEB 20 2002 15:12    ALL AMERICAN LIFE    1 303 793 3454    P.04

3/9/02 8:00AM
50441203879

3/9/02 8:05AM
50441204014

16

# American General Life Brokerage Group
## Appointment Application For:

All American Life Insurance Company, American General Annuity Insurance Company,
American General Life Insurance Company, The Old Line Life Insurance Company of America

*Members American General Financial Group*

**AMERICAN GENERAL FINANCIAL GROUP**

New applicants must complete parts 1,2,3 and 4 in their entirety. (Part 5 to be retained by applicant.) Parts 6, 7, and 8 are to be completed by the person recommending the applicant. All proposals should be submitted at the SAME TIME. SEPARATE OR MISSING INFORMATION WILL RESULT IN PROCESSING DELAYS.

### Part 1   Applicant Data

Social Security Number: REDACTED

Full Name: **RICHARDSON**        **GARY**        **A**
                    Last Name            First Name       Middle Initial

Business Address: 2963 GULF-TO-BAY BLVD    STE 208
CLEARWATER, FL  34685

Residence Address: 3867 MULLENHURST DR
PALM HARBOR, FL  34685

Bus Phone: (727) 791-9080        Fax Number: (727) 712-1459
Home Phone: (727) REDACTED        Internet E-Mail Address: REDACTED
Date of Birth: REDACTED        Sex: ☑ Male  ☐ Female
Spouse's Name: CINDY        SS#

If applicant is a corporation or partnership, agency principal(s) must complete separate Appointment Application forms.

Company Name: LIFE BROKERAGE EQUITY GROUP
Principal(s): Gary Richardson    Title: President        SS #: REDACTED

State of Incorporation: FL        Tax I.D.: 65-0972017

### Part 2   Licensing And State Appointment Request

**Licensing and Contracting Information:**

Licensed for:    ☑ Life    ☐ Health    ☑ Variable Annuity    ☑ Variable Life
Contracted as:   ☐ Individual    ☐ Agency

Attach copies of licenses for all requested state appointments. Provide appropriate fees for nonresident appointments. (Non-resident fees not required for American General Annuity Insurance Company.)

Resident State: FL        Resident License Number: D042632
Nonresident states (indicate state licenses attached):

Are you currently NASD registered?  ☑ Yes    ☐ No
If Yes, who is your Broker/Dealer? INTERSECURITIES    CRD Number:
Circle all current NASD licenses that you hold:
⊘ 7  ⑧ ㉖ ㉕  Other: 63

Errors and Omissions Insurance Coverage (required for all contract levels)
☑ Yes - I have E & O coverage (copy of current certification enclosed)
Name of carrier: Continental Casualty        Expiration Date: 9 / 1 / 02
☐ No - I am enclosing an application for the American General Life Insurance Companies Plan

*American General Annuity Insurance Company is licensed in all states and the District of Columbia except New York and New Hampshire. The other companies listed above are licensed in all states (including New York) and the District of Columbia.

AGLB 10534-0100

-1-

AGL / BECHTEL 000013

Case 8:15-cv-00082-AEP Document 133-1 Filed 05/24/16 Page 23 of 46 PageID 882

FEB-28-2002 15:12          ALL AMERICAN LIFE          1 303 793 3454   P.05

3/9/02 8:00AM
3/9/02 8:05AM
5044120

## American General Life Brokerage Group
## Appointment Application

AMERICAN
GENERAL
FINANCIAL GROUP

**Part 3  Confidential History**

Social Security Number: REDACTED

Confidential history/background information (Write "Yes" or "No" in blanks — If Yes, explain below)
(All answers will be verified against Background Investigation/Credit check reports.)

Yes/No

N  1.  Have you ever been convicted of or pleaded guilty or no contest to a felony?

Y  2.  Have you ever been convicted of or pleaded guilty or no contest to a misdemeanor?

N  3.  Are you currently under investigation by any legal or regulatory authority?

N  4.  Do you now owe money to any life or health insurance company?

N  5.  Have you or a firm in which you were a partner, officer or director been declared bankrupt or been party to a bankruptcy or receivership proceeding, or had a salary garnished or had liens or judgments against you?

N  6.  Has any insurance company or securities broker-dealer terminated your contract or permitted you to resign for a reason other than lack of sales?

N  7.  Has any insurance department, government agency or self-regulatory authority ever denied, suspended, revoked, censured or barred your license or registration or disciplined you with fines or by restricting your activities?

N  8.  Have you ever been the subject of a consumer-initiated complaint or proceeding by any self-regulatory body or any securities commodities or insurance regulatory body or organization or employer?

N  9.  Has a bonding company ever denied, paid out on or revoked a bond for you?

N  10. Have you ever had a claim filed against your professional liability or errors and omissions insurance coverage?

Details of "Yes" Answers

APPARENTLY SO. I FOUND OUT A COUPLE OF DAYS
AGO THAT I HAVE A MISDEMEANOR FOR
WATERING MY LAWN ON A NON-WATERING DAY

- 2 -

withholding if you are an exempt payee.

If you are a foreign person, IRS prefers you use a Form W-8 (certificate of foreign status). After December 31, 2000, foreign persons must use an appropriate Form W-8.

Note: If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

requester, or

2. You do not certify your TIN when required (see the Part III instructions on page 2 for details), or

3. The IRS tells the requester that you furnished an incorrect TIN, or

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

that results in no backup withholding, you are subject to a $500 penalty.

Criminal penalty for falsifying information. Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

Misuse of TINs. If the requester discloses or uses TINs in violation of Federal law, the requester may be subject to civil and criminal penalties.

Cat. No. 10231X
- 3 -

ACL01696-0108
Form W-9 (Rev. 11-96)

AGL / BECHTEL  000014

FEB-22-2002  15:13     ALL AMERICAN LIFE          1 303 793 3454    P.07

3/9/02 8:00AM        3/9/02 8:05AM
50441200388I        50441200401 7

## American General Life Brokerage Group
## Appointment Application

AMERICAN
GENERAL
FINANCIAL GROUP

### Part 4   Signatures

Social Security Number :   REDACTED

I have read and received, as of the date indicated below, the notice concerning investigative consumer reports, as required by law. I understand that in signing this form, I hereby authorize the American General companies that I have requested appointment with (hereinafter collectively referred to as the "American General Affiliates") to investigate my background, including my credit history and interviews with former employers and/or primary insurance company. I authorize the American General Affiliates and individuals named in this application to give the American General Affiliates any information regarding me that they have available. I agree that if any of my answers to the questions in part three change, I will notify, in writing, American General Affiliates within 10 business days of the incident which would cause an answer to change. I understand that falsification of information or failure to update the answers on this application may result in termination of appointment(s) with all American General Affiliates. In addition, I hereby authorize the American General Affiliates to report information about earnings and debit balances to any credit bureau or similar organization.

I further authorize American General Affiliates, to verify my previous employment and securities registration history through the CRD system.

I hereby authorize American General Affiliates to share background, licensing and applicant data with their affiliates.

I acknowledge that I have received and reviewed the "Customer Service and Compliance Manual for Producers and Employees for the American General Life Companies" and/or "Operations Manual" and I agree to abide by those principles, as amended from time to time, in representing any of the Companies that appoint me.

Date: 02/15/02          Signature: _Gary A. Richardson_

The undersigned (recommending representative or General Agent) by executing this application recommends the applicant to American General Affiliates as a suitable person qualified to represent the companies. The recommending individual or General Agent also agrees to supervise and assume responsibility for the applicant, if appointed by American General Affiliates, in accordance with the terms of his/her Contract.

Signature: _John D. Ekberg_          Date: 2/22/02
          (Signature of person recruiting applicant)

Print Name:  JOHN D. EKBERG          Agent #: OT78I

Signature: _____          Date: 2/28/02
          (Signature of Regional or GA, RVP, RV)

Print Name: BERNIE RADOCHONSKI, RVP          Agent #: FVP95

Home Office Approval: _W.O. June_          Date: 3/4/02
          (If required)

✂ ─────────────────────────────────────────
          Remove and leave Part 5 with applicant.

### Part 5   Preliminary Information Request Form

In compliance with the Fair Credit Reporting Act, as amended, we advise you that we may, as part of our normal procedure for processing your application, request that an investigative consumer report be prepared whereby information is obtained through personal interviews with your neighbors, friends, former employers, primary insurance company or others with whom you are acquainted. This inquiry includes information as to your character, general reputation, personal characteristics and mode of living. You have the right to make a written request to your primary appointing company, within a reasonable period of time to receive additional, detailed information about the nature and scope of this investigation, if one is made. Such requests should be directed to the primary appointing company.

– 5 –

AGL#1473-8100

AGL / BECHTEL  000015

FEB-28-2002 15:14     ALL AMERICAN LIFE                    1 303 793 3454    P.08
3/9/02 8:00AM
3/9/02 8:06AM
50441200

## American General Life Brokerage Group
## Appointment Application
*(to be completed by recruiter)*

**AMERICAN GENERAL FINANCIAL GROUP**

### Part 6   Recruiter Data

*(To be completed by individual recruiting the Applicant)*

Date: 02/22/02     Applicant Name: LIFE BROKERAGE EQUITY GROUP

Applicant's Social Security Number: REDACTED

Recruiter Name (please print): JOHN D. EKBERG

Title: Level 13 - NMO     Recruiter Agent or Agency Code #: OT781

### Part 7   Primary Appointing Company And Affiliated Company Appointment Request

Please check your primary appointing company. All appointments require Home Office approval.

☒ The Old Line Life Insurance Company of America

Request for affiliated company appointments:

☐ All American Life Insurance Company     ☒ American General Annuity Insurance Company
☒ American General Life Insurance Company

### Part 8   Company Specific Contract and Commission Information

The Old Line Life Insurance Company
Licensing and Contracting Dept.
750 W. Virginia St.
Milwaukee, WI 53204
800-453-8463 Ext. 3002
Fax: 800-337-0861

PLACE IN REGION 5

INFO:
Contract level requested:     ☒ IMO*  5     ☐ MGA†     ☐ GA     ☐ Producer
Commission level requested:         5  First Year          5  Renewal          0  Bonus Level
* Annualization:   ☐ Yes   ☒ No     If yes, indicate level: _____

* Annualization is available on a limited basis (if applicable, supplement must be submitted with contract).
† Appointment, Bonus, and Annualization levels require Home Office approval.

To receive commissions via electronic funds transfer, enclose authorization form.

**IMPORTANT:** *Unless otherwise indicated, Commission levels for Affiliated Company appointments will be assigned base and renewal commission levels selected for the Old Line Life Insurance Company.*

| Company Name | Commission Level |
|---|---|
| All American Life Insurance Company | |
| American General Annuity Insurance Company | BMC |
| American General Life Insurance Company | MGR105 |
| | |
| | |

AGL-F1238-8780

– 7 –

AGL / BECHTEL  000016

# FINANCIAL ENERGY INSURANCE GROUP, INC.

TOLL FREE: (888) 569-3344     LOCAL (386) 437-8950     FACSIMILE (386) 437-8163

*9 PAGES*

**To:**     Bernie Radochonski

**From:**   John Ekberg

**Re:**     New MGA7 contract

**Date:**   February 22, 2002

Following is the contract for Life Equity Brokers Group. Gary Richardson is the principal.

This organization receives business from approximately 550 producers. Approximately two-thirds of the producers are in Florida.

Gary Richardson is very positive about having a relationship with the American General Brokerage Group. Old Line will be the primary term carrier and I anticipate that we can get a substantial amount of UL business also.

Because of the size of this group, the make-up of the producers and the production potential, I am requesting that we utilize the MGA-7 contract level to give them the flexibility that they need to maximize recruiting and production.

Thanks for all your help. It appears the MGA-7 level will allow us to significantly increase our production for the second half of 2002 and beyond.

*SPECIAL DEALS*

---

1083 HAMPSTEAD LANE, ORMOND BEACH, FL 32174

AGL / BECHTEL 000017

FEB-28-2002  15:11    ALL AMERICAN LIFE    1 303 793 3454    P.01

3/9/02 8:00AM
504412003884

3/9/02 8:05AM
504412004020

AMERICAN GENERAL BROKERAGE GROUP

L C Standard

# FAX

**Attention:** Lynda Lechner

**Fax to number:** 414 - 443 - 5801

**Date:** 2-28-02

**From:** CARMEN HOLLIS, MARKETING LIAISON

**Number of pages:** 10

**Regarding:**

URGENT !! PLease Rush !!

New Level 13 contract

Gary Richardson -

Life Brokerage Equity Group -

Missy - Bill has approved.

Lynda
3/7/02

8400 E. PRENTICE AVE., SUITE 615
ENGLEWOOD, CO 80111
(303) 793-3455   (303) 793-3454 FAX
800-392-8103

BERNIE RADOCHONSKI, REGIONAL V.P.
CARMEN HOLLIS, MARKETING LIAISON

AGL / BECHTEL  000018



## AMERICAN | GENERAL
FINANCIAL GROUP

# LCBACKSCAN REQUEST

**AGENT CODE:**

OPU67

**AGENTS LAST NAME:**

RICHARDSON

**AGENCY/CORP NAME:**

### COMPANY

| AAL | OLL | USL | AGL |

*MIDWEST OPERATION CENTER*

C:\WINNT\Profiles\m051128\Personal\LCBACKSCAN REQUEST.doc

AGL / BECHTEL 000019



3/19/02 1:36P
504454 005044

**AMERICAN** | **GENERAL** | FINANCIAL GROUP

All American Life Insurance Company
The Old Line Life Insurance Company of America

March 15, 2002

Gary Richardson
c/o Life Brokerage Equity Group
Suite 208
2963 Gulf To Bay Blvd.
Clearwater, FL 34685

YOUR AGENT CODE IS: 0PU67

Dear Gary,

I would like to welcome you as a valued member of the American General Brokerage Group field force. American General Brokerage Group distributes products through a number of life insurance companies that are part of American General Financial Group, one of the largest financial services organizations in the United States. As a valued member of our field force, you have joined an established company that is committed to financial integrity, service and long-term growth.

Your state appointment authorizing you to submit applications for our company has been approved by your *resident* Department of Insurance.

**It is important that no *non-resident* business be solicited in any state until you have received written notice that the licensing and appointment requirements of that state have been satisfied.** Please feel free to call our Licensing Department at 1-888-653-5463, extension 3001 with any questions you may have regarding your appointment status.

Remember to include your code number on new business applications to ensure timely underwriting and commission accounting processing. As you begin your association with our company, you will certainly have questions or concerns that need to be addressed. Please feel free to contact Bernie Radochonski, Regional Vice President, at 800-392-8103 for any assistance you may need.

**Midwest Operations Center**
750 W. Virginia Street • Milwaukee, WI 53204 • 414.286.1500 • Toll Free 1.888.653.5463

AGL / BECHTEL 000020



All American Life Insurance Company
The Old Line Life Insurance Company of America

Enclosed is a copy of your newly executed contract.  Please take a moment to review this agreement and become familiar with its terms and conditions.  We look forward to many years of a mutually beneficial and prosperous relationship.

Sincerely,

Richard A. Hollar
President
American General Life Companies, Brokerage Group

RAH/dv

Enclosures

c:  0T781 - John Ekberg

**Midwest Operations Center**
750 W. Virginia Street • Milwaukee, WI 53204 • 414.286.1500 • Toll Free 1.888.653.5463

AGL / BECHTEL  000021

FEB-28-2002 3:05 11    ALL AMERICAN LIFE    1 303 793 3454  P.03

504454 005040

3/8/02 8:05AM
504412 004024

**AMERICAN**
**GENERAL**
**FINANCIAL GROUP**

American General Financial Group
is the marketing name for American General
Corporation and its subsidiaries.

# BAD COPY

All American Life Insurance Company, Springfield, Il.
American General Annuity Insurance Company, Amarillo, TX *
American General Life Insurance Company, Houston, TX
The Old Line Life Insurance Company of America, Milwaukee, WI

## AGENCY AGREEMENT

Each life insurance company's products are separately underwritten and independently supported by the representative company. The above-listed companies are members of the American General Group.

American General Financial Group is the marketing name for American General Corporation and its subsidiaries. American General Corporation is not responsible for financial obligations of these corporations.

For

Last Name _RICHARDSON_    First Name _GARY_    Middle Initial _A_

_LIFE BROKERAGE EQUITY GROUP_

If Representative is a Corporation, the full Corporate name must appear above, and an authorized officer must sign and indicate the officer's title.

**Individual**
Social Security Number _REDACTED_

**Corporation**
Tax Identification Number _65-0972017_

**Representative**

Signature _[signature]_      Title _President_

**Primary Company**

The Old Line Life Insurance Company of America, Inc.

Contract Date _MARCH 15, 2002_      _[signature]_
To be completed by Home Office      Home Office Authorized Signator

* This Agency Agreement may not be used to contract banks, credit unions or thrifts to American General Annuity Insurance Company and, if submitted for that purpose, will not be accepted. This Agency Agreement may not be used to replace an in force American General Annuity Insurance Company Agency Contract and, if submitted for that purpose, will not be accepted.

```
3/19/0 21:36P
504454 005047
```

TABLE OF CONTENTS

Paragraph

Recitals

Definitions

| | |
|---|---|
| I. | Authorized Acts |
| II. | Limitation of Authority |
| III. | Advertising |
| IV. | Relationship |
| V. | Compensation |
| VI. | Vesting |
| VII. | General Provisions |
| VIII. | Termination |
| IX. | Amendment |
| X. | Personal Guarantee |
| XI. | Effective Date |
| XII. | Investigation Notice |
| XIII. | Federal Crime Control Act |

Schedules

A. Commission Schedule – Primary Company

B. Appointment Application

AGL / BECHTEL  000023

## RECITALS

Representative ("REPRESENTATIVE") has executed an Appointment Application requesting appointments with one or more life insurance subsidiaries of American General Corporation.

The Appointment Application designates one of the life insurers as a Primary Appointing Company (the "Primary Company").

This Agreement together with the Appointment Application and Commission Schedules for each separate life insurer that appoints REPRESENTATIVE comprise the REPRESENTATIVE's contract with each of the insurers that appoints REPRESENTATIVE.

Execution of this Agreement by the Primary Company and the REPRESENTATIVE evidences their agreement to transact business in accordance with the terms and conditions set forth in this Agreement.

If REPRESENTATIVE requested appointment with one or more affiliates of the Primary Company in the Appointment Application, or a subsequent amendment to that form, REPRESENTATIVE's execution of this Agreement evidences REPRESENTATIVE's agreement to transact business with each affiliated insurer in accordance with the terms and conditions set forth in this Agreement. Each affiliated insurer that appoints REPRESENTATIVE and sends a company commission schedule to REPRESENTATIVE has agreed to transact business with REPRESENTATIVE according to the terms and conditions of this agreement.

### DEFINITIONS

A. Primary Company – the Primary Company is designated in the Appointment Application as the Primary Company. The Primary Company's responsibilities include executing the REPRESENTATIVE Agreement, performing background checks and providing convention credits and other sales incentives, if any, to REPRESENTATIVE.

B. Affiliated Company – the Affiliated Company(ies) is any other life insurance subsidiary of American General Corporation that is identified in the Appointment Application, appoints REPRESENTATIVE and provides a company commission schedule as evidence of its agreement to transact business with REPRESENTATIVE according to the terms of this Agreement.

C. Insurer – the term Insurer as used in this Agreement refers to each of the life insurance companies that appoints REPRESENTATIVE, including the Primary Company.

D. Jurisdiction – Eligibility for, or receipt of, override compensation on another Representative's business.

### I. AUTHORIZED ACTS

A. The REPRESENTATIVE is authorized to conduct Insurer's business for the Insurer's products covering such classes of risks as the Insurer may authorize and in those states where the product is approved and REPRESENTATIVE is licensed and appointed as required by state law. If REPRESENTATIVE is a corporation, then the principal(s) of such corporation must also be licensed individually, if required pursuant to appropriate state law.

B. The REPRESENTATIVE is authorized to collect and promptly remit to the Insurer the first premium on business produced by the REPRESENTATIVE in accordance with the Insurer's rules and regulations.

C. The REPRESENTATIVE will promptly deliver issued policies in accordance with Insurer's policies and procedures.

D. All monies, settlements, or documents received by the REPRESENTATIVE for, or on behalf of, the Insurer shall be received by the REPRESENTATIVE in a fiduciary capacity and immediately paid over or delivered to the Insurer, except as may be otherwise directed in writing by the Insurer.

### II. LIMITATION OF AUTHORITY

The REPRESENTATIVE is without authority to perform any act or thing other than that expressly granted in this agreement and expressly agrees not to perform any of the following acts:

1. Make, modify, alter or discharge any policy.
2. Extend the time payment of any premium.
3. Waive any forfeiture.
4. Guarantee dividends or interest rates.
5. Incur any debt or liability in the name of the Insurer.
6. Withhold, commingle or convert to the use of the REPRESENTATIVE or the benefit of others, any monies, securities, policies or receipts belonging to the Insurer, the applicant, or the insured, or fail to promptly submit to the Insurer any applications for policies.
7. Accept or deposit any check or draft for premiums made payable to other than the Insurer.
8. Unless in the best financial interest of the policyowner, directly or indirectly induce or attempt to induce any policyowners of Insurer to relinquish, surrender, replace or lapse their policies.

### III. ADVERTISING / USE OF LOGO

REPRESENTATIVE may, at REPRESENTATIVE's expense, advertise Insurer's products, provided the text of all advertising, including any form of sales/promotional material such as, but not limited to: business cards, stationery or other indications of agency under this agreement and including the use of the name "American General," the American General logo or the name of any insurer is approved in writing by the company before use.

### IV. RELATIONSHIP

The relationship between the Insurer and the REPRESENTATIVE shall be that of principal and independent contractor, and nothing contained herein shall be construed as creating the relationship of employer and employee for any purpose, including tax purposes. REPRESENTATIVE agrees to be responsible for all taxes as a self-employed independent contractor. The REPRESENTATIVE shall be free to exercise independent judgment as to the time and manner in which the REPRESENTATIVE shall perform the services authorized under this agreement. Any material supplied by the Insurer is for the purpose of supporting the activities of the REPRESENTATIVE.

## V. COMPENSATION

A. Subject to the provisions hereof and the rules of the Insurer, the full compensation of the REPRESENTATIVE shall be payable at the applicable rate set forth in the Schedule of Commission in effect at the date the first full premium is received by the Insurer, which Schedule of Commission and all amendments, supplements and replacements thereof and thereto are hereby made a part of this agreement.

B. Commission is subject to change at any time by written notice by the Insurer to the REPRESENTATIVE, but no such change shall affect commissions on any policy issued prior to the effective date of such change.

C. If commission rates are not now shown in the Schedule of Commission, including conversions, replacements or, the exercise of re-entry provisions or, if special premium rate quotations are made, commission rates shall be such as may be fixed by the Insurer as of the time when issue is effective in accordance with rates and practices of the Insurer then in effect.

D. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall lapse because of nonpayment of premium and shall be replaced or reinstated, any commissions on the new or reinstated policy shall be payable only at the sole discretion of the Insurer.

E. To be entitled to commissions, if any, the REPRESENTATIVE's name or the name of another Representative under your jurisdiction must appear as soliciting agent on the application for insurance. Disputes respecting commissions shall be subject to decision and settlement by the Insurer and the Insurer's decision shall be final and binding upon the parties involved.

F. Whenever, in the judgment of the Insurer, it shall become advisable to recall any policy issued before delivery thereof is made, the REPRESENTATIVE shall promptly refund to the Insurer any commissions received on account of such policy. Whenever, after delivery, the Insurer shall effect or procure the surrender, rescission or cancellation of any policy and refund premiums paid thereon, the Insurer shall have the right to charge back commissions and demand that the REPRESENTATIVE repay such commissions to the Insurer. If the Insurer shall refund or waive the premium or premiums under the provisions of any disability waiver of premium rider, the REPRESENTATIVE shall lose all rights to commission and persistency fees as applied to such refunded or waived premiums, and shall repay any amounts advanced. An Insurer may include in its Commission Schedule, which is incorporated as a part of this agreement, guidelines describing more specifically the circumstances under which it will charge back commissions on certain products. In the absence of such guidelines, the Insurer's rights shall be as described in this Section V. Compensation.

G. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall be converted or replaced, any commissions on the new policy shall be subject to adjustment and payable only at the sole discretion of the Insurer.

H. Except where prohibited by any State, the REPRESENTATIVE is responsible for all license fees, including those of its Representatives. The Insurer's discretion shall govern with respect to whether the Insurer shall charge to the REPRESENTATIVE's commission or other compensation account the cost of obtaining and renewing the REPRESENTATIVE's and its Representatives' license or licenses and/or appointment fees. This practice is subject to change at the discretion of the Insurer.

I. Policy applications for any Insurer will be issued and commissions paid by the Insurer.

## VI. VESTING

A. As long as this agreement remains in effect, all first year and renewal commissions shall be paid as they accrue; however, any such payments are subject to the schedule of commissions in effect at the date the first full premium is received by the Insurer, the provisions and rules of the Insurer regarding minimum first year and renewal commissions required to issue a check.

B. During any consecutive 12-month period following the termination of this agreement, total renewal commissions are less than the minimum required by the Insurer, vesting automatically terminates and no additional commission payments will be due from the Insurer.

C. In the event this agreement is terminated by the death of the REPRESENTATIVE, all first year and renewal commissions shall be paid as they accrue, subject only to the terms and conditions of paragraphs A and B immediately above. In the absence of a properly executed beneficiary designation on file with the Insurer, all such payments, if any, shall be made to the surviving spouse and at the death of the surviving spouse to the estate of said spouse. If the REPRESENTATIVE dies leaving no surviving spouse, such monies will be paid to the estate of the REPRESENTATIVE; provided however, that if the REPRESENTATIVE is a corporation or a partnership, all such payments will be paid to said corporation or partnership.

## VII. GENERAL PROVISIONS

A. The Insurer may make such changes and decisions as it deems advisable in the conduct of its business, including the discontinuance of any policy form or the withdrawal from any territory, and the Insurer shall incur no liability to the REPRESENTATIVE by reason of its doing so.

B. The Insurer shall have the right to test market any of its products on a select basis and at the discretion of the Insurer.

C. The REPRESENTATIVE shall indemnify and hold the Insurer harmless against or from any and all expense, costs, causes of action, and damages including without limitation, reasonable attorney fees, resulting from or growing out of any unauthorized or negligent act of commission or omission by the REPRESENTATIVE or its employees, directors, officers, or Representatives under its jurisdiction. This provision shall survive termination of this agreement.

AGL / BECHTEL 000025

D. The Insurer shall have a prior right and offset to all commissions and fees payable hereunder toward any indebtedness and/or other obligations due from the REPRESENTATIVE to anyone under the Jurisdiction of the REPRESENTATIVE to any Primary Company and/or Affiliated Company/ies with interest at the legal rate. This prior right and offset shall not be extinguished by the termination of this agreement. Following the termination of any Representative under the Jurisdiction of the REPRESENTATIVE, should the amount in any commission account of that Representative be insufficient to repay any amount due the Insurer, the debit will become the responsibility of the REPRESENTATIVE, in accordance with the Insurer's then current debit collection procedure.

E. Neither the agreement, any duties or delegation under this agreement, nor the commissions or fees accruing hereunder, nor any interest herein, nor any right or claim created hereby or arising by reason of the REPRESENTATIVE acting hereunder, shall be assignable, except upon the written consent of the Insurer.

F. Forbearance or failure of the Insurer to insist upon performance of this agreement or to enforce its rights hereunder, shall not constitute a waiver of its rights or privileges hereunder or of its subsequent right to insist upon such performance.

G. This agreement, including the Appointment Application and any Commission Schedule(s) incorporated as part of the Agreement, contains all promises, inducements and representations between the parties. This agreement supersedes any and all previous agreements between the parties herein pertaining to the solicitation of the Insurer's products and the payment of monies to the REPRESENTATIVE provided, however, that rights or obligations which have already accrued (and would survive termination) under any previous contract between the Insurer and the REPRESENTATIVE shall not be hereby impaired.

H. The Insurer reserves the right to decline or modify any application for insurance.

I. This agreement shall not be effective until executed by the Primary Company. Once this agreement is effective with the Primary Company, it may become effective with Affiliated Company/ies) as described herein.

J. Should the REPRESENTATIVE, at any time, violate any provision of Section III of this agreement, entitled Limitation of Authority, or commit any fraud upon Insurer or its policyholders; have a license as agent or broker revoked for cause after notice and hearing by a state insurance department or otherwise act to prejudice materially the interests of Insurer, the REPRESENTATIVE shall, at the option of the Insurer, forfeit any and all rights to all commissions and monies that the REPRESENTATIVE might otherwise have under this agreement, vested or not. It is expressly agreed that termination of this agreement shall not terminate this provision.

K. The REPRESENTATIVE agrees to maintain complete and accurate records of the marketing and sale of the Insurer's products. The Insurer reserves the right to inspect such records and other documents in each REPRESENTATIVE's files that relate to the marketing, attempted sale or sale of the Insurer's products. If the Insurer chooses to inspect such records, it will endeavor to do so during normal business hours and after giving reasonable notice, unless, in the judgment of the Insurer, unusual circumstances require inspection at other times or inspection without prior notice. This provision shall survive termination of this agreement for a period of two (2) years.

L. For as long as this agreement is in force, the REPRESENTATIVE will maintain Errors and Omissions (E&O) coverage and will provide the Insurer annually proof of such E&O coverage in a manner acceptable to the Insurer.

M. If the REPRESENTATIVE is served with a regulatory inquiry or legal papers involving Insurer business, the REPRESENTATIVE shall immediately notify the Insurer by sending to that Insurer's Compliance Officer, a copy of the papers, served by overnight delivery, by the end of the business day next following the day of receipt by the REPRESENTATIVE.

N. The REPRESENTATIVE is responsible for assuring that any Representative under the Jurisdiction of the REPRESENTATIVE: (1) become fully informed as to the provisions and benefits of each product offered by the Insurer for which the Representative conducts Insurer business; (2) represent such products adequately and fairly to prospective purchasers; and (3) act in compliance with the Insurer's policies and procedures as set out in the Customer Service and Compliance Manual, Operations Manual, or otherwise communicated to the REPRESENTATIVE, including, without limitation, those regarding suitability of sales inquiries and compliance with the Insurer's principles and code of ethical market conduct.

O. When the Insurer assigns to the REPRESENTATIVE any agency not recruited by the REPRESENTATIVE, then the Insurer may reassign that agency to another upline of the Insurer's choice at any time and without the necessity of a release from the REPRESENTATIVE. If the Insurer wishes to remove any agency recruited by the REPRESENTATIVE from the Jurisdiction of the REPRESENTATIVE, the Insurer will negotiate a release; however, such release will not be unreasonably withheld by the REPRESENTATIVE.

P. REPRESENTATIVE is not entitled to participate in any REPRESENTATIVE benefit programs except those which are provided by the Primary Company. REPRESENTATIVE is not eligible to participate in, or to receive any benefits from, any programs provided by the Affiliate Company/ies.

Q. Disputes arising under this Agreement shall be subject to the laws of the state where the Insurer engaged in the dispute is located.

R. The area within which the REPRESENTATIVE shall have the right to represent the Insurer is not assigned exclusively to the REPRESENTATIVE.

S. REPRESENTATIVE agrees to conform to all regulations of the Insurance Department and the insurance laws in the state(s) in which the REPRESENTATIVE is conducting Insurer's business.

```
3119/0 21:38P
504454 005051
```

## II. TERMINATION

This agreement shall automatically terminate upon the death of REPRESENTATIVE if REPRESENTATIVE is an individual or upon dissolution of REPRESENTATIVE if REPRESENTATIVE is a corporation or a partnership.

This agreement shall terminate upon the revocation or non-renewal of the REPRESENTATIVE's license.

C. This agreement may be terminated with or without cause by any Insurer (subject to provisions D and E below) or the REPRESENTATIVE by sending written notice of such termination to the last known address of the other party.

D. Upon termination, the REPRESENTATIVE shall immediately pay in cash to the Insurer all sums that are due or become due hereunder and shall immediately deliver to the business of the Insurer and belonging to the Insurer. Such materials include, but are not limited to, rate cards, letters, records, computer software, general supplies or any and all other indications of agency provided by the Insurer. It is expressly agreed that termination of this agreement does not release the REPRESENTATIVE from continuing liability to the Insurer for immediate repayment of any and all unearned first year commissions or bonuses.

E. Termination of this agreement by the Primary Company terminates all contracts with Affiliated Company/ies without specific notice to the REPRESENTATIVE required by the Insurer. However, any Affiliated Company may terminate its agency relationship with the REPRESENTATIVE, which will not, of itself, terminate the Primary Company agency relationship. Upon termination, the Insurer may assign a servicing agency; however, such assignment will not of itself affect the vesting of existing business.

F. Termination of this agreement automatically terminates any previous agreement to represent the Insurer that terminated the Agreement.

## IX. AMENDMENT

This contract cannot be changed by any oral promise or statement and no written modification will bind the Insurer unless approved by the President of the Insurer making the modification.

## X. PERSONAL GUARANTEE

Each and every individual who signs this agreement warrants that they have authority to bind the entity on whose behalf they are signing.

## XI. EFFECTIVE DATE

The agreed effective date will be the date that this agreement to represent is signed and acknowledged by the Primary Company as hereinafter specified.

## XII. INVESTIGATION NOTICE

The undersigned hereby authorizes the Primary and Affiliated Company/ies to conduct an investigation concerning character, credit reputation and personal traits and releases those contacted and the Insurer from any liability with respect to the content of the information provided and any resulting action by the Insurer including the sharing of such information or the termination of this agreement to represent.

## XIII. FEDERAL CRIME CONTROL ACT

A. Undersigned warrants it:

1. has not been convicted of any criminal felony involving dishonesty or breach of trust or

2. has obtained written authorization to engage in the business of insurance from the Insurance Department in the state where REPRESENTATIVE resides which REPRESENTATIVE agrees to produce upon Insurer request.

B. The REPRESENTATIVE agrees to update the representations in the Confidential History/Background Information Section of Part 4 of the Appointment Application by notifying the Primary Company in writing within thirty (30) days, if there should be a change in the response to any question in the Information Section of Part 4 of the Appointment Application.

AGLD1054-0100

AGL / BECHTEL 000027

American General Brokerage Group   May, 2001
*Distributing products issued by: The Old Line Life Insurance Company of America, American General Life Insurance Company and American General Annuity Insurance Company.*

# SCHEDULE OF COMMISSIONS

*Old Line Life*
*First-Year Base Commissions (Schedule S)*

AMERICAN
| GENERAL
| FINANCIAL GROUP

*American General Financial Group
is the marketing name for
American General Corporation
and its subsidiaries*

| Old Line Life (1) | | Base |
|---|---|---|
| LTG Ultra/30 & LPT Ultra/30 (2) | Level Term | 100.00 |
| LTG Ultra/20 & LPT Ultra/20 (2) | Level Term | 100.00 |
| LTG Ultra/15 & LPT Ultra/15 (2) | Level Term | 95.00 |
| LTG Ultra/10 (2) | Level Term | 85.00 |
| LTG Ultra-C/30 | Level Term | 100.00 |
| LTG Ultra-C/20 | Level Term | 100.00 |
| LTG Ultra-C/15 | Level Term | 95.00 |
| LTG Ultra-C/10 | Level Term | 85.00 |
| AG Classic + | UL | 95.00 |
| Universal Elite Plus | UL | 95.00 |
| AG Prime Survivor + | 2nd/Die UL | 80.00 |
| Prime Survivor | 2nd/Die UL | 90.00 |

This schedule of commissions is a supplement to the Agency Agreement and its terms and conditions.
This schedule is subject to change at any time by written notice.

(1) Table Ratings are fully commissionable. Flat extra charges of less than 10 years are non-commissionable.
(2) No first-year, renewal or bonus paid on policy fee.

©2001 American General Corporation, Houston, Texas

AGL801005-0501

AGL / BECHTEL 000028

3/19/0 21:36P
504454 005053

American General Brokerage Group  May, 2001
*Distributing products issued by:* The Old Line Life Insurance Company of America, American General Life Insurance
Company and American General Annuity Insurance Company.

AMERICAN
GENERAL
FINANCIAL GROUP

*American General Financial Group
is the marketing name for
American General Corporation
and its subsidiaries*

# SCHEDULE OF COMMISSIONS

## *Old Line Life*
## *Renewals and Excess Over Target (Schedule S)*

| Old Line Life | | Renewal | Excess (2) |
|---|---|---|---|
| All LTG Ultra & LPT Ultra plans (1) | Level Term | 0.00 | - |
| All LTG Ultra-C/Plans | Level Term | 0.00 | - |
| AG Classic + | UL | 3.00 | 3.00 |
| Universal Elite Plus | UL | 3.00 | 5.00 |
| AG Prime Survivor + | 2nd/Die UL | 3.00 | 3.00 |
| Prime Survivor | 2nd/Die UL | 3.00 | 5.00 |

This schedule of commissions is a supplement to the Agency Agreement and its terms and conditions.
This schedule is subject to change at any time by written notice.

(1)  No renewals paid on policy fee.
(2)  Excess Over Target Commission is determined by Renewal Schedule.

©2001 American General Corporation, Houston, Texas

AGLR02005-0501

AGL / BECHTEL  000029



American General Brokerage Group     May, 2001
*Distributing products issued by: The Old Line Life Insurance Company of America, American General Life Insurance Company and American General Annuity Insurance Company.*

# SCHEDULE OF COMMISSIONS

## *Old Line Life*
## *First-Year Bonus (Schedule Q)*

**AMERICAN GENERAL FINANCIAL GROUP**

*American General Financial Group
is the marketing name for
American General Corporation
and its subsidiaries*

### Old Line Life

| | | |
|---|---|---|
| LTG Ultra/30 & LPT Ultra/30 (1) | Level Term | 27.00 |
| LTG Ultra/20 & LPT Ultra/20 (1) | Level Term | 27.00 |
| LTG Ultra/15 & LPT Ultra/15 (1) | Level Term | 27.00 |
| LTG Ultra/10 (1) | Level Term | 21.00 |
| LTG Ultra-C/30 | Level Term | 27.00 |
| LTG Ultra-C/20 | Level Term | 27.00 |
| LTG Ultra-C/15 | Level Term | 27.00 |
| LTG Ultra-C/10 | Level Term | 21.00 |
| AG Classic + | UL | 28.00 |
| Universal Elite Plus | UL | 28.00 |
| AG Prime Survivor + | 2nd/Die UL | 21.00 |
| Prime Survivor | 2nd/Die UL | 24.00 |

This schedule of commissions is a supplement to the Agency Agreement and its terms and conditions.
This schedule is subject to change at any time by written notice.

(1) No bonus paid on policy fee.

©2000 American General Corporation, Houston, Texas

AGLB0300Q-0501

AGL / BECHTEL 000030

**AIG** | **AMERICAN GENERAL**

AIG Life Brokerage
A division of the American International Companies.

*Change to #0w001*
Appointment Application

`04/4/2007 16:17 0695138 7898`

## Part 1 Individual and Principal of Corporation. This is Required Information.

Please Print Clearly

Social Security Number: REDACTED     3P264

Name: Bechtel
_Last Name_     Kevin
_First Name_     _Middle Initial_

Date of Birth: REDACTED
_month   day   year_     Sex: ☑ Male  ☐ Female

Resident/Home: 5148 Jewell Terr.
_Physical Address_

Palm Harbor     FL     34685
_City_     _State_   _Zip_

Resident/Home Phone Number: _____  E-Mail: Kbechtel@lifebrokeragepartners.com

Business Address: 3982 Tampa Rd.   Oldsmar   FL   34677
_Physical Address_   _City_   _State_   _Zip_

Business Phone Number: 727·791·9080   Fax Number: 813·792·6187

☑ I am an officer of the below corporation.

## Part 2 Corporate Applicants Required Information.

Please Print Clearly     Individual Applicants Do Not Complete This Section

Tax ID Number: 20-8344089

Corporate Name: Life Brokerage Partners LLC     3P263

Corporate Address: 3982 Tampa Rd.

Oldsmar     FL     34685
_City_     _State_   _Zip_

Corporate Phone Number: 727·791·9080   State Incorporated: FL

Fax Number: 813·792·6187   E-Mail: Kbechtel@lifebrokeragepartners.com

Primary Officer for Corporate Records: Kevin Bechtel

Background information reported on page — should provide information for the Officer of the corporation.

## Part 3 Recruiter Section - IMO/BGA Only. *Complete ONLY when address used is NOT the above business address*

Primary mailing address, phone contact, e-mail and faxes will be communicated to the following:

☐ All Home Office Mail and other Communication will be directed to other than the above. Please direct to:

Agency Name: Life Brokerage Financial Group   Agency Code Number: _____

Business Address: 3982 Tampa Rd   Commission Address: 3982 Tampa Rd.
_City   State   ZIP_

Oldsmar  FL  34677     Oldsmar  FL  34677
_City   State   ZIP_     _City   State   ZIP_

Fax Number: 813·792·6187   Phone Number: 727·791·9080

E-Mail Address: Chopskin@lbfg.net   ☑ Please check when commission check is mailed directly to agent's business address.

AGLH1058     1     Rev04/06

AGL / BECHTEL 000031

# EXHIBIT 4

**(to Supplemental Affidavit of Jalen V. Lohman)**



# FINANCIAL ENERGY INSURANCE GROUP, INC.

TOLL FREE: (888) 568-3344     LOCAL (386) 437-6950     FACSIMILE (386) 437-8163

**To:**     Dennis Monroe – AIGLBG Sales VP     *John D. Ekberg*

**From:**     John Ekberg -- NMO # 0T781

**Re:**     MO Contract for Gary Richardson
           IMO Contract for Kevin Bechtel

**Date:**     March 26, 2007

Enclosed are the AIGLBG contracts for the two principals mentioned above. Both are applying for contracts for newly formed entities that came out of the current Life Brokerage Equity Group.

I am requesting a MO contract for Gary Richardson at the 5 million production bonus level.

I am requesting an IMO contract for Kevin Bechtel under Gary's MO contract. We are requesting the 4 million production bonus level.

Both Gary and Kevin realize that they must produce at these levels to maintain their bonus levels. They did nearly 100 million of target in 2006 in fixed life business. I am confident that with all the new products and programs (including AIG Select Premium Financing) they will meet these goals in 2007. I hope to help them exceed these production levels for 2007 and into the future.

Because the Specialty Products (AIG Global Elite Index UL) will be important, I am requesting that I be raised to the "S" level (35%) and Gary be given the "A" level. Kevin has been submitted at the traditional IMO level.

1083 HAMPSTEAD LANE, ORMOND BEACH, FL 32174
e-mail fienergy@bellsouth.net

AGL / BECHTEL 000080

Page – 2

Here are additional pieces that will follow shortly:

1)  Florida corporate licenses for both Gary and Kevin.

2)  Contract Change Forms for each existing producer (currently
    under Life Brokerage Equity Group's existing contract) to
    transfer to either Gary's or Kevin's new entity.

3)  A list of inforce policies that should be transferred from Life
    Brokerage Equity Group to Kevin's new contract. –

4)  A list of pending cases that should be transferred to Kevin's
    new contract.

Pauline Baker has agreed to do items 3 and 4 above. We are all very
grateful for this.

Thanks for all your help. Please advise if we need to do something else
at this time.



AGL / BECHTEL  000081

# EXHIBIT 5

**(to Supplemental Affidavit of Jalen V. Lohman)**

Subject: Gary Richardson & Kevin Bechtel's new AIGLBG Contracts

> John - Rec'd your overnight package today & I will hold until I get the
> rest of the paperwork before sending up to Milwaukee.  No point in sending
> up there until I at least get the corporate licenses.  We would run the
> risk of what we send up getting misplaced or lost.
>
>
> Pat Russo
> AIG/American General
> Southeast Regional Office Marketing Coordinator
>
> (800) 787-9937, ext. 6324
> (214) 654-6326 fax
> pat_russo@aigag.com
>
> Check out our website with up to date status & messaging
> system@http://www.aiglifebrokerage.com
>
>
>
>
>                      "john ekberg"
>                      <john_fienergy@bel        To:
> <dennis_monroe@aigag.com>
>                      lsouth.net>              cc:
> <Pat_Russo@aigag.com>, <Patti_Newall@aigag.com>
>                                    Subject:  Gary Richardson &
> Kevin Bechtel's new AIGLBG Contracts
>                      03/26/2007 09:05
>                      AM
>
>
>
>
>
> We will overnight both contracts to your office today for delivery
> tomorrow
> via DHL.
>
> There are a couple of missing pieces.....but it is important to get the
> process started.
>
> Gary's new contract will be a MO and Kevin's new contract will be an IMO
> under Gary.
>
> What is missing to the best of our knowledge are:
>
> 1)    Gary's new Florida Corporate License (applied for).
>
> 2)    Gary's EFT info.  Bank account being set up with week.
>
> 3)    Kevin's new Florida Corporate License (applied for)
>
> 4)    Individual transfer forms signed by Gary to transfer people to
> Kevin's new contract and the
>       balance to be transferred to Gary's new contract.
>
> Thanks for your help.
>

04/24/2007 16:18 0689513B 8027

```
> John Ekberg    NMO # OT781
>
> (888) 568-3344
>
>
```

04/24/2007 16:18 0695138 8028

AGL / BECHTEL 000073