# EXHIBIT I

## AGREEMENT

This Agreement, is made and entered into on September _30_, 2008 between Life Brokerage Partners, LLC, its partners, associates, employers, affiliates, subsidiaries, parent company, nominees, representatives, employees, successors, clients and assigns (hereinafter "LBP"), Life Brokerage Financial Group, Inc., its partners, associates, employers, affiliates, subsidiaries, parent company, nominees, representatives, employees, successors, clients and assigns (hereinafter "LBFG"), Life Brokerage Equity Group, Inc., its partners, associates, employers, affiliates, subsidiaries, parent company, nominees, representatives, employees, successors, clients and assigns (hereinafter "LBEG"), Cardinal Marketing Group, LLC, its partners, associates, employers, affiliates, subsidiaries, parent company, nominees, representatives, employees, successors, clients and assigns (hereinafter "Cardinal"), Broker Dealer Services, Inc., its partners, associates, employers, affiliates, subsidiaries, parent company, nominees, representatives, employees, successors, clients and assigns (hereinafter "BDS"), Gary Richardson, individually (hereinafter "GR") and Kevin Bechtel, individually (hereinafter "KB").

### WHEREAS CLAUSES

Whereas, the parties have various business relationships with one another that the parties wish to clarify and memorialize with this Agreement.

Whereas, LBP (TIN 20-8344089) is a single member LLC with its sole member being KB and operates as a life insurance brokerage company that serves as a general agent for various life insurance products.

Whereas, LBFG ,(TIN 77-0672218), is a Florida corporation which operates as a life insurance brokerage company that serves as a general agent for various life insurance products.

Whereas LBEG ,(TIN 65-0972017), was a life insurance brokerage firm that served as a general agent for various life insurance products and has been dissolved by its members, Gary Richardson and Kevin Bechtel.

Whereas Gary Richardson is a 51% member of LBEG and Kevin Bechtel is a 49% member of LBEG.

Whereas Cardinal Marketing Group, (TIN 36-4609002), LLC is a marketing entity that has entered into a Referral Agreement dated July, 2007 with LBP.



Whereas Broker Dealer Services, Inc. (TIN 51-0570148), is a Florida corporation that consists of two shareholder, Gary Richardson 51% and Kevin Bechtel 49%.

Whereas Gary Richardson and/or Kevin Bechtel have an interest in each of the entities involved in this Agreement and where they would like to memorialize and resolve multiple issues that have arisen over the business relationship between the parties.

Whereas on or about 2/28, 2007 LBEG was dissolved for all practical business purposes but the entity remains in order to clear up outstanding liabilities and collect renewal commissions owed to in from its previous business operations. GR is a 51% member of LBEG and KB is a 49% member of LBEG. No other party has any rights or interests in LBEG. LBEG's revenues consist of renewal commissions from various life insurance carriers. For the time period 1/1/2008 – 8/31/2008, LBEG has received a total of $418,671.47 (net of payments of $28,457.60 to third parties for commissions) in life insurance renewal commissions. GR received $191,879.29 (based upon 51% he should have received $213,522.45) and KB received $226,792.18 (based upon 49% her should have received $205,149.02).

Whereas LBP is a single member LLC with its only member being KB.

Whereas LBFG is a Florida corporation with its own shareholder being GR.

Whereas LBP and LBFG have been operating under an oral agreement in which LBP would process some of its business through LBFG and LBFG would earn a 1% processing fee on the business it processes for LBP.

NOW THEREFORE, in consideration of the mutual promises and covenants set forth herein, the Parties mutually agree as follows:

1. **LBEG Renewal Split.** In order to assure that there is a 51/49 split of monies received by LBEG in 2008, the parties agree that the trustee for LBEG is ordered to each month to (in this priority order): a) pay any bills or liabilities of LBEG; b) pay to GR a sum of $7,214.29 per month for a total of three (3) months (October 2008, November 2008 and December 2008) and then a sum of $6,000 per month for nine (9) months beginning January 2009; and c) divide the remaining funds each month, 51% to GR, 49% to KB. After the nine $6,000 payments are made in 2009 pursuant to this paragraph, the trustee is instructed to only distribute money from LBEG as set forth pursuant to this paragraph in subparts (a) and (c) unless otherwise agreed to in writing and signed by KB and GR.

2. **LBEG Renewal Sources.** The parties to this Agreement agree that all renewal commission sources currently being paid to LBEG will remain payable to LBEG and no party shall take any steps whatsoever to divert those sources to other persons or entities. Should any funds be diverted, for any reason, the person diverting said funds or receiving the diverted funds shall be immediately transfer those funds to LBEG to be disbursed as set forth in this Agreement.

3. **Right to Renewals.** All renewal commissions currently being paid, paid in the past or that will be paid to GR shall remain the sole property of GR without any right of claim of

any other parties to this Agreement. All renewal commissions currently being paid, paid in the past or that will be paid to KB shall remain the sole property of KB without any right of claim of any other parties to this Agreement. Any renewal commissions currently being paid, paid in the past or that will be paid to LBP shall be the sole and exclusive property of LBP without any right or claim of other parties to this Agreement. All renewal commissions currently being paid, paid in the past or that will be paid to LBFG shall remain the sole and exclusive property of LBFG without any right or claim of other parties to this Agreement.

4. **Referral Agreement.** The parties to this Agreement agree that the "Referral Agreement" dated July, 2007 is hereby terminated and the obligations of all parties to the agreement are hereby terminated and superseded by the terms of this Agreement.

5. **BDS Stock Redemption Agreement.** KB agrees to execute a Stock Redemption Agreement, within three business days of receiving the BDS Stock Redemption Agreement, releasing any rights, claims or interest in BDS and assigning his interests to GR. GR and BDS agree to hold KB harmless and indemnify him for any and all damages, including but not limited to the cost and fees of any attorneys, pre-lititation, litigation, arbitration and appellate that is required to assist KB for any reason, including but not limited business, taxes and ethical issues that may arise from the operation from the operations of BDS. BDS agrees to allow KB to retain his own attorney for representation in any matter necessitated by his membership in BDS and BDS and GR further agree to be fully responsible for all fees and costs associated with the attorney of KB's choosing.

6. **LBFG and GR Indemnity from LBP and KB .** LBP and KB, hereby agree for themselves, their representatives, successors and assigns to at all times indemnify and hold harmless LBFG and GR, their its successors, assigns, officers, directors, shareholders, employees, and representatives against any and all claims, suits, actions, debts, damages, costs, charges, and expenses, including court costs and attorneys' fees (and including court costs and attorneys' fees in the enforcement of this Agreement), and against all liability, losses, and damages of any nature whatever, that LBFG or GR shall or may at any time sustain or be put to by reason of the life insurance applications processed by LBFG for LBP and the life insurance policies issued pursuant to those applications. In the event a processing error by LBFG is responsible for the legal action, LBFG will return the processing fee received on the case to LBP. LBP and KB agrees to allow LBFG and GR to retain their own attorney for representation pursuant to this clause and agrees to be fully responsible for all fees and costs associated with the attorney of LBFG's and GR's choosing.

7. **Assessment of Certain Future LBEG Obligations.** While none are contemplated at this time, the parties recognize the possibility of future obligations of LBEG unrelated to day to day operations. Such obligations would include chargebacks, policy rescissions, and related matters. During the course of operations of LBEG, policy premiums and other income were distributed to both GR and KB, or entities under their individual control, in various proportions both consistent and inconsistent with their respective 51%-49% ownership interests. The parties hereby agree that all obligations of LBEG contemplated by this paragraph shall be payable by the parties in direct proportion to the income they received from the complaining party (i.e. if a $10,000 commission was split by GR and KB 80%-20% then GR

would be responsible for 80% of the chargeback and KB would be responsible for 20% of the chargeback). GR and KB, hereby agree for themselves, their representatives, successors and assigns to at all times indemnify and hold harmless each other, their its successors, assigns, officers, directors, shareholders, employees, and representatives against any and all claims, suits, actions, debts, damages, costs, charges, and expenses, including court costs and attorneys' fees, and against all liability, losses, and damages of any nature whatever, that GR or KB shall or may at any time sustain or be put to by reason of a violation of this paragraph.

7. **Governing Law/Mediation/Attorney Fees.** Legal remedy for breach of any of the above agreed to covenants shall be governed by and construed in accordance with the laws of the State of Florida, in the United States of America. The parties hereby agree to mediate with a mutually agreeable third party mediator prior to initiating any legal action under this Agreement. In the event that an amicable settlement cannot be agreed to by mutual discussion/mediation, and/or arbitration by a third party, each of the Parties subject to the declared breach shall be responsible for their own legal expenses, until a settlement or judgment is reached, provided however, that the party found in default by a judgment shall compensate in full the aggrieved party for all of its legal expenses, not withstanding any other provisions of the judgment. All parties to this Agreement hereby waive their rights to trial by jury for any action brought to enforce the terms of this Agreement.

8. **Applicable Law.** This Agreement has been executed and delivered and shall be construed and enforced in accordance with, the laws of the State of Florida.

9. **Venue.** The parties to this Agreement agree and consent that any action brought to enforce this Agreement shall be brought in Pinellas County, Florida.

10. **Modification.** No modification of this Agreement shall be valid unless in writing, signed by all the parties hereto.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals as of the date first above written.

Life Brokerage Partners, LLC, a
Florida a limited liability company

By: _____
Managing Member


Life Brokerage Equity Group, a
Florida corporation

CONFIDENTIAL                                                                               AGL / Bechtel 000358

By: /s/ Jay A. Richardson
President

By: /s/ Jean A. R.
Trustee:

Attest: /s/ Sheila J. Epum
~~Secretary~~ Witness:

Life Brokerage Financial Group,
a Florida corporation

By: /s/ Jay A. Richardson
President

Attest: /s/ Sheila J. Epum
~~Secretary~~ Witness:

Broker Dealer Services, a
Florida corporation

By: /s/ Jay A. Richardson
President

Attest: /s/ Sheila J. Epum
~~Secretary~~ Witness:

Cardinal Marketing, LLC, a
Florida limited liability company

By: /s/ Jay A. Richardson
Managing Member

CONFIDENTIAL

AGL / Bechtel 000359

AGL / Bechtel 000360

_____
Kevin H. Bechtel, Individually

_____
Gary Richardson, Individually

CONFIDENTIAL