# EXHIBIT M

05/11/2006  07:37   7277120329              LBEG                    PAGE  01/21

# Fax Cover Sheet



Life Brokerage Equity Group

2963 Gulf-to Bay Blvd
Suite 330
Clearwater FL 33759



| | |
|---|---|
| Send to: American General | From: Vanessa Nally |
| Attention: Contracting | Date:   05/11/06 |
| Fax Number: 9-1-800-337-0961 | Fax Number: 727-451-0567<br>Email Address: vnally@lbeg.net |
| Total pages, including cover: 21 | Phone Number: 727-791-9080 |

For Your Record

Enclosed is contracting for Bradley Wasserman.  Please let me know if
you have any questions.

Thank You
Vanessa Nally
Licensing & Contracting

ODYSSEY '05
July 24 -26 2006
Renaissance Vinoy Resort
St. Petersburg Florida

Ask your Brokerage Director for details or visit us at www.odyssey.lbeg.net

AGL / Bechtel 000397

05/11/2006  07:37  7277120329                    LBEG                          PAGE  02/21

 **Equity Group**
*A Great Business Partner*

2963 Gulf to Bay Blvd Suite 330      Phone: 727-781-9080
Clearwater, FL, 33759                Fax: 727-712-1459

## Appointment Transmittal

May 9, 2006

American General
Contracting

Agent Name                                      Wasserman, Brad
Agent Social Security Number                    [Redacted]
Agent Date of Birth                             [Redacted]
Appointment Number

The following Carrier Appointment Requirements have been requested:

American General
All Lines of Business
FL

The following Carrier Appointment Requirements have been received:

Requirement                                     **Received Date**
Carrier Contracting Forms                       05/09/2006
Current License                                 05/09/2006
E&O                                             05/09/2006
L & C Transmittal Form                          05/09/2006
Agency Agreement                                05/09/2006
EFT a voided check                              5/9/2006

Vanessa Nally
LBEG
Direct Phone: 727-791-9083 / 888-577-5234
Direct Fax: 727-451-0567
EMail: vnally@lbeg.net

AGL / Bechtel 000398

05/11/2006  07:37  7277120329          LBEG                    PAGE  03/21



**AIG**®  **AMERICAN GENERAL**

Licensing and Contracting
Transmittal Form

AIG Life Brokerage
A division of the American International Companies.®

Date: 5-8-06          Submitted By: Gary A Richardson  IMO/BGA Code: OPU67

Corporation Name: _____

Agent Name : Bradley Wasserman

Agent Social Security No./Tax ID No.: **Redacted** - ___-___-___ Agent Number (if available): _____

## CONTACT INFORMATION

| FOR MISSING DOCUMENTS OR PAGES | FOR L & C FOLLOWUP |
|---|---|
| Name: Vanessa Nally | Name: Vanessa Nally |
| Phone: 727-791-9080 | Phone: 727-791-9080 |
| Fax: 727-451-0567 | Fax: 727-451-0567 |
| E-Mail: vnally@lbeg.net | E-mail: vnally@lbeg.net |

## DOCUMENTS ATTACHED

- ☐ Address Forms
- ☑ Agency Agreement
- ☐ Annualization Forms
- ☑ Appointment Application
- ☐ Assignment of Commission
- ☐ Contract Change Form
- ☐ EFT Forms and Voided Check

- ☑ Errors and Omissions
- ☑ License Copies
- ☐ Life Sales Agreements
- ☐ Outstanding Requirement _____
- ☐ State Correspondence
- ☐ Requests for Termination
- ☐ _____

SPECIAL INSTRUCTIONS:

## NEW BUSINESS APPLICATION WITH LICENSING AND CONTRACTING PAPERWORK

If more than one new business application is being submitted, provide information for the one which has the oldest Application Signed date.

Policy Number: _____ Policyholder Name: _____

State Application Signed In: _____ Application Signed Date: __.__

AIG American General
Midwest Operations Center
P O Box 401
Milwaukee, WI 53201

AGLC101767

AGL / Bechtel 000399

 **AMERICAN GENERAL**

**Appointment Application**

AIG Life Brokerage
A division of the American International Companies.℗

## Part 12   Upline Data -- To be completed by individual recruiting applicant.

Applicant Name: **Bradley Wasserman**
Please Print

Applicant Social Security Number: Redacted \_ \_ \_ - \_ \_ - \_ \_ \_ \_

Direct Upline Name: **Gary A Richardson**
Please Print

Agency Code Number: CPU67

## Part 13   AGL Commission Section - Must be completed.

Contract Level Requested    ☐ IMO/BGA    ☐ MGA    ☐ MGA 1    ☑ GA    ☐ GA 1    ☐ GA 2    ☐ Agent/Producer

Commission Level for American General Life

| | | | |
|---|---|---|---|
| Life Products: | First Year Level: | 3 | *If First Year is selected, Renewal Level must also be indicated.* |
| | Renewal Level | D | |
| (HO Approval) | Productivity Bonus Level | 0 | |
| Specialty Products:<br>(Street Max = J) | First Year/Renewal Level | J | |
| AGL Annuity Deferred & Immediate: | First Year/Renewal Level | D | |
| A & H: | First Year Level | D | *If First Year is selected, Renewal Level must also be indicated.* |
| | Renewal Level | D | |

## Part 14   Additional Forms Section

Annualization:  Please attach annualization form when requesting annualization. (Available on a limited basis.)

Electronic Funds Transfer (EFT)    Please attach EFT form and a copy of a voided check when requesting to receive commissions electronically.

Appointment, Bonus and Annualization require Home Office Approval.

AGLB1058                                              5                                            Rev0406

AGL / Bechtel 000400

 **AMERICAN GENERAL**                    **Appointment Application**

AIG Life Brokerage
A division of the American International Companies.®

## Part 1   Individual and Principal of Corporation.   This is Required Information.

Please Print Clearly

Social Security Number: **Redacted**

Name: Wasserman                        Bradley
      Last Name                First Name          Middle Initial

Date of Birth: **Redacted**          Sex: ☒ Male   ☐ Female
     9655 month          day          year
Resident/Home: 5669 Wilshire Lakes Blvd
                         Physical Address

   Naples                                FL          34109
    City                                State          Zip

Resident/Home Phone Number: _____          E-Mail  bewass@aol.com

Business Address: 1415 Panther Lane #138          Naples          FL     34109
         Physical Address                  City          State     Zip

Business Phone Number: 239-591-8666          Fax Number 239-591-6710

☐ I am an officer of the below corporation.

## Part 2   Corporate Applicants Required Information.

Please Print Clearly                    Individual Applicants Do Not Complete This Section

Tax ID Number _____

Corporate Name: _____

Corporate Address: _____

         City                                State          Zip

Corporate Phone Number: _____   State Incorporated: _____

Fax Number: _____          E-Mail: _____

Primary Officer for Corporate Records: _____

Background Information reported on page – should provide information for the Officer of the corporation.

## Part 3   Recruiter Section – IMO/BGA Only. *Complete ONLY when address used is NOT the above business address*

Primary mailing address, phone contact, e-mail and faxes will be communicated to the following:

☐ All Home Office Mail and other Communication will be directed to other than the above. Please direct to:

Agency Name: Life Brokerage Equity Group          Agency Code Number: OPU67

Business Address: 2963 Gulf -to- Bay Blvd #330   Commission Address: 2963 Gulf -to- Bay Blvd #330
  Clearwater FL 33759                          Clearwater FL 33759
  City     State     ZIP                          City     State     ZIP

Fax Number: 727-451-0567                         Phone Number: 727-791-9080

E-Mail Address: vnally@lbeg.net          ☐ Please check when commission check is
                             mailed directly to agent's business address.

AGLI1038                          1                          Rev0406

05/11/2006   07:37   7277120329                    LBEG                          PAGE   05/21

 **AMERICAN GENERAL**                                     **Appointment Application**

AIG Life Brokerage
A division of the American International Companies.©

## Part 4   Licensing and State Appointment Request

Attach copies of licenses for all requested state appointments. Provide appropriate fees for nonresident appointments.

Social Security Number: **Redacted**

Applicant Name: ___Bradley Wasserman___

Licensed for: ☐ Life   ☐ Health   Contracted as: ☑ Individual   ☐ Agency

Resident State: __FL__   Resident License Number: _____

Nonresident Appointment State(s): _____

Attach applicable fees and licenses for states listed above.

FLORIDA residents must specify the Florida county where their business office is located: _Miw Conthes Com #128 Hogh 1=1_   34/.09

NON-RESIDENT FLORIDA agents soliciting in Florida must list the county(s) in Florida in which they intend to personally solicit:

## Part 5   Variable Licensing – Complete ONLY when variable appointment is requested.

Please complete the following ONLY when requesting variable appointment.

Who is your Broker/Dealer? _____ .

CRD Number: _____

Circle all current NASD licenses that you hold:   6   7   22   24   26   63   Other: _____

### Independent Wholesaler Election

Some broker-dealers may permit third-party wholesaling firms to offer certain services and support to registered representatives in order to facilitate sales of American General Life Insurance Company (AGL) variable universal life products. These firms are referred to by AGL as Independent Wholesalers (IW). In order for you to sell AGL's variable universal life insurance products through an IW, an IW agreement must be in place with the BGA/IMO and your broker-dealer must be informed, pursuant to NASD Rule 3030, of your IW election. Additionally, this IW Election Form must be submitted to AIG Life Brokerage, which documents your IW election. If you wish to obtain support through an IW, please indicate your election below.

☐ IW Election: _____
                    (Name of IW Firms and Code Number)

## Part 6   Errors and Omissions Insurance Coverage

IMO candidates, attach copy of E & O Certificate. All others, please complete the following:

A. Name of Carrier: _CalSurance._

B. Policy Number: _NF0731819 7_

C. Name of Insured: _____

D. Coverage Amounts (include both per act and aggregate amounts):

   Per Act: _____

   Aggregate: _3,000,000_

E. Expiration Date (month/date/year): _7.1.06_

AGLB1058                                    2                                    Rev0406

 **AMERICAN GENERAL**                          ***Appointment Application***

AIG Life Brokerage
A division of the American International Companies.®

## Part 7   Background Information Required On All Applicants

If this is a corporate application, the questions should be answered by and about the agency principal.  **Redacted**

Social Security Number: ___ ___ ___ - ___ ___ - ___ ___ ___ ___

CONFIDENTIAL HISTORY/BACKGROUND INFORMATION

Please provide *complete details* for any "yes" answers in the Remarks section. Attach additional documentation as necessary.

1. Have you ever been convicted of or plead guilty or no contest to:
   a. Any Felony? ☐ Yes ☑ No
   b. Any Misdemeanor? ☐ Yes ☑ No
   c. A violation of federal or state securities or investment related regulations? ☐ Yes ☑ No

2. Are you currently under investigation by any legal or regulatory authority? ☐ Yes ☑ No

3. Do you now owe money to any life or health insurance company? ☐ Yes ☑ No

4. Have you or a firm in which you were a partner, officer or Director been declared bankrupt or been party to a bankruptcy or receivership proceeding, or have you had a salary garnished or had liens or judgements against you? ☐ Yes ☑ No

5. Has any insurance company or securities broker-dealer terminated your contract or permitted you to resign for reason other than lack of sales? ☐ Yes ☑ No

6. Have you ever been the subject of a consumer-initiated complaint or proceeding by any self-regulatory body or any securities commodities or insurance regulatory body or organization or employer? ☐ Yes ☑ No

7. Has a bonding company ever denied, paid out on or revoked a bond for you? ☐ Yes ☑ No

8. Have you ever had a claim filed against your professional liability or errors and omissions insurance coverage? ☐ Yes ☑ No

9. Has any insurance department, government agency or self-regulatory authority ever denied, suspended, revoked, censured or barred your license or registration or disciplined you with fines or by restricting your activities? ☐ Yes ☑ No

REMARKS SECTION: Details of "yes"

AGLB10SR                                    3                                    Rev0406

AGL / Bechtel 000403

05/11/2006  07:37   7277120329                    LBEG                    PAGE  08/21



## **AMERICAN GENERAL**

## **Appointment Application**

AIG Life Brokerage
A division of the American International Companies.®

### Part 8   Signature of Individual -or- Principal of Corporation

Social Security Number ___ Redacted ___ - ___ - ___

I have read and received, as of the date indicated below, the notice concerning investigative consumer reports, as required by law. I understand that in signing this form, I hereby authorize the American General Life Companies that I have requested appointments with (hereinafter collectively referred to as the "American General Affiliates") to investigate my background, including my credit history and interviews with former employers and/or primary insurance company. I authorize the American General Affiliates and individuals named in the application to give the American General Affiliates any information regarding me that they have available. I agree that if any of my answers to the questions in Part 7 change, I will notify, in writing, American General Affiliates within 10 business days of the incident which would cause an answer to change. I understand that falsification of information or failure to update the answers on this application may result in termination of appointment(s) with all American General Affiliates. In addition, I hereby authorize the American General Affiliates to report information about earnings and debit balances to any credit bureau or similar organization.

I further authorize American General Affiliates to verify my previous employment and securities registration history through the CRD system. I hereby authorize American General Affiliates to share background, licensing and applicant data with their affiliates. I acknowledge that I have received and reviewed the "Compliance Manual" for the American General Life Companies, and/or "Operations Manual" and I agree to abide by these principles, as amended or supplemented from time to time, in representing any of the Companies that appoint me.

Date: 5 1 06        ✗ Signature: _____
                                    Signature of Individual -or- Principal of Corporation

### Part 9   Signature of Recruiter

The undersigned [recommending representative or General Agent] by executing this applicant recommends the applicant to American General Affiliates as a suitable person to represent the companies. The recommending individual or General Agent also agrees to supervise and assume responsibility for the applicant, if appointed by American General Affiliates, in accordance with the terms of his/her contract.

Signature: _____        Date: 5 1 06
            Signature of Recruiter

Print Name: Gary Richardson        Agent/Agency Code # GPU67
            Print Name of Recruiter                        Required

### Part 10   Home Office Section

Signature: _____        Date: ___/___/___
            (Additional signatures, if required, RVP)

Print Name: _____        Regional Code Number _____

Home Office Approval: _____        Date: ___/___/___
                        (if required)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Remove and leave Part 11 with applicant.

### Part 11   Fair Credit Reporting Act - Notice of Proposed Investigative Consumer Report

Pursuant to the Fair Credit Reporting Act, this notice is to inform you that as a component of our contracting and appointing process, each company with which you have requested an appointment may request an investigative consumer report which may include information related to your character, general reputation, personal characteristics, and mode of living. You have the right to request in writing, within a reasonable period of time after receipt of this notice, a complete disclosure of the scope of the investigation requested and a written summary of your rights under the Fair Credit Reporting Act. Send your request to: Licensing and Contracting Department, 750 W. Virginia St. Milwaukee, WI 53204. Disclosure information must be in writing and mailed to you, along with the written summary of your rights, within five (5) business days after receipt of your written request. Also each company with which you have requested an appointment may share the information contained in the investigative report and other information in your file with its affiliates, unless you send a written request to the above-described address directing that this information not be disclosed or shared with affiliates.

AGLB1058                                    4                                    Rev0406

AGL / Bechtel 000404

## AGENCY AGREEMENT

*Each life insurance company's products are separately underwritten and independently supported by the representative company. The below listed companies are members of the American International Group, Inc.*

**FOR**

Last Name Wasserman   First Name Bradley   Middle Initial _____

If Representative is a Corporation, the full Corporate name must appear above, and an authorized officer must sign and indicate the officer's title.

Individual
Social Security Number ___ Redacted _____

Corporation
Tax Identification Number _____

Representative
Signature _____   Title _____

American General Life Companies

Contract Date ____ 04072006 ____
To be completed by Home Office

_____
Home Office Authorized Signator

American General Life Insurance Company, Houston, TX
A division of the American International Companies®

AGLB 1056-1105

**WE KNOW LIFE.**



**AIG  AMERICAN GENERAL**
AIG Life Brokerage

AGL / Bechtel 000405

**TABLE OF CONTENTS**

**Paragraph**
Recitals
Definitions

| | |
|---|---|
| I. | Authorized Acts |
| II. | Limitation of Authority |
| III. | Advertising |
| IV. | Relationship |
| V. | Compensation |
| VI. | Vesting |
| VII. | General Provisions |
| VIII. | Termination |
| IX. | Amendment |
| X. | Personal Guarantee |
| XI. | Effective Date |
| XII. | Investigation Notice |
| XIII. | Federal Crime Control Act |
| XIV. | Confidentiality |

**Schedules**

A. Commission Schedule – Primary Company

B. Appointment Application

AGL / Bechtel 000406

## RECITALS

Representative ("REPRESENTATIVE") has executed an Appointment Application requesting appointments with one or more life insurance subsidiaries of American International Group, Inc.

The Appointment Application designates one of the life insurers as a Primary Appointing Company (the "Primary Company"),

This Agreement together with the Appointment Application and Commission Schedules for each separate life insurer that appoints REPRESENTATIVE comprise the REPRESENTATIVE's contract with each of the insurers that appoints REPRESENTATIVE.

Execution of this Agreement by the Primary Company and the REPRESENTATIVE evidences their Agreement to transact business in accordance with the terms and conditions set forth in this Agreement.

If REPRESENTATIVE requested appointment with one or more affiliates of the Primary Company in the Appointment Application, or a subsequent amendment to that form, REPRESENTATIVE's execution of this Agreement evidences REPRESENTATIVE's Agreement to transact business with each affiliated insurer in accordance with the terms and conditions set forth in this Agreement. Each affiliated insurer that appoints REPRESENTATIVE and sends a company commission schedule to REPRESENTATIVE has agreed to transact business with REPRESENTATIVE according to the terms and conditions of this Agreement.

## DEFINITIONS

A. **Primary Company** – the Primary Company is designated in the Appointment Application as the Primary Company. The Primary Company's responsibilities include executing the REPRESENTATIVE Agreement, performing background checks and providing convention credits and other sales incentives, if any, to REPRESENTATIVE.

B. **Affiliated Company** – the Affiliated Company(ies) is any other life insurance subsidiary of American International Group, Inc. that is identified in the Appointment Application, appoints REPRESENTATIVE and provides a company commission schedule as evidence of its Agreement to transact business with REPRESENTATIVE according to the terms of this Agreement.

C. **Insurer** – the term Insurer as used in this Agreement refers to each of the life insurance companies that appoints REPRESENTATIVE, including the Primary Company.

D. **Jurisdiction** – Eligibility for, or receipt of, override compensation on another Representative's business.

E. **Nonpublic Personal Information:** "Nonpublic Personal Information" of customers or consumers ("NPI") includes, but is not limited to, names, addresses, account balances, account numbers, account activity, social security numbers, taxpayer identification numbers, and sensitive financial and health information. NPI includes information on each party's forms or in a database of any kind. Information created by each party, Reference to NPI of Company or REPRESENTATIVE shall include NPI collected by or on behalf of American International Group, Inc., its successors, subsidiaries, affiliates agents or contractors. There may be instances where each party will have the same NPI which may be subject to different privacy policies and procedures according to the indices provided to the customer or consumer by the respective parties to the Agreement.

F. **Protected Health Information:** The terms "Protected Health Information" and "PHI" shall have the meaning set forth in 45 C.F.R. Sec. 164.501 as may be amended. Other terms shall have the same meanings as set forth in the applicable definition of the Health Insurance Portability and Accessibility Act (HIPAA), as amended, Privacy Rule or other regulations.

## I. AUTHORIZED ACTS

A. The REPRESENTATIVE is authorized to conduct Insurer's business for the Insurer's products covering such classes of risks as the Insurer may authorize and in those states where the product is approved and REPRESENTATIVE is licensed and appointed as required by state law. If REPRESENTATIVE is a corporation, then the principal(s) of such corporation must also be licensed individually, if required pursuant to appropriate state law.

B. The REPRESENTATIVE is authorized to collect and promptly remit to the Insurer the first premium on business produced by the REPRESENTATIVE in accordance with the Insurer's rules and regulations.

C. The REPRESENTATIVE will promptly deliver issued policies in accordance with Insurer's policies and procedures.

D. All monies, settlements, or documents received by the REPRESENTATIVE for, or on behalf of, the Insurer shall be received by the REPRESENTATIVE in a fiduciary capacity and immediately paid over or delivered to the Insurer, except as may be otherwise directed in writing by the Insurer.

AGL / Bechtel 000407

## II. LIMITATION OF AUTHORITY

The REPRESENTATIVE is without authority to perform any act or thing other than that expressly granted in this Agreement and expressly agrees not to perform any of the following acts:

1. Make, modify, alter or discharge any policy.
2. Extend the time payment of any premium.
3. Waive any forfeiture.
4. Guarantee dividends or interest rates.
5. Incur any debt or liability in the name of the Insurer.
6. Withhold, commingle or convert to the use of the REPRESENTATIVE or the benefit of others, any monies, securities, policies or receipts belonging to the Insurer, the applicant, or the insured, or fail to promptly submit to the Insurer any applications for policies.
7. Accept or deposit any check or draft for premiums made payable to other than the Insurer.
8. Unless in the best interest of the policyowner, directly or indirectly induce or attempt to induce any policyowners of Insurer to relinquish, surrender, replace or lapse their policies.

## III. ADVERTISING / USE OF LOGO

REPRESENTATIVE may, at REPRESENTATIVE's expense, advertise Insurer's products, provided the text of all advertising, including any form of sales/promotional material such as, but not limited to business cards, stationery or other indications of agency under this Agreement and including the use of the names "American-International Group, Inc.," "AIG," "American General," their logos or the name of any insurer is approved in writing by the company before use.

## IV. RELATIONSHIP

The relationship between the Insurer and the REPRESENTATIVE shall be that of principal and independent contractor, and nothing contained herein shall be construed as creating the relationship of employer and employee for any purpose, including tax purposes. REPRESENTATIVE agrees to be responsible for all taxes as a self-employed independent contractor. The REPRESENTATIVE shall be free to exercise independent judgment as to the time and manner in which the REPRESENTATIVE shall perform the services authorized under this Agreement. Any material supplied by the Insurer is for the purpose of supporting the activities of the REPRESENTATIVE.

## V. COMPENSATION

A. Subject to the provisions hereof and the rules of the Insurer, the full compensation of the REPRESENTATIVE shall be payable at the applicable rate set forth in the Schedule of Commission in effect at the date the first full pre-mium is received by the Insurer, which Schedule of Commission and all amendments, supplements and replace-ments thereof and thereto are hereby made a part of this Agreement.

B. Commission is subject to change at any time by written notice by the Insurer to the REPRESENTATIVE, but no such change shall affect commissions on any policy issued prior to the effective date of such change.

C. If commission rates are not now shown in the Schedule of Commission, including conversions, replacements or, the exercise of re-entry provisions or, if special premium rate quotations are made, commission rates shall be such as may be fixed by the Insurer as of the time when issue is effective in accordance with rates and practices of the Insurer than in effect.

D. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall lapse because of nonpay-ment of premium and shall be replaced or reinstated, any commissions on the new or reinstated policy shall be payable only at the sole discretion of the Insurer.

E. To be entitled to commissions, if any, the REPRESENTATIVE's name or the name of another Representative under your jurisdiction must appear as soliciting agent on the application for insurance. Disputes respecting commis-sions shall be subject to decision and settlement by the Insurer and the Insurer's decision shall be final and binding upon the parties involved.

F. Whenever, in the judgment of the Insurer, it shall become advisable to recall any policy issued before delivery thereof is made, the REPRESENTATIVE shall promptly refund to the Insurer any commissions received on account of such policy. Whenever, after delivery, the Insurer shall effect or procure the surrender, rescission or cancellation of any policy and refund premiums paid thereon, the Insurer shall have the right to charge back commissions and demand that the REPRESENTATIVE repay such commissions to the Insurer. If the Insurer shall refund or waive the premium or premiums under the provisions of any disability waiver of premium rider, the REPRESENTATIVE shall lose all rights to commission and persistency fees as applied to such refunded or waived premiums, and shall repay any amounts advanced. An Insurer may include in its Commission Schedule, which is incorporated as a part of this Agreement, guidelines describing more specifically the circumstances under which it will charge back commissions on certain products. In the absence of such guidelines, the Insurer's rights shall be as described in this Section V. Compensation.

G. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall be converted or replaced, any commissions on the new policy shall be subject to adjustment and payable only at the sole discretion of the Insurer.

AGL / Bechtel 000408

H. Except where prohibited by any State, the REPRESENTATIVE is responsible for all license fees, including those of its Representatives. The Insurer's discretion shall govern with respect to whether the Insurer shall charge to the REPRESENTATIVE's commission or other compensation account the cost of obtaining and renewing the REPRESENTATIVE's and its Representatives' license or licenses and/or appointment fees. This practice is subject to change at the discretion of the Insurer.

I. Policy applications for any Insurer will be issued and commissions paid by the Insurer.

## VI. VESTING

A. As long as this Agreement remains in effect, all first year and renewal commissions shall be paid as they accrue; however, any such payments are subject to the schedule of commissions in effect at the date the first full premium is received by the Insurer, the provisions and rules of the Insurer regarding minimum first year and renewal commissions required to issue a check.

B. During any consecutive 12-month period following the termination of this Agreement, total renewal commissions are less than the minimum required by the Insurer, vesting automatically terminates and no additional commission payments will be due from the Insurer.

C. In the event this Agreement is terminated by the death of the REPRESENTATIVE, all first year and renewal commissions shall be paid as they accrue, subject only to the terms and conditions of paragraphs A and B immediately above. In the absence of a properly executed beneficiary designation on file with the Insurer, all such payments, if any, shall be made to the surviving spouse and at the death of the surviving spouse to the estate of said spouse. If the REPRESENTATIVE dies leaving no surviving spouse, such monies will be paid to the estate of the REPRESENTATIVE; provided however, that if the REPRESENTATIVE is a corporation or a partnership, all such payments will be paid to said corporation or partnership.

## VII. GENERAL PROVISIONS

A. The Insurer may make such changes and decisions as it deems advisable in the conduct of its business, including the discontinuance of any policy form or the withdrawal from any territory, and the Insurer shall incur no liability to the REPRESENTATIVE by reason of its doing so.

B. The Insurer shall have the right to test market any of its products on a select basis and at the discretion of the Insurer.

C. The REPRESENTATIVE shall indemnify and hold the Insurer harmless against or from any and all expense, costs, causes of action, and damages including without limitation, reasonable attorney fees, resulting from or growing out of any unauthorized or negligent act of commission or omission by the REPRESENTATIVE or its employees, directors, officers, or Representatives under its jurisdiction. This provision shall survive termination of this Agreement.

D. The Insurer shall have a prior right and offset to all commissions and fees payable hereunder toward any indebtedness and/or other obligations due from the REPRESENTATIVE or anyone under the Jurisdiction of the REPRESENTATIVE to any Primary Company and/or Affiliated Company/ies with interest at the legal rate. This prior right and offset shall not be extinguished by the termination of this Agreement. Following the termination of any Representative under the Jurisdiction of the REPRESENTATIVE, should the amount in any commission account of that Representative be insufficient to repay any amount due the Insurer, the debit will become the responsibility of the REPRESENTATIVE, in accordance with the Insurer's then current debit collection procedure.

E. Neither the Agreement, any duties or delegation under this Agreement, nor the commissions or fees accruing hereunder, nor any interest herein, nor any right or claim created hereby or arising by reason of the REPRESENTATIVE acting hereunder, shall be assignable, except upon the written consent of the Insurer.

F. Forbearance or failure of the Insurer to insist upon performance of this Agreement or to enforce its rights hereunder, shall not constitute a waiver of its rights or privileges hereunder or of its subsequent right to insist upon such performance.

G. This Agreement, including the Appointment Application and any Commission Schedule(s) incorporated as part of the Agreement, contains all promises, inducements and representations between the parties. This Agreement supersedes any and all previous Agreements between the parties herein pertaining to the solicitation of the Insurer's products and the payment of monies to the REPRESENTATIVE provided, however, that rights or obligations which have already accrued (and would survive termination) under any previous contract between the Insurer and the REPRESENTATIVE shall not be hereby impaired.

H. The Insurer reserves the right to decline or modify any application for insurance.

I. This Agreement shall not be effective until executed by the Primary Company. Once this Agreement is effective with the Primary Company, it may become effective with Affiliated Company(ies) as described herein.

AGL / Bechtel 000409

J. Should the REPRESENTATIVE, at any time, violate any provision of Section II of this Agreement, entitled Limitation of Authority, or commit any fraud upon Insurer or its policyholders; have a license as agent or broker revoked for cause after notice and hearing by a state insurance department or otherwise act to prejudice materially the interests of Insurer, the REPRESENTATIVE shall, at the option of the Insurer, forfeit any and all rights to all commissions and monies that the REPRESENTATIVE might otherwise have under this Agreement, vested or not. It is expressly agreed that termination of this Agreement shall not terminate this provision.

K. The REPRESENTATIVE agrees to maintain complete and accurate records of the marketing and sale of the Insurer's products. The Insurer reserves the right to inspect such records and other documents in each REPRESENTATIVE's files that relate to the marketing, attempted sale or sale of the Insurer's products. If the Insurer chooses to inspect such records, it will endeavor to do so during normal business hours and after giving reasonable notice, unless, in the judgment of the Insurer, unusual circumstances require inspection at other times or inspection without prior notice. This provision shall survive termination of this Agreement for a period of two (2) years.

L. For as long as this Agreement is in force, the REPRESENTATIVE will maintain Errors and Omissions (E&O) coverage and will provide the Insurer annually proof of such E&O coverage in a manner acceptable to the Insurer.

M. If the REPRESENTATIVE is served with a regulatory inquiry or legal papers involving Insurer business, the REPRE-SENTATIVE shall immediately notify the Insurer by sending to that Insurer's Compliance Officer, a copy of the papers, served by overnight delivery, by the end of the business day next following the day of receipt by the REPRESENTATIVE.

N. The REPRESENTATIVE is responsible for assuring that any Representative under the jurisdiction of the REPRESEN-TATIVE: (1) become fully informed as to the provisions and benefits of each product offered by the Insurer for which the Representative conducts Insurer business; (2) represent such products adequately and fairly to prospective purchasers; and (3) act in compliance with the Insurer's policies and procedures as set out in the Customer Service and Compliance Manual, Operations Manual, or otherwise communicated to the REPRESENTATIVE, including, without limitation, those regarding suitability of sales inquiries and compliance with the Insurer's principles and code of ethical market conduct.

O. When the Insurer assigns to the REPRESENTATIVE any agency not recruited by the REPRESENTATIVE, then the Insurer may reassign that agency to another upline of the Insurer's choice at any time and without the necessity of a release from the REPRESENTATIVE. If the Insurer wishes to remove any agency recruited by the REPRESENTATIVE from the jurisdiction of the REPRESENTATIVE, the Insurer will negotiate a release; however, such release will not be unreasonably withheld by the REPRESENTATIVE.

P. REPRESENTATIVE is not entitled to participate in any REPRESENTATIVE benefit programs except those which are provided by the Primary Company. REPRESENTATIVE is not eligible to participate in, or to receive any benefits from, any programs provided by the Affiliate Company/ies.

Q. Disputes arising under this Agreement shall be subject to the laws of the state where the Insurer engaged in the dispute is located.

R. The area within which the REPRESENTATIVE shall have the right to represent the Insurer is not assigned exclusively to the REPRESENTATIVE.

S. REPRESENTATIVE agrees to conform to all regulations of the Insurance Department and the Insurance laws in the state(s) in which the REPRESENTATIVE is conducting Insurer's business.

T. REPRESENTATIVE understands and agrees that (i) the Primary Company may amend the Agreement or the Company's policies, rules and procedures, in order to comply with changes in laws or regulations, or, as the Company deems appropriate related to changes in laws or regulations, through communication of any such amendment to REPRESENTATIVE, and (ii) For purposes of any such amendment, communication may include, but not be limited to, posting of amendment information on the Primary Company's websites or other means of making such information known or available to the agent.

## VIII. TERMINATION

A.  This Agreement shall automatically terminate upon the death of REPRESENTATIVE if REPRESENTATIVE is an individual or upon dissolution of REPRESENTATIVE if REPRESENTATIVE is a corporation or a partnership.

B.  This Agreement shall terminate upon the revocation or non-renewal of the REPRESENTATIVE's license.

C.  This Agreement may be terminated with or without cause by any Insurer (subject to provisions D and E below) or the REPRESENTATIVE by sending written notice of such termination to the last known address of the other party.

AGL / Bechtel 000410

D.   Upon termination, the REPRESENTATIVE shall immediately pay in cash to the Insurer all sums that are due or become due hereunder and shall immediately deliver to the Insurer all materials connected with the business of the Insurer and belonging to the Insurer. Such materials include, but are not limited to, rate cards, letters, records, computer software, general supplies or any and all other indications of agency provided by the Insurer. It is expressly agreed that termination of this Agreement does not release the REPRESENTATIVE from continuing liability to the Insurer for immediate repayment of any and all unearned first year commissions or bonuses.

E.   Termination of this Agreement by the Primary Company terminates all contracts with Affiliated Company/ies without specific notice to the REPRESENTATIVE required by the Insurer. However, any Affiliated Company may terminate its agency relationship with the REPRESENTATIVE, which will not, of itself, terminate the Primary Company agency relationship. Upon termination, the Insurer may assign a servicing agency; however, such assignment will not of itself affect the vesting of existing business.

F.   Termination of this Agreement automatically terminates any previous Agreement to represent the Insurer that terminated the Agreement.

## IX. AMENDMENT

This contract cannot be changed by any oral promise or statement and no written modification will bind the Insurer unless approved by the President of the Insurer making the modification.

## X. PERSONAL GUARANTEE

Each and every individual who signs this Agreement warrants that they have authority to bind the entity on whose behalf they are signing.

## XI. EFFECTIVE DATE

The agreed effective date will be the date that this Agreement to represent is signed and acknowledged by the Primary Company as hereinafter specified.

## XII. INVESTIGATION NOTICE

The undersigned hereby authorizes the Primary and Affiliated Company/ies to conduct an investigation concerning character, credit reputation and personal traits and releases those contacted and the Insurer from any liability with respect to the content of the information provided and any resulting action by the Insurer including the sharing of such information or the termination of this Agreement to represent.

## XIII. FEDERAL CRIME CONTROL ACT

A. Undersigned warrants it:

1. has not been convicted of any criminal felony involving dishonesty or breach of trust or

2. has obtained written authorization to engage in the business of insurance from the Insurance Department in the state where REPRESENTATIVE resides which REPRESENTATIVE agrees to produce upon Insurer request.

B. The REPRESENTATIVE agrees to update the representations in the Confidential History/Background Information Section of Part 4 of the Appointment Application by notifying the Primary Company in writing within thirty (30) days, if there should be a change in the response to any question in the Information Section of Part 4 of the Appointment Application.

## XVI. PRIVACY CONTROL & SECURITY

A.   "Protected Health Information" and "Nonpublic Personal Information" shall be collectively called the "Information" in this Section, XVI, Privacy Control and Security.

B.   All information which any party obtains as a result of this relationship shall not be collected, or used, disclosed, reused or redisclosed to any third party, except to carry out the purposes for which the information was disclosed. The REPRESENTATIVE shall maintain the confidentiality of information consistent with the Company's notices of privacy practices, policies and procedures, provided that such use or disclosure would not violate any applicable laws, rules or regulations of the Company.

C.   The REPRESENTATIVE shall use commercially reasonable efforts and appropriate safeguards to maintain the integrity, confidentiality, and security of PHI and to prevent the unauthorized use or disclosure of PHI and to

AGL / Bechtel 000411

comply with the security standards or the HIPAA security regulations. Upon Company request Agent will provide to the Company access to and documentation regarding any safeguards.

D.  Each party shall be permitted to disclose relevant aspects of the other parties' Information to its officers, agents, subcontractors and employees only to the extent that such disclosure is reasonably necessary for the performance of its duties and obligations under the Agreement; provided that such party shall take all reasonable measures to ensure that the Information of another party is not disclosed or reproduced in contravention of each of the obligations of this Agreement by such party's officers, agents, subcontractors and employees. The obligations of this Agreement are personal to each party.

E.  The REPRESENTATIVE shall report promptly within seven (7) days to the Company's Privacy Officer in writing any use or disclosure of Information that is not permitted by the Agreement or any addendum, of which the REPRESENTATIVE becomes aware. REPRESENTATIVE'S report shall identify: (i) the nature of the unautho-rized use or disclosure, (ii) the Information used or disclosed, (iii) who made the unauthorized use or received the unauthorized disclosure, (iv) what REPRESENTATIVE has done or shall do to mitigate any deleterious effect of the unauthorized use or disclosure, (v) what corrective action REPRESENTATIVE has taken or shall take to prevent future similar unauthorized use or disclosure, and (vi) any other Information as reasonably requested by the Company's Privacy Officer.

F.  The REPRESENTATIVE shall require all of its employees, representatives, subcontractors or agents that receive or have access to Information to agree to adhere to the same restrictions and conditions on the use and/or disclosure of Information that apply herein, including the obligation to return or destroy the Information as provided for below.

G.  The obligations in this Agreement shall not restrict any disclosure by any party pursuant to any applicable state or federal laws, or by request or order of any court or government agency. The REPRESENTATIVE shall immediately notify Company upon receipt by the REPRESENTATIVE of any request from the Department of Health and Human Services for the REPRESENTATIVE'S internal practices, books, and records relating to the use and disclosure of Information.

H.  Within ten (10) days of receiving a written request from Company, the REPRESENTATIVE shall provide to the Company such information as is requested by the Company, if any, to permit the Company to respond to a request by an individual for access to, an amendment of, or an accounting of the disclosures of the individual's PHI in accordance with 45 C.F.R. Secs. 164.524, 164.526, and 164.528. If an individual contacts the REPRESENTATIVE directly about access to, amendment of, or an accounting of disclosures of his/her PHI, the REPRESENTATIVE will forward such request immediately to the Company and not provide such access, amendment, or disclosure. Notwithstanding anything herein to the contrary, REPRESENTATIVE shall make reasonable efforts to cooperate with the Company in responding to any such requests and enabling the Company to comply with federal laws and regulations regarding the timing of response to such requests.

I.  This Section XVI, Privacy Protection and Security, will survive the termination or expiration of this Agreement. Upon termination of the Agreement, the REPRESENTATIVE shall return or destroy (with the Company's written permission) all Information that REPRESENTATIVE maintains in any form pursuant to the Agreement, and retain no copies of such information. However, if the Company determines that such return or destruc-tion is not feasible, REPRESENTATIVE will continue to extend the protections of this Addendum to such PHI and limit further use of the information to the purposes that make the return or destruction not feasible. The respective rights and obligations of each party pursuant to this subsection shall survive the termination of the Agreement.

AGL81056-1105

AGL / Bechtel 000412

**AIG** **AMERICAN GENERAL**

Scan *LCCONT MAINT 3SP36*

**Licensing and Contracting Change Form** ✓

AIG Life Brokerage
A division of the American International Companies.®

## Part 1   Change Request

### Type of Change Request

☐ Compensation Change   ☐ Contract Level Change   ☐ Second Contract   ✓ Transfer   ☐ Other   ☐ USL

Comments: Agent moving to new IMO Kevin Bechtel / Life Brokerage Partners LLC

## Part 2   Individual and Principal of Corporation.   This is Required Information.

Please Print Clearly

Social Security Number: **Redacted** - __ __ - __ __ __ __   Agent Number: 3SP36

Name: Wasserman Brad

| Last Name | First Name | Middle Initial |
|-----------|-----------|----------------|

Date of Birth: **Redacted**   Sex: ☑ Male   ☐ Female

month   day   year

Resident/Home: 9699 Wilshire Lakes Blvd.

Physical Address

Naples  FL  34109

| City | State | Zip |
|------|-------|-----|

Resident/Home Phone Number: _____   E-Mail: _____

Business Address: 1415 Panther Lane #119 Naples FL 34109

| Physical Address | City | State | Zip |
|------------------|------|-------|-----|

Business Phone Number: 2395916666   Fax Number: 2395916710

☐ I am an officer of the below corporation.

## Part 3   Corporate Applicants Required Information.

Please Print Clearly   Individual Applicants Do Not Complete This Section

Tax ID Number: _____

Corporate Name: _____

Corporate Address: _____

| City | State | Zip |
|------|-------|-----|

Corporate Phone Number: _____   State Incorporated: _____

Fax Number: _____   E-Mail: _____

Primary Officer for Corporate Records: _____

Background information reported on page – should provide information for the Officer of the corporation.

AGLC100204   I   Rev0306

*NONE*

AGL / Bechtel 000413



AGL / Bechtel 000414

**AIG** **AMERICAN GENERAL**

AIG Life Brokerage
A division of the American International Companies.®

## Part 7 AGL Commission Section - Must be completed.

Social Security Number: **Redacted**

Contract Level Requested: ☐ IMO/BGA  ☐ MGA  ☐ MGA 1  ☐ GA  ☑ GA 1  ☐ GA 2  ☐ Agent/Producer

### Requested Commission Level for American General Life

Please note that any change to the compensation of the agents in your downline will directly affect your own commission payout. For example, if you raise the First Year compensation level for your agents' Life Brokerage products, your overwrites will correspondingly decrease. If you are unsure how a change will affect you and/or your agent, please contact the Commissions Department prior to submitting this form.

| | | Current Level (existing agents only) | Requested Level | |
|---|---|---|---|---|
| Life Products: | First Year | _____ | _____ | **PLEASE NOTE:** Commission level changes will affect policies with an application-signed date later than the effective date of the commission change. |
| | Renewal | _____ | _____ | |
| | Productivity Bonus | _____ | _____ | |
| | | ☐ Retro back to Jan. 1 of current year | ☐ Non Retro Policies on go-forward basis only | |
| Specialty Products: (Street Max = J) | First Year/Renewals | _____ | _____ | |
| Annuity Products: | First Year | _____ | _____ | |
| A & H: | First Year | _____ | _____ | |
| | Renewal Level | _____ | _____ | |
| Variable Products: | IW Overwrite | _____ | _____ | |
| | Renewal Level | _____ | _____ | |

Please indicate if you wish this change to apply to pending policies: ☐ No  ☑ Yes.
If you answered yes, please attach a list of policies with this request.
**Annualization: Available on a limited basis. Please attach the completed annualization form when requesting. Please note:** Annualization changes will affect policies with an application-signed date later than the effective date of the annualization request.

## Part 8 USL Commission Section if applicable.

☐ United States Life - Please attach appropriate signed Commission Schedules

Contract Level Requested: ☐ GA  ☐ GA1  ☐ GA2  ☐ Producer

GA1: Override _____%        GA2:  ERA _____%
ERA _____%

Mail Commission Statements to: ☐ GA  ☐ GA1  ☐ GA2  ☐ Producer

*PLEASE NOTE: Commission level changes will affect policies with an application-signed date later than the effective date of the commission change.*

## Part 9 Signature of Recruiter/IMO

The undersigned [recommending representative or General Agent] by executing this applicant recommends the applicant to American General Affiliates as a suitable person to represent the companies. The recommending individual or General Agent also agrees to supervise and assume responsibility for the applicant, if appointed by American General Affiliates, in accordance with the terms of his/her Contract.

Signature: _____        Date: 3 / 1 / 07

Agency Name **Gary A Richardson**        Date: 3 / 1 / 07
Print Name of Agency

AGLC100204        3        Rev0306

AGL / Bechtel 000416

02/09/2006 16:21     727-451-0557                Vanessa Nally              PAGE 1/25

2/13/062:21P
537435003935

# COVER PAGE

Date: 02/09/2006 16:21                    NO. OF PAGE: 25  (include this page)

To:        Name:        American General Contracting
           Department:  Contracting
           Company:     AMERICAN GENERAL

From:      Name:        Vanessa Nally

           TEL & FAX:   (TEL) 727-791-9080
                        (FAX) 727-451-0557

           E-Mail:      vnally@lbeg.net

           Department:  Contracting & Licensing

           Company:     LBEG

           Address:     2963 Gulf -to- Bay Blvd. #330
                        Clearwater FL 33759

Comment:

Enclosed is contracting for Philip Wasserman. Please contact me if you have any questions.

Thank you

AGL / Bechtel 000417



02/09/2006 16:21          727-451-0567                    Vanessa Nally                          PAGE 2/25

2713/062:21P
537435003936

**Life Brokerage**   **Equity Group**
                     *A Great Business Partner*

2963 Gulf to Bay Blvd Suite 330          Phone: 727-791-9080
Clearwater, FL 33759                     Fax: 727-712-1459

## Appointment Transmittal

February 8, 2006

AMERICAN GENERAL
Contracting

Agent Name                                Wasserman, Phillip R
Agent Social Security Number              [Redacted]
Agent Date of Birth                       01/01/0001
Appointment Number

The following Carrier Appointment Requirements have been requested:

American General
All Lines of Business
FL

The following Carrier Appointment Requirements have been received:

| Requirement | Received Date |
|---|---|
| Assignment of Commissions Form | 02/08/2006 |
| Carrier Contracting Forms | 02/08/2006 |
| Current License | 02/08/2006 |
| E&O | 02/08/2006 |
| L&C Transmittal Form | 02/08/2006 |
| EFT Form & Voided Check | 02/08/2006 |
| Agency Agreement | 02/08/2006 |
| Personal Documents | 02/08/2006 |
| W-9 | |

Vanessa Nally
Direct Phone: 727-791-9083 / 888-577-5234
Direct Fax: 727-451-0567
EMail: vnally@lbeg.net

FAXED

AGL / Bechtel 000418

02/09/2006 18:21          727-451-0567          Vanessa Nally                    PAGE 3/25

```
2/13/062:21P
537435003937
```

## AIG  AMERICAN GENERAL

### Licensing and Contracting Transmittal Form

**AIG Life Brokerage**
A division of the American International Companies®

Date: **2-8-06**   Submitted By: **Gary A Richardson**   IMO/BGA Code: **OPU67**

Corporation Name: **Phillip Roy Financial Services LLC**

Agent Name: **Phillip Wasserman**    Redacted  Redacted

Agent Social Security No./Tax ID No.: **Redacted**   Agent Number (if available): _____

### CONTACT INFORMATION

**FOR MISSING DOCUMENTS OR PAGES**

Name: Vanessa Nally
Phone: 727-791-9080
Fax: 727-451-0567
E-Mail: vnally@lbeg.net

**FOR L & C FOLLOWUP**

Name: Vanessa Nally
Phone: 727-791-9080
Fax: 727-451-0567
E-mail: vnally@lbeg.net

### DOCUMENTS ATTACHED

☐ Address Forms
☑ Agency Agreement
☐ Annualization Forms
☑ Appointment Application
☑ Assignment of Commission
☐ Contract Change Form
☑ EFT Forms and Voided Check

☐ Errors and Omissions
☑ License Copies
☐ Life Sales Agreements
☐ Outstanding Requirement _____
☐ State Correspondence
☐ Requests for Termination
☐ _____

SPECIAL INSTRUCTIONS:

### NEW BUSINESS APPLICATION WITH LICENSING AND CONTRACTING PAPERWORK

If more than one new business application is being submitted, provide information for the one which has the oldest Application Signed date.

Policy Number: _____     Policyholder Name: _____

State Application Signed In: _____     Application Signed Date: _____

AIG American General
Midwest Operations Center
P O Box 401
Milwaukee, WI 53201

AGLC101767

AGL / Bechtel 000419

02/09/2006 16:21          727-451-0567                    Vanessa Nally                          PAGE 4/25

2/13/062:21P
537436003934

# AIG AMERICAN GENERAL

**Appointment Application**

AIG Life Brokerage
A division of the American International Companies®

## Part 12   Upline Data - To be completed by individual recruiting applicant.

Applicant Name: **Philip Wasserman**          Applicant Social Security Number: ~~Redacted~~
                      Please Print  *Phillip Roy Financial Service LLC*

Direct Upline Name: **Gary A Richardson**          Agency Code Number: OPU67
                        Please Print

## Part 13   AGL Commission Section - Must be completed.

Contract Level Requested  ☐ IMO/BGA   ☐ MGA   ☑ GA   ☐ Agent/Producer

Commission Level for American General Life

| | | | |
|---|---|---|---|
| Brokerage Life Products: | First Year Level | S | If First Year is selected, Renewal level must also be indicated. |
| | Renewal Level | D | |
| (HO Approval) | Productivity Bonus Level | O | |
| Supplemental Life Products: | First Year/Renewal Level | J | If selected, must select Brokerage Life Products Compensation Levels listed above. |
| AGL Annuity Deferred & Immediate: | First Year/Renewal Level | D | |
| A & H: | First Year Level | D | If First Year is selected, Renewal Level must also be indicated. |
| | Renewal Level | D | |

## Part 14   Additional Forms Section

☐ Annualization:  Please attach annualization form when requesting annualization. (Available on a limited basis.)

☐ Electronic Funds Transfer (EFT)   Please attach EFT form and a copy of a voided check when requesting to receive commissions electronically.

Appointment, Bonus and Annualization require Home Office Approval.

AGLB105B                                        5                                        Rev 0305

AGL / Bechtel 000420

02/09/2006 16:21          727-451-0567              Vanessa Nally                           PAGE 5/26

2/13/082:21P
537435003930

**AIG** AMERICAN GENERAL                           01        Appointment Application

AIG Life Brokerage
A division of the American International Companies.®

**Part 1   Individual and Principal of Corporation.   This is Required Information.**

Please Print Clearly

Social Security Number: [Redacted]

Name: WASSERMAN, PHILLIP R
        Last Name         First Name        Middle Initial

Date of Birth:  11    20    1956    Sex: ☑ Male   ☐ Female
              month  day   year

Resident/Home: 2900 Donald Ross Road East        Physical Address        FL        34240
                Sarasota                              State               Zip
                City

Resident/Home Phone Number: (941) 371-3560    E-Mail _____

Business Address: 28463 US 19N. #102    Clearwater    FL    33761
                  Physical Address       City        State  Zip

Business Phone Number: 727-669-7711    Fax Number 727-723-1166

☑ I am an officer of the below corporation.

**Part 2   Corporate Applicants Required Information.**
                                    Individual Applicants Do Not Complete This Section

Please Print Clearly

Tax ID Number: [Redacted]

Corporate Name: PHILLIP ROY FINANCIAL SERVICES LLC

Corporate Address: 28463 US 19 N, STE. 102
                   CLEARWATER, FL 33761
                   City                State   Zip

Corporate Phone Number: (727) 669-7711    State Incorporated: DELAWARE

Fax Number: (727) 723-1166    E-Mail _____

Primary Officer for Corporate Records: PHILLIP R. WASSERMAN

Background Information reported on page – should provide information for the Officer of the corporation.

**Part 3   Recruiter Section - BGO/BGA Only.** Complete (ALL) when address used is NOT the above business address.

Primary mailing address, phone contact, e-mail and faxes will be communicated to the following:

☐ All Home Office Mail and other Communication will be directed to other than the above. Please direct to:

Agency Name: Life Brokerage Equity Group        Agency Code Number: _____

Business Address: 2963 Gulf -to- Bay Blvd #330    Commission Address: 2963 Gulf -to- Bay Blvd #330

Clearwater    FL    33759                         Clearwater    FL    33759
City          State  ZIP                          City          State  Zip

Fax Number: 727-451-0567                          Phone Number: 727-791-9080

E-Mail Address: vnally@lbeg.net    ☐ Please check when commission check is
                                     mailed directly to agent's business address.

                                                                              next103\

AFL31058                                    1

AGL / Bechtel 000421

02/09/2006 16:21       727-451-0587              Vanessa Nally                    PAGE 6/25

2/13/062:21P
537435003931

## AIG AMERICAN GENERAL

**Appointment Application**

AIG Life Brokerage
A division of the American International Companies.®

### Part 4   Licensing and State Appointment Request

Attach copies of licenses for all requested state appointments. Provide appropriate fees for nonresident appointments.

Social Security Number: **Redacted**

Applicant Name: Phillip R. Wasserman

Licensed for: ☐ Life   ☐ Health     Contracted as: ☐ Individual   ☑ Agency

Resident State: _FL_     Resident License Number: _A - 278331_

Nonresident Appointment State(s): _____ Attach applicable fees and licenses for states listed above. PINELLAS

FLORIDA residents must specify the Florida county where their business office is located.

NON-RESIDENT FLORIDA agents soliciting in Florida must list the county(s) in Florida in which they intend to personally solicit.

### Part 5   Variable Licensing - Complete ONLY when variable appointment is requested.

Please complete the following ONLY when requesting variable appointment.

Who is your Broker/Dealer? _____

CRD Number: _____

Circle all current NASD licenses that you hold:   6   7   22   24   26   63   Other: _____

**Independent Wholesaler Election**

Some broker-dealers may permit third-party wholesaling firms to offer certain services and support to registered representatives in order to facilitate sales of American General Life Insurance Company (AGL) variable universal life products. These firms are referred to by AGL as Independent Wholesalers (IW). In order for you to sell AGL's variable universal life insurance products through an IW, an IW agreement must be in place with the BGA/IMO and your broker-dealer must be informed, pursuant to NASD Rule 3030, of your IW election. Additionally, this IW Election Form must be submitted to AIG Life Brokerage, which documents your IW election. If you wish to obtain support through an IW, please indicate your election below.

☐ IW Election: _____
                        (Name of IW Firms and Code Number)

### Part 6   Errors and Omissions Insurance Coverage

Attach copy of E & O Certificate.

Rev0305

AGLRB105R                                                   2

AGL / Bechtel 000422

02/09/2006 16:21        727-451-0567                Vanessa Nally                    PAGE 7/25
                                                    PHILLIP ROY FIN                  PAGE   82

21/09/08/2006 18:28    7277231166
537435003932

**AIG** AMERICAN
        GENERAL                          Appointment Application

AIG Life Brokerage
A division of the American International Companies®

**Part 7   Background Information Required On All Applicants**

If this is a corporate application, the questions should be answered by and about the agency principal.

Social Security Number: [Redacted] _ _ _ - _ _ - _ _ _ _

CONFIDENTIAL HISTORY/BACKGROUND INFORMATION

Please provide complete details for any "yes" answers in the Remarks section. Attach additional documentation as necessary.

| | | |
|---|---|---|
| 1. Have you ever been convicted of or plead guilty or no contest to: | | |
| a. Any Felony? | ☐ Yes | ☒ No |
| b. Any Misdemeanor? | ☐ Yes | ☒ No |
| c. A violation of federal or state securities or investment related regulations? | ☐ Yes | ☒ No |
| 2. Are you currently under investigation by any legal or regulatory authority? | ☐ Yes | ☒ No |
| 3. Do you now owe money to any life or health insurance company? | ☐ Yes | ☒ No |
| 4. Have you or a firm in which you were a partner officer or Director been declared bankrupt or been party to a bankruptcy or receivership proceeding, or have you had a salary garnished or had liens or judgements against you? | ☒ Yes | ☐ No |
| 5. Has any insurance company or securities broker-dealer terminated your contract or permitted you to resign for reason other than lack of sales? | ☐ Yes | ☒ No |
| 6. Have you ever been the subject of a consumer-initiated complaint or proceeding by any self-regulatory body or any securities commodities or insurance regulatory body or organization or employer? | ☐ Yes | ☒ No |
| 7. Has a bonding company ever denied, paid out on or revoked a bond for you? | ☐ Yes | ☒ No |
| 8. Have you ever had a claim filed against your professional liability or errors and omissions insurance coverage? | ☐ Yes | ☒ No |
| 9. Has any insurance department, government agency or self-regulatory authority ever denied, suspended, revoked, censured or barred your license or registration or disciplined you with fines or by restricting your activities? | ☒ Yes | ☐ No |

REMARKS SECTION: Details of "yes"

AGLI7105F                                    2                              Revised 6/03

02/09/2006 16:21          727-451-0587              Vanessa Nally                          PAGE 8/25

2/13/062:21P
537435003933

## Appointment Application

**AIG** AMERICAN GENERAL

AIG Life Brokerage
A division of the American International Companies.®

### Part 8    Signature of Individual -or- Principal of Corporation

Social Security Number: _____

I have read and received, as of the date indicated below, the notice concerning investigative consumer reports, as required by law. I under-
stand that in signing this form, I hereby authorize the American General Life Companies that I have requested appointments with (hereinafter
collectively referred to as the "American General Affiliates") to investigate my background, including my credit history and interviews with for-
mer employers and/or primary insurance company. I authorize the American General Affiliates and individuals named in this application to give
the American General Affiliates any information regarding me that they have available. I agree that if any of my answers to the questions in Part
7 change, I will notify, in writing, American General Affiliates within 10 business days of the incident which would cause an answer to change.
I understand that falsification of information or failure to update the answers on this application may result in termination of appointment(s)
with all American General Affiliates. In addition, I hereby authorize the American General Affiliates to report information about earnings and
debit balances to any credit bureau or similar organization.
I further authorize American General Affiliates, to verify my previous employment and securities registration history through the CRD system,
have received and reviewed the "Compliance Manual" for the American General Life Companies, and/or "Operations Manual" and I agree to
I hereby authorize American General Affiliates to share background, licensing and applicant data with their affiliates. I acknowledge that I
abide by these principles, as amended or supplemented from time to time, in representing any of the Companies that appoint me.

Date: 2 / 1 / 06          Signature: _____
                                     Signature of Individual -or- Principal of Corporation

### Part 9    Signature of Recruiter

The undersigned [recommending representative or General Agent] by executing this applicant recommends the applicant to American General
Affiliates as a suitable person to represent the companies. The recommending Individual or General Agent also agrees to supervise and assume
responsibility for the applicant, if appointed by American General Affiliates, in accordance with the terms of his/her Contract.

Signature: _____          Date: 2 / 1 / 06
           Signature of Recruiter

Print Name: Gary Richardson          Agent/Agency Code # OP067
            Print Name of Recruiter                          Required

### Part 10    Home Office Section

Signature: _____          Date: ___ / ___ / ___
           (Additional signatures, if required, RVP)

Print Name: _____          Regional Code Number _____

Home Office Approval: _____          Date: ___ / ___ / ___
                      (if required)

- - - - - - - - - - - - - - - - - - - - Remove and leave Part 11 with applicant. - - - - - - - - - - - - - - - - - - - -

### Part 11    Fair Credit Reporting Act • Notice of Proposed Investigative Consumer Report

Pursuant to the Fair Credit Reporting Act, this notice is to inform you that as a component of our contracting and appointing process, each company
with which you have requested an appointment may request an investigative consumer report which may include information related to your charac-
ter, general reputation, personal characteristics, and mode of living. You have the right to request in writing, within a reasonable period of time of
receipt of this notice, a complete disclosure of the scope of the investigation requested and a written summary of your rights under the Fair Credit
Reporting Act. Send your request to: Licensing and Contracting Department, 750 W. Virginia St. Milwaukee, WI 53204. Disclosure information must be
in writing and mailed to you, along with the written summary of your rights, within five (5) business days after receipt of your written request. Also
each company with which you have requested an appointment may share the information contained in the investigative report and other information
in your file with its affiliates, unless you send a written request to the above-described address directing that this information not be disclosed or shared
with affiliates.

Rev0305

AGLB1058                              4

AGL / Bechtel 000424

02/09/2006 16:21          727-451-0567                    Vanessa Nally                              PAGE 12/25

2/13/082:21P
537435003943

## AGENCY AGREEMENT

Each life insurance company's products are separately underwritten and independently supported by the representative company. The below listed companies are members of the American International Group, Inc.

Last Name WASSERMAN   First Name PHILLIP   Middle Initial R.

If Representative is a Corporation, the full Corporate name must appear above, and an authorized officer must sign and indicate the officer's title.

Individual
Social Security Number ___ Redacted ___

Corporation
Tax Identification Number ___ Redacted ___

Representative
Signature _____   Title _____
          Agent Signature

American General Life Companies

Contract Date  02162006
To be completed by Home Office          Home Office Authorized Signator

This Agency Agreement may not be used to contract banks, credit unions or thrifts to AIG Annuity Insurance Company and, if submitted for that purpose, will not be accepted. This Agency Agreement may not be used to replace an in force AIG Annuity Insurance Company Agency contract and, if submitted for that purpose, will not be accepted.

AIG Annuity Insurance Company, Amarillo, TX *
American General Life Insurance Company, Houston, TX
A division of the American International Companies ®

ASU1094-2004

**WE KNOW LIFE.℠**

AIG AMERICAN GENERAL
AIG Life Brokerage

AGL / Bechtel 000425



02/09/2005 16:21     727-451-0567          Vanessa Nally              PAGE 13/25

2113/062:21P
637435003944

# TABLE OF CONTENTS

Paragraph
Recitals
Definitions

I.      Authorized Acts
II.     Limitation of Authority
III.    Advertising
IV.     Relationship
V.      Compensation
VI.     Vesting
VII.    General Provisions
VIII.   Termination
IX.     Amendment
X.      Personal Guarantee
XI.     Effective Date
XII.    Investigation Notice
XIII.   Federal Crime Control Act
XIV.    Confidentiality

Schedules

A. Commission Schedule — Primary Company

B. Appointment Application

AGL / Bechtel 000426

2/13/062:21P
537435003945

**RECITALS**

Representative ("REPRESENTATIVE") has executed an Appointment Application requesting appointments with one or more life insurance subsidiaries of American International Group, Inc.

The Appointment Application designates one of the life insurers as a Primary Appointing Company (the "Primary Company").

This Agreement together with the Appointment Application and Commission Schedules for each separate life insurer that appoints REPRESENTATIVE comprise the REPRESENTATIVE's contract with each of the insurers that appoints REPRESENTATIVE.

Execution of this Agreement by the Primary Company and the REPRESENTATIVE evidences their Agreement to transact business in accordance with the terms and conditions set forth in this Agreement.

If REPRESENTATIVE requested appointment with one or more affiliates of the Primary Company in the Appointment Application, or a subsequent amendment to that form, REPRESENTATIVE's execution of this Agreement evidences REPRESENTATIVE's Agreement to transact business with each affiliated insurer in accordance with the terms and conditions set forth in this Agreement. Each affiliated insurer that appoints REPRESENTATIVE and sends a company commission schedule to REPRESENTATIVE has agreed to transact business with REPRESENTATIVE according to the terms and conditions of this Agreement.

**DEFINITIONS**

A. **Primary Company** – the Primary Company is designated in the Appointment Application as the Primary Company. The Primary Company's responsibilities include executing the REPRESENTATIVE Agreement, performing background checks and providing convention credits and other sales incentives, if any, to REPRESENTATIVE.

B. **Affiliated Company** – the Affiliated Company(ies) is any other life insurance subsidiary of American International Group, Inc. that is identified in the Appointment Application, appoints REPRESENTATIVE and provides a company commission schedule as evidence of its Agreement to transact business with REPRESENTATIVE according to the terms of this Agreement.

C. **Insurer** – the term Insurer as used in this Agreement refers to each of the life insurance companies that appoints REPRESENTATIVE, including the Primary Company.

D. **Jurisdiction** – Eligibility for, or receipt of, override compensation on another Representative's business.

E. **Nonpublic Personal Information**: "Nonpublic Personal Information" of customers or consumers ("NPI") includes, but is not limited to, names, addresses, account balances, account numbers, account activity, social security numbers, taxpayer identification numbers, and sensitive financial and health information. [NPI] in cludes information on each party's forms or in a database of any kind, information created by each party, information collected by or on behalf of a party, and personally identifiable information derived from NPI. Reference to NPI of Company or REPRESENTATIVE shall include NPI collected by or on behalf of American International Group, Inc., its successors, subsidiaries, affiliates agents or contractors. There may be instances where each party will have the same NPI which may be subject to different privacy policies and procedures according to the notices provided to the customer or consumer by the respective parties to the Agreement.

F. **Protected Health Information**: The terms "Protected Health Information" and "PHI" shall have the meaning set forth in 45 C.F.R. Sec. 164.501 as may be amended. Other terms shall have the same meanings as set forth in the applicable definition of the Health Insurance Portability and Accessibility Act (HIPAA), as amended, Privacy Rule or other regulations.

**1. AUTHORIZED ACTS**

A. The REPRESENTATIVE is authorized to conduct Insurer's business for the Insurer's products covering such classes of risks as the Insurer may authorize and in those states where the product is approved and REPRESENTATIVE is licensed and appointed as required by state law. If REPRESENTATIVE is a corporation, then the principal(s) of such corporation must also be licensed individually, if required pursuant to appropriate state law.

B. The REPRESENTATIVE is authorized to collect and promptly remit to the Insurer the first premium on business produced by the REPRESENTATIVE in accordance with the Insurer's rules and regulations.

C. The REPRESENTATIVE will promptly deliver issued policies in accordance with Insurer's policies and procedures.

D. All monies, settlements, or documents received by the REPRESENTATIVE for, or on behalf of, the Insurer shall be received by the REPRESENTATIVE in a fiduciary capacity and immediately paid over or delivered to the Insurer, except as may be otherwise directed in writing by the Insurer.

AGL / Bechtel 000427



**II. LIMITATION OF AUTHORITY**

The REPRESENTATIVE is without authority to perform any act or thing other than that expressly granted in this Agreement and expressly agrees not to perform any of the following acts:

1. Make, modify, alter or discharge any policy.
2. Extend the time payment of any premium.
3. Waive any forfeiture.
4. Guarantee dividends or interest rates.
5. Incur any debt or liability in the name of the Insurer.
6. Withhold, commingle or convert to his use of the REPRESENTATIVE or the benefit of others, any monies, securities, policies or receipts belonging to the Insurer, the applicant, or the insured, or fail to promptly submit to the Insurer any applications for policies.
7. Accept or deposit any check or draft for premiums made payable to other than the Insurer.
8. Unless in the best interest of the policyowner, directly or indirectly induce or attempt to induce any policyowners of Insurer to relinquish, surrender, replace or lapse their policies.

**III. ADVERTISING / USE OF LOGO**

REPRESENTATIVE may, at REPRESENTATIVE's expense, advertise Insurer's products, provided the text of all advertising, including any form of sales/promotional material such as, but not limited to business cards, stationery or other indications of agency under this Agreement and including the use of the names "American International Group, Inc.," "AIG," "American General," their logos or the name of any Insurer is approved in writing by the company before use.

**IV. RELATIONSHIP**

The relationship between the Insurer and the REPRESENTATIVE shall be that of principal and independent contractor, and nothing contained herein shall be construed as creating the relationship of employer and employee for any purpose, including tax purposes. REPRESENTATIVE agrees to be responsible for all taxes as a self-employed independent contractor. The REPRESENTATIVE shall be free to exercise independent judgment as to the time and manner in which the REPRESENTATIVE shall perform the services authorized under this Agreement. Any material supplied by the Insurer is for the purpose of supporting the activities of the REPRESENTATIVE.

**V. COMPENSATION**

A. Subject to the provisions hereof and the rules of the Insurer, the full compensation of the REPRESENTATIVE shall be payable at the applicable rate set forth in the Schedule of Commission in effect at the date the first full premium is received by the Insurer, which Schedule of Commission and all amendments, supplements and replacements thereof and thereto are hereby made a part of this Agreement.

B. Commission is subject to change at any time by written notice by the Insurer to the REPRESENTATIVE, but no such change shall affect commissions on any policy issued prior to the effective date of such change.

C. If commission rates are not now shown in the Schedule of Commission, including conversions, replacements or, the exercise of re-entry provisions or, if special premium rate quotations are made, commission rates shall be such as may be fixed by the Insurer as of the time when issue is effective in accordance with rates and practices of the Insurer then in effect.

D. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall lapse because of nonpayment of premium and shall be replaced or reinstated, any commissions on the new or reinstated policy shall be payable only at the sole discretion of the Insurer.

E. To be entitled to commissions, if any, the REPRESENTATIVE's name or the name of another Representative under your jurisdiction must appear as soliciting agent on the application for insurance. Disputes respecting commissions shall be subject to decision and settlement by the Insurer and the Insurer's decision shall be final and binding upon the parties involved.

F. Whenever, in the judgment of the Insurer, it shall become advisable to recall any policy issued before delivery thereof is made, the REPRESENTATIVE shall promptly refund to the Insurer any commissions received on account of such policy. Whenever, after delivery, the Insurer shall affect or procure the surrender, rescission or cancellation of any policy and refund premiums paid thereon, the Insurer shall have the right to charge back commissions and demand that the REPRESENTATIVE repay such commissions to the Insurer. If the Insurer shall refund or waive the premium or premiums under the provisions of any disability waiver of premium rider, the REPRESENTATIVE shall lose all rights to commission and persistency fees as applied to such refunded or waived premiums, and shall repay any amounts advanced. An Insurer may include in its Commission Schedule, which is incorporated as a part of this Agreement, guidelines describing more specifically the circumstances under which it will charge back commissions on certain products. In the absence of such guidelines, the Insurer's rights shall be as described in this Section V. Compensation.

G. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall be converted or replaced, any commissions on the new policy shall be subject to adjustment and payable only at the sole discretion of the Insurer.

2/13/062:21P
637436003947

H. Except where prohibited by any State, the REPRESENTATIVE is responsible for all license fees, including those of its Representatives. The Insurer's discretion shall govern with respect to whether the Insurer shall charge to the REPRESENTATIVE's commission or other compensation account the cost of obtaining and renewing the REPRESENTATIVE's and its Representatives' license or licenses and/or appointment fees. This practice is subject to change at the discretion of the Insurer.

I. Policy applications for any Insurer will be issued and commissions paid by the Insurer.

## VI. VESTING

A. As long as this Agreement remains in effect, all first year and renewal commissions shall be paid as they accrue; however, any such payments are subject to the schedule of commissions in effect at the date the first full premium is received by the Insurer, the provisions and rules of the Insurer regarding minimum first year and renewal commissions required to issue a check.

B. During any consecutive 12-month period following the termination of this Agreement, total renewal commissions are less than the minimum required by the Insurer, vesting automatically terminates and no additional commission payments will be due from the Insurer.

C. In the event this Agreement is terminated by the death of the REPRESENTATIVE, all first year and renewal commissions shall be paid as they accrue, subject only to the terms and conditions of paragraphs A and B immediately above. In the absence of a properly executed beneficiary designation on file with the Insurer, all such payments, if any, shall be made to the surviving spouse and at the death of the surviving spouse to the estate of said spouse. If the REPRESENTATIVE dies leaving no surviving spouse, such monies will be paid to the estate of the REPRESENTATIVE; provided however, that if the REPRESENTATIVE is a corporation or a partnership, all such payments will be paid to said corporation or partnership.

## VII. GENERAL PROVISIONS

A. The Insurer may make such changes and decisions as it deems advisable in the conduct of its business, including the discontinuance of any policy form or the withdrawal from any territory, and the Insurer shall incur no liability to the REPRESENTATIVE by reason of its doing so.

B. The Insurer shall have the right to test market any of its products on a select basis and at the discretion of the Insurer.

C. The REPRESENTATIVE shall indemnify and hold the Insurer harmless against or from any and all expense, costs, causes of action, and damages including without limitation, reasonable attorney fees, resulting from or growing out of any unauthorized or negligent act or commission or omission by the REPRESENTATIVE or its employees, directors, officers, or Representatives under its jurisdiction. This provision shall survive termination of this Agreement.

D. The Insurer shall have a prior right and offset to all commissions and fees payable hereunder toward any indebtedness and/or other obligations due from the REPRESENTATIVE or anyone under the jurisdiction of the REPRESENTATIVE to any Primary Company and/or Affiliated Company/ies with interest at the legal rate. This prior right and offset shall not be extinguished by the termination of this Agreement. Following the termination of any Representative under the jurisdiction of the REPRESENTATIVE, should the amount in any commission account of that Representative be insufficient to repay any amount due the Insurer, the debit will become the responsibility of the REPRESENTATIVE, in accordance with the Insurer's then current debit collection procedure.

E. Neither this Agreement, any duties or delegation under this Agreement, nor the commissions or fees accruing hereunder, nor any interest herein, nor any right or claim created hereby or arising by reason of the REPRESENTATIVE acting hereunder, shall be assignable, except upon the written consent of the Insurer.

F. Forbearance or failure of the Insurer to insist upon performance of this Agreement or to enforce its rights hereunder, shall not constitute a waiver of its rights or privileges hereunder or of its subsequent rights to insist upon such performance.

G. This Agreement, including the Appointment Application and any Commission Schedule(s) incorporated as part of the Agreement, contains all promises, inducements and representations between the parties. This Agreement supersedes any and all previous Agreements between the parties herein pertaining to the solicitation of the Insurer's products and the payment of monies to the REPRESENTATIVE provided, however, that rights or obligations which have already accrued (and would survive termination) under any previous contract between the Insurer and the REPRESENTATIVE shall not be hereby impaired.

H. The Insurer reserves the right to decline or modify any application for insurance.

I. This Agreement shall not be effective until executed by the Primary Company. Once this Agreement is effective with the Primary Company, it may become effective with Affiliated Company(ies) as described herein.

AGL / Bechtel 000429



02/09/2006 16:21      727-451-0567            Vanessa Nally                          PAGE 17/25

2/13/0062:21P
537436003948

J.  Should the REPRESENTATIVE, at any time, violate any provision of Section II of this Agreement, entitled Limitation of Authority, or commit any fraud upon Insurer or its policyholders; have a license as agent or broker revoked for cause after notice and hearing by a state Insurance department or otherwise act to prejudice materially the interests of Insurer, the REPRESENTATIVE shall, at the option of the Insurer, forfeit any and all rights to all commissions and monies that the REPRESENTATIVE might otherwise have under this Agreement, vested or not. It is expressly agreed that termination of this Agreement shall not terminate this provision.

K.  The REPRESENTATIVE agrees to maintain complete and accurate records of the marketing and sale of the Insurer's products. The Insurer reserves the right to inspect such records and other documents in each REPRESENTATIVE's files that relate to the marketing, attempted sale or sale of the Insurer's products. If the Insurer chooses to inspect such records, it will endeavor to do so during normal business hours and after giving reasonable notice, unless, in the judgment of the Insurer, unusual circumstances require inspection at other times or inspection without prior notice. This provision shall survive termination of this Agreement for a period of two (2) years.

L.  For so long as this Agreement is in force, the REPRESENTATIVE will maintain Errors and Omissions (E&O) coverage and will provide the Insurer annually proof of each E&O coverage in a manner acceptable to the Insurer.

M.  If the REPRESENTATIVE is served with a regulatory inquiry or legal papers involving Insurer business, the REPRESENTATIVE shall immediately notify the Insurer by sending to that Insurer's Compliance Officer, a copy of the papers, served by overnight delivery, by the end of the business day next following the day of receipt by the REPRESENTATIVE.

N.  The REPRESENTATIVE is responsible for assuring that any Representative under the jurisdiction of the REPRESENTATIVE: (1) become fully informed as to the provisions and benefits of each product offered by the Insurer for which the Representative conducts Insurer business; (2) represent such products and procedures as set out in the Customer Service purchasers; and (3) act in compliance with the Insurer's policies and procedures as set out in the Customer Service and   Compliance Manual, Operations Manual, or otherwise communicated to the REPRESENTATIVE, including, without limitation, those regarding suitability of sales inquiries and compliance with the Insurer's principles and code of ethical market conduct.

O.  When the Insurer assigns to the REPRESENTATIVE any agency not recruited by the REPRESENTATIVE, then the Insurer may reassign that agency to another upline of the Insurer's choice at any time and without the necessity of a release from the REPRESENTATIVE. If the Insurer wishes to remove any agency recruited by the REPRESENTATIVE from the jurisdiction of the REPRESENTATIVE, the Insurer will negotiate a release; however, such release will not be unreasonably withheld by the REPRESENTATIVE.

P.  REPRESENTATIVE is not entitled to participate in any REPRESENTATIVE benefit programs except those which are provided by the Primary Company. REPRESENTATIVE is not eligible to participate in, or to receive any benefits from, any programs provided by the Affiliate Company/ies.

Q.  Disputes arising under this Agreement shall be subject to the laws of the state where the Insurer engaged in the dispute is located.

R.  The area within which the REPRESENTATIVE shall have the right to represent the Insurer is not assigned exclusively to the REPRESENTATIVE.

S.  REPRESENTATIVE agrees to conform to all regulations of the Insurance Department and the Insurance laws in the state(s) in which the REPRESENTATIVE is conducting Insurer's business.

T.  REPRESENTATIVE understands and agrees that (i) the Primary Company may amend the Agreement or the Company's policies, rules and procedures, in order to comply with changes in laws or regulations, or, as the Company deems appropriate related to changes in laws or regulations, through communication of any such amendment (i.e. REPRESENTATIVE, and (ii) For purposes of any such amendment, communication may include, but not be limited to, posting of amendment information on the Primary Company's websites or other means of making such information known or available to the agent.

VIII. TERMINATION

A.  This Agreement shall automatically terminate upon the death of REPRESENTATIVE if REPRESENTATIVE is an individual or upon dissolution of REPRESENTATIVE if REPRESENTATIVE is a corporation or a partnership.

B.  This Agreement shall terminate upon the revocation or non-renewal of the REPRESENTATIVE's license.

C.  This Agreement may be terminated with or without cause by any Insurer (subject to provisions D and (E below) or the REPRESENTATIVE by sending written notice of such termination to the last known address of the other party.

2713/062:21P
537435003949

D.   Upon termination, the REPRESENTATIVE shall immediately pay in cash to the Insurer all sums that are due or become due hereunder and shall immediately deliver to the Insurer all materials connected with the business of the Insurer and belonging to the Insurer. Such materials include, but are not limited to, rate cards, letters, records, computer software, general supplies or any and all other indications of agency, provided by the Insurer. It is expressly agreed that termination of this Agreement does not release the REPRESENTATIVE from continuing liability to the Insurer for immediate repayment of any and all unearned first year commissions or bonuses.

E.   Termination of this Agreement by the Primary Company terminates all contracts with Affiliated Company/ies without specific notice to the REPRESENTATIVE required by the Insurer. However, any Affiliated Company may terminate its agency relationship with the REPRESENTATIVE, which will not, of itself, terminate the Primary Company agency relationship. Upon termination, the Insurer may assign a servicing agency; however, such assignment will not of itself affect the vesting of existing business.

F.   Termination of this Agreement automatically terminates any previous Agreement to represent the Insurer that terminated the Agreement.

## IX. AMENDMENT

This contract cannot be changed by any oral promise or statement and no written modification will bind the Insurer unless approved by the President of the Insurer making the modification.

## X. PERSONAL GUARANTEE

Each and every individual who signs this Agreement warrants that they have authority to bind the entity on whose behalf they are signing.

## XI. EFFECTIVE DATE

The agreed effective date will be the date that this Agreement to represent is signed and acknowledged by the Primary Company as hereinafter specified.

## XII. INVESTIGATION NOTICE

The undersigned hereby authorizes the Primary and Affiliated Company/ies to conduct an investigation concerning character, credit reputation and personal traits and releases those contacted and the Insurer from any liability with respect to the content of the information provided and any resulting action by the Insurer including the sharing of such information or the termination of this Agreement to represent.

## XIII. FEDERAL CRIME CONTROL ACT

A. Undersigned warrants it:

1. has not been convicted of any criminal felony involving dishonesty or breach of trust or

2. has obtained written authorization to engage in the business of insurance from the Insurance Department in the state where REPRESENTATIVE resides which REPRESENTATIVE agrees to produce upon Insurer request.

B. The REPRESENTATIVE agrees to update the representations in the Confidential History/Background Information Section of Part 4 of the Appointment Application by notifying the Primary Company in writing within thirty (30) days, if there should be a change in the response to any question in the Information Section of Part 4 of the Appointment Application.

## XVI. PRIVACY CONTROL & SECURITY

A.   "Protected Health Information" and "Nonpublic Personal Information" shall be collectively called the "Information" in this Section, XVI, Privacy Control and Security.

B.   All information which any party obtains as a result of this relationship shall not be collected, or used, disclosed, reused or redisclosed to any third party, except to carry out the purposes for which the information was disclosed. The REPRESENTATIVE shall maintain the confidentiality of information consistent with the Company's notices of privacy practices, policies and procedures, provided that such use or disclosure would not violate any applicable laws, rules or regulations if done by the Company.

C.   The REPRESENTATIVE shall use commercially reasonable efforts and appropriate safeguards to maintain the integrity, confidentiality, and security of PHI and to prevent the unauthorized use or disclosure of PHI and to

AGL / Bechtel 000431

02/09/2005 16:21        727-451-0967              Venessa Nally                        PAGE 19/25
2713/062:21P
-- 537435003950

comply with the security standards or the HIPAA security regulations.  Upon Company request Agent will provide to the Company access to and documentation regarding any safeguards.

D.   Each party shall be permitted to disclose relevant aspects of the other parties' information to its officers, agents, subcontractors and employees only to the extent that such disclosure is reasonably necessary for the performance of its duties and obligations under the Agreement; provided that such party shall take all reasonable measures to ensure that the information of another party is not disclosed or reproduced in contravention of each of the obligations of this Agreement by such party's officers, agents, subcontractors and employees.  The obligations of this Agreement are personal to each party.

E.   The REPRESENTATIVE shall report promptly within seven (7) days to the Company's Privacy Officer in writing any use or disclosure of information that is not permitted by the Agreement or any addendum, of which the REPRESENTATIVE becomes aware. REPRESENTATIVE's report shall identify: (i) the nature of the unauthorized use or disclosure, (ii) the information used or disclosed, (iii) who made the unauthorized use or received the unauthorized disclosure, (iv) what REPRESENTATIVE has done or shall do to mitigate any deleterious effect of the unauthorized use or disclosure, (v) what corrective action REPRESENTATIVE has taken or shall take to prevent future similar unauthorized use or disclosure, and (vi) any other information as reasonably requested by the Company's Privacy Officer.

F.   The REPRESENTATIVE shall require all of its employees, representatives, subcontractors or agents that receive or have access to information to agree to adhere to the same restrictions and conditions on the use and/or disclosure of information that apply herein, including the obligation to return or destroy the information as provided for below.

G.   The obligations in this Agreement shall not restrict any disclosure by any party pursuant to any applicable state or federal laws, or by request or order of any court or government agency.  The REPRESENTATIVE shall immediately notify Company upon receipt by the REPRESENTATIVE of any request from the Department of Health and Human Services for the REPRESENTATIVE's internal practices, books, and records relating to the use and disclosure of information.

H.   Within ten (10) days of receiving a written request from Company the REPRESENTATIVE shall provide to the Company such information as is requested by the Company, if any, to permit the Company to respond to a request by an individual for access to, an amendment of, or an accounting of the disclosures of the individual's PHI in accordance with 45 C.F.R. Secs. 164.524, 164.526, and 164.528.  If an individual contacts the REPRESENTATIVE directly about access to, amendment of, or an accounting of disclosures of his/her PHI, the REPRESENTATIVE will forward such request immediately to the Company and not provide such access, amendment, or disclosure.  Notwithstanding anything herein to the contrary, REPRESENTATIVE shall make reasonable efforts to cooperate with the Company in responding to any such requests and enabling the Company to comply with federal laws and regulations regarding the timing of response to such requests.

I.   This Section XVI, Privacy Protection and Security, will survive the termination or expiration of this Agreement. Upon termination of the Agreement, the REPRESENTATIVE shall return or destroy (with the Company's written permission) all information that REPRESENTATIVE maintains in any form pursuant to the Agreement, and retain no copies of such information.  However, if the Company determines that such return or destruction is not feasible, REPRESENTATIVE will continue to extend the protections of this Addendum to such PHI and limit further use of the information to the purposes that make the return or destruction not feasible.  The respective rights and obligations of each party pursuant to this subsection shall survive the termination of the Agreement.

AGL 1954 0054

AGL / Bechtel 000432



TO:LICENSING
RE:BACKGROUND

IN 1996 I RESIGNED FROM THE FLORIDA BAR AFTER
BEING SUSPENDED SEVERAL TIMES-THE MAIN FOCUS
WAS ON THREE ISSUES
1-ALLEGEDLY SWEARING AT A JUDGE'S ASSISTANT-
OVER THE TELEPHONE FOR WHICH I WAS JAILED FOR
CONTEMPT OF COURT WHICH CONVICTION WAS
OVERTURNED ON APPEAL-HOWEVER-I WAS SUSPENDED
FOR 6 MONTHS

2-YELLING AT A JUDGE IN COURT OVER HER ILLEGAL
ACTIONS-WHICH ALSO COST ME A 6 MONTH
SUSPENSION-THE JUDGE WAS LATER REMOVED FROM
THE BENCH FOR IDENTICAL ACTIONS

3-THE BAR SOUGHT TO DISBAR ME FOR IMPUGNING
THE INTEGRITY OF A TRIBUNAL-BY ALLEGING
CORRUPTION IN THE TAMPA FLORIDA COURTHOUSE
AND CALLING JUDGES CORRUPT-SINCE THEN MOST OF
THESE JUDGES HAVE BEEN FORCED TO RESIGN-RETIRE-
AND THERE IS STILL AN ONGOING CRIMINAL
INVESTIGATION INTO SEVERAL OF THEM-THIS IS
EASILY DOCUMENTED BY THE NEWSPAPER REPORTS IN
THIS AREA THE LAST YEAR


AS A RESULT OF MY RESIGNATION I LOST MY 13
EMPLOYEE FIRM-MY HOUSE AND CARS-I FILED
CHAPTER 11 AND 13 WHICH WERE DISMISSED AND NOT-
I REPEAT-NOT DISCHARGED-1996 AND 1997
I DID NOT FILE CHAPTER 7 AND AS A RESULT HAVE
BEEN PAYING BACK AND CONTINUE TO PAY BACK

AGL / Bechtel 000433



BUSINESS LIABILITIES TO THIS DATE  -THIS ACCOUNTS
FOR MY PERSONAL FINANCIAL LIABILITIES

I AM CURRENTLY PRESIDENT OF A SMALL PUBLICLY
TRADED COMPANY-NOT A PINK SHEET- SUBECT TO
FULL  SEC REPORTING AND DISCLOSURE

I HAVE ALSO BEEN LICENSED IN FLORIDA SINCE 1979
AND HAVE OUTSTANDING REFRENCES IN THE
INSURANCE FIELD

AGL / Bechtel 000434

**AIG** AMERICAN GENERAL

Scan
LCCONTMAINT
3 NK79

**Licensing and Contracting Change Form**

AIG Life Brokerage
A division of the American International Companies.®

05/25/2007  05:58:00  660525295  3560

## Part 1   Change Request

### Type of Change Request

☐ Compensation Change   ☐ Contract Level Change   ☐ Second Contract   ☑ Transfer   ☐ Other   ☐ USL

Comments: Agent moving to new IMO Kevin Bechtel / Life Brokerage Partners LLC

## Part 2  Individual and Principal of Corporation.   This is Required Information.

Please Print Clearly

Social Security Number: [Redacted] - ___ - ___   Agent Number: 3NK80 / 3NK80

Name: Wasserman Phillip

| Last Name | First Name | Middle Initial |
|---|---|---|

Date of Birth: _____   Sex: ☑ Male   ☐ Female
month   day   year

Resident/Home: _____   Physical Address

| City | State | Zip |
|---|---|---|

Resident/Home Phone Number: _____   E-Mail _____

Business Address: 28463 U. S. Hwy. 19 North, Suite 102 Clearwater FL 33761
Physical Address   City   State   Zip

Business Phone Number: 7276697711   Fax Number _____

☐ I am an officer of the below corporation.

## Part 3   Corporate Applicants Required Information.

Please Print Clearly   Individual Applicants Do Not Complete This Section

Tax ID Number _____
Corporate Name: Philip Roy Financial Services LLC
Corporate Address: 28463 US Hwy 19N # 102
Clearwater   FL   33761
City   State   Zip
Corporate Phone Number: 727 669 7711   State Incorporated: FL
Fax Number: _____   E-Mail: _____
Primary Officer for Corporate Records: _____
Background Information reported on page – should provide Information for the Officer of the corporation.

AGLC100204   1   Rev0306

NONE

AGL / Bechtel 000435

**AIG** AMERICAN GENERAL

AIG Life Brokerage
A division of the American International Companies.®

## Part 4   Recruiter Section – IMO/BGA Only. *Complete ONLY when address used is NOT the above business address*

Social Security Number: Redacted - ___ - ____

Primary mailing address, phone contact, e-mail and faxes will be communicated to the following:

[✓] All Home Office Mail and other Communication will be directed to other than the above. Please direct to:

Agency Name: Life Brokerage Partners LLC          Agency Code Number: ____

Business Address: 3982 Tampa Rd.          Commission Address: 3982 Tampa Rd.

Oldsmar    FL  34677                    Oldsmar    FL  34677
City      State      ZIP                  City      State      ZIP

Fax Number: 727-712-1459               Phone Number: 727-791-9080

E-Mail Address: vnally@lifebrokeragepartners.com    ☐ Please check when commission check is
                                                      mailed directly to agent's business address.

## Part 5   Licensing and State Appointment Request

Attach copies of licenses for all requested state appointments. Provide appropriate fees for nonresident appointments.

Applicant Name: **Phillip Wasserman**

Licensed for: [✓] Life   ☐ Health   Contracted as: [✓] Individual   ☐ Agency

Resident State: FL          Resident License Number: ____

Nonresident Appointment State(s): ____
        Attach applicable fees and licenses for states listed above.

*FLORIDA residents must specify the Florida county where their business office is located:* ____

*NON-RESIDENT FLORIDA agents soliciting in Florida must list the county(s) in Florida in which they intend to personally solicit:* ____

## Part 6   Variable Licensing – Complete ONLY when variable appointment is requested.

Please complete the following ONLY when requesting variable appointment.

Who is your Broker/Dealer? ____

CRD Number: ____

Circle all current NASD licenses that you hold:  6  7  22  24  26  63  Other: ____

### Independent Wholesaler Election

Some broker-dealers may permit third-party wholesaling firms to offer certain services and support to registered representatives in order to facilitate sales of American General Life Insurance Company (AGL) variable universal life products. These firms are referred to by AGL as Independent Wholesalers (iW). In order for you to sell AGL's variable universal life insurance products through an iW, an iW agreement must be in place with the BGA/IMO and your broker-dealer must be informed, pursuant to NASD Rule 3030, of your iW election. Additionally, this iW Election Form must be submitted to AIG Life Brokerage, which documents your iW election. If you wish to obtain support through an iW, please indicate your election below.

☐ iW Election: ____
                (Name of iW Firms and Code Number)

AGLC100204                                    2                                    Rev0306

AGL / Bechtel 000436

**AIG** AMERICAN GENERAL

AIG Life Brokerage
A division of the American International Companies.℠

## Part 7  AGL Commission Section – Must be completed.

Social Security Number [Redacted]

Contract Level Requested   ☐ IMO/BGA   ☐ MGA   ☐ MGA 1   ☐ GA   ☑ GA 1   ☐ GA 2   ☐ Agent/Producer

Requested Commission Level for American General Life

Please note that any change to the compensation of the agents in your downline will directly affect your own commission payout. For example, if you raise the First Year compensation level for your agents' Life Brokerage products, your overwrites will correspondingly decrease. If you are unsure how a change will affect you and/or your agent, please contact the Commissions Department prior to submitting this form.

| | | Current Level (existing agents only) | Requested Level | PLEASE NOTE: |
|---|---|---|---|---|
| Life Products: | First Year | _____ | _____ | Commission level changes will affect policies with an application-signed date later than the effective date of the commission change. |
| | Renewal | _____ | _____ | |
| | Productivity Bonus | _____ | _____ | |
| | | ☐ Retro back to Jan. 1 of current year | ☐ Non Retro Policies on go-forward basis only | |
| Specialty Products: (Street Max = 1) | First Year/Renewals | _____ | _____ | |
| Annuity Products: | First Year | _____ | _____ | |
| A & H: | First Year | _____ | _____ | |
| | Renewal Level | _____ | _____ | |
| Variable Products: | IW Overwrite | _____ | _____ | |
| | Renewal Level | _____ | _____ | |

Please indicate if you wish this change to apply to pending policies: ☐ No   ☑ Yes.
If you answered yes, please attach a list of policies with this request.
**Annualization:** Available on a limited basis. Please attach the completed annualization form when requesting. Please note: Annualization changes will affect policies with an application-signed date later than the effective date of the annualization request.

## Part 8  USL Commission Section if applicable.

☐ United States Life – Please attach appropriate signed Commission Schedules

*PLEASE NOTE: Commission level changes will affect policies with an application-signed date later than the effective date of the commission change.*

Contract Level Requested:   ☐ GA   ☐ GA1   ☐ GA2   ☐ Producer

GA1: Override _____%        GA2:   ERA _____%

ERA _____%

Mail Commission Statements to: ☐ GA   ☐ GA1   ☐ GA2   ☐ Producer

## Part 9  Signature of Recruiter/IMO

The undersigned [recommending representative or General Agent] by executing this applicant recommends the applicant to American General Affiliates as a suitable person to represent the companies. The recommending individual or General Agent also agrees to supervise and assume responsibility for the applicant if appointed by American General Affiliates, in accordance with the terms of his/her Contract.

Signature: _____        Date: 3 / 1 / 07
    Signature of Agency

Agency Name  Gary A Richardson _____        Date: 3 / 1 / 07
    Print Name of Agency

AGLC100204      3      Rev0306

AGL / Bechtel 000437

May.19. 2006  9:39AM    Life Brokerage Equity Group                No.8855   P. 1

# Fax Cover Sheet



## Life Brokerage Equity Group

2963 Gulf-to Bay Blvd
Suite 330
Clearwater FL 33759



| Send to: American General | From: Vanessa Nally |
|---|---|
| Attention: Contracting | Date:  05/19/06 |
| Fax Number: 9-1-800-337-0961 | Fax Number: **727-451-0567** |
| | Email Address: vnally@lbeg.net |
| Total pages, including cover: 20 | Phone Number: **727-791-9080** |

For Your Record

Enclosed is contracting for Kenneth Parent.  Please contact me
with any questions.

Thank You
Vanessa Nally
Licensing & Contracting

ODYSSEY '05
July 24 -26 2006
Renaissance Vinoy Resort
St. Petersburg Florida

Ask your Brokerage Director for details or visit us at www.odyssey.lbeg.net

AGL / Bechtel 000438

May.19. 2006  9:39AM   Life Brokerage Equity Group          No.8855   P. 2

 **Equity Group**
*A Great Business Partner*

2963 Gulf to Bay Blvd Suite 330      Phone: 727-791-9080
Clearwater FL 33759                  Fax: 727-712-1459

# Appointment Transmittal

May 19, 2006

American General
Contracting

Agent Name                                    Parent, Kenneth
Agent Social Security Number                  Redacted
Agent Date of Birth                           Redacted
Appointment Number

The following Carrier Appointment Requirements have been requested:

American General
All Lines of Business
AZ, CA

The following Carrier Appointment Requirements have been received:

| Requirement | Received Date |
|---|---|
| Carrier Contracting Forms | 05/19/2006 |
| Current License | 05/19/2006 |
| E&O | 05/19/2006 |
| Agency Agreement | 05/19/2006 |

L&C Transmittal

Vanessa Nally
LBEG
Direct Phone: 727-791-9083 / 888-577-5234
Direct Fax: 727-451-0567
EMail: vnally@lbeg.net

AGL / Bechtel 000439

May.19. 2006  9:39AM   Life Brokerage Equity Group                    No.8865   P. 3



**AIG.** **AMERICAN GENERAL**                    **Appointment Application**

**AIG Life Brokerage**
A division of the American International Companies.®

**Part 12   Upline Data - To be completed by individual recruiting applicant.**

Applicant Name: Kenneth Parent / Health Benefits of    Applicant Social Security Number: **Redacted**    **Redacted**
*Please Print*                      Avizone LLC

Direct Upline Name: Gary Richardson    Agency Code Number: OPXX67
*Please Print*

**Part 13   AGL Commission Section - Must be completed.**

Contract Level Requested    ☐ IMO/BGA   ☐ MGA   ☐ MGA 1   ☐ GA   ☑ GA 1   ☐ GA 2   ☐ Agent/Producer

Commission Level for American General Life                         *If First Year is selected, Renewal*
Life Products:                                                    *Level must also be indicated.*
                          First Year Level          S
                          Renewal Level             D
        (HO Approval)     Productivity Bonus Level  O

Specialty Products:       First Year/Renewal Level  S
*(Street Max = J)*                                  D

AGL Annuity Deferred & Immediate:   First Year/Renewal Level      D    *If First Year is selected, Renewal*
A & H:                    First Year Level          D            *Level must also be indicated.*
                          Renewal Level             D

**Part 14   Additional Forms Section**

Annualization:  Please attach annualization form when requesting annualization. (Available on a limited basis.)

Electronic Funds Transfer (EFT)   Please attach EFT form and a copy of a voided check when requesting to receive commissions electronically.

Appointment, Bonus and Annualization require Home Office Approval.

AGLB1058                          5                          Rev0406

AGL / Bechtel 000440

May.19. 2006  9:39AM   Life Brokerage Equity Group                No.8855   P. 4

 **AMERICAN GENERAL**

Licensing and Contracting
Transmittal Form

AIG Life Brokerage
A division of the American International Companies.®

Date: 5-19-06 _____ Submitted By: Gary A Richardson IMO/BGA Code: OPU67

Corporation Name: _____

Agent Name: Kenneth Parent

Agent Social Security No./Tax ID No.: **Redacted** - ___ - _____ Agent Number (if available): _____

## CONTACT INFORMATION

| FOR MISSING DOCUMENTS OR PAGES | FOR L & C FOLLOWUP |
|---|---|
| Name: Vanessa Nally | Name: Vanessa Nally |
| Phone: 727-791-9080 | Phone: 727-791-9080 |
| Fax: 727-451-0567 | Fax: 727-451-0567 |
| E-Mail: vnally@lbeg.net | E-mail: vnally@lbeg.net |

## DOCUMENTS ATTACHED

| | |
|---|---|
| ☐ Address Forms | ☑ Errors and Omissions |
| ☑ Agency Agreement | ☑ License Copies |
| ☐ Annualization Forms | ☐ Life Sales Agreements |
| ☑ Appointment Application | ☐ Outstanding Requirement _____ |
| ☐ Assignment of Commission | ☐ State Correspondence |
| ☐ Contract Change Form | ☐ Requests for Termination |
| ☑ EFT Forms and Voided Check | ☐ _____ |

SPECIAL INSTRUCTIONS:

## NEW BUSINESS APPLICATION WITH LICENSING AND CONTRACTING PAPERWORK

*If more than one new business application is being submitted, provide information for the one which has the oldest Application Signed date.*

Policy Number _____ Policyholder Name: _____

State Application Signed In: _____ Application Signed Date: _____

AIG American General
Midwest Operations Center
P O Box 401
Milwaukee. WI 53201

AGLC101767

AGL / Bechtel 000441

May.19. 2006  9:39AM   Life Brokerage Equity Group          No.8855   P. 5

 **AMERICAN GENERAL**                    **Appointment Application**

**AIG Life Brokerage**
A division of the American International Companies.®

## Part 1   Individual and Principal of Corporation.  This is Required Information.

Please Print Clearly

Social Security Number: [Redacted]   ___ . ___

Name: Parent _____  Kenneth _____  R
        Last Name           First Name      Middle Initial

Date of Birth: ___[Redacted]___  Sex: ☒ Male  ☐ Female
    month   day   year

Resident/Home: 1776 E. Sheffield Ave
                Physical Address

    Chandler _____  AZ    85225
     City               State   Zip

Resident/Home Phone Number: 480 722-9580   E-Mail healthbenefitsaz@cox.net

Business Address: 1776 E Sheffield Ave    Chandler    AZ    85225
       Physical Address        City     State   Zip

Business Phone Number: 1-480-588-5759   Fax Number: 1-480-588-6930
☒ I am an officer of the below corporation.

## Part 2   Corporate Applicants Required Information.

Please Print Clearly
                        Individual Applicants Do Not Complete This Section

Tax ID Number   [Redacted]

Corporate Name: Health Benefits of Arizona LLC

Corporate Address: 1776 E. Sheffield Ave

    Chandler _____  AZ    85225
     City               State   Zip

Corporate Phone Number: 480 588-5759   State Incorporated: Arizona

Fax Number: 480 588-6930   E-Mail: healthbenefitsaz@cox.net

Primary Officer for Corporate Records: Kenneth Parent

Background Information reported on page – should provide information for the Officer of the corporation.

## Part 3   Recruiter Section - IMO/BGA Only. Complete ONLY when address used is NOT the above business address.

Primary mailing address, phone contact, e-mail and faxes will be communicated to the following:

☐ All Home Office Mail and other Communication will be directed to other than the above. Please direct to:

Agency Name: Life Brokerage Equity Group          Agency Code Number: JR567

Business Address: 2983 Gulf -to- Bay Blvd #330  Commission Address: 2983 Gulf -to- Bay Blvd #330

Clearwater FL 33759          Clearwater FL 33759
  City   State   ZIP          City   State   ZIP

Fax Number: 727-461-0567          Phone Number: 727-791-9080

E-Mail Address: vnally@lbeg.net          ☐ Please check when commission check is
                                mailed directly to agent's business address.

AGLB1058          1          Rev0406

AGL / Bechtel 000442

May.19. 2006  9:39AM   Life Brokerage Equity Group          No.8855  P. 6

 **AMERICAN GENERAL**    **Appointment Application**

**AIG Life Brokerage**
A division of the American International Companies.®

## Part 4    Licensing and State Appointment Request

Attach copies of licenses for all requested state appointments. Provide appropriate fees for nonresident appointments.

Social Security Number: ⬛ Redacted ⬛

Applicant Name: Kenneth R. Parent

Licensed for: ☒ Life   ☒ Health    Contracted as: ☐ Individual  ☒ Agency

Resident State: AZ    Resident License Number: 192 063

Nonresident Appointment State(s): CA
Attach applicable fees and licenses for states listed above.

FLORIDA residents must specify the Florida county where their business office is located: _____

NON-RESIDENT FLORIDA agents soliciting in Florida must list the county(s) in Florida in which they intend to personally solicit: _____

## Part 5    Variable Licensing – Complete ONLY when variable appointment is requested.

Please complete the following ONLY when requesting variable appointment.

Who is your Broker/Dealer? _____

CRD Number: _____

Circle all current NASD licenses that you hold:  6   7   22   24   26   63    Other: _____

### Independent Wholesaler Election

Some broker-dealers may permit third-party wholesaling firms to offer certain services and support to registered representatives in order to facilitate sales of American General Life Insurance Company (AGL) variable universal life products. These firms are referred to by AGL as Independent Wholesalers (IW). In order for you to sell AGL's variable universal life insurance products through an IW, an IW agreement must be in place with the BGA/IMO and your broker-dealer must be informed, pursuant to NASD Rule 3030, of your IW election. Additionally, this IW Election Form must be submitted to AIG Life Brokerage, which documents your IW election. If you wish to obtain support through an IW, please indicate your election below.

☐ IW Election: _____
(Name of IW Firm and Code Number)

## Part 6    Errors and Omissions Insurance Coverage

IMO candidates, attach copy of E & O Certificate. All others, please complete the following:

A. Name of Carrier:  Westport Insurance Corp

B. Policy Number:  LEO 89801

C. Name of Insured:  Kenneth Parent / Health Benefits of Arizona LLC

D. Coverage Amounts (include both per act and aggregate amounts):

Per Act: 1,000,000

Aggregate: 2,000,000

E. Expiration Date (month/date/year): 5-1-07

AGLB1058                                        2                                        Rev0406

AGL / Bechtel 000443

 **AMERICAN GENERAL**

**Appointment Application**

AIG Life Brokerage
A division of the American International Companies ©

## Part 7   Background Information Required On All Applicants

If this is a corporate application, the questions should be answered by and about the agency principal.

Social Security Number: **Redacted**

**CONFIDENTIAL HISTORY/BACKGROUND INFORMATION**

Please provide complete details for any "yes" answers in the Remarks section. Attach additional documentation as necessary.

1. Have you ever been convicted of or plead guilty or no contest to:
   a. Any Felony?

   b. Any Misdemeanor?  ☐ Yes  ☑ No

   c. A violation of federal or state securities or investment related regulations?  ☐ Yes  ☑ No

2. Are you currently under investigation by any legal or regulatory authority?  ☐ Yes  ☑ No

3. Do you now owe money to any life or health insurance company?  ☐ Yes  ☑ No

4. Have you or a firm in which you were a partner, officer or Director been declared bankrupt or been party to a bankruptcy or receivership proceeding, or have you had a salary garnished or had liens or judgements against you?  ☐ Yes  ☑ No

5. Has any insurance company or securities broker-dealer terminated your contract or permitted you to resign for reason other than lack of sales?  ☐ Yes  ☑ No

6. Have you ever been the subject of a consumer-initiated complaint or proceeding by any self-regulatory body or any securities commodities or insurance regulatory body or organization or employer?  ☐ Yes  ☑ No

7. Has a bonding company ever denied, paid out on or revoked a bond for you?

8. Have you ever had a claim filed against your professional liability or errors and omissions insurance coverage?  ☐ Yes  ☑ No

9. Has any insurance department, government agency or self-regulatory authority ever denied, suspended, revoked, censured or barred your license or registration or disciplined you with fines or by restricting your activities?  ☐ Yes  ☑ No

**REMARKS SECTION: Details of "yes"**

AGL / Bechtel 000444

May.19. 2006  9:40AM   Life Brokerage Equity Group                    No.8855   P. 8

 **American General**                    **Appointment Application**

AIG Life Brokerage
A division of the American International Companies.®

## Part 8   Signature of Individual -or- Principal of Corporation

Social Security Number: **Redacted**

I have read and received, as of the date indicated below, the notice concerning investigative consumer reports, as required by law. I understand that in signing this form, I hereby authorize the American General Life Companies that I have requested appointments with (hereinafter collectively referred to as the "American General Affiliates") to investigate my background, including my credit history and interviews with former employers and/or primary insurance company. I authorize the American General Affiliates and individuals named in the application to give the American General Affiliates any information regarding me that they have available. I agree that if any of my answers to the questions in Part 7 change, I will notify, in writing, American General Affiliates within 10 business days of the incident which would cause an answer to change. I understand that falsification of information or failure to update the answers on this application may result in termination of appointment(s) with all American General Affiliates. In addition, I hereby authorize the American General Affiliates to report information about earnings and debit balances to any credit bureau or similar organization.

I further authorize American General Affiliates, to verify my previous employment and securities registration history through the CRD system. I hereby authorize American General Affiliates to share background, licensing and applicant data with their affiliates. I acknowledge that I have received and reviewed the "Compliance Manual" for the American General Life Companies, and/or "Operations Manual" and I agree to abide by these principles, as amended or supplemented from time to time, in representing any of the Companies that appoint me.

Date: 5 , 18 , 2006          Signature: _Kenneth Parent_
                                        Signature of Individual -or- Principal of Corporation

## Part 9   Signature of Recruiter

The undersigned [recommending representative or General Agent] by executing this applicant recommends the applicant to American General Affiliates as a suitable person to represent the companies. The recommending individual or General Agent also agrees to supervise and assume responsibility for the applicant, if appointed by American General Affiliates, in accordance with the terms of his/her Contract.

Signature: _Gary P. Richardson_          Date: 5 , 19 , 06
           Signature of Recruiter

Print Name: _Gary Richardson_            Agent/Agency Code # _OPO67_
            Print Name of Recruiter                          Required

## Part 10   Home Office Section

Signature: _____          Date: ___ / ___ / ___
           (Additional signatures, if required, RVP)

Print Name: _____          Regional Code Number _____

Home Office Approval _____          Date: ___ / ___ / ___
                     (if required)

- - - - - - - - - - - - - - - - Remove and leave Part 11 with applicant. - - - - - - - - - - - - - - - -

## Part 11   Fair Credit Reporting Act - Notice of Proposed Investigative Consumer Report

Pursuant to the Fair Credit Reporting Act, this notice is to inform you that as a component of our contracting and appointing process, each company with which you have requested an appointment may request an investigative consumer report which may include information related to your character, general reputation, personal characteristics, and mode of living. You have the right to request in writing, within a reasonable period of time after receipt of this notice, a complete disclosure of the scope of the investigation requested and a written summary of your rights under the Fair Credit Reporting Act. Send your request to: Licensing and Contracting Department, 750 W. Virginia St. Milwaukee, WI 53204. Disclosure information must be in writing and mailed to you, along with the written summary of your rights, within five (5) business days after receipt of your written request. Also each company with which you have requested an appointment may share the information contained in the investigative report and other information in your file with its affiliates, unless you send a written request to the above-described address directing that this information not be disclosed or shared with affiliates.

AGLSI058                                    4                                    Rev0406

AGL / Bechtel 000445

May.19. 2006  9:40AM   Life Brokerage Equity Group          No.8855   P. 9

## AGENCY AGREEMENT

Each life insurance company's products are separately underwritten and independently supported by the representing company. The below listed companies are members of the American International Group, Inc.

FOR

Last Name __Parent__   First Name __Kenneth__   Middle Initial __R__

__Health Benefits of Arizona LLC__

If Representative is a Corporation, the full Corporate name must appear above, and an authorized officer must sign and indicate the officer's title.

Individual
Social Security Number ___ **Redacted**

Corporation
Tax Identification Number ___ **Redacted**

Representative

Signature _Kenneth R Parent_   Title _____

American General Life Companies

Contract Date __05292006__          _[signature]_
To be completed by Home Office          Home Office Authorized Signator

American General Life Insurance Company, Houston, TX
A division of the American International Companies.®

AGLB1056-1105

## WE KNOW LIFE.®

AIG | AMERICAN GENERAL
AIG Life Brokerage

AGL / Bechtel 000446

**TABLE OF CONTENTS**

**Paragraph**
Recitals
Definitions

| | |
|---|---|
| I. | Authorized Acts |
| II. | Limitation of Authority |
| III. | Advertising |
| IV. | Relationship |
| V. | Compensation |
| VI. | Vesting |
| VII. | General Provisions |
| VIII | Termination |
| IX | Amendment |
| X. | Personal Guarantee |
| XI. | Effective Date |
| XII. | Investigation Notice |
| XIII. | Federal Crime Control Act |
| XIV. | Confidentiality |

**Schedules**

A. Commission Schedule – Primary Company

B. Appointment Application

AGL / Bechtel 000447

### RECITALS

Representative ("REPRESENTATIVE") has executed an Appointment Application requesting appointments with one or more life insurance subsidiaries of American International Group, Inc.

The Appointment Application designates one of the life insurers as a Primary Appointing Company (the "Primary Company").

This Agreement together with the Appointment Application and Commission Schedules for each separate life insurer that appoints REPRESENTATIVE comprise the REPRESENTATIVE's contract with each of the insurers that appoints REPRESENTATIVE.

Execution of this Agreement by the Primary Company and the REPRESENTATIVE evidences their Agreement to transact business in accordance with the terms and conditions set forth in this Agreement.

If REPRESENTATIVE requested appointment with one or more affiliates of the Primary Company in the Appointment Application, or a subsequent amendment to that form, REPRESENTATIVE's execution of this Agreement evidences REPRESENTATIVE's Agreement to transact business with each affiliated insurer in accordance with the terms and conditions set forth in this Agreement. Each affiliated insurer that appoints REPRESENTATIVE and sends a company commission schedule to REPRESENTATIVE has agreed to transact business with REPRESENTATIVE according to the terms and conditions of this Agreement.

### DEFINITIONS

A. Primary Company – the Primary Company is designated in the Appointment Application as the Primary Company. The Primary Company's responsibilities include executing the REPRESENTATIVE Agreement, performing background checks and providing convention credits and other sales incentives, if any, to REPRESENTATIVE.

B. Affiliated Company – the Affiliated Company(ies) is any other life insurance subsidiary of American International Group, Inc. that is identified in the Appointment Application, appoints REPRESENTATIVE and provides a company commission schedule as evidence of its Agreement to transact business with REPRESENTATIVE according to the terms of this Agreement.

C. Insurer – the term Insurer as used in this Agreement refers to each of the life insurance companies that appoints REPRESENTATIVE, including the Primary Company.

D. Jurisdiction – Eligibility for, or receipt of, override compensation on another Representative's business.

E. Nonpublic Personal Information: "Nonpublic Personal Information" of customers or consumers ("NPI") includes, but is not limited to, names, addresses, account balances, account numbers, account activity, social security numbers, taxpayer identification numbers, and sensitive financial and health information. NPI includes information on each party's forms or in a database of any kind. Information created by each party, information collected by or on behalf of a party, and personally identifiable information derived from NPI. Reference to NPI of Company or REPRESENTATIVE shall include NPI collected by or on behalf of American International Group, Inc., its successors, subsidiaries, affiliates agents or contractors. There may be instances where each party will have the same NPI which may be subject to different privacy policies and procedures according to the notices provided to the customer or consumer by the respective parties to the Agreement.

F. Protected Health Information: The terms "Protected Health Information" and "PHI" shall have the meaning set forth in 45 C.F.R. Sec. 164.501 as may be amended. Other terms shall have the same meanings as set forth in the applicable definition of the Health Insurance Portability and Accessibility Act (HIPAA), as amended, Privacy Rule or other regulations.

### I. AUTHORIZED ACTS

A. The REPRESENTATIVE is authorized to conduct Insurer's business for the Insurer's products covering such classes of risks as the Insurer may authorize and in those states where the product is approved and REPRESENTATIVE is licensed and appointed as required by state law. If REPRESENTATIVE is a corporation, then the principal(s) of such corporation must also be licensed individually, if required pursuant to appropriate state law.

B. The REPRESENTATIVE is authorized to collect and promptly remit to the Insurer the first premium on business produced by the REPRESENTATIVE in accordance with the Insurer's rules and regulations.

C. The REPRESENTATIVE will promptly deliver issued policies in accordance with Insurer's policies and procedures.

D. All monies, settlements, or documents received by the REPRESENTATIVE for, or on behalf of, the Insurer shall be received by the REPRESENTATIVE in a fiduciary capacity and immediately paid over or delivered to the Insurer, except as may be otherwise directed in writing by the Insurer.

AGL / Bechtel 000448

## II. LIMITATION OF AUTHORITY

The REPRESENTATIVE is without authority to perform any act or thing other than that expressly granted in this Agreement and expressly agrees not to perform any of the following acts:

    1. Make, modify, alter or discharge any policy.
    2. Extend the time payment of any premium.
    3. Waive any forfeiture.
    4. Guarantee dividends or interest rates.
    5. Incur any debt or liability in the name of the Insurer.
    6. Withhold, commingle or convert to the use of the REPRESENTATIVE or the benefit of others, any monies, securities, policies or receipts belonging to the Insurer, the applicant, or the insured, or fail to promptly submit to the Insurer any applications for policies.
    7. Accept or deposit any check or draft for premiums made payable to other than the Insurer.
    8. Unless in the best interest of the policyowner, directly or indirectly induce or attempt to induce any policyowners of Insurer to relinquish, surrender, replace or lapse their policies.

## III. ADVERTISING / USE OF LOGO

REPRESENTATIVE may, at REPRESENTATIVE's expense, advertise Insurer's products, provided the text of all advertising, including any form of sales/promotional material such as, but not limited to business cards, stationery or other indications of agency under this Agreement and including the use of the names "American International Group, Inc.," "AIG," "American General," their logos or the name of any insurer is approved in writing by the company before use.

## IV. RELATIONSHIP

The relationship between the Insurer and the REPRESENTATIVE shall be that of principal and independent contractor and nothing contained herein shall be construed as creating the relationship of employer and employee for any purpose, including tax purposes. REPRESENTATIVE agrees to be responsible for all taxes as a self-employed independent contractor. The REPRESENTATIVE shall be free to exercise independent judgment as to the time and manner in which the services authorized under this Agreement. Any material supplied by the Insurer is for the purpose of supporting the activities of the REPRESENTATIVE.

## V. COMPENSATION

A. Subject to the provisions hereof and the rules of the Insurer, the full compensation of the REPRESENTATIVE shall be payable at the applicable rate set forth in the Schedule of Commission in effect at the date the first full premium is received by the Insurer, which Schedule of Commission and all amendments, supplements and replacements thereof and thereto are hereby made a part of this Agreement.

B. Commission is subject to change at any time by written notice by the Insurer to the REPRESENTATIVE, but no such change shall affect commissions on any policy issued prior to the effective date of such change.

C. If commission rates are not now shown in the Schedule of Commission, including conversions, replacements or, the exercise of re-entry provisions or, if special premium rate quotations are made, commission rates shall be such as may be fixed by the Insurer as of the time when issue is effective in accordance with rates and practices of the Insurer than in effect.

D. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall lapse because of nonpayment of premium and shall be replaced or reinstated, any commissions on the new or reinstated policy shall be payable only at the sole discretion of the Insurer.

E. To be entitled to commissions, if any, the REPRESENTATIVE's name or the name of another Representative under your jurisdiction must appear as soliciting agent on the application for insurance. Disputes respecting commissions shall be subject to decision and settlement by the Insurer and the Insurer's decision shall be final and binding upon the parties involved.

F. Whenever in the judgment of the Insurer, it shall become advisable to recall any policy issued before delivery thereof is made, the REPRESENTATIVE shall promptly refund to the Insurer any commissions received on account of such policy. Whenever, after delivery, the Insurer shall effect or procure the surrender, rescission or cancellation of any policy and refund premiums paid thereon, the Insurer shall have the right to charge back commissions and demand that the REPRESENTATIVE repay such commissions to the Insurer. If the Insurer shall refund or waive the premium or premiums under the provisions of any disability waiver of premium rider, the REPRESENTATIVE shall lose all rights to commission and persistency fees as applied to such refunded or waived premiums, and shall repay any amounts advanced. An Insurer may include in its Commission Schedule, which is incorporated as a part of this Agreement, guidelines describing more specifically the circumstances under which it will charge back commissions on certain products. In the absence of such guidelines, the Insurer's rights shall be as described in this Section V. Compensation.

G. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall be converted or replaced, any commissions on the new policy shall be subject to adjustment and payable only at the sole discretion of the Insurer.

H. Except where prohibited by any State, the REPRESENTATIVE is responsible for all license fees, including those of its Representatives. The Insurer's discretion shall govern with respect to whether the Insurer shall charge to the REPRESENTATIVE's commission or other compensation account the cost of obtaining and renewing the REPRESENTATIVE's and its Representatives' license or licenses and/or appointment fees. This practice is subject to change at the discretion of the Insurer.

I. Policy applications for any Insurer will be issued and commissions paid by the Insurer.

## VI. VESTING

A. As long as this Agreement remains in effect, all first year and renewal commissions shall be paid as they accrue; however, any such payments are subject to the schedule of commissions in effect at the date the first full premium is received by the Insurer, the provisions and rules of the Insurer regarding minimum first year and renewal commissions required to issue a check.

B. During any consecutive 12-month period following the termination of this Agreement, total renewal commissions are less than the minimum required by the Insurer, vesting automatically terminates and no additional commission payments will be due from the Insurer.

C. In the event this Agreement is terminated by the death of the REPRESENTATIVE, all first year and renewal commissions shall be paid as they accrue, subject only to the terms and conditions of paragraphs A and B immediately above. In the absence of a properly executed beneficiary designation on file with the Insurer, all such payments, if any, shall be made to the surviving spouse and at the death of the surviving spouse to the estate of said spouse. If the REPRESENTATIVE dies leaving no surviving spouse, such monies will be paid to the estate of the REPRESENTATIVE; provided however, that if the REPRESENTATIVE is a corporation or a partnership, all such payments will be paid to said corporation or partnership.

## VII. GENERAL PROVISIONS

A. The Insurer may make such changes and decisions as it deems advisable in the conduct of its business, including the discontinuance of any policy form or the withdrawal from any territory, and the Insurer shall incur no liability to the REPRESENTATIVE by reason of its doing so.

B. The Insurer shall have the right to test market any of its products on a select basis and at the discretion of the Insurer.

C. The REPRESENTATIVE shall indemnify and hold the Insurer harmless against or from any and all expense, costs, causes of action, and damages including without limitation, reasonable attorney fees, resulting from or growing out of any unauthorized or negligent act of commission or omission by the REPRESENTATIVE or its employees, directors, officers, or Representatives under its jurisdiction. This provision shall survive termination of this Agreement.

D. The Insurer shall have a prior right and offset to all commissions and fees payable hereunder toward any indebtedness and/or other obligations due from the REPRESENTATIVE or anyone under the jurisdiction of the REPRESENTATIVE to any Primary Company and/or Affiliated Company/ies with interest at the legal rate. This prior right and offset shall not be extinguished by the termination of this Agreement. Following the termination of any Representative under the jurisdiction of the REPRESENTATIVE, should the amount in any commission account of that Representative be insufficient to repay any amount due the Insurer, the debit will become the responsibility of the REPRESENTATIVE, in accordance with the Insurer's then current debit collection procedure.

E. Neither this Agreement, any duties or delegation under this Agreement, nor the commissions or fees accruing hereunder, nor any interest herein, nor any right or claim created hereby or arising by reason of the REPRESENTATIVE acting hereunder, shall be assignable, except upon the written consent of the Insurer.

F. Forbearance or failure of the Insurer to insist upon performance of this Agreement or to enforce its rights hereunder, shall not constitute a waiver of its rights or privileges hereunder or of its subsequent right to insist upon such performance.

G. This Agreement, including the Appointment Application and any Commission Schedule(s) incorporated as part of the Agreement, contains all promises, inducements and representations between the parties. This Agreement supersedes any and all previous Agreements between the parties herein pertaining to the solicitation of the Insurer's products and the payment of monies to the REPRESENTATIVE provided, however, that rights or obligations which have already accrued (and would survive termination) under any previous contract between the Insurer and the REPRESENTATIVE shall not be hereby impaired.

H. The Insurer reserves the right to decline or modify any application for insurance.

I. This Agreement shall not be effective until executed by the Primary Company. Once this Agreement is effective with the Primary Company, it may become effective with Affiliated Company(ies) as described herein.

AGL / Bechtel 000450

J. Should the REPRESENTATIVE, at any time, violate any provision of Section II of this Agreement, entitled Limitation of Authority, or commit any fraud upon Insurer or its policyholders; have a license as agent or broker revoked for cause after notice and hearing by a state insurance department or otherwise act to prejudice materially the interests of Insurer, the REPRESENTATIVE shall, at the option of the Insurer, forfeit any and all rights to all commissions and monies that the REPRESENTATIVE might otherwise have under this Agreement, vested or not. It is expressly agreed that termination of this Agreement shall not terminate this provision.

K. The REPRESENTATIVE agrees to maintain complete and accurate records of the marketing and sale of the Insurer's products. The Insurer reserves the right to inspect such records and other documents in each REPRESENTATIVE's files that relate to the marketing, attempted sale or sale of the Insurer's products. If the Insurer chooses to inspect such records, it will endeavor to do so during normal business hours and after giving reasonable notice, unless, in the judgment of the Insurer, unusual circumstances require inspection at other times or inspection without prior notice. This provision shall survive termination of this Agreement for a period of two (2) years.

L. For as long as this Agreement is in force, the REPRESENTATIVE will maintain Errors and Omissions (E&O) coverage and will provide the Insurer annually proof of such E&O coverage in a manner acceptable to the Insurer.

M. If the REPRESENTATIVE is served with a regulatory inquiry or legal papers involving Insurer business, the REPRE-SENTATIVE shall immediately notify the Insurer by sending to that Insurer's Compliance Officer, a copy of the papers, served by overnight delivery, by the end of the business day next following the day of receipt by the REPRESENTATIVE.

N. The REPRESENTATIVE is responsible for assuring that any Representative under the Jurisdiction of the REPRESEN-TATIVE: (1) become fully informed as to the provisions and benefits of each product offered by the Insurer for which the Representative conducts Insurer business; (2) represent such products adequately and fairly to prospective purchasers; and (3) act in compliance with the Insurer's policies and procedures as set out in the Customer Service and Compliance Manual, Operations Manual, or otherwise communicated to the REPRESENTATIVE, including, without limitation, those regarding suitability of sales inquiries and compliance with the Insurer's principles and code of ethical market conduct.

O. When the Insurer assigns to the REPRESENTATIVE any agency not recruited by the REPRESENTATIVE, then the Insurer may reassign that agency to another upline of the Insurer's choice at any time and without the necessity of a release from the REPRESENTATIVE. If the Insurer wishes to remove any agency recruited by the REPRESENTATIVE from the Jurisdiction of the REPRESENTATIVE, the Insurer will negotiate a release; however, such release will not be unreasonably withheld by the REPRESENTATIVE.

P. REPRESENTATIVE is not entitled to participate in any REPRESENTATIVE benefit programs except those which are provided by the Primary Company. REPRESENTATIVE is not eligible to participate in, or to receive any benefits from, any programs provided by the Affiliate Company/ies.

Q. Disputes arising under this Agreement shall be subject to the laws of the state where the Insurer engaged in the dispute is located.

R. The area within which the REPRESENTATIVE shall have the right to represent the Insurer is not assigned exclusively to the REPRESENTATIVE.

S. REPRESENTATIVE agrees to conform to all regulations of the Insurance Department and the insurance laws in the state(s) in which the REPRESENTATIVE is conducting Insurer's business.

T. REPRESENTATIVE understands and agrees that (i) the Primary Company may amend the Agreement or the Company's policies, rules and procedures, in order to comply with changes in laws or regulations, or, as the Company deems appropriate related to changes in laws or regulations, through communication of any such amendment to REPRESENTATIVE, and (ii) For purposes of any such amendment, communication may include, but not be limited to, posting of amendment information on the Primary Company's websites or other means of making such information known or available to the agent.

VIII. TERMINATION

A. This Agreement shall automatically terminate upon the death of REPRESENTATIVE if REPRESENTATIVE is an individual or upon dissolution of REPRESENTATIVE if REPRESENTATIVE is a corporation or a partnership.

B. This Agreement shall terminate upon the revocation or non-renewal of the REPRESENTATIVE's license.

C. This Agreement may be terminated with or without cause by any Insurer (subject to provisions D and E below) or the REPRESENTATIVE by sending written notice of such termination to the last known address of the other party.

AGL / Bechtel 000451

D.  Upon termination, the REPRESENTATIVE shall immediately pay in cash to the Insurer all sums that are due or become due hereunder and shall immediately deliver to the Insurer all materials connected with the business of the Insurer and belonging to the Insurer. Such materials include, but are not limited to, rate cards, letters, records, computer software, general supplies or any and all other indications of agency provided by the Insurer. It is expressly agreed that termination of this Agreement does not release the REPRESENTATIVE from continuing liability to the Insurer for immediate repayment of any and all unearned first year commissions or bonuses.

E.  Termination of this Agreement by the Primary Company terminates all contracts with Affiliated Company/ies without specific notice to the REPRESENTATIVE required by the Insurer. However, any Affiliated Company may terminate its agency relationship with the REPRESENTATIVE, which will not, of itself, terminate the Primary Company agency relationship. Upon termination, the Insurer may assign a servicing agency; however, such assignment will not of itself affect the vesting of existing business.

F.  Termination of this Agreement automatically terminates any previous Agreement to represent the Insurer that terminated the Agreement.

## IX. AMENDMENT

This contract cannot be changed by any oral promise or statement and no written modification will bind the Insurer unless approved by the President of the Insurer making the modification.

## X. PERSONAL GUARANTEE

Each and every individual who signs this Agreement warrants that they have authority to bind the entity on whose behalf they are signing.

## XI. EFFECTIVE DATE

The agreed effective date will be the date that this Agreement to represent is signed and acknowledged by the Primary Company as hereinafter specified.

## XII. INVESTIGATION NOTICE

The undersigned hereby authorizes the Primary and Affiliated Company/ies to conduct an investigation concerning character, credit reputation and personal traits and releases those contacted and the Insurer from any liability with respect to the content of the information provided and any resulting action by the Insurer including the sharing of such information or the termination of this Agreement to represent.

## XIII. FEDERAL CRIME CONTROL ACT

A. Undersigned warrants it:

1. has not been convicted of any criminal felony involving dishonesty or breach of trust or

2. has obtained written authorization to engage in the business of insurance from the Insurance Department in the state where REPRESENTATIVE resides which REPRESENTATIVE agrees to produce upon Insurer request.

B.  The REPRESENTATIVE agrees to update the representations in the Confidential History/Background Information Section of Part 4 of the Appointment Application by notifying the Primary Company in writing within thirty (30) days, if there should be a change in the response to any question in the Information Section of Part 4 of the Appointment Application.

## XVI. PRIVACY CONTROL & SECURITY

A.  "Protected Health Information" and "Nonpublic Personal Information" shall be collectively called the "Information" in this Section, XVI, Privacy Control and Security.

B.  All information which any party obtains as a result of this relationship shall not be collected, or used, disclosed, reused or redisclosed to any third party, except to carry out the purposes for which the information was disclosed. The REPRESENTATIVE shall maintain the confidentiality of information consistent with the Company's notices of privacy practices, policies and procedures, provided that such use or disclosure would not violate any applicable laws, rules or regulations if done by the Company.

C.  The REPRESENTATIVE shall use commercially reasonable efforts and appropriate safeguards to maintain the integrity, confidentiality, and security of PHI and to prevent the unauthorized use or disclosure of PHI and to

comply with the security standards or the HIPAA security regulations. Upon Company request Agent will provide to the Company access to and documentation regarding any safeguards.

D. Each party shall be permitted to disclose relevant aspects of the other parties' Information to its officers, agents, subcontractors and employees only to the extent that such disclosure is reasonably necessary for the performance of its duties and obligations under the Agreement; provided that such party shall take all reasonable measures to ensure that the information of another party is not disclosed or reproduced in contravention of each of the obligations of this Agreement by such party's officers, agents, subcontractors and employees. The obligations of this Agreement are personal to each party.

E. The REPRESENTATIVE shall report promptly within seven (7) days to the Company's Privacy Officer in writing any use or disclosure of Information that is not permitted by the Agreement or any addendum, of which the REPRESENTATIVE becomes aware, REPRESENTATIVE's report shall identify: (i) the nature of the unauthorized use or disclosure, (ii) the Information used or disclosed, (iii) who made the unauthorized use or received the unauthorized disclosure, (iv) what REPRESENTATIVE has done or shall do to mitigate any deleterious effect of the unauthorized use or disclosure, (v) what corrective action REPRESENTATIVE has taken or shall take to prevent future similar unauthorized use or disclosure, and (vi) any other Information as reasonably requested by the Company's Privacy Officer.

F. The REPRESENTATIVE shall require all of its employees, representatives, subcontractors or agents that receive or have access to Information to agree to adhere to the same restrictions and conditions on the use and/or disclosure of Information that apply herein, including the obligation to return or destroy the Information as provided for below.

G. The obligations in this Agreement shall not restrict any disclosure by any party pursuant to any applicable state or federal laws, or by request or order of any court or government agency. The REPRESENTATIVE shall immediately notify Company upon receipt by the REPRESENTATIVE of any request from the Department of Health and Human Services for the REPRESENTATIVE'S internal practices, books, and records relating to the use and disclosure of Information.

H. Within ten (10) days of receiving a written request from Company, the REPRESENTATIVE shall provide to the Company such information as is requested by the Company, if any, to permit the Company to respond to a request by an individual for access to, an amendment of, or an accounting of the disclosures of the individual's PHI in accordance with 45 C.F.R. Secs. 164.524, 164.526, and 164.528. If an individual contacts the REPRESENTATIVE directly about access to, amendment of, or an accounting of disclosures of his/her PHI, the REPRESENTATIVE will forward such request immediately to the Company and not provide such access, amendment, or disclosure. Notwithstanding anything herein to the contrary, REPRESENTATIVE shall make reasonable efforts to cooperate with the Company in responding to any such requests and enabling the Company to comply with federal laws and regulations regarding the timing of response to such requests.

I. This Section XVI, Privacy Protection and Security, will survive the termination or expiration of this Agreement. Upon termination of the Agreement, the REPRESENTATIVE shall return or destroy (with the Company's written permission) all Information that REPRESENTATIVE maintains in any form pursuant to the Agreement, and retain no copies of such Information. However, if the Company determines that such return or destruction is not feasible, REPRESENTATIVE will continue to extend the protections of this Addendum to such PHI and limit further use of the information to the purposes that make the return or destruction not feasible. The respective rights and obligations of each party pursuant to this subsection shall survive the termination of the Agreement.

AGL8106S-1106

AGL / Bechtel 000453

**AIG** **AMERICAN GENERAL**

**Licensing and Contracting Change Form**

Scan
LCCOMMAINT
0SV24

AIG Life Brokerage
A division of the American International Companies®

## Part 1   Change Request

**Type of Change Request**

☐ Compensation Change   ☐ Contract Level Change   ☐ Second Contract   ☑ Transfer   ☐ Other   ☐ USL

Comments: Agent moving to new IMO Kevin Bechtel / Life Brokerage Partners LLC

## Part 2  Individual and Principal of Corporation.   This is Required Information.

Please Print Clearly

Social Security Number: **Redacted**  -    -        Agent Number: 3SV25 /3SV24

Name: Kenneth Parent
_____
Last Name                                    First Name                         Middle Initial

Date of Birth: 03/09/1954
        month        day        year        Sex: ☑ Male   ☐ Female

Resident/Home: _____
                                    Physical Address

_____
City                                              State              Zip

Resident/Home Phone Number: _____   E-Mail _____

Business Address: 1776 E Sheffield Ave Chandler AZ  85225
                            Physical Address              City              State        Zip

Business Phone Number: 4805885759        Fax Number 4805886930

☐ I am an officer of the below corporation.

## Part 3   Corporate Applicants Required Information.

Please Print Clearly                    Individual Applicants Do Not Complete This Section

Tax ID Number _____

Corporate Name: Health Benefits of Arizona

Corporate Address: 1776 E Sheffield Ave
                            Chandler                              AZ       85225
                            City                                          State        Zip

Corporate Phone Number: 480·588·5759        State Incorporated: AZ

Fax Number: 4805886930        E-Mail: _____

Primary Officer for Corporate Records: Kenneth Parent

Background information reported on page -- should provide information for the Officer of the corporation.

AGLC100204                                    1                                    Rev 0306

NONE

**AIG.** **AMERICAN GENERAL**

AIG Life Brokerage
A division of the American International Companies.®

## Part 4   Recruiter Section - IMO/BGA Only. *Complete ONLY when address used is NOT the above business address*

Social Security Number: **Redacted** ___ - __ - ___ - ___

Primary mailing address, phone contact, e-mail and faxes will be communicated to the following:

☑ All Home Office Mail and other Communication will be directed to other than the above. Please direct to:

Agency Name: Life Brokerage Partners LLC          Agency Code Number: _____

Business Address: 3982 Tampa Rd.          Commission Address: 3982 Tampa Rd.

Oldsmar    FL   34677                          Oldsmar    FL   34677
City        State        ZIP                      City        State        ZIP

Fax Number: 727-712-1459          Phone Number: 727-791-9080

E-Mail Address: vnally@lifebrokeragepartners.com    ☐ Please check when commission check is mailed directly to agent's business address.

## Part 5   Licensing and State Appointment Request

Attach copies of licenses for all requested state appointments. Provide appropriate fees for nonresident appointments.

Applicant Name: Kenneth Parent

Licensed for: ☑ Life   ☐ Health      Contracted as: ☑ Individual   ☐ Agency

Resident State: AZ      Resident License Number: _____

Nonresident Appointment State(s): CA TX
Attach applicable fees and licenses for states listed above.

*FLORIDA residents must specify the Florida county where their business office is located:* _____

*NON-RESIDENT FLORIDA agents soliciting in Florida must list the county(s) in Florida in which they intend to personally solicit:*
_____
_____

## Part 6   Variable Licensing – Complete ONLY when variable appointment is requested.

Please complete the following ONLY when requesting variable appointment.

Who is your Broker/Dealer? _____

CRD Number: _____

Circle all current NASD licenses that you hold:   6   7   22   24   26   63   Other: _____

### Independent Wholesaler Election

Some broker-dealers may permit third-party wholesaling firms to offer certain services and support to registered representatives in order to facilitate sales of American General Life Insurance Company (AGL) variable universal life products. These firms are referred to by AGL as Independent Wholesalers (IW). In order for you to sell AGL's variable universal life insurance products through an IW, an IW agreement must be in place with the BGA/IMO and  your broker-dealer must be informed, pursuant to NASD Rule 3030, of your IW election. Additionally, this IW Election Form must be submitted to AIG Life Brokerage, which documents your IW election.  If you wish to obtain support through an IW, please indicate your election below.

☐ IW Election: _____
(Name of IW Firms and Code Number)

AGLC100204                                    2                                    Rev0306

AGL / Bechtel 000455

# AIG® AMERICAN GENERAL

AIG Life Brokerage
A division of the American International Companies.®

## Part 7  AGL Commission Section - Must be completed.

Social Security Number: **Redacted**

Contract Level Requested: ☐ IMO/BGA  ☐ MGA  ☐ MGA 1  ☐ GA  ☑ GA 1  ☐ GA 2  ☐ Agent/Producer

### Requested Commission Level for American General Life

Please note that any change to the compensation of the agents in your downline will **directly affect your own commission payout.** For example, if you raise the First Year compensation level for your agents' Life Brokerage products, your overwrites will correspondingly decrease. If you are unsure how a change will affect you and/or your agent, please contact the Commissions Department prior to submitting this form.

| | | Current Level (existing agents only) | Requested Level | |
|---|---|---|---|---|
| Life Products: | First Year | | | **PLEASE NOTE:** Commission level changes will affect policies with an application-signed date later than the effective date of the commission change. |
| | Renewal | | | |
| | Productivity Bonus | | | |
| | | ☐ Retro back to Jan. 1 of current year | ☐ Non Retro Policies on go-forward basis only | |
| Specialty Products: (Street Max = 1) | First Year/Renewals | | | |
| Annuity Products: | First Year | | | |
| A & H: | First Year | | | |
| | Renewal Level | | | |
| Variable Products: | IW Overwrite | | | |
| | Renewal Level | | | |

Please indicate if you wish this change to apply to pending policies: ☐ No  ☑ Yes.
If you answered yes, please attach a list of policies with this request.
**Annualization:** Available on a limited basis. Please attach the completed annualization form when requesting. Please note: Annualization changes will affect policies with an application-signed date later than the effective date of the annualization request.

## Part 8  USL Commission Section if applicable.

☐ United States Life - Please attach appropriate signed Commission Schedules

Contract Level Requested:  ☐ GA  ☐ GA1  ☐ GA2  ☐ Producer

GA1: Override _____%          GA2:   ERA_____%

ERA _____%

Mail Commission Statements to: ☐ GA  ☐ GA1  ☐ GA2  ☐ Producer

*PLEASE NOTE: Commission level changes will affect policies with an application-signed date later than the effective date of the commission change.*

## Part 9  Signature of Recruiter/IMO

The undersigned [recommending representative or General Agent] by executing this applicant recommends the applicant to American General Affiliates as a suitable person to represent the companies. The recommending individual or General Agent also agrees to supervise and assume responsibility for the applicant, if appointed by American General Affiliates, in accordance with the terms of his/her Contract.

Signature: _____          Date: 3 / 1 / 07
              Signature of Agency

Agency Name  Gary A Richardson          Date: 3 / 1 / 07
                   Print Name of Agency

AGLC100204                                3                                Rev:0306

04/07/2006 09:02   727-451-0567          Vanessa Nally                    PAGE 1/53

477/06 3:29PM
579847 000781

# COVER PAGE

Date: 04/07/2006  09:02                 NO. OF PAGE:  63   (include this page)

| To: | Name: | American General Contracting |
| | Department: | Contracting |
| | Company: | AMERICAN GENERAL |

| From: | Name: | Vanessa Nally |
| | TEL & FAX | (TEL)  727-791-9080 |
| | | (FAX)  727-451-0567 |
| | E-Mail: | vnally@lbeg.net |
| | Department: | Contracting & Licensing |
| | Company: | LBEG |
| | Address: | 2963 Gulf -to- Bay Blvd. #330 |
| | | Clearwater FL 33759 |

Comment

Enclosed is contracting for Sherry Fardie. Please contact me if you have any questions.

Thank you

AGL / Bechtel 000457

04/07/2006 09:02      727-451-0567            Vanessa Nally                    PAGE 2/63

4/7/06 3:30PM
579847 000757


**Life Brokerage**   **Equity Group**
*A Great Business Partner*

2963 Gulf to Bay Blvd Suite 330       Phone: 727-791-9080
Clearwater, FL. 33759                 Fax: 727-712-1459

## Appointment Transmittal

April 5, 2006

American General
Contracting

Agent Name                              Fardie, Sherry
Agent Social Security Number            **Redacted**
Agent Date of Birth
Appointment Number

The following Carrier Appointment Requirements have been requested:

American General
All Lines of Business
The following Carrier Appointment Requirements have been received:

                                                    Received Date
Requirement                                         04/05/2006
Carrier Contracting Forms                           04/05/2006
Current License                                     04/05/2006
E&O
W-9

Vanessa Nally
LBEG
Direct Phone: 727-791-9083 / 888-577-5234
Direct Fax: 727-451-0567
EMail: vnally@lbeg.net



AGL / Bechtel 000458

04/07/2006 09:03    727-451-0567                          Vanessa Nally                          PAGE 3/53

4/7/06 3:30PM
579847000783

# AIG. AMERICAN GENERAL

## Licensing and Contracting Transmittal Form

**AIG Life Brokerage**
A division of the American International Companies®

Date: 2-27-06    Submitted By: Gary A Richardson    IMO/BGA Code: OPU67

Corporation Name:

Agent Name: Sherry Fardie

Agent Social Security No./Tax ID No. **Redacted** - ___ - ___    Agent Number (if available): ___

### CONTACT INFORMATION

| FOR MISSING DOCUMENTS OR PAGES | FOR L & C FOLLOWUP |
|---|---|
| Name: Vanessa Nally | Name: Vanessa Nally |
| Phone: 727-791-9080 | Phone: 727-791-9080 |
| Fax: 727-451-0567 | Fax: 727-451-0567 |
| E-Mail: vnally@lbeg.net | E-mail: vnally@lbeg.net |

### DOCUMENTS ATTACHED

- ☐ Address Forms
- ☐ Agency Agreement
- ☐ Annualization Forms
- ☑ Appointment Application
- ☑ Assignment of Commission
- ☐ Contract Change Form
- ☐ EFT Forms and Voided Check

- ☑ Errors and Omissions
- ☑ License Copies
- ☑ Life Sales Agreements
- ☐ Outstanding Requirement ___
- ☐ State Correspondence
- ☐ Requests for Termination
- ☐ ___

SPECIAL INSTRUCTIONS:
Agent will have multiple agents under her. Please contact me if you have any questions

### NEW BUSINESS APPLICATION WITH LICENSING AND CONTRACTING PAPERWORK

*If more than one new business application is being submitted, provide information for the one which has the oldest Application Signed date.*

Policy Number: ___    Policyholder Name: ___

State Application Signed In: ___    Application Signed Date: ___

AIG American General
Midwest Operations Center
P O Box 401
Milwaukee, WI 53201

AGLC101767

AGL / Bechtel 000459

04/07/2008 09:03    727-451-0567    Vanessa Naly    PAGE 4/63

477106 3:29PM
579847 000780

# AIG AMERICAN GENERAL

AIG Life Brokerage
A division of the American International Companies.®

## Appointment Application

**Part 12    Upline Data - To be completed by individual recruiting applicant.**

Applicant Name: **Sherry Fardie**
Please Print

Applicant Social Security Number: **Redacted**

Direct Upline Name: **Gary A Richardson**
Please Print

Agency Code Number: **OPU67**

## Part 13    AGL Commission Section - Must be completed.

Contract Level Requested    ☐ IMD/BGA    ☐ MGA    ☑ GA    ☐ Agent/Producer

Commission Level for American General Life

| Brokerage Life Products: | | |
|---|---|---|
| First Year Level: | S | *If First Year is selected, Renewal Level must also be indicated.* |
| Renewal Level | D | |
| (HO Approval) Productivity Bonus Level | O | |

Supplemental Life Products:    First Year/Renewal Level    J    *If selected, must select Brokerage Life Products Compensation Levels listed above.*

AGL Annuity Deferred & Immediate:    First Year/Renewal Level    D

A & H:    First Year Level    D    *If First Year is selected, Renewal Level must also be indicated.*

Renewal Level    D

## Part 14    Additional Forms Section

☐ Annualization:  Please attach annualization form when requesting annualization. (Available on a limited basis.)

☐ Electronic Funds Transfer (EFT)    Please attach EFT form and a copy of a voided check when requesting to receive commissions electronically.

Appointment, Bonus and Annualization require Home Office Approval.

AGLB1058    5    Rev0305

04/07/2008  727-451-0567                    Vanessa Nally                         PAGE 6/63

4/7/06 3:29PM
579847000776

# AIG  AMERICAN GENERAL

## Appointment Application

**AIG Life Brokerage**
A division of the American International Companies.®

## Part 1   Individual and Principal of Corporation.   This is Required Information.

Please Print Clearly

Social Security Number: **Redacted**

Name: Fardie _____ Sherry _____ _____
                     Last Name                    First Name          Middle Initial

Date of Birth: **Redacted**  _____ Sex: ☐ Male  ☐ Female
                  month    day    year

Resident/Home: 10-1-38 Estate Peterborg _____ VI  00802
                                            Physical Address          State    Zip
              St. Thomas _____
                  City                                          State    Zip

Resident/Home Phone Number: 340-774-6991 _____ E-Mail _____

Business Address: 6503 Red Hook Plaza  suite#201 PMB6 St. Thomas  VI  00802
                        Physical Address              City          State   Zip

Business Phone Number: _____ Fax Number _____

☐ I am an officer of the below corporation.

## Part 2   Corporate Applicants Required Information.

Please Print Clearly                          Individual Applicants Do Not Complete This Section

Tax ID Number _____

Corporate Name: _____

Corporate Address: _____
                    City                                    State      Zip

Corporate Phone Number: _____ State Incorporated: _____

Fax Number: _____ E-Mail: _____

Primary Officer for Corporate Records: _____

Background Information reported on page – should provide information for the Officer of the corporation.

## Part 3   Recruiter Section - IMO/BGA Only.  Complete ONLY when address used is NOT the above business address.

Primary mailing address, phone contact, e-mail and faxes will be communicated to the following:

☐ All Home Office Mail and other Communication will be directed to other than the above. Please direct to:

Agency Name: Life Brokerage Equity Group _____ Agency Code Number: 0PJ067

Business Address: 2963 Gulf -to- Bay Blvd #330 Commission Address: 2963 Gulf -to- Bay Blvd #330

Clearwater FL 33759 _____ Clearwater FL 33759
     City    State    ZIP                        City    State    ZIP

Fax Number: 727-451-0567 _____ Phone Number: 727-791-9080

E-Mail Address: vnally@lbeg.net _____ ☐ Please check when commission check is
                                              mailed directly to agent's business address.

AGLB1100R                                ‖                                        Rev0305

04/07/2006 09:22   727-451-0557   Vanessa Nally   PAGE 6/53
4/7/06 3:29PM
579847 000777

**AIG** **AMERICAN GENERAL**

**Appointment Application**

AIG Life Brokerage
A division of the American International Companies.®

### Part 4   Licensing and State Appointment Request

Attach copies of licenses for all requested state appointment. Provide appropriate fees for nonresident appointments.

Social Security Number: Redacted _ _ _ _ _ _ _ _

Applicant Name: Sherry Goldberg Fardie

Licensed for: ☑ Life   ☑ Health   Contracted as: ☐ Individual   ☐ Agency

Resident State: U S V I   Resident License Number: IA 60705

Nonresident Appointment State(s): _____
Attach applicable fees and licenses for states listed above.

*FLORIDA residents must specify the Florida county where their business office is located:*_____

*NON-RESIDENT FLORIDA agents soliciting in Florida must list the county(s) in Florida in which they intend to personally solicit*

### Part 5   Variable Licensing - Complete ONLY when variable appointment is requested.

Please complete the following ONLY when requesting variable appointment.

Who is your Broker/Dealer? _____

CRD Number: _____

Circle all current NASD licenses that you hold:   6   7   22   24   26   63   Other: _____

**Independent Wholesaler Election**

Some broker-dealers may permit third-party wholesaling firms to offer certain services and support to registered representatives in order to facilitate sales of American General Life Insurance Company (AGL) variable universal life products. These firms are referred to by AGL as Independent Wholesalers (IW). In order for you to sell AGL's variable universal life insurance products through an IW, an IW agreement must be in place with the BGA/MO and your broker-dealer must be informed, pursuant to NASD Rule 3030, of your IW election. Additionally, this IW Election Form must be submitted to AIG Life Brokerage, which documents your IW election. If you wish to obtain support through an IW, please indicate your election below.

☐ IW Election: _____
(Name of IW Firms and Code Number)

### Part 6   Errors and Omissions Insurance Coverage

Attach copy of E & O Certificate.

AGLH1058

2

Rev 02 06

04/07/2005 727-451-0567                        Vanessa Nidy                          PAGE 7/93

477/063:28PM
579847000778

# AIG AMERICAN GENERAL

**Appointment Application**

AIG Life Brokerage
A division of the American International Companies ®

**✖ Part 7  Background Information Required On All Applicants**

If this is a corporate application, the questions should be answered by and about the agency principal.

Social Security Number: Redacted ___ - __ ____

CONFIDENTIAL HISTORY/BACKGROUND INFORMATION
Please provide complete details for any "yes" answers in the Remarks section. Attach additional documentation as necessary.

1. Have you ever been convicted of or plead guilty or no contest to:
   a. Any Felony?                                                          ☐ Yes  ☑ No
   b. Any Misdemeanor?                                                     ☐ Yes  ☑ No
   c. A violation of federal or state securities or investment related regulations?  ☐ Yes  ☑ No

2. Are you currently under investigation by any legal or regulatory authority?   ☐ Yes  ☑ No

3. Do you now owe money to any life or health insurance company?          ☐ Yes  ☑ No

4. Have you or a firm in which you were a partner, officer or Director been declared bankrupt or been party to a bankruptcy or receivership proceeding, or have you had a salary garnished or had liens or judgements against you?   ☐ Yes  ☑ No

5. Has any insurance company or securities broker-dealer terminated your contract or permitted you to resign for reason other than lack of sales?   ☐ Yes  ☑ No

6. Have you ever been the subject of a consumer-initiated complaint or proceeding by any self-regulatory body or any securities commodities or insurance regulatory body or organization or employer?   ☐ Yes  ☑ No

7. Has a bonding company ever denied, paid out on or revoked a bond for you?   ☐ Yes  ☑ No

8. Have you ever had a claim filed against your professional liability or errors and omissions insurance coverage?   ☐ Yes  ☑ No

9. Has any insurance department, government agency or self-regulatory authority ever denied, suspended, revoked, censured or barred your license or registration or disciplined you with fines or by restricting your activities?   ☐ Yes  ☑ No

---

REMARKS SECTION: Details of "yes"

---

AGL81058                                  3                                    Rev0305

AGL / Bechtel 000463

04/07/2006 05:?? 727-451-0557                    Vanessa Nay                          PAGE 8/53

477/08 3:29PM
579847 000779

# AIG AMERICAN GENERAL

## Appointment Application

**AIG Life Brokerage**
A division of the American International Companies®

### Part 8    Signature of Individual -or- Principal of Corporation

Social Security Number: [Redacted] - ___ - ___

I have read and received, as of the date indicated below, the notice concerning investigative consumer reports as required by law. I understand that in signing this form, I hereby authorize the American General Life Companies that I have requested appointments with (hereinafter collectively referred to as the "American General Affiliates") to investigate my background, including my credit history and interviews with former employers and/or primary insurance company. I authorize the American General Affiliates and individuals named in the application to give the American General Affiliates any information regarding me that they have available. I agree that if any of my answers to the questions in Part 7 change, I will notify, in writing, American General Affiliates within 10 business days of the incident which would cause an answer to change. I understand that falsification of information or failure to update the answers on this application may result in termination of appointment(s) with all American General Affiliates. In addition, I hereby authorize the American General Affiliates to report information about earnings and debit balances to any credit bureau or similar organization.

I further authorize American General Affiliates to verify any previous employment and securities registration history through the CRD system. I hereby authorize American General Affiliates to share background, licensing and applicant data with their affiliates. I acknowledge that I have received and reviewed the "Compliance Manual" for the American General Life Companies, and/or "Operations Manual" and I agree to abide by those principles, as amended or supplemented from time to time, in representing any of the Companies that appoint me.

✗

Date: ___ / ___ / ___        Signature: _____
                                      Signature of Individual -or- Principal-of-Corporation

### Part 9    Signature of Recruiter

The undersigned [recommending representative or General Agent] by executing this applicant recommends the applicant to American General Affiliates as a suitable person to represent the companies. The recommending individual or General Agent also agrees to supervise and assume responsibility for the applicant, if appointed by American General Affiliates, in accordance with the terms of his/her Contract.

Signature: _____                    Date: ___ / ___ / ___
           Signature of Recruiter

Print Name: Gary Richardson                           Agent/Agency Code # OPU67
            Print Name of Recruiter                                   Required

### Part 10    Home Office Section

Signature: _____                    Date: ___ / ___ / ___
           (Additional signatures, if required, RVP)

Print Name: _____                   Regional Code Number: _____

Home Office Approval: _____         Date: ___ / ___ / ___
                      (if required)

Remove and leave Part 11 with applicant.

### Part 11    Fair Credit Reporting Act - Notice of Proposed Investigative Consumer Report

Pursuant to the Fair Credit Reporting Act, this notice is to inform you that as a component of our contracting and appointing process, each company with which you have requested an appointment may request an investigative consumer report which may include information related to your character, general reputation, personal characteristics, and mode of living. You have the right to request in writing, within a reasonable period of time after receipt of this notice, a complete disclosure of the scope of the investigation requested and a written summary of your rights under the Fair Credit Reporting Act. Send your request to: Licensing and Contracting Department, 750 W. Virginia St. Milwaukee, WI 53204. Disclosure information must be in writing and mailed to you, along with the written summary of your rights, within five (5) business days after receipt of your written request. Also each company with which you have requested an appointment may share the information contained in the investigative report and other information in your file with its affiliates, unless you send a written request to the above-described address directing that this information not be disclosed or shared with affiliates.

AGLB1958                                        4                                      Rev0206

AGL / Bechtel 000464

04/07/2006 09:02 FAX 727-451-0567          Vanessa Nally                    PAGE 10/63

477/063 3:30PM
579847000787

## AGENCY AGREEMENT

*Each life insurance company's products are separately underwritten and independently supported by the representative company. The below listed companies are members of the American International Group, Inc.*

**FOR**

Last Name Fardie          First Name Sherry          Middle Initial

If Representative is a Corporation, the full Corporate name must appear above, and an authorized officer must sign and indicate the officer's title.

Individual
Social Security Number ___ Redacted _____

Corporation
Tax Identification Number _____

Representative
Signature _____          Title _____
          Agent Signature

American General Life Companies

Contract Date    04042006
To be completed by Home Office          Home Office Authorized Signator

This Agency Agreement may not be used to contract banks, credit unions or thrifts to AIG Annuity Insurance Company and, if submitted for that purpose, will not be accepted. This Agency Agreement may not be used to replace an in force AIG Annuity Insurance Company Agency contract and, if submitted for that purpose, will not be accepted.

AIG Annuity Insurance Company, Amarillo, TX *
American General Life Insurance Company, Houston, TX
A division of the American International Companies.®

AGL91866-0904

**WE KNOW LIFE.™**

AIG  AMERICAN GENERAL
AIG Life Brokerage



04/07/2008 B??? ??? ??????? 727-451-0567                Vanessa Nally                          PAGE 11/63
177/06 3:30PM
5798470007.88

TABLE OF CONTENTS

**Paragraph**
Recitals
Definitions

| | |
|---|---|
| I. | Authorized Acts |
| II. | Limitation of Authority |
| III. | Advertising |
| IV. | Relationship |
| V. | Compensation |
| VI. | Vesting |
| VII. | General Provisions |
| VIII. | Termination |
| IX. | Amendment |
| X. | Personal Guarantee |
| XI. | Effective Date |
| XII. | Investigation Notice |
| XIII. | Federal Crime Control Act |
| XIV. | Confidentiality |

**Schedules**

A. Commission Schedule — Primary Company

B. Appointment Application

AGL / Bechtel 000466

4 77 08 3 : 30PM
579847 000789

## RECITALS

Representative ("REPRESENTATIVE") has executed an Appointment Application requesting appointments with one or more life insurance subsidiaries of American International Group, Inc.

The Appointment Application designates one of the life insurers as a Primary Appointing Company (the "Primary Company").

This Agreement together with the Appointment Application and Commission Schedules for each separate life insurer that appoints REPRESENTATIVE comprise the REPRESENTATIVE's contract with each of the insurers that appoints REPRESENTATIVE.

Execution of this Agreement by the Primary Company and the REPRESENTATIVE evidences their Agreement to transact business in accordance with the terms and conditions set forth in this Agreement.

If REPRESENTATIVE requested appointment with one or more affiliates of the Primary Company in the Appointment Application, or a subsequent amendment to that form, REPRESENTATIVE's execution of this Agreement evidences REPRESENTATIVE's Agreement to transact business with each affiliated insurer in accordance with the terms and conditions set forth in the Agreement. Each affiliated insurer that appoints REPRESENTATIVE and sends a company commission schedule to REPRESENTATIVE has agreed to transact business with REPRESENTATIVE according to the terms and conditions of this Agreement.

## DEFINITIONS

A. Primary Company – the Primary Company is designated in the Appointment Application as the Primary Company. The Primary Company's responsibilities include executing the REPRESENTATIVE Agreement, performing background checks and providing convention credits and other sales incentives, if any, to REPRESENTATIVE.

B. Affiliated Company – the Affiliated Company(ies) is any other life insurance subsidiary of American International Group, Inc. that is identified in the Appointment Application, appoints REPRESENTATIVE and provides a company commission schedule as evidence of the Agreement to transact business with REPRESENTATIVE according to the terms of this Agreement.

C. Insurer – the term Insurer as used in this Agreement refers to each of the life insurance companies that appoints REPRESENTATIVE, including the Primary Company.

D. Jurisdiction – Eligibility for, or receipt of, override compensation on another Representative's business.

E. Nonpublic Personal Information. "Nonpublic Personal Information" of customers or consumers ("NPI") includes, but is not limited to, names, addresses, account balances, account numbers, account activity, social security numbers, taxpayer identification numbers, and credit and health information. NPI in cludes information on each party's forms or in a database of any kind, information created from NPI, information collected by or on behalf of a party, and personally identifiable information derived from NPI. Reference to NPI of Company or REPRESENTATIVE shall include NPI collected by or on behalf of American International Group, Inc., its successors, subsidiaries, affiliates agents or contractors. There may be instances where each party will have the same NPI which may be subject to different privacy policies and procedures according to the notices provided to the customer or consumer by the respective parties to the Agreement.

F. Protected Health Information. The terms "Protected Health Information" and "PHI" shall have the meaning set forth in 45 C.F.R. Sec. 164.501 as may be amended. Other terms shall have the same meanings as set forth in the applicable definition of the Health Insurance Portability and Accessibility Act (HIPAA), as amended, Privacy Rule or other regulations.

## 1. AUTHORIZED ACTS

A. The REPRESENTATIVE is authorized to conduct Insurer's business for the Insurer's products covering such classes of risks as the Insurer may authorize and in those states where the product is approved and REPRESENTATIVE is licensed and appointed as required by state law. If REPRESENTATIVE is a corporation, then the principal(s) of such corporation must also be licensed individually, if required pursuant to appropriate state law.

B. The REPRESENTATIVE is authorized to collect and promptly remit to the Insurer the first premium on business produced by the REPRESENTATIVE in accordance with the Insurer's rules and regulations.

C. The REPRESENTATIVE will promptly deliver issued policies in accordance with Insurer's policies and pro-cedures.

D. All monies, settlements, or documents received by the REPRESENTATIVE for, or on behalf of, the Insurer shall be received by the REPRESENTATIVE in a fiduciary capacity and immediately paid over or delivered to the Insurer, except as may be otherwise directed in writing by the Insurer.

04/07/2008 09:07 06 3:30PM    727-451-0567                    Venessa Nady                                    PAGE 13/63
579847 000790

## II. LIMITATION OF AUTHORITY

The REPRESENTATIVE is without authority to perform any act or thing other than that expressly granted in this Agreement and expressly agrees not to perform any of the following acts:

1. Make, modify, alter or discharge any policy.
2. Extend the time payment of any premium.
3. Waive any forfeiture.
4. Guarantee dividends or interest rates.
5. Incur any debt or liability in the name of the Insurer.
6. Withhold, commingle or convert to the use of the REPRESENTATIVE or the benefit of others, any monies, securities, policies or receipts belonging to the Insurer, the applicant, or the insured, or fail to promptly submit to the Insurer any applications for policies.
7. Accept or deposit any check or draft for premiums made payable to other than the Insurer.
8. Unless in the best interest of the policyowner, directly or indirectly induce or attempt to induce any policyowners of Insurer to relinquish, surrender, replace or lapse their policies.

## III. ADVERTISING / USE OF LOGO

REPRESENTATIVE may, at REPRESENTATIVE's expense, advertise Insurer's products, provided the text of all advertising, including any form of sales/promotional material such as, but not limited to business cards, stationery or other indications of agency under this Agreement and including the use of the names "American International Group, Inc.," "AIG," "American General," their logos or the name of any Insurer is approved in writing by the company before use.

## IV. RELATIONSHIP

The relationship between the Insurer and the REPRESENTATIVE shall be that of principal and independent contractor, and nothing contained herein shall be construed as creating the relationship of employer and employee for any purpose, including tax purposes. REPRESENTATIVE agrees to be responsible for all taxes as a self-employed independent contractor. The REPRESENTATIVE shall be free to exercise independent judgment as to the time and manner in which the REPRESENTATIVE shall perform the services authorized under this Agreement. Any material supplied by the Insurer is for the purpose of supporting the activities of the REPRESENTATIVE.

## V. COMPENSATION

A. Subject to the provisions hereof and the rules of the Insurer, the full compensation of the REPRESENTATIVE shall be payable at the applicable rate set forth in the Schedule of Commission in effect at the date the first full premium is received by the Insurer, which Schedule of Commission and all amendments, supplements and replacements thereof and thereto are hereby made a part of this Agreement.

B. Commission is subject to change at any time by written notice by the Insurer to the REPRESENTATIVE, but no such change shall affect commissions on any policy issued prior to the effective date of such change.

C. If commission rates are not now shown in the Schedule of Commission, including conversions, replacements or, the exercise of re-entry provisions or, if special premium rate quotations are made, commission rates shall be such as may be fixed by the Insurer as of the time when issue is effective in accordance with rates and practices of the Insurer then in effect.

D. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall lapse because of nonpayment of premium and shall be replaced or reinstated, any commissions on the new or reinstated policy shall be payable only at the sole discretion of the Insurer.

E. To be entitled to commissions, if any, the REPRESENTATIVE's name or the name of another Representative under your jurisdiction must appear as soliciting agent on the application for insurance. Disputes respecting commissions shall be subject to decision and settlement by the Insurer and the Insurer's decision shall be final and binding upon the parties involved.

F. Whenever, in the judgment of the Insurer, it shall become advisable to recall any policy issued before delivery thereof is made, the REPRESENTATIVE shall promptly refund to the Insurer any commissions received on account of such policy. Whenever, after delivery, the Insurer shall effect or procure the surrender, rescission or cancellation of any policy and refund premiums paid thereon, the Insurer shall have the right to charge back commissions and demand that the REPRESENTATIVE repay such commissions to the Insurer. If the Insurer shall refund or waive the premium or premiums under the provisions of any disability waiver of premium rider, the REPRESENTATIVE shall lose all rights to commissions under the commission and persistency fees as applied to such refunded or waived premiums, and shall repay any amounts advanced. An Insurer may include in its Commission Schedule, which is incorporated as a part of this Agreement, guidelines describing more specifically the circumstances under which it will charge back commissions on certain products. In the absence of such guidelines, the Insurer's rights shall be as described in this Section V, Compensation.

G. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall be converted or replaced, any commissions on the new policy shall be subject to adjustment and payable only at the sole discretion of the Insurer.

AGL / Bechtel 000468

4/7/06:1:30PM
579847000791

H. Except where prohibited by any State, the REPRESENTATIVE is responsible for all license fees, including those of its Representatives. The Insurer's discretion shall govern with respect to whether the Insurer shall charge to the REPRESENTATIVE's commission or other compensation account the cost of obtaining and renewing the REPRESENTATIVE's and its Representatives' license or licenses and/or appointment fees. This practice is subject to change at the discretion of the Insurer.

I. Policy applications for any Insurer will be issued and commissions paid by the Insurer.

## VI. VESTING

A. As long as this Agreement remains in effect, all first year and renewal commissions shall be paid as they accrue; however, any such payments are subject to the schedule of commissions in effect at the date the first full premium is received by the Insurer, the provisions and rules of the Insurer regarding minimum first year and renewal commissions required to issue a check.

B. During any consecutive 12-month period following the termination of this Agreement, total renewal commissions are less than the minimum required by the Insurer, vesting automatically terminates and no additional commission payments will be due from the Insurer.

C. In the event this Agreement is terminated by the death of the REPRESENTATIVE, all first year and renewal commissions shall be paid as they accrue, subject only to the terms and conditions of paragraphs A and B immediately above. In the absence of a properly executed beneficiary designation on file with the Insurer, all such payments, if any, shall be made to the surviving spouse and at the death of the surviving spouse to the estate of said spouse. If the REPRESENTATIVE dies leaving no surviving spouse, such monies will be paid to the estate of the REPRESENTATIVE; provided however, that if the REPRESENTATIVE is a corporation or a partnership, all such payments will be paid to said corporation or partnership.

## VII. GENERAL PROVISIONS

A. The Insurer may make such changes and decisions as it deems advisable in the conduct of its business, including the discontinuance of any policy form or the withdrawal from any territory, and the Insurer shall incur no liability to the REPRESENTATIVE by reason of its doing so.

B. The Insurer shall have the right to test market any of its products on a select basis and at the discretion of the Insurer.

C. The REPRESENTATIVE shall indemnify and hold the Insurer harmless against or from any and all expense, costs, causes of action, and damages including without limitation, reasonable attorney fees, resulting from or growing out of any unauthorized or negligent act of commission or omission by the REPRESENTATIVE or its employees, directors, officers, or Representatives under its jurisdiction. This provision shall survive termination of this Agreement.

D. The Insurer shall have a prior right and offset to all commissions and fees payable hereunder toward any indebtedness and/or other obligations due from the REPRESENTATIVE or anyone under the jurisdiction of the REPRESENTATIVE to any Primary Company and/or Affiliated Company/ies with interest at the legal rate. This prior right and offset shall not be extinguished by the termination of this Agreement. Following the termination of any Representative under the jurisdiction of the REPRESENTATIVE, should the amount in any commission account of that Representative be insufficient to repay any amount due the Insurer, the debit will become the responsibility of the REPRESENTATIVE, in accordance with the Insurer's then current debit collection procedure.

E. Neither the Agreement, any duties or delegation under this Agreement, nor the commissions or fees accruing hereunder, nor any interest herein, nor any right or claim created hereby or arising by reason of the REPRESENTATIVE acting hereunder, shall be assignable, except upon the written consent of the Insurer.

F. Forbearance or failure of the Insurer to insist upon performance of this Agreement or to enforce its rights hereunder, shall not constitute a waiver of its rights or privileges hereunder or of its subsequent right to insist upon such performance.

G. This Agreement, including the Appointment Application and any Commission Schedule(s) incorporated as part of the Agreement, contains all promises, inducements and representations between the parties. This Agreement supersedes any and all previous Agreements between the parties herein pertaining to the solicitation of the Insurer's products and the payment of monies to the REPRESENTATIVE provided, however, that rights or obligations which have already accrued (and would survive termination) under any previous contract between the Insurer and the REPRESENTATIVE shall not be hereby impaired.

H. The Insurer reserves the right to decline or modify any application for insurance.

I. This Agreement shall not be effective until executed by the Primary Company; once this Agreement is effective with the Primary Company, it may become effective with Affiliated Company(ies) as described herein.

AGL / Bechtel 000469

04/07/2006 07:07 727-451-0567                    Vanessa Naby                              PAGE 15/63

J. Should the REPRESENTATIVE, at any time, violate any provision of Section II of this Agreement, entitled Limitation of Authority, or commit any fraud upon Insurer or its policyholders; have a license as agent or broker revoked for cause after notice and hearing by a state insurance department or otherwise act to prejudice materially the interests of Insurer, the REPRESENTATIVE shall, at the option of the Insurer, forfeit any and all rights to all commissions and monies that the REPRESENTATIVE might otherwise have under this Agreement, vested or not. It is expressly agreed that termination of this Agreement shall not terminate this provision.

K. The REPRESENTATIVE agrees to maintain complete and accurate records of the marketing and sale of the Insurer's products. The Insurer reserves the right to inspect such records and other documents in each REPRESENTATIVE's files that relate to the marketing, attempted sale or sale of the Insurer's products. If the Insurer chooses to inspect such records, it will endeavor to do so during normal business hours and after giving reasonable notice, unless, in the judgment of the Insurer, unusual circumstances require inspection at other times or inspection without prior notice. This provision shall survive termination of this Agreement for a period of two (2) years.

L. For as long as this Agreement is in force, the REPRESENTATIVE will maintain Errors and Omissions (E&O) coverage and will provide the Insurer annually proof of such E&O coverage in a manner acceptable to the Insurer.

M. If the REPRESENTATIVE is served with a regulatory inquiry or legal papers involving Insurer business, the REPRE-SENTATIVE shall immediately notify the Insurer by sending to that Insurer's Compliance Officer, a copy of the papers, served by overnight delivery, by the end of the business day next following the day of receipt by the REPRESENTATIVE.

N. The REPRESENTATIVE is responsible for assuring that any Representative under the Jurisdiction of the REPRESEN-TATIVE: (1) become fully informed as to the provisions and benefits of each product offered by the Insurer for which the Representative conducts Insurer business; (2) represent such products adequately and fairly to prospective purchasers; and (3) act in compliance with the Insurer's policies and procedures as set out in the Customer Service and Compliance Manual, Operations Manual, or otherwise communicated to the REPRESENTATIVE, including, without limitation, those regarding suitability of sales inquiries and compliance with the Insurer's principles and code of ethical market conduct.

O. When the Insurer assigns to the REPRESENTATIVE any agency not recruited by the REPRESENTATIVE, then the Insurer may reassign that agency to another upline of the Insurer's choice at any time and without the necessity of a release from the REPRESENTATIVE. If the Insurer wishes to remove any agency recruited by the REPRESENTATIVE from the Jurisdiction of the REPRESENTATIVE, the Insurer will negotiate a release; however, such release will not be unreasonably withheld by the REPRESENTATIVE.

P. REPRESENTATIVE is not entitled to participate in any REPRESENTATIVE benefit programs except those which are provided by the Primary Company. REPRESENTATIVE is not eligible to participate in, or to receive any benefits from, any programs provided by the Affiliate Company/ies.

Q. Disputes arising under this Agreement shall be subject to the laws of the state where the Insurer engaged in the dispute is located.

R. The area within which the REPRESENTATIVE shall have the right to represent the Insurer is not assigned exclusively to the REPRESENTATIVE.

S. The REPRESENTATIVE agrees to conform to all regulations of the Insurance Department and the insurance laws in the state(s) in which the REPRESENTATIVE is conducting Insurer's business.

T. REPRESENTATIVE understands and agrees that (i) the Primary Company may amend the Agreement or the Company's policies, rules and procedures, in order to comply with changes in laws or regulations, or, as the Company deems appropriate related to changes in laws or regulations, through communication of any such amendment to REPRESENTATIVE, and (ii) For purposes of any such amendment, communication may include, but not be limited to, posting of amendment information on the Primary Company's websites or other means of making such information known or available to the agent.

VIII. TERMINATION

A. This Agreement shall automatically terminate upon the death of REPRESENTATIVE if REPRESENTATIVE is an individual or upon dissolution of REPRESENTATIVE if REPRESENTATIVE is a corporation or a partnership.

B. This Agreement shall terminate upon the revocation or non-renewal of the REPRESENTATIVE's license.

C. This Agreement may be terminated with or without cause by any Insurer (subject to provisions D and E below) or the REPRESENTATIVE by sending written notice of such termination to the last known address of the other party,

AGL / Bechtel 000470

04/07/2008  00:03    727-451-0567              Vanessa Nuby                    PAGE 16/63

4/7/08 3:30PM
579847000793

D. Upon termination, the REPRESENTATIVE shall immediately pay in cash to the Insurer all sums that are due or become due hereunder and shall immediately deliver to the Insurer all materials connected with the business of the Insurer and belonging to the Insurer. Such materials include, but are not limited to, rate cards, letters, records, computer software, general supplies or any and all other indications of agency provided by the Insurer. It is expressly agreed that termination of this Agreement does not release the REPRESENTATIVE from continuing liability to the Insurer for immediate repayment of any and all unearned first year commissions or bonuses.

E. Termination of this Agreement by the Primary Company terminates all contracts with Affiliated Companies/ies without specific notice to the REPRESENTATIVE required by the Insurer. However, any Affiliated Company may terminate its agency relationship with the REPRESENTATIVE, which will not, of itself, terminate the Primary Company agency relationship. Upon termination, the Insurer may assign a servicing agency; however, such assignment will not of itself affect the vesting of existing business.

F. Termination of this Agreement automatically terminates any previous Agreement to represent the Insurer that terminated the Agreement.

## IX. AMENDMENT

This contract cannot be changed by any oral promise or statement and no written modification will bind the Insurer unless approved by the President of the Insurer making the modification.

## X. PERSONAL GUARANTEE

Each and every individual who signs this Agreement warrants that they have authority to bind the entity on whose behalf they are signing.

## XI. EFFECTIVE DATE

The agreed effective date will be the date that this Agreement to represent is signed and acknowledged by the Primary Company as hereinafter specified.

## XII. INVESTIGATION NOTICE

The undersigned hereby authorizes the Primary and Affiliated Company/ies to conduct an investigation concerning character, credit reputation and personal traits and releases those contacted and the Insurer from any liability with respect to the content of the information provided and any resulting action by the Insurer including the sharing of such information or the termination of this Agreement to represent.

## XIII. FEDERAL CRIME CONTROL ACT

A. Undersigned warrants it:

1. has not been convicted of any criminal felony involving dishonesty or breach of trust or

2. has obtained written authorization to engage in the business of insurance from the Insurance Department in the state where REPRESENTATIVE resides which REPRESENTATIVE agrees to produce upon Insurer request.

B. The REPRESENTATIVE agrees to update the representations in the Confidential History/Background Information Section of Part 4 of the Appointment Application by notifying the Primary Company in writing within thirty (30) days, if there should be a change in the response to any question in the Information Section of Part 4 of the Appointment Application.

## XVI. PRIVACY CONTROL & SECURITY

A. "Protected Health Information" and "Nonpublic Personal Information" shall be collectively called the "Information" in this Section, XVI, Privacy Control and Security.

B. All information which any party obtains as a result of this relationship shall not be collected, or used, disclosed, reused or redisclosed to any third party, except to carry out the purposes for which the information was disclosed. The REPRESENTATIVE shall maintain the confidentiality of information consistent with the Company's notices of privacy practices, policies and procedures, provided that such use or disclosure would not violate any applicable laws, rules or regulations if done by the Company.

C. The REPRESENTATIVE shall use commercially reasonable efforts and appropriate safeguards to maintain the integrity, confidentiality, and security of PHI and to prevent the unauthorized use or disclosure of PHI and to

AGL / Bechtel 000471

4/7/06 3:30PM
5798470007 94

comply with the security standards or the HIPAA security regulations. Upon Company request Agent will provide to the Company access to and documentation regarding any safeguards.

D.  Each party shall be permitted to disclose relevant aspects of the other parties' Information to its officers, agents, subcontractors and employees only to the extent that such disclosure is reasonably necessary for the performance of its duties and obligations under the Agreement provided that such party shall take all reasonable measures to ensure that the Information of another party is not disclosed or reproduced in contravention of the obligations of this Agreement by such party's officers, agents, subcontractors and employees. The obligations of this Agreement are personal to each party.

E.  The REPRESENTATIVE shall report promptly within seven (7) days to the Company's Privacy Officer in writing any use or disclosure of Information that is not permitted by the Agreement or any addendum, of which the REPRESENTATIVE becomes aware. REPRESENTATIVE's report shall identify: (i) the nature of the unauthorized use or disclosure, (ii) the Information used or disclosed, (iii) who made the unauthorized use or received the unauthorized disclosure, (iv) what REPRESENTATIVE has done or shall do to mitigate any deleterious effect of the unauthorized use or disclosure, (v) what corrective action REPRESENTATIVE has taken or shall take to prevent future similar unauthorized use or disclosure, and (vi) any other Information as reasonably requested by the Company's Privacy Officer.

F.  The REPRESENTATIVE shall require all of its employees, representatives, subcontractors or agents that receive or have access to Information to agree to adhere to the same restrictions and conditions on the use and/or disclosure of Information that apply herein, including the obligation to return or destroy the Information as provided for below.

G.  The obligations in this Agreement shall not restrict any disclosure by any party pursuant to any applicable state or federal laws, or by request or order of any court or government agency. The REPRESENTATIVE shall immediately notify Company upon receipt by the REPRESENTATIVE of any request from the Department of Health and Human Services for the REPRESENTATIVE's internal practices, books, and records relating to the use and disclosure of Information.

H.  Within ten (10) days of receiving a written request from Company, the REPRESENTATIVE shall provide to the Company such Information as is requested by the Company, if any, to permit the Company to respond to a request by an individual for access to, an amendment of, or an accounting of the disclosures of the individual's PHI in accordance with 45 C.F.R. Sects. 164.524, 164.526, and 164.528. If an individual contacts the REPRESENTATIVE directly about access to, amendment of, or an accounting of disclosures of his/her PHI, the REPRESENTATIVE will forward such request immediately to the Company and not provide such access, amendment, or disclosure. Notwithstanding anything herein to the contrary, REPRESENTATIVE shall make reasonable efforts to cooperate with the Company in responding to any such requests and enabling the Company to comply with federal laws and regulations regarding the timing of response to such requests.

I.  This Section XVI, Privacy Protection and Security, will survive the termination or expiration of this Agreement. Upon termination of the Agreement, the REPRESENTATIVE shall return or destroy (with the Company's written permission) all Information that REPRESENTATIVE maintains in any form pursuant to the Agreement, and retain no copies of such Information. However, if the Company determines that such return or destruction is not feasible, REPRESENTATIVE will continue to extend the protections of this Addendum to such PHI and limit further use of the Information to the purposes that make the return or destruction not feasible. The respective rights and obligations of each party pursuant to this subsection shall survive the termination of the Agreement.

AGL13 5654-0004

AGL / Bechtel 000472

**AIG®** **AMERICAN GENERAL** *Scan* *LCCONTMAINT* *3QT58*  —**Licensing and Contracting Change Form**

AIG Life Brokerage
A division of the American International Companies.®

## Part 1   Change Request

### Type of Change Request

☐ Compensation Change   ☐ Contract Level Change   ☐ Second Contract   ☑ Transfer   ☐ Other   ☐ USL

Comments: Agent moving to new IMO Kevin Bechtel / Life Brokerage Partners LLC

## Part 2  Individual and Principal of Corporation.   This is Required Information.

Please Print Clearly

Social Security Number: **Redacted** - ___ - ___   Agent Number: 3QT58

Name: Fardie —  Spaulding     Shera
Last Name            First Name            Middle Initial

Date of Birth **Redacted**     Sex: ☑ Male  ☐ Female
month   day   year

Resident/Home: 10-1-38 Estate Peterborg
Physical Address

St. Thomas     USVI 00802
City            State   Zip

Resident/Home Phone Number: ___   E-Mail ___

Business Address: 1 SE 3Rd Ave  10 th Floor Miami FL 33131
Physical Address   .            City            State   Zip

Business Phone Number: 3053774228     Fax Number: 3053293755

☐ I am an officer of the below corporation.

## Part 3   Corporate Applicants Required Information.

Please Print Clearly            Individual Applicants Do Not Complete This Section

Tax ID Number ___

Corporate Name: ___

Corporate Address: ___

___
City            State   Zip

Corporate Phone Number: ___   State Incorporated: ___

Fax Number: ___   E-Mail: ___

Primary Officer for Corporate Records: ___

Background information reported on page -- should provide information for the Officer of the corporation.

AGLC100204            1            Rev0304

*NONE*

AGL / Bechtel 000473

**AIG.** **AMERICAN GENERAL**

AIG Life Brokerage
A division of the American International Companies.®

## Part 4   Recruiter Section - IMO/BGA Only. *Complete ONLY when address used is NOT the above business address*

Social Security Number: Redacted __ - __ __ __ __

Primary mailing address, phone contact, e-mail and faxes will be communicated to the following:

☑ All Home Office Mail and other Communication will be directed to other than the above. Please direct to:

Agency Name: Life Brokerage Partners LLC        Agency Code Number: _____

Business Address: 3982 Tampa Rd.        Commission Address: 3982 Tampa Rd.

Oldsmar   FL   34677                Oldsmar   FL   34677
City        State        ZIP                City        State        ZIP

Fax Number: 727-712-1459        Phone Number: 727-791-9080

E-Mail Address: vnally@lifebrokeragepartners.com   ☐ Please check when commission check is mailed directly to agent's business address.

## Part 5   Licensing and State Appointment Request

Attach copies of licenses for all requested state appointments. Provide appropriate fees for nonresident appointments.

Applicant Name: **Sherry Fardie**

Licensed for: ☑ Life   ☐ Health   Contracted as: ☑ Individual   ☐ Agency

Resident State: FL        Resident License Number: _____

Nonresident Appointment State(s): _____
Attach applicable fees and licenses for states listed above.

*FLORIDA residents must specify the Florida county where their business office is located:* _____

*NON-RESIDENT FLORIDA agents soliciting in Florida must list the county(s) in Florida in which they intend to personally solicit:* _____

## Part 6   Variable Licensing - Complete ONLY when variable appointment is requested.

Please complete the following ONLY when requesting variable appointment.

Who is your Broker/Dealer? _____

CRD Number: _____

Circle all current NASD licenses that you hold:  6   7   22   24   26   63   Other: _____

### Independent Wholesaler Election

Some broker-dealers may permit third-party wholesaling firms to offer certain services and support to registered representatives in order to facilitate sales of American General Life Insurance Company (AGL) variable universal life products. These firms are referred to by AGL as Independent Wholesalers (IW). In order for you to sell AGL's variable universal life insurance products through an IW, an IW agreement must be in place with the BGA/IMO and your broker-dealer must be informed, pursuant to NASD Rule 3030, of your IW election. Additionally, this IW Election Form must be submitted to AIG Life Brokerage, which documents your IW election. If you wish to obtain support through an IW, please indicate your election below.

☐ IW Election: _____
(Name of IW Firms and Code Number)

AGLC100204        2        Rev0304

AGL / Bechtel 000474

**AIG** **AMERICAN GENERAL**

AIG Life Brokerage
A division of the American International Companies.®

## Part 7  AGL Commission Section – Must be completed.

Social Security Number   **Redacted**

Contract Level Requested    ☐ IMO/BGA   ☐ MGA   ☐ MGA 1   ☐ GA   ☑ GA 1   ☐ GA 2   ☐ Agent/Producer

Requested Commission Level for American General Life

Please note that any change to the compensation of the agents in your downline will directly affect your own commission payout. For example, if you raise the First Year compensation level for your agents' Life Brokerage products, your overwrites will correspondingly decrease. If you are unsure how a change will affect you and/or your agent, please contact the Commissions Department prior to submitting this form.

|  |  | Current Level (existing agents only) | Requested Level | PLEASE NOTE: |
|---|---|---|---|---|
| Life Products: | First Year | | | Commission level changes will affect policies with an application-signed date later than the effective date of the commission change. |
| | Renewal | | | |
| | Productivity Bonus | | | |
| | | ☐ Retro back to Jan. 1 of current year | ☐ Non Retro Policies on go-forward basis only | |
| Specialty Products: (Street Max = J) | First Year/Renewals | | | |
| Annuity Products: | First Year | | | |
| A & H: | First Year | | | |
| | Renewal Level | | | |
| Variable Products: | IW Overwrite | | | |
| | Renewal Level | | | |

Please indicate if you wish this change to apply to pending policies:  ☐ No   ☑ Yes.
If you answered yes, please attach a list of policies with this request.
**Annualization:** Available on a limited basis. Please attach the completed annualization form when requesting. Please note: Annualization changes will affect policies with an application-signed date later than the effective date of the annualization request.

## Part 8  USL Commission Section if applicable.

☐ United States Life – Please attach appropriate signed Commission Schedules

Contract Level Requested:   ☐ GA   ☐ GA1   ☐ GA2   ☐ Producer

GA1: Override _____%          GA2:   ERA _____%

ERA _____%

Mail Commission Statements to: ☐ GA   ☐ GA1   ☐ GA2   ☐ Producer

*PLEASE NOTE: Commission level changes will affect policies with an application-signed date later than the effective date of the commission change.*

## Part 9  Signature of Recruiter/IMO

The undersigned [recommending representative or General Agent by executing this applicant recommends the applicant to American General Affiliates as a suitable person to represent the companies. The recommending individual or General Agent also agrees to supervise and assume responsibility for the applicant, if appointed by American General Affiliates, in accordance with the terms of his/her Contract.

Signature: _Gary C. Richardson_                               Date: 3 / 1 / 07
Signature of Agency

Agency Name  **Gary A Richardson**                          Date: 3 / 1 / 07
Print Name of Agency

AGLC100204                                3                                Rev0306

05/25/2007   09:06   00005209   3524

AGL / Bechtel 000476

Apr.14. 2006 12:29PM   Life Brokerage Equity Group          No.7247  P. 1

# Fax Cover Sheet



Life Brokerage Equity Group
2963 Gulf-to Bay Blvd
Suite 330
Clearwater FL 33759



| Send to: American General | From: Vanessa Nally |
|---|---|
| Attention: Contracting | Date:   04/14/06 |
| Fax Number: 9-1-800-337-0961 | Fax Number: **727-451-0567**<br>Email Address: vnally@lbeg.net |
| Total pages, including cover: 21 | Phone Number: **727-791-9080** |

For Your Record

Enclosed is contracting for John Driscell.  Please contact me
with any questions you might have.

Thank You
Vanessa Nally
Licensing & Contracting

ODYSSEY '05
July 24 -26 2006
Renaissance Vinoy Resort
St. Petersburg Florida

Ask your Brokerage Director for details or visit us at www.odyssey.lbeg.net

AGL / Bechtel 000477

Apr.14. 2006 12:29PM    Life Brokerage Equity Group                    No.7247    P. 2

 **Equity Group**
*A Great Business Partner*

2963 Gulf to Bay Blvd Suite 330          Phone: 727-791-9080
Clearwater FL 33759                      Fax 727-712-1459

# Appointment Transmittal

April 14, 2006

American General
Contracting

Agent Name                                    Driscell, John
Agent Social Security Number                  **Redacted**
Agent Date of Birth
Appointment Number

The following Carrier Appointment Requirements have been requested:

American General
All Lines of Business
CT, MA, MN, TX

The following Carrier Appointment Requirements have been received·

| Requirement | Received Date |
|-------------|---------------|
| Carrier Contracting Forms | 04/14/2006 |
| Current License | 04/14/2006 |
| E&O | 04/14/2006 |
| L & C Transmittal Form | 04/14/2006 |

Vanessa Nally
LBEG
Direct Phone: 727-791-9083 / 888-577-5234
Direct Fax: 727-451-0567
EMail· vnally@lbeg.net

AGL / Bechtel 000478

Apr.14. 2006 12:29PM   Life Brokerage Equity Group                No.7247   P. 3

 **AMERICAN GENERAL**

**Licensing and Contracting Transmittal Form**

AIG Life Brokerage
A division of the American International Companies®

Date: 4-14-06     Submitted By: Gary A Richardson   IMO/BGA Code: OPU67

Corporation Name: _____

Agent Name: John Driscell

Agent Social Security No./Tax ID No.: **Redacted** _- ___ __ ___ Agent Number (if available): _____

## CONTACT INFORMATION

| FOR MISSING DOCUMENTS OR PAGES | FOR L & C FOLLOWUP |
|---|---|
| Name: Vanessa Nally | Name: Vanessa Nally |
| Phone: 727-791-9080 | Phone: 727-791-9080 |
| Fax: 727-451-0567 | Fax: 727-451-0567 |
| E-Mail: vnally@lbeg.net | E-Mail: vnally@lbeg.net |

## DOCUMENTS ATTACHED

☐ Address Forms                     ☑ Errors and Omissions
☑ Agency Agreement               ☑ License Copies
☐ Annualization Forms            ☐ Life Sales Agreements
☑ Appointment Application      ☐ Outstanding Requirement _____
☐ Assignment of Commission   ☐ State Correspondence
☐ Contract Change Form          ☐ Requests for Termination
☑ EFT Forms and Voided Check  ☐ _____ _____

SPECIAL INSTRUCTIONS:

## NEW BUSINESS APPLICATION WITH LICENSING AND CONTRACTING PAPERWORK

*If more than one new business application is being submitted, provide information for the one which has the oldest Application Signed date.*

Policy Number _____ _____ Policyholder Name: _____

State Application Signed In: _____ _____ Application Signed Date: _____

AIG American General
Midwest Operations Center
P O Box 401
Milwaukee. WI 53201

AGLC101767

AGL / Bechtel 000479

Apr.14. 2006 12:29PM   Life Brokerage Equity Group            No.7247   P. 4.
09/15/2006 10:17 FAX 9804050001        SCHULTZ DRISCOLL & CO..

## A.I.G. AMERICAN GENERAL

**Appointment Application**

AIG Life Brokerage
A division of the American International Companies.©

### Part 12   Upline Data - To be completed by individual recruiting applicant.

Applicant Name: JOHN R. DRISCOLL    Applicant Social Security Number: **Redacted**
Please Print

Direct Upline Name: Gary Richardson   Agency Code Number: OPU67
Please Print

### Part 13   AGL Commission Section - Must be completed.

Contract Level Requested   ☐ IMO/BGA   ☐ MGA   ☐ MGA 1   ☑ GA   ☐ GA 1   ☐ GA 2   ☐ Agent/Producer

Commission Level for American General Life

| | | | |
|---|---|---|---|
| Life Products: | First Year Level: | | *If First Year is selected, Renewal Level must also be indicated.* |
| | Renewal Level | | |
| (HO Approval) | Productivity Bonus Level | | |
| Specialty Products: (Street Max = J) | First Year/Renewal Level | | |
| AGL Annuity Deferred & Immediate: | First Year/Renewal Level | | *If First Year is selected, Renewal Level must also be indicated.* |
| A & H: | First Year Level | | |
| | Renewal Level | | |

### Part 14   Additional Forms Section

Annualization:  Please attach annualization form when requesting annualization  (Available on a limited basis.)

Electronic Funds Transfer (EFT)   Please attach EFT form and a copy of a voided check when requesting to receive commissions electronically.

Appointment, Bonus and Annualization require Home Office Approval.

AGLB1058                                    5                                    Rev0106

AGL / Bechtel 000480

Apr.14. 2006 12:29PM 80404 Life Brokerage Equity Group COLL & CO..          No.7247   P. 6

**AIG.** AMERICAN GENERAL                    **Appointment Application**

AIG Life Brokerage
A division of the American International Companies.©

### Part 1   Individual and Principal of Corporation.   This is Required Information.

Please Print Clearly

Social Security Number: **Redacted**

Name: Driscoll                          John                      B.
        Last Name                       First Name               Middle Initial

Date of Birth: **Redacted**      Sex: ☑ Male   ☐ Female
        month    day    year

Resident/Home: 76 Beverly Drive
                                              Physical Address

         Avon                                  CT                06001
         City                                  State             Zip

Resident/Home Phone Number 860 - 673 - 7657   E-Mail JDriscoll@Schuster-Driscoll.com

Business Address 270 Farmington Avenue   Farmington Ct   06032
                 Physical Address          City         State      Zip

Business Phone Number 860- 409- 7520   Fax Number 860-409-7522

☐ I am an officer of the below corporation.

### Part 2   Corporate Applicants Required Information.

Please Print Clearly                        Individual Applicants Do Not Complete This Section

Tax ID Number _____

Corporate Name: _____

Corporate Address: _____

                City                                 State            Zip

Corporate Phone Number: _____   State Incorporated: _____

Fax Number: _____              E-Mail: _____

Primary Officer for Corporate Records: _____

Background Information reported on page — should provide information for the Officer of the corporation.

### Part 3   Recruiter Section – IMO/BGA Only.   *Complete ONLY when address used is NOT the above business address*

Primary mailing address, phone contact, e-mail and faxes will be communicated to the following

☐ All Home Office Mail and other Communication will be directed to other than the above. Please direct to:

Agency Name: Life Brokerage Equity Group   Agency Code Number: _____

Business Address: 2963 Gulf -to- Bay Blvd #330 Commission Address: Resldnt/Hdo m:odCrpdC/a dAii

         Clearwater FL 33759                    Clearwater FL 33759
         City    State    ZIP                   City    State    ZIP

Fax Number: 727-451-0567               Phone Number: 727-791-9080

E-Mail Address: vnally@lbeg.net        ☐ Please check when commission check is
                                          mailed directly to agent's business address.

AGLB1058                              1                                Rev.0406

AGL / Bechtel 000481

Apr.14. 2006 12:29PM   Life Brokerage Equity Group              No.7247   P. 6
04/15/2006 10:15 FAX 9804050001        SCHULLMA BATCOLL & CO..

**AIG** **AMERICAN GENERAL**                    **Appointment Application**

AIG Life Brokerage
A division of the American International Companies.®

### Part 4   Licensing and State Appointment Request

Attach copies of licenses for all requested state appointments. Provide appropriate fees for nonresident appointments.

Social Security Number: [Redacted]

Applicant Name: JOHN R. DRISGLL

Licensed for ☑ Life  ☑ Health     Contracted as: ☑ Individual  ☐ Agency

Resident State: CX     Resident License Number:

Nonresident Appointment State(s): TEXAS, MN, NY MA
Attach applicable fees and licenses for states listed above.

FLORIDA residents must specify the Florida county where their business office is located:

NON-RESIDENT FLORIDA agents soliciting in Florida must list the county(s) in Florida in which they intend to personally solicit:

### Part 5   Variable Licensing – Complete ONLY when variable appointment is requested.

Please complete the following ONLY when requesting variable appointment.

Who is your Broker/Dealer? MML INVESORS INC.

CRD Number:

Circle all current NASD licenses that you hold: ⑥  7   22   24   26   ㉓   Other

**Independent Wholesaler Election**

Some broker-dealers may permit third-party wholesaling firms to offer certain services and support to registered representatives in order to facilitate sales of American General Life Insurance Company (AGL) variable universal life products. These firms are referred to by AGL as Independent Wholesalers (IW). In order for you to sell AGL's variable universal life insurance products through an IW, an IW agreement must be in place with the BGA/IMO and your broker-dealer must be informed, pursuant to NASD Rule 3030, of your IW election. Additionally, this IW Election Form must be submitted to AIG Life Brokerage, which documents your IW election. If you wish to obtain support through an IW, please indicate your election below.

☐ IW Election:
(Name of IW Firm and Code Number)

### Part 6   Errors and Omissions Insurance Coverage

IMO candidates, attach copy of E & O Certificate. All others please complete the following:

A. Name of Carrier  UTICA MUNA

B. Policy Number:

C. Name of Insured:  JOHN R. DRISGLL

D. Coverage Amounts (include both per act and aggregate amounts):

Per Act:

Aggregate:

E. Expiration Date (month/date/year):

AGLD1053                                  2                                    Rem406

Apr.14. 2006 12:29PM   Life Brokerage Equity Group   No.7247   P. 7
04/13/2006 16:16 FAX 8804090001   SCHOFIELD-DRISCOLL & CO..

**AIG** AMERICAN GENERAL                    **Appointment Application**

AIG Life Brokerage
A division of the American International Companies.®

**Part 7   Background Information Required On All Applicants**

If this is a corporate application, the questions should be answered by and about the agency principal

Social Security Number: [Redacted]

CONFIDENTIAL HISTORY/BACKGROUND INFORMATION
Please provide complete details for any "yes" answers in the Remarks section. Attach additional documentation as necessary.

| | | Yes | No |
|---|---|---|---|
| 1. | Have you ever been convicted of or plead guilty or no contest to: | | |
| | a. Any Felony? | ☐ Yes | ☑ No |
| | b. Any Misdemeanor? | ☐ Yes | ☑ No |
| | c. A violation of federal or state securities or investment related regulations? | ☐ Yes | ☑ No |
| 2. | Are you currently under investigation by any legal or regulatory authority? | ☐ Yes | ☑ No |
| 3. | Do you now owe money to any life or health insurance company? | ☐ Yes | ☑ No |
| 4. | Have you or a firm in which you were a partner, officer or director been declared bankrupt or been party to a bankruptcy or receivership proceeding, or have you had a salary garnished or had liens or judgements against you? | ☐ Yes | ☑ No |
| 5. | Has any insurance company or securities broker-dealer terminated your contract or permitted you to resign for reason other than lack of sales? | ☐ Yes | ☑ No |
| 6. | Have you ever been the subject of a consumer-initiated complaint or proceeding by any self-regu- | ☐ Yes | ☑ No |
| 7. | Has a bonding company ever denied, paid out on or revoked a bond for you? | ☐ Yes | ☑ No |
| 8. | Have you ever had a claim filed against your professional liability or errors and omissions insurance coverage? | ☐ Yes | ☑ No |
| 9. | Has any insurance department, government agency or self-regulatory authority ever denied, suspended, revoked, censured or barred your license or registration or disciplined you with fines or by restricting your activities? | ☐ Yes | ☑ No |

REMARKS SECTION: Details of "yes"

AGL8103S                                   3                                 8an0406

AGL / Bechtel 000483

Apr.14. 2006 12:30PM   Life Brokerage Equity Group     No.7247   P. 8

**AIG** AMERICAN GENERAL                    **Appointment Application**

AIG Life Brokerage
A division of the American International Companies®

---

## Part 8   Signature of Individual -or- Principal of Corporation

Social Security Number:   **Redacted**

I have read and received, as of the date indicated below, the notice concerning investigative consumer reports, as required by law. I understand that in signing this form, I hereby authorize the American General Life Companies that I have requested appointments with (hereinafter collectively referred to as the "American General Affiliates") to investigate my background, including my credit history and interviews with former employers and/or primary insurance company. I authorize the American General Affiliates and individuals named in the application to give the American General Affiliates any information regarding me that they have available. I agree that if any of my answers to the questions in Part 7 change, I will notify, in writing, American General Affiliates within 10 business days of the incident which would cause an answer to change. I understand that falsification of information or failure to update the answers on this application may result in termination of appointment(s) with all American General Affiliates. In addition, I hereby authorize the American General Affiliates to report information about earnings and debit balances to any credit bureau or similar organization.

I further authorize American General Affiliates, to verify my previous employment and securities registration history through the CRD system.

I hereby authorize American General Affiliates to share background, licensing and applicant data with their affiliates. I acknowledge that I have received and reviewed the "Compliance Manual" for the American General Life Companies, and/or "Operations Manual" and I agree to abide by those principles, as amended or supplemented from time to time, in representing any of the Companies that appoint me.

Date: 4 , 13, 06          Signature: _____
                                      Signature of Individual -or- Principal of Corporation

---

## Part 9   Signature of Recruiter

The undersigned [recommending representative or General Agent] by executing this applicant recommends the applicant to American General Affiliates as a suitable person to represent the companies. The recommending individual or General Agent also agrees to supervise and assume responsibility for the applicant, if appointed by American General Affiliates, in accordance with the terms of his/her Contract.

Signature: _____          Date: ___ / ___ / ___
           Signature of Recruiter

Print Name: Gary Richardson          Agent/Agency Code # CPD60
            Print Name of Recruiter                       Required

---

## Part 10 : Home Office Section

Signature: _____          Date: ___ / ___ / ___
           (Additional signatures, if required, RVP)

Print Name: _____          Regional Code Number _____

Home Office Approval: _____   Date: ___ / ___ / ___
                      (if required)

- - - - - - - - - - - - - - - - - - - - - - - Remove and leave Part 11 with applicant. - - - - - - - - - - - - -

---

## Part 11   Fair Credit Reporting Act - Notice of Proposed Investigative Consumer Report

Pursuant to the Fair Credit Reporting Act, this notice is to inform you that as a component of our contracting and appointing process, each company with which you have requested an appointment may request an investigative consumer report which may include information related to your character, general reputation, personal characteristics, and mode of living. You have the right to request in writing, within a reasonable period of time after receipt of this notice, a complete disclosure of the scope of the investigation requested and a written summary of your rights under the Fair Credit Reporting Act. Send your request to: licensing and Contracting Department, 750 W. Virginia St. Milwaukee, WI 53204. Disclosure information must be in writing and mailed to you, along with the written summary of your rights, within five (5) business days after receipt of your written request. Also each company with which you have requested an appointment may share the information contained in the investigative report and other information in your file with its affiliates, unless you send a written request to the above-described address directing that this information not be disclosed or shared with affiliates.

AGL91038                                    4                                    Nov0406

AGL / Bechtel 000484

Apr.14. 2006 12:30PM     Life Brokerage Equity Group     No.7247   P. 9
04/13/2006 10:10 FAX 000400          ZOLL & CO..

# AGENCY AGREEMENT

*Each life insurance company's products are separately underwritten and independently supported by the representative company. The below listed companies are members of the American International Group, Inc.*

Last Name ___DRISON___     FOR   First Name ___JOHN___     Middle Initial ___E___

If Representative is a Corporation, the full Corporate name must appear above, and an authorized officer must sign and indicate the officer's title.

Individual
Social Security Number    **Redacted**

Corporation
Tax Identification Number _____

Representative
Signature _____     Title ___4/13/06___

American General Life Companies

04272006

Contract Date
To be completed by Home Office        Home Office Authorized Signator

American General Life Insurance Company, Houston, TX.
A division of the American International Companies.®

aaLB1056-1105

**WE KNOW LIFE.®**

**AIG** AMERICAN GENERAL
AIG Life Brokerage

AGL / Bechtel 000485