**TABLE OF CONTENTS**

**Paragraph**
Recitals
Definitions

I.      Authorized Acts
II.     Limitation of Authority
III.    Advertising
IV.     Relationship
V.      Compensation
VI.     Vesting
VII.    General Provisions
VIII.   Termination
IX.     Amendment
X.      Personal Guarantee
XI.     Effective Date
XII.    Investigation Notice
XIII.   Federal Crime Control Act
XIV.    Confidentiality

**Schedules**

A. Commission Schedule – Primary Company

B. Appointment Application

AGL / Bechtel 000486

## RECITALS

Representative ("REPRESENTATIVE") has executed an Appointment Application requesting appointments with one or more life insurance subsidiaries of American International Group, Inc.

The Appointment Application designates one of the life insurers as a Primary Appointing Company (the "Primary Company").

This Agreement together with the Appointment Application and Commission Schedules for each separate life insurer that appoints REPRESENTATIVE comprise the REPRESENTATIVE'S contract with each of the insurers that appoints REPRESENTATIVE.

Execution of this Agreement by the Primary Company and the REPRESENTATIVE evidences their Agreement to transact business in accordance with the terms and conditions set forth in this Agreement.

If REPRESENTATIVE requested appointment with one or more affiliates of the Primary Company in the Appointment Application, or a subsequent amendment to that form, REPRESENTATIVE'S execution of this Agreement evidences REPRESENTATIVE'S Agreement to transact business with each affiliated insurer in accordance with the terms and conditions set forth in this Agreement. Each affiliated insurer that appoints REPRESENTATIVE and sends a company commission schedule to REPRESENTATIVE has agreed to transact business with REPRESENTATIVE according to the terms and conditions of this Agreement.

## DEFINITIONS

A. Primary Company – the Primary Company is designated in the Appointment Application as the Primary Company. The Primary Company's responsibilities include executing the REPRESENTATIVE Agreement, performing background checks and providing convention credits and other sales incentives, if any, to REPRESENTATIVE.

B. Affiliated Company – the Affiliated Company(ies) is any other life insurance subsidiary of American International Group, Inc. that is identified in the Appointment Application, appoints REPRESENTATIVE and provides a company commission schedule as evidence of its Agreement to transact business with REPRESENTATIVE according to the terms of this Agreement.

C. Insurer – the term Insurer as used in this Agreement refers to each of the life insurance companies that appoints REPRESENTATIVE, including the Primary Company.

D. Jurisdiction – Eligibility for, or receipt of, override compensation on another Representative's business.

E. Nonpublic Personal Information: "Nonpublic Personal Information" of customers or consumers ("NPI") includes, but is not limited to, names, addresses, account balances, account numbers, account activity, social security numbers, taxpayer identification numbers, and sensitive financial and health information. NPI includes information on each party's forms or in a database of any kind, information created by each party, information collected by or on behalf of a party, and personally identifiable information derived from NPI. Reference to NPI of Company or REPRESENTATIVE shall include NPI collected by or on behalf of American International Group, Inc., its successors, subsidiaries, affiliates agents or contractors. There may be instances where each party will have the same NPI which may be subject to different privacy policies and procedures according to the notices provided to the customer or consumer by the respective parties to the Agreement.

F. Protected Health Information: The terms "Protected Health Information" and "PHI" shall have the meaning set forth in 45 C.F.R. Sec. 164.501 as may be amended. Other terms shall have the same meanings as set forth in the applicable definition of the Health Insurance Portability and Accessability Act (HIPAA), as amended, Privacy Rule or other regulations.

## I. AUTHORIZED ACTS

A. The REPRESENTATIVE is authorized to conduct Insurer's business for the Insurer's products covering such classes of risks as the Insurer may authorize and in those states where the product is approved and REPRESENTATIVE is licensed and appointed as required by state law. If REPRESENTATIVE is a corporation, then the principal(s) of such corporation must also be licensed individually, if required pursuant to appropriate state law.

B. The REPRESENTATIVE is authorized to collect and promptly remit to the Insurer the first premium on business produced by the REPRESENTATIVE in accordance with the Insurer's rules and regulations.

C. The REPRESENTATIVE will promptly deliver issued policies in accordance with Insurer's policies and procedures.

D. All monies, settlements, or documents received by the REPRESENTATIVE for, or on behalf of, the Insurer shall be received by the REPRESENTATIVE in a fiduciary capacity and immediately paid over or delivered to the Insurer except as may be otherwise directed in writing by the Insurer.

AGL / Bechtel 000487

## II. LIMITATION OF AUTHORITY

The REPRESENTATIVE is without authority to perform any act or thing other than that expressly granted in this Agreement and expressly agrees not to perform any of the following acts:

1. Make, modify, alter or discharge any policy.
2. Extend the time payment of any premium.
3. Waive any forfeiture.
4. Guarantee dividends or interest rates.
5. Incur any debt or liability in the name of the Insurer.
6. Withhold, commingle or convert to the use of the REPRESENTATIVE or the benefit of others, any monies, securities, policies or receipts belonging to the Insurer, the applicant, or the insured, or fail to promptly submit to the Insurer any applications for policies.
7. Accept or deposit any check or draft for premiums made payable to other than the Insurer.
8. Unless in the best interest of the policyowner, directly or indirectly induce or attempt to induce any policyowners of Insurer to relinquish, surrender, replace or lapse their policies.

## III. ADVERTISING / USE OF LOGO

REPRESENTATIVE may, at REPRESENTATIVE's expense, advertise Insurer's products, provided the text of all advertising, including any form of sales/promotional material such as, but not limited to business cards, stationery or other indications of agency under this Agreement and including the use of the names "American International Group, Inc.," "AIG," "American General." their logos or the name of any Insurer is approved in writing by the company before use.

## IV. RELATIONSHIP

The relationship between the Insurer and the REPRESENTATIVE shall be that of principal and independent contractor, and nothing contained herein shall be construed as creating the relationship of employer and employee for any purpose, including tax purposes. REPRESENTATIVE agrees to be responsible for all taxes as a self-employed independent contractor. The REPRESENTATIVE shall be free to exercise independent judgment as to the time and manner in which the REPRESENTATIVE shall perform the services authorized under this Agreement. Any material supplied by the Insurer is for the purpose of supporting the activities of the REPRESENTATIVE

## V. COMPENSATION

A. Subject to the provisions hereof and the rules of the Insurer, the full compensation of the REPRESENTATIVE shall be payable at the applicable rate set forth in the Schedule of Commission in effect at the date the first full premium is received by the Insurer, which Schedule of Commission and all amendments, supplements and replacements thereof and thereto are hereby made a part of this Agreement.

B. Commission is subject to change at any time by written notice by the Insurer to the REPRESENTATIVE but no such change shall affect commissions on any policy issued prior to the effective date of such change.

C. If commission rates are not now shown in the Schedule of Commission, including conversions, replacements or the exercise of re-entry provisions or, if special premium rate quotations are made, commission rates shall be such as may be fixed by the Insurer as of the time when issue is effective in accordance with rates and practices of the Insurer then in effect.

D. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall lapse because of nonpayment of premium and shall be replaced or reinstated, any commissions on the new or reinstated policy shall be payable only at the sole discretion of the Insurer.

E. To be entitled to commissions, if any, the REPRESENTATIVE's name or the name of another Representative under your jurisdiction must appear as soliciting agent on the application for insurance. Disputes respecting commissions shall be subject to decision and settlement by the Insurer and the Insurer's decision shall be final and binding upon the parties involved.

F. Whenever, in the judgment of the Insurer, it shall become advisable to recall any policy issued before delivery thereof is made, the REPRESENTATIVE shall promptly return in the Insurer any commissions received on cancellation of any policy and refund premiums paid thereon, the Insurer shall have the right to charge back commissions and demand that the REPRESENTATIVE repay such commissions to the Insurer. If the Insurer shall refund or waive the premium or premiums under the provisions of any disability waiver of premium rider, the REPRESENTATIVE shall lose all rights to commission and persistency fees as applied to such refunded or waived premiums, and shall repay any amounts advanced. An Insurer may include in its Commission Schedule, which is incorporated as a part of this Agreement, guidelines describing more specifically the circumstances under which it will charge back commissions on certain products. In the absence of such guidelines, the Insurer's rights shall be as described in this Section V. Compensation.

G. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall become converted or replaced, any commissions on the new policy shall be subject to adjustment and payable only at the sole discretion of the Insurer

AGL / Bechtel 000488

H. Except where prohibited by any State, the REPRESENTATIVE is responsible for all license fees, including those of its Representatives. The Insurer's discretion shall govern with respect to whether the Insurer shall charge to the REPRESENTATIVE's commission or other compensation account the cost of obtaining and renewing the REPRESENTATIVE's and its Representatives' license or licenses and/or appointment fees. This practice is subject to change at the discretion of the Insurer.

I. Policy applications for any Insurer will be issued and commissions paid by the Insurer.

## VI. VESTING

A. As long as this Agreement remains in effect, all first year and renewal commissions shall be paid as they accrue; however, any such payments are subject to the schedule of commissions in effect at the date the first full premium is received by the Insurer, the provisions and rules of the Insurer regarding minimum first year and renewal commissions required to issue a check.

B. During any consecutive 12-month period following the termination of this Agreement, total renewal commissions are less than the minimum required by the Insurer, vesting automatically terminates and no additional commission payments will be due from the Insurer.

C. In the event this Agreement is terminated by the death of the REPRESENTATIVE, all first year and renewal commissions shall be paid as they accrue, subject only to the terms and conditions of paragraphs A and B immediately above. In the absence of a properly executed beneficiary designation on file with the Insurer, all such payments, if any, shall be made to the surviving spouse and at the death of the surviving spouse to the estate of said spouse. If the REPRESENTATIVE dies leaving no surviving spouse, such monies will be paid to the estate of the REPRESENTATIVE; provided however, that if the REPRESENTATIVE is a corporation or a partnership, all such payments will be paid to said corporation or partnership.

## VII. GENERAL PROVISIONS

A. The Insurer may make such changes and decisions as it deems advisable in the conduct of its business, including the discontinuance of any policy form or the withdrawal from any territory, and the Insurer shall incur no liability to the REPRESENTATIVE by reason of its doing so.

B. The Insurer shall have the right to test market any of its products on a select basis and at the discretion of the Insurer.

C. The REPRESENTATIVE shall indemnify and hold the Insurer harmless against or from any and all expense, costs, causes of action, and damages including without limitation, reasonable attorney fees, resulting from or growing out of any unauthorized or negligent act of commission or omission by the REPRESENTATIVE or its employees, directors, officers, or Representatives under its jurisdiction. This provision shall survive termination of this Agreement.

D. The Insurer shall have a prior right and offset to all commissions and fees payable hereunder toward any indebtedness and/or other obligations due from the REPRESENTATIVE or anyone under the jurisdiction of the REPRESENTATIVE to any Primary Company and/or Affiliated Company/ies with interest at the legal rate. This prior right and offset shall not be extinguished by the termination of this Agreement. Following the termination of any Representative under the jurisdiction of the REPRESENTATIVE, should the amount in any commission account of that Representative be insufficient to repay any amount due the Insurer, the deficit will become the responsibility of the REPRESENTATIVE, in accordance with the Insurer's then current debit collection procedure.

E. Neither the Agreement, any duties or delegation under this Agreement, nor the commissions or fees accruing hereunder, nor any interest herein, nor any right or claim created hereby or arising by reason of the REPRESENTATIVE acting hereunder, shall be assignable, except upon the written consent of the Insurer.

F. Forbearance or failure of the Insurer to insist upon performance of this Agreement or to enforce its rights hereunder, shall not constitute a waiver of its rights or privileges hereunder or of its subsequent right to insist upon such performance.

G. This Agreement, including the Appointment Application and any Commission Schedule(s) incorporated as part of this Agreement, contains all promises, inducements and representations between the parties. This Agreement supersedes any and all previous Agreements between the parties herein pertaining to the solicitation of the Insurer's products and the payment of monies to the REPRESENTATIVE provided, however, that rights or obligations which have already accrued (and would survive termination) under any previous contract between the Insurer and the REPRESENTATIVE shall not be hereby impaired.

H. The Insurer reserves the right to decline or modify any application for insurance.

I. This Agreement shall not be effective until executed by the Primary Company. Once this Agreement is effective with the Primary Company, it may become effective with Affiliated Company(ies) as described herein.

AGL / Bechtel 000489

J.  Should the REPRESENTATIVE, at any time, violate any provision of Section II of this Agreement, entitled Limitation of Authority, or commit any fraud upon Insurer or its policyholders; have a license as agent or broker revoked for cause after notice and hearing by a state insurance department or otherwise act to prejudice materially the interests of Insurer, the REPRESENTATIVE shall, at the option of the Insurer, forfeit any and all rights to all commissions and monies that the REPRESENTATIVE might otherwise have under this Agreement, vested or not. It is expressly agreed that termination of this Agreement shall not terminate this provision.

K.  The REPRESENTATIVE agrees to maintain complete and accurate records of the marketing and sale of the Insurer's products. The Insurer reserves the right to inspect such records and other documents in each REPRESENTATIVE's files that relate to the marketing, attempted sale or sale of the Insurer's products. If the Insurer chooses to inspect such records, it will endeavor to do so during normal business hours and after giving reasonable notice, unless, in the judgment of the Insurer, unusual circumstances require inspection at other times or inspection without prior notice. This provision shall survive termination of this Agreement for a period of two (2) years.

L.  For as long as this Agreement is in force, the REPRESENTATIVE will maintain Errors and Omissions (E&O) coverage and will provide the Insurer annually proof of such E&O coverage in a manner acceptable to the Insurer.

M.  If the REPRESENTATIVE is served with a regulatory inquiry or legal papers involving Insurer business, the REPRE-SENTATIVE shall immediately notify the Insurer by sending to that Insurer's Compliance Officer, a copy of the papers, served by overnight delivery, by the end of the business day next following the day of receipt by the REPRESENTATIVE.

N.  The REPRESENTATIVE is responsible for assuring that any Representative under the Jurisdiction of the REPRESEN-TATIVE: (1) become fully informed as to the provisions and benefits of each product offered by the Insurer for which the Representative conducts Insurer business; (2) represent such products adequately and fairly to prospective purchasers; and (3) act in compliance with the Insurer's policies and procedures as set out in the Customer Service and  Compliance Manual, Operations Manual, or otherwise communicated to the REPRESENTATIVE, including, without limitation, those regarding suitability of sales inquiries and compliance with the Insurer's principles and code of ethical market conduct.

O.  When the Insurer assigns to the REPRESENTATIVE any agency not recruited by the REPRESENTATIVE, then the Insurer may reassign that agency to another upline of the Insurer's choice at any time and without the necessity of a release from the REPRESENTATIVE. If the Insurer wishes to remove any agency recruited by the REPRESENTATIVE from the Jurisdiction of the REPRESENTATIVE, the Insurer will negotiate a release; however, such release will not be unreasonably withheld by the REPRESENTATIVE.

P.  REPRESENTATIVE is not entitled to participate in any REPRESENTATIVE benefit programs except those which are provided by the Primary Company. REPRESENTATIVE is not eligible to participate in, or to receive any benefits from, any programs provided by the Affiliate Company/ies.

Q.  Disputes arising under this Agreement shall be  subject to the laws of the state where the Insurer  engaged in the dispute is located.

R.  The area within which the REPRESENTATIVE shall have the right to represent the Insurer is not assigned exclusively to the REPRESENTATIVE.

S.  REPRESENTATIVE agrees to conform to all regulations of the Insurance Department and the insurance laws in the state(s) in which the REPRESENTATIVE is conducting Insurer's business.

T.  REPRESENTATIVE understands and agrees that (i) the Primary Company may amend the Agreement or the Company's policies, rules and procedures, in order to comply with changes in laws or regulations, or, as the Company deems appropriate related to changes in laws or regulations, through communication of any such amendment to REPRESENTATIVE, and (ii) For purposes of any such amendment, communication may include, but not be limited to, posting of amendment information on the Primary Company's websites or other means of making such information known or available to the agent.

## VIII. TERMINATION

A.  This Agreement shall automatically terminate upon the death of REPRESENTATIVE if REPRESENTATIVE is an individual or upon dissolution of REPRESENTATIVE if REPRESENTATIVE is a corporation or a partnership.

B  This Agreement shall terminate upon the revocation or non-renewal of the REPRESENTATIVE's license.

C.  This Agreement may be terminated with or without cause by any Insurer (subject to provisions D and E below) or the REPRESENTATIVE by sending written notice of such termination to the last known address of the other party.

AGL / Bechtel 000490

D.  Upon termination, the REPRESENTATIVE shall immediately pay in cash to the Insurer all sums that are due or become due hereunder and shall immediately deliver to the Insurer all materials connected with the business of the Insurer and belonging to the Insurer. Such materials include, but are not limited to, rate cards, letters, records, computer software, general supplies or any and all other indications of agency provided by the Insurer. It is expressly agreed that termination of this Agreement does not release the REPRESENTATIVE from continuing liability to the Insurer for immediate repayment of any and all unearned first year commissions or bonuses;

E.  Termination of this Agreement by the Primary Company terminates all contracts with Affiliated Company/ies without specific notice to the REPRESENTATIVE required by the Insurer. However any Affiliated Company may terminate its agency relationship with the REPRESENTATIVE, which will not, of itself, terminate the Primary Company agency relationship. Upon termination, the Insurer may assign a servicing agency; however, such assignment will not of itself affect the vesting of existing business;

F.  Termination of this Agreement automatically terminates any previous Agreement to represent the Insurer that terminated the Agreement.

## IX. AMENDMENT

This contract cannot be changed by any oral promise or statement and no written modification will bind the Insurer unless approved by the President of the Insurer making the modification.

## X. PERSONAL GUARANTEE

Each and every individual who signs this Agreement warrants that they have authority to bind the entity on whose behalf they are signing.

## XI. EFFECTIVE DATE

The agreed effective date will be the date that this Agreement to represent is signed and acknowledged by the Primary Company as hereinafter specified.

## XII. INVESTIGATION NOTICE

The undersigned hereby authorizes the Primary and Affiliated Company/ies to conduct an investigation concerning character, credit reputation and personal traits and releases those contacted and the Insurer from any liability with respect to the content, of the information provided and any resulting action by the Insurer including the sharing of such information or the termination of this Agreement to represent.

## XIII. FEDERAL CRIME CONTROL ACT

A. Undersigned warrants it:

1  has not been convicted of any criminal felony involving dishonesty or breach of trust or

2.  has obtained written authorization to engage in the business of insurance from the Insurance Department in the state where REPRESENTATIVE resides which REPRESENTATIVE agrees to produce upon Insurer request.

B. The REPRESENTATIVE agrees to update the representations in the Confidential History/Background Information Section of Part 4 of the Appointment Application by notifying the Primary Company in writing within thirty (30) days, if there should be a change in the response to any question in the Information Section of Part 4 of the Appointment Application.

## XVI. PRIVACY CONTROL & SECURITY

A.  "Protected Health Information" and "Nonpublic Personal Information" shall be collectively called the "Information" in this Section, XVI, Privacy Control and Security.

B.  All Information which any party obtains as a result of this relationship shall not be collected, or used, disclosed, reused or redisclosed to any third party, except to carry out the purposes for which the information was disclosed. The REPRESENTATIVE shall maintain the confidentiality of Information consistent with the Company's notices of privacy practices, policies and procedures, provided that such use or disclosure would not violate any applicable laws, rules or regulations if done by the Company.

C.  The REPRESENTATIVE shall use commercially reasonable efforts and appropriate safeguards to maintain the integrity, confidentiality, and security of PHI and to prevent the unauthorized use or disclosure of PHI and to

AGL / Bechtel 000491

comply with the security standards or the HIPAA security regulations.  Upon Company request Agent will provide to the Company access to and documentation regarding any safeguards.

D.  Each party shall be permitted to disclose relevant aspects of the other parties' Information to its officers, agents, subcontractors and employees only to the extent that such disclosure is reasonably necessary for the performance of its duties and obligations under the Agreement; provided that such party shall take all reasonable measures to ensure that the Information of another party is not disclosed or reproduced in contravention of each of the obligations of this Agreement by such party's officers, agents, subcontractors and employees.  The obligations of this Agreement are personal to each party.

E.  The REPRESENTATIVE shall report promptly within seven (7) days to the Company's Privacy Officer in writing any use or disclosure of Information that is not permitted by the Agreement or any addendum, of which the REPRESENTATIVE'S report shall identify:  (i) the nature of the unauthorized use or disclosure, (ii) the Information used or disclosed, (iii) who made the unauthorized use or received the unauthorized disclosure, (iv) what REPRESENTATIVE has done or shall do to mitigate any deleterious effect of the unauthorized use or disclosure, (v) what corrective action REPRESENTATIVE has taken or shall take to prevent future similar unauthorized uses or disclosure, and (vi) any other Information as reasonably requested by the Company's Privacy Officer.

F.  The REPRESENTATIVE shall require all of its employees, representatives, subcontractors or agents that receive or have access to Information to agree to adhere to the same restrictions and conditions on the use and/or disclosure of Information that apply herein, including the obligation to return or destroy the Information as provided for below.

G.  The obligations in this Agreement shall not restrict any disclosure by any party pursuant to any applicable state or federal laws, or by request or order of any court or government agency.  The REPRESENTATIVE shall immediately notify Company upon receipt by the REPRESENTATIVE of any request from the Department of Health and Human Services for the REPRESENTATIVE's internal practices, books, and records relating to the use and disclosure of Information.

H.  Within ten (10) days of receiving a written request from Company, the REPRESENTATIVE shall provide to the Company such information as is requested by the Company, if any, to permit the Company to respond to a request by an individual for access to, an amendment of, or an accounting of the disclosures of the individual's PHI in accordance with 45 C.F.R. Secs. 164.524, 164.526, and 164.528.  If an individual contacts the REPRESENTATIVE directly about access to, amendment of, or an accounting of disclosures of his/her PHI, the REPRESENTATIVE will forward such request immediately to the Company and not provide such access, amendment, or disclosure.  Notwithstanding anything herein to the contrary, REPRESENTATIVE shall make reasonable efforts to cooperate with the Company in responding to any such requests and enabling the Company to comply with federal laws and regulations regarding the timing of response to such requests.

I.  This Section XVI, Privacy Protection and Security, will survive the termination or expiration of this Agreement. Upon termination of the Agreement, the REPRESENTATIVE shall return or destroy (with the Company's written permission) all Information that REPRESENTATIVE maintains in any form pursuant to the Agreement, and retain no copies of such Information.  However, if the Company determines that such return or destruction is not feasible, REPRESENTATIVE will continue to extend the protections of this Addendum to such PHI and limit further use of the Information to the purposes that make the return or destruction not feasible.  The respective rights and obligations of each party pursuant to this subsection shall survive the termination of the Agreement.

AGLB1056-1105

**AIG** **AMERICAN GENERAL**

Scan
LCCONTMAINT
3RG40

**Licensing and Contracting Change Form**

AIG Life Brokerage
A division of the American International Companies.®

## Part 1   Change Request

### Type of Change Request

☐ Compensation Change   ☐ Contract Level Change   ☐ Second Contract   ☑ Transfer   ☐ Other   ☐ USL

Comments: Agent moving to new IMO Kevin Bechtel / Life Brokerage Partners LLC

## Part 2   Individual and Principal of Corporation.   This is Required Information.

Please Print Clearly

Social Security Number: **Redacted**     Agent Number: **3RG40**

Name: Driscoll _____ Jack _____
Last Name _____ First Name _____ Middle Initial

Date of Birth **Redacted**
month      day      year      Sex: ☑ Male   ☐ Female

Resident/Home: _____
Physical Address

_____
City                          State        Zip

Resident/Home Phone Number: _____   E-Mail _____

Business Address: 76 Beverly Dr. Avon CT  06001
Physical Address              City          State        Zip

Business Phone Number: 8604097520   Fax Number 8604097522

☐ I am an officer of the below corporation.

## Part 3   Corporate Applicants Required Information.

Please Print Clearly                    Individual Applicants Do Not Complete This Section

Tax ID Number _____

Corporate Name: _____

Corporate Address: _____

_____
City                          State        Zip

Corporate Phone Number: _____   State Incorporated: _____

Fax Number: _____   E-Mail: _____

Primary Officer for Corporate Records: _____

Background information reported on page -- should provide information for the Officer of the corporation.

AGLC100201                          1                          Rev0306

NONG

**AIG** **AMERICAN GENERAL**

AIG Life Brokerage
A division of the American International Companies.®

## Part 4   Recruiter Section - IMO/BGA Only. *Complete ONLY when address used is NOT the above business address*

Social Security Number: ~~Redacted~~

Primary mailing address, phone contact, e-mail and faxes will be communicated to the following:

☑ All Home Office Mail and other Communication will be directed to other than the above. Please direct to:

Agency Name: Life Brokerage Partners LLC                    Agency Code Number: _____

Business Address: 3982 Tampa Rd.            Commission Address: 3982 Tampa Rd.

Oldsmar   FL  34677                              Oldsmar   FL  34677
City      State    ZIP                           City       State    ZIP

Fax Number: 727-712-1459                   Phone Number: 727-791-9080

E-Mail Address: vnally@lifebrokeragepartners.com      ☐ Please check when commission check is
                                                       mailed directly to agent's business address.

## Part 5   Licensing and State Appointment Request

Attach copies of licenses for all requested state appointments. Provide appropriate fees for nonresident appointments.

Applicant Name: **Jack Driscoll**

Licensed for: ☑ Life  ☐ Health    Contracted as: ☑ Individual  ☐ Agency

Resident State: CT          Resident License Number: _____

Nonresident Appointment State(s): MA< MN< TX _____
                 Attach applicable fees and licenses for states listed above.

*FLORIDA residents must specify the Florida county where their business office is located:* _____

*NON-RESIDENT FLORIDA agents soliciting in Florida must list the county(s) in Florida in which they intend to personally solicit:*

_____

_____

## Part 6   Variable Licensing - Complete ONLY when variable appointment is requested.

Please complete the following ONLY when requesting variable appointment.

Who is your Broker/Dealer? _____

CRD Number: _____

Circle all current NASD licenses that you hold:  6   7   22   24   26   63   Other: _____

### Independent Wholesaler Election

Some broker-dealers may permit third-party wholesaling firms to offer certain services and support to registered representatives in order to facilitate sales of American General Life Insurance Company (AGL) variable universal life products. These firms are referred to by AGL as Independent Wholesalers (IW). In order for you to sell AGL's variable universal life insurance products through an IW, an IW agreement must be in place with the BGA/IMO and your broker-dealer must be informed, pursuant to NASD Rule 3030, of your IW election. Additionally, this IW Election Form must be submitted to AIG Life Brokerage, which documents your IW election. If you wish to obtain support through an IW, please indicate your election below.

☐ IW Election: _____
                     (Name of IW Firms and Code Number)

AGLC100204                                    2                                    Rev0206

AGL / Bechtel 000494

# AIG® AMERICAN GENERAL

**AIG Life Brokerage**
A division of the American International Companies.®

## Part 7  AGL Commission Section – Must be completed.

Social Security Number  **Redacted**  ___ - ___ - ___

Contract Level Requested  ☐ IMO/BGA   ☐ MGA   ☐ MGA 1   ☐ GA   ☑ GA 1   ☐ GA 2   ☐ Agent/Producer

### Requested Commission Level for American General Life

Please note that any change to the compensation of the agents in your downline will directly affect your own commission payout. For example, if you raise the First Year compensation level for your agents' Life Brokerage products, your overwrites will correspondingly decrease. If you are unsure how a change will affect you and/or your agent, please contact the Commissions Department prior to submitting this form.

| | | Current Level (existing agents only) | Requested Level | |
|---|---|---|---|---|
| Life Products: | First Year | _____ | _____ | *PLEASE NOTE: Commission level changes will affect policies with an application-signed date later than the effective date of the commission change.* |
| | Renewal | _____ | _____ | |
| | Productivity Bonus | _____ | _____ | |
| | | ☐ Retro *back to Jan. 1 of current year* | ☐ Non Retro *Policies on go forward basis only* | |
| Specialty Products: *(Street Max = 1)* | First Year/Renewals | _____ | _____ | |
| Annuity Products: | First Year | _____ | _____ | |
| A & H: | First Year | _____ | _____ | |
| | Renewal Level | _____ | _____ | |
| Variable Products: | FW Overwrite | _____ | _____ | |
| | Renewal Level | _____ | _____ | |

Please indicate if you wish this change to apply to pending policies: ☐ No   ☑ Yes.
If you answered yes, please attach a list of policies with this request.
**Annualization:** Available on a limited basis. Please attach the completed annualization form when requesting. Please note: Annualization changes will affect policies with an application-signed date later than the effective date of the annualization request.

## Part 8  USL Commission Section if applicable.

☐ United States Life – Please attach appropriate signed Commission Schedules

Contract Level Requested:   ☐ GA   ☐ GA1   ☐ GA2   ☐ Producer

GA1: Override _____ %        GA2:   ERA _____ %

ERA _____ %

Mail Commission Statements to: ☐ GA   ☐ GA1   ☐ GA2   ☐ Producer

*PLEASE NOTE: Commission level changes will affect policies with an application-signed date later than the effective date of the commission change.*

## Part 9  Signature of Recruiter/IMO

The undersigned [recommending representative or General Agent] by executing this applicant recommends the applicant to American General Affiliates as a suitable person to represent the companies. The recommending individual or General Agent also agrees to supervise and assume responsibility for the applicant, if appointed by American General Affiliates, in accordance with the terms of his/her Contract.

Signature: _____     Date: 3 / 1 / 07
        Signature of Agency

Agency Name  Gary A Richardson _____     Date: 3 / 1 / 07
        Print Name of Agency

AGLC100204                                  3                              Rev.0306

AGL / Bechtel 000495

# Fax Cover Sheet



Life Brokerage Equity Group

2963 Gulf-to Bay Blvd
Suite 330
Clearwater FL 33759



| Send to:  American General | From: Vanessa Nally |
|---|---|
| Attention: Contracting | Date:   05/9/06 |
| Fax Number: 9-1-800-337-0961 | Fax Number: **727-451-0567** <br> Email Address: vnally@lbeg.net |
| Total pages, including cover: 18 | Phone Number: **727-791-9080** |

For Your Record

Enclosed is contracting for William Constantine.  Please let me know if
you have any questions.

Thank You
Vanessa Nally
Licensing & Contracting

ODYSSEY '05
July 24 -26 2006
Renaissance Vinoy Resort
St. Petersburg Florida

Ask your Brokerage Director for details or visit us at www.odyssey.lbeg.net

AGL / Bechtel 000496

05/09/2006   15:17   7277120329                    LBEG                              PAGE  02/18

 **Equity Group**
*A Great Business Partner*

2963 Gulf to Bay Blvd Suite 330        Phone: 727-791-9080
Clearwater, FL. 33759                  Fax: 727-712-1459

# Appointment Transmittal

May 9, 2006

American General
Contracting

Agent Name                             Constantine, William H
Agent Social Security Number
Agent Date of Birth                    **Redacted**
Appointment Number

The following Carrier Appointment Requirements have been requested:

American General
All Lines of Business
FL

The following Carrier Appointment Requirements have been received:

| Requirement | Received Date |
| --- | --- |
| Carrier Contracting Forms | 05/09/2006 |
| Current License | 05/09/2006 |
| E&O | 05/09/2006 |
| L & C Transmittal Form | 05/09/2006 |
| Agency Agreement | 05/09/2006 |

Vanessa Nally
LBEG
Direct Phone: 727-791-9083 / 888-577-5234
Direct Fax: 727-451-0567
EMail: vnally@lbeg.net

 **AMERICAN GENERAL**                    Licensing and Contracting
                                                        Transmittal Form

AIG Life Brokerage
A division of the American International Companies.®

Date: 5-9-06          Submitted By: Gary A Richardson  IMO/BGA Code: OPU67

Corporation Name:

Agent Name : William Constantine

Agent Social Security No./Tax ID No.: **Redacted**  -___-____   Agent Number (if available):_____

## CONTACT INFORMATION

| FOR MISSING DOCUMENTS OR PAGES | FOR L & C FOLLOWUP |
|---|---|
| Name: Vanessa Nally | Name: Vanessa Nally |
| Phone: 727-791-9080 | Phone: 727-791-9080 |
| Fax: 727-451-0567 | Fax: 727-451-0567 |
| E-Mail: vnally@lbeg.net | E-mail: vnally@lbeg.net |

## DOCUMENTS ATTACHED

☐ Address Forms                    ☑ Errors and Omissions
☑ Agency Agreement                 ☑ License Copies
☐ Annualization Forms              ☐ Life Sales Agreements
☑ Appointment Application          ☐ Outstanding Requirement _____
☐ Assignment of Commission         ☐ State Correspondence
☐ Contract Change Form             ☐ Requests for Termination
☐ EFT Forms and Voided Check       ☐ _____

SPECIAL INSTRUCTIONS:

## NEW BUSINESS APPLICATION WITH LICENSING AND CONTRACTING PAPERWORK

*If more than one new business application is being submitted, provide information for the one which has the oldest Application Signed date.*

Policy Number: _____   Policyholder Name: _____

State Application Signed In: _____   Application Signed Date: _____

AIG American General
Midwest Operations Center
P O Box 401
Milwaukee, WI 53201

AGLC101767

AGL / Bechtel 000498

05/09/2006  15:17  7277120329                    LBEG                    PAGE  04/18

 **AMERICAN GENERAL**                    **Appointment Application**

AIG Life Brokerage
A division of the American International Companies.®

## Part 12   Upline Data  -  To be completed by individual recruiting applicant.

Applicant Name: William Constantine IV  Applicant Social Security Number: **Redacted**
Please Print

Direct Upline Name: Gary Richardson   Agency Code Number: OPU167
Please Print

## Part 13   AGL Commission Section - Must be completed.

Contract Level Requested  ☐ IMO/BGA  ☐ MGA  ☐ MGA 1  ☐ GA  ☑ GA 1  ☐ GA 2  ☐ Agent/Producer

Commission Level for American General Life

| Life Products: | First Year Level: | S | *If First Year is selected, Renewal Level must also be indicated.* |
| | Renewal Level | D | |
| (HO Approval) | Productivity Bonus Level | O | |

| Specialty Products: (Street Max = J) | First Year/Renewal Level | J | |

| AGL Annuity Deferred & Immediate: | First Year/Renewal Level | D | *If First Year is selected, Renewal Level must also be indicated.* |
| A & H: | First Year Level | D | |
| | Renewal Level | D | |

## Part 14   Additional Forms Section

Annualization:  Please attach annualization form when requesting annualization. (Available on a limited basis.)

Electronic Funds Transfer (EFT)    Please attach EFT form and a copy of a voided check when requesting to receive commissions electronically.

Appointment, Bonus and Annualization require Home Office Approval.

AGLB10SX                            5                            Rev0406

AGL / Bechtel 000499

 **AMERICAN GENERAL**                    **Appointment Application**

AIG Life Brokerage
A division of the American International Companies.®

## Part 1   Individual and Principal of Corporation.   This is Required Information.

Please Print Clearly

Social Security Number: **Redacted**

Name: Constantine �     William     H.
      Last Name            First Name      Middle Initial

Date of Birth: **Redacted**     Sex: ☒ Male   ☐ Female
      month    day    year

Resident/Home: 775 Village West
                          Physical Address

Palm Harbor                              FL     34683
      City                               State   Zip

Resident/Home Phone Number: 727-781-8203    E-Mail Constantine_Will@yahoo

Business Address: 775 Village Way   Palm Harbor    FL    34683
      Physical Address              City            State  Zip

Business Phone Number: 727-642-6382    Fax Number 727-450-2190

☐ I am an officer of the below corporation.

## Part 2   Corporate Applicants Required Information.

Please Print Clearly                      Individual Applicants Do Not Complete This Section

Tax ID Number _____

Corporate Name: _____

Corporate Address: _____

      City                               State   Zip

Corporate Phone Number: _____   State Incorporated: _____

Fax Number: _____               E-Mail: _____

Primary Officer for Corporate Records: _____

Background information reported on page – should provide information for the Officer of the corporation.

## Part 3   Recruiter Section - IMO/BGA Only. *Complete ONLY when address used is NOT the above business address.*

Primary mailing address, phone contact, e-mail and faxes will be communicated to the following:

☒ All Home Office Mail and other Communication will be directed to other than the above. Please direct to:

Agency Name: Life Brokerage Equity Group    Agency Code Number: OPU67

Business Address: 2963 Gulf to Bay Blvd #530   Commission Address: 2963 Gulf to Bay Blvd #530

Clearwater  FL  33759              Clearwater  FL  33759
City        State  ZIP             City        State  ZIP

Fax Number: 727-712-1459           Phone Number: 727-791-9080

E-Mail Address: Vnalk@lbeg.net     ☐ Please check when commission check is
                                     mailed directly to agent's business address.

AGLAI036                                        Rev04/06

 **AMERICAN GENERAL**                    **Appointment Application**

AIG Life Brokerage
A division of the American International Companies.®

## Part 4   Licensing and State Appointment Request

Attach copies of licenses for all requested state appointments. Provide appropriate fees for nonresident appointments.

Social Security Number: **Redacted**

Applicant Name: William H. Constantine II

Licensed for: ☒ Life  ☒ Health     Contracted as: ☐ Individual  ☐ Agency

Resident State: FL     Resident License Number: P036L357

Nonresident Appointment State(s): _____
Attach applicable fees and licenses for states listed above.

FLORIDA residents must specify the Florida county where their business office is located: _____

NON-RESIDENT FLORIDA agents soliciting in Florida must list the county(s) in Florida in which they intend to personally solicit:

## Part 5   Variable Licensing – Complete ONLY when variable appointment is requested.

Please complete the following ONLY when requesting variable appointment.

Who is your Broker/Dealer? _____

CRD Number: _____

Circle all current NASD licenses that you hold:  6  7  22  24  26  63  Other: _____

### Independent Wholesaler Election

Some broker-dealers may permit third-party wholesaling firms to offer certain services and support to registered representatives in order to facilitate sales of American General Life Insurance Company (AGL) variable universal life products. These firms are referred to by AGL as Independent Wholesalers (IW). In order for you to sell AGL's variable universal life insurance products through an IW, an IW agreement must be in place with the BGA/IMO and your broker-dealer must be informed, pursuant to NASD Rule 3030, of your IW election. Additionally, this IW Election Form must be submitted to AIG Life Brokerage, which documents your IW election. If you wish to obtain support through an IW, please indicate your election below.

☐ IW Election: _____
(Name of IW Firms and Code Number)

## Part 6   Errors and Omissions Insurance Coverage

IMO candidates, attach copy of E & O Certificate. All others, please complete the following:

A. Name of Carrier: CALSURANCE

B. Policy Number: LIF10009040L6

C. Name of Insured: William H. Constantine II

D. Coverage Amounts (include both per act and aggregate amounts):

Per Act: _____

Aggregate: _____

E. Expiration Date (month/date/year): 2·1·07

AGL.00058                            2                            Rev04/06

AGL / Bechtel 000501

 **AMERICAN GENERAL**                    **Appointment Application**

AIG Life Brokerage
A division of the American International Companies.®

## Part 7   Background Information Required On All Applicants

If this is a corporate application, the questions should be answered by and about the agency principal.

Social Security Number: **Redacted**

### CONFIDENTIAL HISTORY/BACKGROUND INFORMATION

Please provide complete details for any "yes" answers in the Remarks section. Attach additional documentation as necessary.

1. Have you ever been convicted of or plead guilty or no contest to:
   a. Any Felony? ☐ Yes ☒ No
   b. Any Misdemeanor? ☐ Yes ☒ No
   c. A violation of federal or state securities or investment related regulations? ☐ Yes ☒ No

2. Are you currently under Investigation by any legal or regulatory authority? ☐ Yes ☒ No

3. Do you now owe money to any life or health insurance company? ☐ Yes ☒ No

4. Have you or a firm in which you were a partner, officer or Director been declared bankrupt or been party to a bankruptcy or receivership proceeding, or have you had a salary garnished or had liens or judgements against you? ☐ Yes ☒ No

5. Has any insurance company or securities broker-dealer terminated your contract or permitted you to resign for reason other than lack of sales? ☐ Yes ☒ No

6. Have you ever been the subject of a consumer-initiated complaint or proceeding by any self-regulatory body or any securities commodities or insurance regulatory body or organization or employer? ☐ Yes ☒ No

7. Has a bonding company ever denied, paid out on or revoked a bond for you? ☐ Yes ☒ No

8. Have you ever had a claim filed against your professional liability or errors and omissions insurance coverage? ☐ Yes ☒ No

9. Has any insurance department, government agency or self-regulatory authority ever denied, suspended, revoked, censured or barred your license or registration or disciplined you with fines or by restricting your activities? ☐ Yes ☒ No

REMARKS SECTION: Details of "yes"

AGLB1068                                    3                                    Rev0406

 **AMERICAN GENERAL**                                **Appointment Application**

AIG Life Brokerage
A division of the American International Companies ®

## Part 8   Signature of Individual -or- Principal of Corporation

Social Security Number: **Redacted**

I have read and received, as of the date indicated below, the notice concerning investigative consumer reports, as required by law. I understand that in signing this form, I hereby authorize the American General Life Companies that I have requested appointments with (hereinafter collectively referred to as the "American General Affiliates") to investigate my background, including my credit history and interviews with former employers and/or primary insurance company. I authorize the American General Affiliates and individuals named in the application to give the American General Affiliates any information regarding me that they have available. I agree that if any of my answers to the questions in Part 7 change, I will notify, in writing, American General Affiliates within 10 business days of the incident which would cause an answer to change. I understand that falsification of information or failure to update the answers on this application may result in termination of appointment(s) with all American General Affiliates. In addition, I hereby authorize the American General Affiliates to report information about earnings and debit balances to any credit bureau or similar organization.

I further authorize American General Affiliates, to verify my previous employment and securities registration history through the CRD system. I hereby authorize American General Affiliates to share background, licensing and applicant data with their affiliates. I acknowledge that I have received and reviewed the "Compliance Manual" for the American General Life Companies, and/or "Operations Manual" and I agree to abide by those principles, as amended or supplemented from time to time, in representing any of the Companies that appoint me.

Date: 4 , 6 , 06                          Signature: _____
                                          Signature of Individual -or- Principal of Corporation

## Part 9   Signature of Recruiter

The undersigned (recommending representative or General Agent) by executing this applicant recommends the applicant to American General Affiliates as a suitable person to represent the companies. The recommending individual or General Agent also agrees to supervise and assume responsibility for the applicant, if appointed by American General Affiliates, in accordance with the terms of his/her Contract.

Signature: _____                Date: 4 , 7 , 06
          Signature of Recruiter

Print Name: Gary Richardson                        Agent/Agency Code # OPU67
          Print Name of Recruiter                                      Required

## Part 10   Home Office Section

Signature: _____                Date: ___ / ___ / ___
          (Additional signatures, if required, RVP)

Print Name: _____               Regional Code Number _____

Home Office Approval: _____      Date: ___ / ___ / ___
                      (If required)

------------------------------------------------------------------------
Remove and leave Part 11 with applicant.

## Part 11   Fair Credit Reporting Act - Notice of Proposed Investigative Consumer Report

Pursuant to the Fair Credit Reporting Act, this notice is to inform you that as a component of our contracting and appointing process, each company with which you have requested an appointment may request an investigative consumer report which may include information related to your character, general reputation, personal characteristics, and mode of living. You have the right to request in writing, within a reasonable period of time after receipt of this notice, a complete disclosure of the scope of the investigation requested and a written summary of your rights under the Fair Credit Reporting Act. Send your request to: Licensing and Contracting Department, 750 W. Virginia St. Milwaukee, WI 53204. Disclosure information must be in writing and mailed to you, along with the written summary of your rights, within five (5) business days after receipt of your written request. Also each company with which you have requested an appointment may share the information contained in the investigative report and other information in your file with its affiliates, unless you send a written request to the above-described address directing that this information not be disclosed or shared with affiliates.

AGLD1052                                      4                                      Rev0406

From:COVERT SIEGEL LLP          727 450 2190        05/09/2006 12:16 #829 P.001/001

## AGENCY AGREEMENT

Each life insurance company's products are separately underwritten and independently supported by the representing company. The below listed companies are members of the American International Group, Inc.

FOR

Last Name __Constantine__    First Name __William__    Middle Initial __H__

If Representative is a Corporation, the full Corporate name must appear above, and an authorized officer must sign and indicate the officer's title.

Individual
Social Security Number  [Redacted]

Corporation
Tax Identification Number _____

Representative
Signature _____        Title _____

American General Life Companies

Contract Date __04052006__
To be completed by Home Office          Home Office Authorized Signator

American General Life Insurance Company, Houston, TX
A Division of the American International Group, Inc.

AGLB1254 (1/05)

## WE KNOW LIFE.*

**AIG** AMERICAN GENERAL
AIG Life Brokerage

TABLE OF CONTENTS

**Paragraph**
Recitals
Definitions

I.      Authorized Acts
II.     Limitation of Authority
III.    Advertising
IV.     Relationship
V.      Compensation
VI.     Vesting
VII.    General Provisions
VIII.   Termination
IX.     Amendment
X.      Personal Guarantee
XI.     Effective Date
XII.    Investigation Notice
XIII.   Federal Crime Control Act
XIV.    Confidentiality

**Schedules**

A. Commission Schedule – Primary Company

B. Appointment Application

AGL / Bechtel 000505

## RECITALS

Representative ("REPRESENTATIVE") has executed an Appointment Application requesting appointments with one or more life insurance subsidiaries of American International Group, Inc.

The Appointment Application designates one of the life insurers as a Primary Appointing Company (the "Primary Company").

This Agreement together with the Appointment Application and Commission Schedules for each separate life insurer that appoints REPRESENTATIVE comprise the REPRESENTATIVE's contract with each of the insurers that appoints REPRESENTATIVE.

Execution of this Agreement by the Primary Company and the REPRESENTATIVE evidences their Agreement to transact business in accordance with the terms and conditions set forth in this Agreement.

If REPRESENTATIVE requested appointment with one or more affiliates of the Primary Company in the Appointment Application, or a subsequent amendment to that form, REPRESENTATIVE's execution of this Agreement evidences REPRESENTATIVE's Agreement to transact business with each affiliated insurer in accordance with the terms and conditions set forth in this Agreement. Each affiliated insurer that appoints REPRESENTATIVE and sends a company commission schedule to REPRESENTATIVE has agreed to transact business with REPRESENTATIVE according to the terms and conditions of this Agreement.

## DEFINITIONS

A. Primary Company -- the Primary Company is designated in the Appointment Application as the Primary Company. The Primary Company's responsibilities include executing the REPRESENTATIVE Agreement, performing background checks and providing convention credits and other sales incentives, if any, to REPRESENTATIVE.

B. Affiliated Company -- the Affiliated Company(ies) is any other life insurance subsidiary of American International Group, Inc. that is identified in the Appointment Application, appoints REPRESENTATIVE and provides a company commission schedule as evidence of its Agreement to transact business with REPRESENTATIVE according to the terms of this Agreement.

C. Insurer -- the term Insurer as used in this Agreement refers to each of the life insurance companies that appoints REPRESENTATIVE, including the Primary Company.

D. Jurisdiction -- Eligibility for, or receipt of, override compensation on another Representative's business.

E. Nonpublic Personal Information: "Nonpublic Personal Information" of customers or consumers ("NPI") includes, but is not limited to, names, addresses, account balances, account numbers, account activity, social security numbers, taxpayer identification numbers, and sensitive financial and health information. NPI in cludes information on each party's forms or in a database of any kind, information created by each party, information collected by or on behalf of a party, and personally identifiable information derived from NPI. Reference to NPI of Company or REPRESENTATIVE shall include NPI collected by or on behalf of American International Group, Inc., its successors, subsidiaries, affiliates agents or contractors. There may be instances where each party will have the same NPI which may be subject to different privacy policies and procedures according to the notices provided to the customer or consumer by the respective parties to the Agreement.

F. Protected Health Information: The terms "Protected Health Information" and "PHI" shall have the meaning set forth in 45 C.F.R. Sec. 164.501 as may be amended. Other terms shall have the same meanings as set forth in the applicable definition of the Health Insurance Portability and Accessibility Act (HIPAA), as amended, Privacy Rule or other regulations.

## I. AUTHORIZED ACTS

A. The REPRESENTATIVE is authorized to conduct Insurer's business for the Insurer's products covering such classes of risks as the Insurer may authorize and in those states where the product is approved and REPRESENTATIVE is licensed and appointed as required by state law. If REPRESENTATIVE is a corporation, then the principal(s) of such corporation must also be licensed individually, if required pursuant to appropriate state law.

B. The REPRESENTATIVE is authorized to collect and promptly remit to the Insurer the first premium on business produced by the REPRESENTATIVE in accordance with the Insurer's rules and regulations.

C. The REPRESENTATIVE will promptly deliver issued policies in accordance with Insurer's policies and pro cedures.

D. All monies, settlements, or documents received by the REPRESENTATIVE for, or on behalf of, the Insurer shall be received by the REPRESENTATIVE in a fiduciary capacity and immediately paid over or delivered to the Insurer, except as may be otherwise directed in writing by the Insurer.

AGL / Bechtel 000506

## II. LIMITATION OF AUTHORITY

The REPRESENTATIVE is without authority to perform any act or thing other than that expressly granted in this Agreement and expressly agrees not to perform any of the following acts:

1. Make, modify, alter or discharge any policy.
2. Extend the time payment of any premium.
3. Waive any forfeiture.
4. Guarantee dividends or interest rates.
5. Incur any debt or liability in the name of the Insurer.
6. Withhold, commingle or convert to the use of the REPRESENTATIVE or the benefit of others, any monies, securities, policies or receipts belonging to the Insurer, the applicant, or the insured, or fail to promptly submit to the Insurer any applications for policies.
7. Accept or deposit any check or draft for premiums made payable to other than the Insurer.
8. Unless in the best interest of the policyowner, directly or indirectly induce or attempt to induce any policyowners of Insurer to relinquish, surrender, replace or lapse their policies.

## III. ADVERTISING / USE OF LOGO

REPRESENTATIVE may, at REPRESENTATIVE'S expense, advertise Insurer's products, provided the text of all advertising, including any form of sales/promotional material such as, but not limited to business cards, stationery or other indications of agency under this Agreement and including the use of the names "American International Group, Inc.," "AIG," "American General," their logos or the name of any insurer is approved in writing by the company before use.

## IV. RELATIONSHIP

The relationship between the Insurer and the REPRESENTATIVE shall be that of principal and independent contractor, and nothing contained herein shall be construed as creating the relationship of employer and employee for any purpose, including tax purposes. REPRESENTATIVE agrees to be responsible for all taxes as a self-employed independent contractor. The REPRESENTATIVE shall be free to exercise independent judgment as to the time and manner in which the REPRESENTATIVE shall perform the services authorized under this Agreement. Any material supplied by the Insurer is for the purpose of supporting the activities of the REPRESENTATIVE.

## V. COMPENSATION

A. Subject to the provisions hereof and the rules of the Insurer, the full compensation of the REPRESENTATIVE shall be payable at the applicable rate set forth in the Schedule of Commission in effect at the date the first full premium is received by the Insurer, which Schedule of Commission and all amendments, supplements and replacements thereof and thereto are hereby made a part of this Agreement.

B. Commission is subject to change at any time by written notice by the Insurer to the REPRESENTATIVE, but no such change shall affect commissions on any policy issued prior to the effective date of such change.

C. If commission rates are not now shown in the Schedule of Commission, including conversions, replacements or, the exercise of re-entry provisions or, if special premium rate quotations are made, commission rates shall be such as may be fixed by the Insurer as of the time when issue is effective in accordance with rates and practices of the Insurer then in effect.

D. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall lapse because of nonpayment of premium and shall be replaced or reinstated, any commissions on the new or reinstated policy shall be payable only at the sole discretion of the Insurer.

E. To be entitled to commissions, if any, the REPRESENTATIVE's name or the name of another Representative under your jurisdiction must appear as soliciting agent on the application for insurance. Disputes respecting commissions shall be subject to decision and settlement by the Insurer and the Insurer's decision shall be final and binding upon the parties involved.

F. Whenever, in the judgment of the Insurer, it shall become advisable to recall any policy issued before delivery thereof is made, the REPRESENTATIVE shall promptly refund to the Insurer any commissions received on account of such policy. Whenever, after delivery, the Insurer shall effect or procure the surrender, rescission or cancellation of any policy and refund premiums paid thereon, the Insurer shall have the right to charge back commissions and demand that the REPRESENTATIVE repay such commissions to the Insurer. If the Insurer shall refund or waive the premium or premiums under the provisions of any disability waiver of premium rider, the REPRESENTATIVE shall lose all rights to commission and persistency fees as applied to such refunded or waived premiums, and shall repay any amounts advanced. An Insurer may include in its Commission Schedule, which is incorporated as a part of this Agreement, guidelines describing more specifically the circumstances under which it will charge back commissions on certain products. In the absence of such guidelines, the Insurer's rights shall be as described in this Section V, Compensation.

G. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall be converted or replaced, any commissions on the new policy shall be subject to adjustment and payable only at the sole discretion of the Insurer.

AGL / Bechtel 000507

H. Except where prohibited by any State, the REPRESENTATIVE is responsible for all license fees, including those of its Representatives. The Insurer's discretion shall govern with respect to whether the Insurer shall charge to the REPRESENTATIVE's commission or other compensation account the cost of obtaining and renewing the REPRESENTATIVE's and its Representatives' license or licenses and/or appointment fees. This practice is subject to change at the discretion of the Insurer.

I. Policy applications for any Insurer will be issued and commissions paid by the Insurer.

## VI. VESTING

A. As long as this Agreement remains in effect, all first year and renewal commissions shall be paid as they accrue; however, any such payments are subject to the schedule of commissions in effect at the date the first full premium is received by the Insurer, the provisions and rules of the Insurer regarding minimum first year and renewal commissions required to issue a check.

B. During any consecutive 12-month period following the termination of this Agreement, total renewal commissions are less than the minimum required by the Insurer, vesting automatically terminates and no additional commission payments will be due from the Insurer.

C. In the event this Agreement is terminated by the death of the REPRESENTATIVE, all first year and renewal commissions shall be paid as they accrue, subject only to the terms and conditions of paragraphs A and B immediately above. In the absence of a properly executed beneficiary designation on file with the Insurer, all such payments, if any, shall be made to the surviving spouse and at the death of the surviving spouse to the estate of said spouse. If the REPRESENTATIVE dies leaving no surviving spouse, such monies will be paid to the estate of the REPRESENTATIVE; provided however, that if the REPRESENTATIVE is a corporation or a partnership, all such payments will be paid to said corporation or partnership.

## VII. GENERAL PROVISIONS

A. The Insurer may make such changes and decisions as it deems advisable in the conduct of its business, including the discontinuance of any policy form or the withdrawal from any territory, and the Insurer shall incur no liability to the REPRESENTATIVE by reason of its doing so.

B. The Insurer shall have the right to test market any of its products on a select basis and at the discretion of the Insurer.

C. The REPRESENTATIVE shall indemnify and hold the Insurer harmless against or from any and all expense, costs, causes of action, and damages including without limitation, reasonable attorney fees, resulting from or growing out of any unauthorized or negligent act of commission or omission by the REPRESENTATIVE or its employees, directors, officers, or Representatives under its jurisdiction. This provision shall survive termination of this Agreement.

D. The Insurer shall have a prior right and offset to all commissions and fees payable hereunder toward any indebtedness and/or other obligations due from the REPRESENTATIVE or anyone under the jurisdiction of the REPRESENTATIVE to any Primary Company and/or Affiliated Company/ies with interest at the legal rate. This prior right and offset shall not be extinguished by the termination of this Agreement. Following the termination of any Representative under the jurisdiction of the REPRESENTATIVE, should the amount in any commission account of that Representative be insufficient to repay any amount due the Insurer, the debit will become the responsibility of the REPRESENTATIVE, in accordance with the Insurer's then current debit collection procedure.

E. Neither the Agreement, any duties or delegation under this Agreement, nor the commissions or fees accruing hereunder, nor any interest herein, nor any right or claim created hereby or arising by reason of the REPRESENTATIVE acting hereunder, shall be assignable, except upon the written consent of the Insurer.

F. Forbearance or failure of the Insurer to insist upon performance of this Agreement or to enforce its rights hereunder, shall not constitute a waiver of its rights or privileges hereunder or of its subsequent right to insist upon such performance.

G. This Agreement, including the Appointment Application and any Commission Schedule(s) incorporated as part of this Agreement, contains all promises, inducements and representations between the parties. This Agreement supersedes any and all previous Agreements between the parties herein pertaining to the solicitation of the Insurer's products and the payment of monies to the REPRESENTATIVE provided, however, that rights or obligations which have already accrued (and would survive termination) under any previous contract between the Insurer and the REPRESENTATIVE shall not be hereby impaired.

H. The Insurer reserves the right to decline or modify any application for insurance.

I. This Agreement shall not be effective until executed by the Primary Company. Once this Agreement is effective with the Primary Company, it may become effective with Affiliated Company(ies) as described herein.

J. Should the REPRESENTATIVE, at any time, violate any provision of Section II of this Agreement, entitled Limitation of Authority, or commit any fraud upon Insurer or its policyholders; have a license as agent or broker revoked for cause after notice and hearing by a state insurance department or otherwise act to prejudice materially the interests of Insurer, the REPRESENTATIVE shall, at the option of the Insurer, forfeit any and all rights to all commissions and monies that the REPRESENTATIVE might otherwise have under this Agreement, vested or not. It is expressly agreed that termination of this Agreement shall not terminate this provision.

K. The REPRESENTATIVE agrees to maintain complete and accurate records of the marketing and sale of the Insurer's products. The Insurer reserves the right to inspect such records and other documents in each REPRESENTATIVE's files that relate to the marketing, attempted sale or sale of the Insurer's products. If the Insurer chooses to inspect such records, it will endeavor to do so during normal business hours and after giving reasonable notice, unless, in the judgment of the Insurer, unusual circumstances require inspection at other times or inspection without prior notice. This provision shall survive termination of this Agreement for a period of two (2) years.

L. For as long as this Agreement is in force, the REPRESENTATIVE will maintain Errors and Omissions (E&O) coverage and will provide the Insurer annually proof of such E&O coverage in a manner acceptable to the Insurer.

M. If the REPRESENTATIVE is served with a regulatory inquiry or legal papers involving Insurer business, the REPRE- SENTATIVE shall immediately notify the Insurer by sending to that Insurer's Compliance Officer, a copy of the papers, served by overnight delivery, by the end of the business day next following the day of receipt by the REPRESENTATIVE.

N. The REPRESENTATIVE is responsible for assuring that any Representative under the Jurisdiction of the REPRESEN- TATIVE: (1) become fully informed as to the provisions and benefits of each product offered by the Insurer for which the Representative conducts Insurer business; (2) represent such products adequately and fairly to prospective purchasers; and (3) act in compliance with the Insurer's policies and procedures as set out in the Customer Service and   Compliance Manual, Operations Manual, or otherwise communicated to the REPRESENTATIVE, including, without limitation, those regarding suitability of sales inquiries and compliance with the Insurer's principles and code of ethical market conduct.

O. When the Insurer assigns to the REPRESENTATIVE any agency not recruited by the REPRESENTATIVE, then the Insurer may reassign that agency to another upline of the Insurer's choice at any time and without the necessity of a release from the REPRESENTATIVE. If the Insurer wishes to remove any agency recruited by the REPRESENTATIVE from the Jurisdiction of the REPRESENTATIVE, the Insurer will negotiate a release; however, such release will not be unreasonably withheld by the REPRESENTATIVE.

P. REPRESENTATIVE is not entitled to participate in any REPRESENTATIVE benefit programs except those which are provided by the Primary Company. REPRESENTATIVE is not eligible to participate in, or to receive any benefits from, any programs provided by the Affiliate Company/ies.

Q. Disputes arising under this Agreement shall be subject to the laws of the state where the Insurer engaged in the dispute is located.

R. The area within which the REPRESENTATIVE shall have the right to represent the Insurer is not assigned exclusively to the REPRESENTATIVE.

S. REPRESENTATIVE agrees to conform to all regulations of the Insurance Department and the Insurance laws in the state(s) in which the REPRESENTATIVE is conducting Insurer's business.

T. REPRESENTATIVE understands and agrees that (i) the Primary Company may amend the Agreement or the Company's policies, rules and procedures, in order to comply with changes in laws or regulations, or, as the Company deems appropriate related to changes in laws or regulations, through communication of any such amendment to REPRESENTATIVE, and (ii) For purposes of any such amendment, communication may include, but not be limited to, posting of amendment information on the Primary Company's website or other means of making such information known or available to the agent.

## VIII. TERMINATION

A. This Agreement shall automatically terminate upon the death of REPRESENTATIVE if REPRESENTATIVE is an individual or upon dissolution of REPRESENTATIVE if REPRESENTATIVE is a corporation or a partnership.

B. This Agreement shall terminate upon the revocation or non-renewal of the REPRESENTATIVE's license.

C. This Agreement may be terminated with or without cause by any Insurer (subject to provisions D and E below) or the REPRESENTATIVE by sending written notice of such termination to the last known address of the other party.

D. Upon termination, the REPRESENTATIVE shall immediately pay in cash to the Insurer all sums that are due or become due hereunder and shall immediately deliver to the Insurer all materials connected with the business of the Insurer and belonging to the Insurer. Such materials include, but are not limited to, rate cards, letters, records, computer software, general supplies or any and all other indications of agency provided by the Insurer. It is expressly agreed that termination of this Agreement does not release the REPRESENTATIVE from continuing liability to the Insurer for immediate repayment of any and all unearned first year commissions or bonuses.

E. Termination of this Agreement by the Primary Company terminates all contracts with Affiliated Company/ies without specific notice to the REPRESENTATIVE required by the Insurer. However, any Affiliated Company may terminate its agency relationship with the REPRESENTATIVE, which will not, of itself, terminate the Primary Company agency relationship. Upon termination, the Insurer may assign a servicing agency; however, such assignment will not of itself affect the vesting of existing business.

F. Termination of this Agreement automatically terminates any previous Agreement to represent the Insurer that terminated the Agreement.

## IX. AMENDMENT

This contract cannot be changed by any oral promise or statement and no written modification will bind the Insurer unless approved by the President of the Insurer making the modification.

## X. PERSONAL GUARANTEE

Each and every individual who signs this Agreement warrants that they have authority to bind the entity on whose behalf they are signing.

## XI. EFFECTIVE DATE

The agreed effective date will be the date that this Agreement to represent is signed and acknowledged by the Primary Company as hereinafter specified.

## XII. INVESTIGATION NOTICE

The undersigned hereby authorizes the Primary and Affiliated Company/ies to conduct an investigation concerning character, credit reputation and personal traits and releases those contacted and the Insurer from any liability with respect to the content of the information provided and any resulting action by the Insurer including the sharing of such information or the termination of this Agreement to represent.

## XIII. FEDERAL CRIME CONTROL ACT

A. Undersigned warrants it:

1. has not been convicted of any criminal felony involving dishonesty or breach of trust or

2. has obtained written authorization to engage in the business of insurance from the Insurance Department in the state where REPRESENTATIVE resides which REPRESENTATIVE agrees to produce upon Insurer request.

B. The REPRESENTATIVE agrees to update the representations in the Confidential History/Background Information Section of Part 4 of the Appointment Application by notifying the Primary Company in writing within thirty (30) days, if there should be a change in the response to any question in the Information Section of Part 4 of the Appointment Application.

## XVI. PRIVACY CONTROL & SECURITY

A. "Protected Health Information" and "Nonpublic Personal Information" shall be collectively called the "Information" in this Section, XVI, Privacy Control and Security.

B. All information which any party obtains as a result of this relationship shall not be collected, or used, disclosed, reused or redisclosed to any third party, except to carry out the purposes for which the information was disclosed. The REPRESENTATIVE shall maintain the confidentiality of information consistent with the Company's notices of privacy practices, policies and procedures, provided that such use or disclosure would not violate any applicable laws, rules or regulations if done by the Company.

C. The REPRESENTATIVE shall use commercially reasonable efforts and appropriate safeguards to maintain the integrity, confidentiality, and security of PHI and to prevent the unauthorized use or disclosure of PHI and to

AGL / Bechtel 000510

comply with the security standards or the HIPAA security regulations. Upon Company request Agent will provide to the Company access to and documentation regarding any safeguards.

D.  Each party shall be permitted to disclose relevant aspects of the other parties' Information to its officers, agents, subcontractors and employees only to the extent that such disclosure is reasonably necessary for the performance of its duties and obligations under the Agreement; provided that such party shall take all reasonable measures to ensure that the Information of another party is not disclosed or reproduced in contravention of each of the obligations of this Agreement by such party's officers, agents, subcontractors and employees. The obligations of this Agreement are personal to each party.

E.  The REPRESENTATIVE shall report promptly within seven (7) days to the Company's Privacy Officer in writing any use or disclosure of Information that is not permitted by the Agreement or any addendum, of which the REPRESENTATIVE becomes aware. REPRESENTATIVE'S report shall identify: (i) the nature of the unauthorized use or disclosure, (ii) the Information used or disclosed, (iii) who made the unauthorized use or received the unauthorized disclosure, (iv) what REPRESENTATIVE has done or shall do to mitigate any deleterious effect of the unauthorized use or disclosure, (v) what corrective action REPRESENTATIVE has taken or shall take to prevent future similar unauthorized use or disclosure, and (vi) any other information as reasonably requested by the Company's Privacy Officer.

F.  The REPRESENTATIVE shall require all of its employees, representatives, subcontractors or agents that receive or have access to Information to agree to adhere to the same restrictions and conditions on the use and/or disclosure of Information that apply herein, including the obligation to return or destroy the Information as provided for below.

G.  The obligations in this Agreement shall not restrict any disclosure by any party pursuant to any applicable state or federal laws, or by request or order of any court or government agency. The REPRESENTATIVE shall immediately notify Company upon receipt by the REPRESENTATIVE of any request from the Department of Health and Human Services for the REPRESENTATIVE'S internal practices, books, and records relating to the use and disclosure of Information.

H.  Within ten (10) days of receiving a written request from Company, the REPRESENTATIVE shall provide to the Company such Information as is requested by the Company, if any, to permit the Company to respond to a request by an individual for access to, an amendment of, or an accounting of the disclosures of the individual's PHI in accordance with 45 C.F.R. Secs. 164.524, 164.526, and 164.528. If an individual contacts the REPRESENTATIVE directly about access to, amendment of, or an accounting of disclosures of his/her PHI, the REPRESENTATIVE will forward such request immediately to the Company and not provide such access, amendment, or disclosure. Notwithstanding anything herein to the contrary, REPRESENTATIVE shall make reasonable efforts to cooperate with the Company in responding to any such requests and enabling the Company to comply with federal laws and regulations regarding the timing of response to such requests.

I.  This Section XVI, Privacy Protection and Security, will survive the termination or expiration of this Agreement. Upon termination of the Agreement, the REPRESENTATIVE shall return or destroy (with the Company's written permission) all Information that REPRESENTATIVE maintains in any form pursuant to the Agreement, and retain no copies of such Information. However, if the Company determines that such return or destruction is not feasible, REPRESENTATIVE will continue to extend the protections of this Addendum to such PHI and limit further use of the Information to the purposes that make the return or destruction not feasible. The respective rights and obligations of each party pursuant to this subsection shall survive the termination of the Agreement.

AGL10S4-1105

AGL / Bechtel 000511

**AIG** AMERICAN GENERAL

Scan Licensing and Contracting
Change Form

*LCCONT MAINT*
*3SM26*

AIG Life Brokerage
A division of the American International Companies.®

## Part 1   Change Request

### Type of Change Request

☐ Compensation Change   ☐ Contract Level Change   ☐ Second Contract   ☑ Transfer   ☐ Other   ☐ USL

Comments: Agent moving to new IMO Kevin Bechtel / Life Brokerage Partners LLC

## Part 2   Individual and Principal of Corporation.   This is Required Information.

Please Print Clearly

Social Security Number: **Redacted**   Agent Number: 3SM26

Name: Constantine        William
| Last Name | First Name | Middle Initial |

Date of Birth: **Redacted**   Sex: ☑ Male   ☐ Female
month   day   year

Resident/Home: 775 Village Way
Physical Address

Palm Harbor  FL  34683
City                    State        Zip

Resident/Home Phone Number: _____   E-Mail _____

Business Address: 3982 Tampa Rd.  Oldsmar FL 34677
Physical Address                City        State        Zip

Business Phone Number: 727-791-9080   Fax Number 813-792-6187

☐ I am an officer of the below corporation.

## Part 3   Corporate Applicants Required Information.

Please Print Clearly        Individual Applicants Do Not Complete This Section

Tax ID Number _____

Corporate Name: _____

Corporate Address: _____

_____
City                    State        Zip

Corporate Phone Number: _____   State Incorporated: _____

Fax Number: _____   E-Mail: _____

Primary Officer for Corporate Records: _____

Background information reported on page – should provide information for the Officer of the corporation.

NONE

AGL / Bechtel 000512

# AIG. AMERICAN GENERAL

AIG Life Brokerage
A division of the American International Companies.®

## Part 4   Recruiter Section - IMO/BGA Only: *Complete ONLY when address used is NOT the above business address*

Social Security Number: [Redacted] __ - __ __ - __ __ __ __

Primary mailing address, phone contact, e-mail and faxes will be communicated to the following:

☑ All Home Office Mail and other Communication will be directed to other than the above. Please direct to:

Agency Name: Life Brokerage Partners LLC          Agency Code Number: _____

Business Address: 3982 Tampa Rd.          Commission Address: 3982 Tampa Rd.

Oldsmar    FL   34677                    Oldsmar    FL   34677
_____City_____State_____ZIP           _____City_____State_____ZIP

Fax Number: 727-712-1459          Phone Number: 727-791-9080

E-Mail Address: vnally@lifebrokeragepartners.com     ☐ Please check when commission check is
                                                      mailed directly to agent's business address.

## Part 5   Licensing and State Appointment Request

Attach copies of licenses for all requested state appointments. Provide appropriate fees for nonresident appointments.

Applicant Name: **William Constantine**

Licensed for: ☑ Life   ☐ Health     Contracted as: ☑ Individual   ☐ Agency

Resident State: FL          Resident License Number: _____

Nonresident Appointment State(s): _____
                    Attach applicable fees and licenses for states listed above.

*FLORIDA residents must specify the Florida county where their business office is located:* _____

*NON-RESIDENT FLORIDA agents soliciting in Florida must list the county(s) in Florida in which they intend to personally solicit:*

_____

## Part 6   Variable Licensing - Complete ONLY when variable appointment is requested.

Please complete the following ONLY when requesting variable appointment.

Who is your Broker/Dealer? _____

CRD Number: _____

Circle all current NASD licenses that you hold:   6    7    22    24    26    63    Other: _____

### Independent Wholesaler Election

Some broker-dealers may permit third-party wholesaling firms to offer certain services and support to registered representatives in order to facilitate sales of American General Life Insurance Company (AGL) variable universal life products. These firms are referred to by AGL as Independent Wholesalers (IW). In order for you to sell AGL's variable universal life insurance products through an IW, an IW agreement must be in place with the BGA/IMO and your broker-dealer must be informed, pursuant to NASD Rule 3030, of your IW election. Additionally, this IW Election Form must be submitted to AIG Life Brokerage, which documents your IW election. If you wish to obtain support through an IW, please indicate your election below.

☐ IW Election: _____
                    (Name of IW Firms and Code Number)

AGLC100204                              2                              Rev0306

AGL / Bechtel 000513

# AIG. AMERICAN GENERAL

AIG Life Brokerage
A division of the American International Companies.©

## Part 7  AGL Commission Section - Must be completed.

Social Security Number **Redacted**

Contract Level Requested ☐ IMO/BGA ☐ MGA ☐ MGA 1 ☐ GA ☑ GA 1 ☐ GA 2 ☐ Agent/Producer

Requested Commission Level for American General Life

Please note that any change to the compensation of the agents in your downline will directly affect your own commission payout. For example, if you raise the First Year compensation level for your agents' Life Brokerage products, your overwrites will correspondingly decrease. If you are unsure how a change will affect you and/or your agent, please contact the Commissions Department prior to submitting this form.

| Life Products: | | Current Level (existing agents only) | Requested Level | **PLEASE NOTE:** Commission level changes will affect policies with an application-signed date later than the effective date of the commission change. |
|---|---|---|---|---|
| | First Year | _____ | _____ | |
| | Renewal | _____ | _____ | |
| | Productivity Bonus | _____ | _____ | |
| | | ☐ Retro back to Jan. 1 of current year | ☐ Non Retro Policies on go-forward basis only | |
| Specialty Products: (Street Max = 3) | First Year/Renewals | _____ | _____ | |
| Annuity Products: | First Year | _____ | _____ | |
| A & H: | First Year | _____ | _____ | |
| | Renewal Level | _____ | _____ | |
| Variable Products: | IW Overwrite | _____ | _____ | |
| | Renewal Level | _____ | _____ | |

Please indicate if you wish this change to apply to pending policies: ☐ No ☑ Yes.
If you answered yes, please attach a list of policies with this request.
**Annualization:** Available on a limited basis. Please attach the completed annualization form when requesting. Please note: Annualization changes will affect policies with an application-signed date later than the effective date of the annualization request.

## Part 8  USL Commission Section if applicable.

☐ United States Life - Please attach appropriate signed Commission Schedules

Contract Level Requested:  ☐ GA  ☐ GA1  ☐ GA2  ☐ Producer

GA1: Override _____%          GA2:  ERA _____%

ERA _____%

Mail Commission Statements to: ☐ GA  ☐ GA1  ☐ GA2  ☐ Producer

**PLEASE NOTE:** Commission level changes will affect policies with an application-signed date later than the effective date of the commission change.

## Part 9  Signature of Recruiter/IMO

The undersigned (recommending representative or General Agent) by executing this applicant recommends the applicant to American General Affiliates as a suitable person to represent the companies. The recommending individual or General Agent also agrees to supervise and assume responsibility for the applicant, if appointed by American General Affiliates, in accordance with the terms of his/her Contract.

Signature: _____     Date: 3 / 1 / 07
                Signature of Agency

Agency Name  Gary A Richardson                Date: 3 / 1 / 07
                Print Name of Agency

AGLC100204                                3                                Rev0306

AGL / Bechtel 000514

**AIG** AMERICAN GENERAL

Scan Licensing and Contracting Change Form

*LCCONT MAINT*
*3SM26*

AIG Life Brokerage
A division of the American International Companies.®

**Part 1   Change Request**

Type of Change Request

☐ Compensation Change   ☐ Contract Level Change   ☐ Second Contract   ☑ Transfer   ☐ Other   ☐ USL

Comments: Agent moving to new IMO Kevin Bechtel / Life Brokerage Partners LLC

**Part 2   Individual and Principal of Corporation.   This is Required Information.**

Please Print Clearly

Social Security Number: **Redacted** ___ - ___ ___   Agent Number: 3SM26

Name: Constantine          William
      Last Name    First Name                    Middle Initial

Date of Birth: **Redacted**            Sex: ☑ Male   ☐ Female
            month    day    year

Resident/Home: 775 Village Way
                                        Physical Address

Palm Harbor  FL  34683
      City                              State        Zip

Resident/Home Phone Number: _____   E-Mail _____

Business Address: 3982 Tampa Rd.  Oldsmar FL 34677
            Physical Address          City          State        Zip

Business Phone Number: 727-791-9080   Fax Number: 813-792-6187

☐ I am an officer of the below corporation.

**Part 3   Corporate Applicants Required Information.**

Please Print Clearly                    Individual Applicants Do Not Complete This Section

Tax ID Number _____

Corporate Name: _____

Corporate Address: _____

      City                              State        Zip

Corporate Phone Number: _____   State Incorporated: _____

Fax Number: _____   E-Mail: _____

Primary Officer for Corporate Records: _____

Background Information reported on page – should provide information for the Officer of the corporation.

AGLC100204                              1                              Rev0306

*NONE*

AGL / Bechtel 000515

**AIG** AMERICAN GENERAL

AIG Life Brokerage
A division of the American International Companies.®

## Part 4 Recruiter Section - IMO/BGA Only. *Complete ONLY when address used is NOT the above business address*

Social Security Number: Redacted  - ___ - ____

Primary mailing address, phone contact, e-mail and faxes will be communicated to the following:

☑ All Home Office Mail and other Communication will be directed to other than the above. Please direct to:

Agency Name: Life Brokerage Partners LLC     Agency Code Number: _____

Business Address: 3982 Tampa Rd.     Commission Address: 3982 Tampa Rd.

Oldsmar   FL  34677            Oldsmar   FL  34677
City    State    ZIP                    City    State    ZIP

Fax Number: 727-712-1459     Phone Number: 727-791-9080

E-Mail Address: vnally@lifebrokeragepartners.com   ☐ Please check when commission check is mailed directly to agent's business address.

## Part 5 Licensing and State Appointment Requests

Attach copies of licenses for all requested state appointments. Provide appropriate fees for nonresident appointments.

Applicant Name: William Constantine

Licensed for: ☑ Life  ☐ Health   Contracted as: ☑ Individual  ☐ Agency

Resident State: FL     Resident License Number: _____

Nonresident Appointment State(s): _____
Attach applicable fees and licenses for states listed above.

*FLORIDA residents must specify the Florida county where their business office is located:* _____

*NON-RESIDENT FLORIDA agents soliciting in Florida must list the county(s) in Florida in which they intend to personally solicit:* _____

## Part 6 - Variable Licensing - Complete ONLY when variable appointment is requested

Please complete the following ONLY when requesting variable appointment.

Who is your Broker/Dealer? _____

CRD Number: _____

Circle all current NASD licenses that you hold:   6   7   22   24   26   63   Other: _____

### Independent Wholesaler Election

Some broker-dealers may permit third-party wholesaling firms to offer certain services and support to registered representatives in order to facilitate sales of American General Life Insurance Company (AGL) variable universal life products. These firms are referred to by AGL as Independent Wholesalers (IW). In order for you to sell AGL's variable universal life insurance products through an IW, an IW agreement must be in place with the BGA/IMO and your broker-dealer must be informed, pursuant to NASD Rule 3030, of your IW election. Additionally, this IW Election Form must be submitted to AIG Life Brokerage, which documents your IW election. If you wish to obtain support through an IW, please indicate your election below.

☐ IW Election: _____
(Name of IW Firms and Code Number)

AGLC100204                          2                          Rev0306

AGL / Bechtel 000516

**AIG** **AMERICAN GENERAL**

AIG Life Brokerage
A division of the American International Companies.®

## Part 7 AGL Commission Section - Must be completed

Social Security Number: **Redacted**

Contract Level Requested:  ☐ IMO/BGA  ☐ MGA  ☐ MGA 1  ☐ GA  ☑ GA 1  ☐ GA 2  ☐ Agent/Producer

### Requested Commission Level for American General Life

Please note that any change to the compensation of the agents in your downline will directly affect your own commission payout. For example, if you raise the First Year compensation level for your agents' Life Brokerage products, your overwrites will correspondingly decrease. If you are unsure how a change will affect you and/or your agent, please contact the Commissions Department prior to submitting this form.

| | | Current Level (existing agents only) | Requested Level | PLEASE NOTE: |
|---|---|---|---|---|
| Life Products: | First Year | _____ | _____ | Commission level changes will affect policies with an application-signed date later than the effective date of the commission change. |
| | Renewal | _____ | _____ | |
| | Productivity Bonus | _____ | _____ | |
| | | ☐ Retro back to Jan. 1 of current year | ☐ Non Retro Policies on go-forward basis only | |
| Specialty Products: (Street Max = I) | First Year/Renewals | _____ | _____ | |
| Annuity Products: | First Year | _____ | _____ | |
| A & H: | First Year | _____ | _____ | |
| | Renewal Level | _____ | _____ | |
| Variable Products: | IW Overwrite | _____ | _____ | |
| | Renewal Level | _____ | _____ | |

Please indicate if you wish this change to apply to pending policies: ☐ No  ☑ Yes.
If you answered yes, please attach a list of policies with this request.
Annualization: Available on a limited basis. Please attach the completed annualization form when requesting. Please note: Annualization changes will affect policies with an application-signed date later than the effective date of the annualization request.

## Part 8 USL Commission Section If applicable

☐ United States Life - Please attach appropriate signed Commission Schedules

PLEASE NOTE: Commission level changes will affect policies with an application-signed date later than the effective date of the commission change.

Contract Level Requested:  ☐ GA  ☐ GA1  ☐ GA2  ☐ Producer

GA1: Override _____%        GA2:  ERA _____%

ERA _____%

Mail Commission Statements to: ☐ GA  ☐ GA1  ☐ GA2  ☐ Producer

## Part 9 Signature of Recruiter/IMO

The undersigned (recommending representative or General Agent) by executing this applicant recommends the applicant to American General Affiliates as a suitable person to represent the companies. The recommending individual or General Agent also agrees to supervise and assume responsibility for the applicant, if appointed by American General Affiliates, in accordance with the terms of his/her Contract.

Signature: _____      Date: 3 / 1 / 07
Signature of Agency

Agency Name  Gary A Richardson                Date: 3 / 1 / 07
Print Name of Agency

AGLC100204                          3                          Rev0306

05/25/2007 09:09 0952953

3512

AGL / Bechtel 000517

AGL / Bechtel 000518

# Fax Cover Sheet



## Life Brokerage Equity Group

2963 Gulf-to Bay Blvd
Suite 330
Clearwater FL 33759



| Send to: American General | From: Vanessa Nally |
|---|---|
| Attention: Contracting | Date:  06/28/06 |
| Fax Number: 9-1-800-337-0961 | Fax Number: **727-451-0567** Email Address: vnally@lbeg.net |
| Total pages, including cover: 19 | Phone Number: **727-791-9080** |

For Your Record

Enclosed is a contracting for Hans Bechtel.  Please contact me if
you have any questions.

Thank You
Vanessa Nally
Licensing & Contracting

ODYSSEY '05
July 24 -26 2006
Renaissance Vinoy Resort
St. Petersburg Florida

Ask your Brokerage Director for details or visit us at www.odyssey.lbeg.net

AGL / Bechtel 000519

06/28/2006 08:54 7277120329 LBEG PAGE 02/19

 **Equity Group**
*A Great Business Partner*

2983 Gulf to Bay Blvd Suite 330     Phone: 727-791-9080
Clearwater, FL. 33759               Fax: 727-712-1459

# Appointment Transmittal

June 28, 2006

American General
Contracting

Agent Name                          Bechtel, Hans E
Agent Social Security Number        **Redacted**
Agent Date of Birth
Appointment Number

The following Carrier Appointment Requirements have been requested:

American General
All Lines of Business
DE, FL, TX

The following Carrier Appointment Requirements have been received:

| Requirement | Received Date |
|---|---|
| Carrier Contracting Forms | 06/28/2006 |
| Current License | 06/28/2006 |
| L & C Transmittal Form | 06/28/2006 |
| Agency Agreement | 06/28/2006 |

Vanessa Nally
LBEG
Direct Phone: 727-791-9083 / 888-577-5234
Direct Fax: 727-451-0567
EMail: vnally@lbeg.net

AGL / Bechtel 000520

 **AMERICAN GENERAL**                     Licensing and Contracting
                                                              Transmittal Form

**AIG Life Brokerage**
A division of the American International Companies.®

Date: 6-28-06        Submitted By: Gary A Richardson   IMO/BGA Code: OPU67

Corporation Name: _____

Agent Name : Hans Bechtel

Agent Social Security No./Tax ID No.:  **Redacted**  · ___ ___ ___ Agent Number (if available): _____

## CONTACT INFORMATION

| FOR MISSING DOCUMENTS OR PAGES | FOR L & C FOLLOWUP |
|---|---|
| Name: Vanessa Nally | Name: Vanessa Nally |
| Phone: 727-791-9080 | Phone: 727-791-9080 |
| Fax: 727-451-0567 | Fax: 727-451-0567 |
| E-Mail: vnally@lbeg.net | E-mail: vnally@lbeg.net |

## DOCUMENTS ATTACHED

| | |
|---|---|
| ☐ Address Forms | ☒ Errors and Omissions |
| ☒ Agency Agreement | ☒ License Copies |
| ☐ Annualization Forms | ☐ Life Sales Agreements |
| ☒ Appointment Application | ☐ Outstanding Requirement _____ |
| ☐ Assignment of Commission | ☐ State Correspondence |
| ☐ Contract Change Form | ☒ Requests for Termination |
| ☐ EFT Forms and Voided Check | ☐ _____ |

SPECIAL INSTRUCTIONS:

## NEW BUSINESS APPLICATION WITH LICENSING AND CONTRACTING PAPERWORK

*If more than one new business application is being submitted, provide information for the one which has the oldest Application Signed date.*

Policy Number: _____ Policyholder Name: _____

State Application Signed In: _____ Application Signed Date: _____

AIG American General
Midwest Operations Center
P O Box 401
Milwaukee, WI 53201

AGLC101767

AGL / Bechtel 000521

 **AMERICAN GENERAL**

**Appointment Application**

AIG Life Brokerage
A division of the American International Companies®

## Part 12   Upline Data – To be completed by individual recruiting applicant.

Applicant Name: **Hans Bechtel**
Please Print

Applicant Social Security Number: **Redacted**

Direct Upline Name: **Gary A Richardson**
Please Print

Agency Code Number: **0PU67**

## Part 13   AGL Commission Section – Must be completed.

Contract Level Requested  ☐ IMO/BGA   ☐ MGA   ☐ MGA 1   ☑ GA   ☐ GA 1   ☐ GA 2   ☐ Agent/Producer

Commission Level for American General Life

| Life Products: | First Year Level: | S | If First Year is selected, Renewal Level must also be indicated. |
| | Renewal Level: | D | |
| (HO Approval) | Productivity Bonus Level | O | |

| Specialty Products: (Street Max = J) | First Year/Renewal Level | J | |
| AGL Annuity Deferred & Immediate: | First Year/Renewal Level | D | If First Year is selected, Renewal level must also be indicated. |
| A & H: | First Year Level | D | |
| | Renewal Level | D | |

## Part 14   Additional Forms Section

Annualization:  Please attach annualization form when requesting annualization. (Available on a limited basis.)

Electronic Funds Transfer (EFT)  Please attach EFT form and a copy of a voided check when requesting to receive commissions electronically.

Appointment, Bonus and Annualization require Home Office Approval.

AGLB1068                                 S                                      Rev05/06

 **AMERICAN GENERAL**

**Appointment Application**

AIG Life Brokerage
A division of the American International Companies.®

## Part 1   Individual and Principal of Corporation.   This is Required Information.

Please Print Clearly

Social Security Number: [Redacted]

Name: Bechtel                    Hans                              E.
      Last Name                  First Name               Middle Initial

Date of Birth: [Redacted]          Sex: ☒ Male   ☐ Female
      month    day    year

Resident/Home: 2974 Pine Forest Dr.
                              Physical Address

Palm Harbor                          FL              34684
      City                          State            Zip

Resident/Home Phone Number: 727-786-4283        E-Mail Hbechtel@lbeg.net

Business Address: 2963 Gulf to Bay Blvd Suite 330    Clearwater    FL    33759
                  Physical Address                   City         State   Zip

Business Phone Number: 727-791-9083 ext247      Fax Number 727-712-1459

☐ I am an officer of the below corporation.

## Part 2   Corporate Applicants Required Information.

Please Print Clearly                    Individual Applicants Do Not Complete This Section

Tax ID Number _____

Corporate Name: _____

Corporate Address: _____

_____
      City                          State            Zip

Corporate Phone Number: _____    State Incorporated: _____

Fax Number: _____    E-Mail: _____

Primary Officer for Corporate Records: _____

Background Information reported on page -- should provide information for the Officer of the corporation.

## Part 3   Recruiter Section – IMO/BGA Only.   *Complete ONLY when address used is NOT the above business address*

Primary mailing address, phone contact, e-mail and faxes will be communicated to the following:

☑ All Home Office Mail and other Communication will be directed to other than the above. Please direct to:

Agency Name:  Life Brokerage Equity Group        Agency Code Number: CRULE7

Business Address: 2963 Gulf -to- Bay Blvd #330  Commission Address: 2963 Gulf -to- Bay Blvd #330

Clearwater FL 33759                              Clearwater FL 33759
City    State    ZIP                            City    State    ZIP

Fax Number: 727-451-0567                        Phone Number: 727-791-9080

E-Mail Address: vnally@lbeg.net                 ☐ Please check when commission check is
                                                  mailed directly to agent's business address.

AGLB1058                              1                              Rev0406

AGL / Bechtel 000523

 **AMERICAN GENERAL**                    ## Appointment Application

**AIG Life Brokerage**
A division of the American International Companies.®

## Part 4   Licensing and State Appointment Request

Attach copies of licenses for all requested state appointments. Provide appropriate fees for nonresident appointments.

Social Security Number: **Redacted**

Applicant Name: _Henr F. Bechtel_

Licensed for: ☒ Life   ☒ Health   Contracted as: ☒ Individual   ☐ Agency

Resident State: _Florida_   Resident License Number: _P041162_

Nonresident Appointment State(s): _____
Attach applicable fees and licenses for states listed above.

FLORIDA residents must specify the Florida county where their business office is located: _Pinellas County_

NON-RESIDENT FLORIDA agents soliciting in Florida must list the county(s) in Florida in which they intend to personally solicit:

_____

_____

## Part 5   Variable Licensing - Complete ONLY when variable appointment is requested.

Please complete the following ONLY when requesting variable appointment.

Who is your Broker/Dealer? _____

CRD Number: _____

Circle all current NASD licenses that you hold:   6   7   22   24   26   63   Other: _____

### Independent Wholesaler Election

Some broker-dealers may permit third-party wholesaling firms to offer certain services and support to registered representatives in order to facilitate sales of American General Life Insurance Company (AGL) variable universal life products. These firms are referred to by AGL as Independent Wholesalers (IW). In order for you to sell AGL's variable universal life insurance products through an IW, an IW agreement must be in place with the BGA/IMO and your broker-dealer must be informed, pursuant to NASD Rule 3030, of your IW election. Additionally, this IW Election Form must be submitted to AIG Life Brokerage, which documents your IW election. If you wish to obtain support through an IW, please indicate your election below.

☐ IW Election: _____
(Name of IW Firms and Code Number)

## Part 6   Errors and Omissions Insurance Coverage

IMO candidates, attach copy of E & O Certificate. All others, please complete the following:

A. Name of Carrier: _____

B. Policy Number: _____

C. Name of Insured: _____

D. Coverage Amounts (include both per act and aggregate amounts):

   Per Act: _____

   Aggregate: _____

E. Expiration Date (month/date/year): _____

AGLB1058                                    2                                    Rev0406

AGL / Bechtel 000524



**AMERICAN GENERAL**

## Appointment Application

AIG Life Brokerage
A division of the American International Companies.®

### Part 7   Background Information Required On All Applicants

If this is a corporate application, the questions should be answered by and about the agency principal.

Social Security Number: _____ Redacted _____

CONFIDENTIAL HISTORY/BACKGROUND INFORMATION

Please provide complete details for any "yes" answers in the Remarks section. Attach additional documentation as necessary.

1. Have you ever been convicted of or plead guilty or no contest to:
   a. Any Felony?                                                                    ☐ Yes   ☒ No
   b. Any Misdemeanor?                                                               ☐ Yes   ☒ No
   c. A violation of federal or state securities or investment related regulations?  ☐ Yes   ☒ No

2. Are you currently under investigation by any legal or regulatory authority?        ☐ Yes   ☒ No

3. Do you now owe money to any life or health insurance company?                      ☐ Yes   ☒ No

4. Have you or a firm in which you were a partner, officer or Director been declared bankrupt or been party to a bankruptcy or receivership proceeding, or have you had a salary garnished or had liens or judgements against you?   ☐ Yes   ☒ No

5. Has any insurance company or securities broker-dealer terminated your contract or permitted you to resign for reason other than lack of sales?   ☐ Yes   ☒ No

6. Have you ever been the subject of a consumer-initiated complaint or proceeding by any self-regulatory body or any securities commodities or insurance regulatory body or organization or employer?   ☐ Yes   ☒ No

7. Has a bonding company ever denied, paid out on or revoked a bond for you?           ☐ Yes   ☒ No

8. Have you ever had a claim filed against your professional liability or errors and omissions insurance coverage?   ☐ Yes   ☒ No

9. Has any insurance department, government agency or self-regulatory authority ever denied, suspended, revoked, censured or barred your license or registration or disciplined you with fines or by restricting your activities?   ☐ Yes   ☒ No

REMARKS SECTION: Details of "yes"

_____
_____
_____
_____
_____
_____

AGL / Bechtel 000525

06/28/2006  08:54   7277120329                    LBEG                         PAGE  08/19

 **AMERICAN GENERAL**                    **Appointment Application**

AIG Life Brokerage
A division of the American International Companies.®

## Part 8   Signature of Individual -or- Principal of Corporation

Social Security Number: **Redacted**

I have read and received, as of the date indicated below, the notice concerning investigative consumer reports, as required by law. I understand that in signing this form, I hereby authorize the American General Life Companies that I have requested appointments with (hereinafter collectively referred to as the "American General Affiliates") to investigate my background, including my credit history and interviews with former employers and/or primary insurance company. I authorize the American General Affiliates and individuals named in the application to give the American General Affiliates any information regarding me that they have available. I agree that if any of my answers to the questions in Part 7 change, I will notify, in writing, American General Affiliates within 10 business days of the incident which would cause an answer to change. I understand that falsification of information or failure to update the answers on this application may result in termination of appointment(s) with all American General Affiliates. In addition, I hereby authorize the American General Affiliates to report information about earnings and debit balances to any credit bureau or similar organization.

I further authorize American General Affiliates, to verify my previous employment and securities registration history through the CRD system. I hereby authorize American General Affiliates to share background, licensing and applicant data with their affiliates. I acknowledge that I have received and reviewed the "Compliance Manual" for the American General Life Companies, and/or "Operations Manual" and I agree to abide by those principles, as amended or supplemented from time to time, in representing any of the Companies that appoint me.

Date: _06 / 2 8 / 2006_                    Signature: _____
                                                      Signature of Individual -or- Principal of Corporation

## Part 9   Signature of Recruiter

The undersigned (recommending representative or General Agent) by executing this applicant recommends the applicant to American General Affiliates as a suitable person to represent the companies. The recommending individual or General Agent also agrees to supervise and assume responsibility for the applicant, if appointed by American General Affiliates, in accordance with the terms of his/her Contract.

Signature: _____                    Date: _6 / 21 / 06_
              Signature of Recruiter

Print Name: _Gary Richardson_                    Agent/Agency Code # _OPJ67_
              Print Name of Recruiter                                          Required

## Part 10   Home Office Section

Signature: _____                    Date: ____ / ____ / ____
              (Additional signatures, if required, RVP)

Print Name: _____                    Regional Code Number _____

Home Office Approval: _____          Date: ____ / ____ / ____
                        (if required)

- - - - - - - - - - - - - - - - - - - - - - - - Remove and leave Part 11 with applicant. - - - - - - - - - - - - - - - - - - - - - - - -

## Part 11   Fair Credit Reporting Act - Notice of Proposed Investigative Consumer Report

Pursuant to the Fair Credit Reporting Act, this notice is to inform you that as a component of our contracting and appointing process, each company with which you have requested an appointment may request an investigative consumer report which may include information related to your character, general reputation, personal characteristics, and mode of living. You have the right to request in writing, within a reasonable period of time after receipt of this notice, a complete disclosure of the scope of the investigation requested and a written summary of your rights under the Fair Credit Reporting Act. Send your request to: Licensing and Contracting Department, 750 W. Virginia St. Milwaukee, WI 53204. Disclosure information must be in writing and mailed to you, along with the written summary of your rights, within five (5) business days after receipt of your written request. Also each company with which you have requested an appointment may share the information contained in the investigative report and other information in your file with its affiliates, unless you send a written request to the above-described address directing that this information not be disclosed or shared with affiliates.

AGLB1058                                          -4-                                    Rev0406

AGL / Bechtel 000526

## AGENCY AGREEMENT

Each life insurance company's products are separately underwritten and independently supported by the representative company. The below listed companies are members of the American International Group, Inc.

FOR

Last Name _Bechtel_    First Name _Hans_    Middle Initial _E_

If Representative is a Corporation, the full Corporate name must appear above, and an authorized officer must sign and indicate the officer's title.

Individual
Social Security Number __Redacted__

Corporation
Tax Identification Number_____

Representative

Signature _Hans E. Bechtel_    Title_ I/14

American General Life Companies

Contract Date _05272006_
To be completed by Home Office

Home Office Authorized Signator

American General Life Insurance Company, Houston, TX
A division of the American International Companies®

AGLB1016-1105

**WE KNOW LIFE.°**



AIG American General
AIG Life Brokerage

AGL / Bechtel 000527

TABLE OF CONTENTS

**Paragraph**
Recitals
Definitions

I.      Authorized Acts
II.     Limitation of Authority
III.    Advertising
IV.     Relationship
V.      Compensation
VI.     Vesting
VII.    General Provisions
VIII.   Termination
IX.     Amendment
X.      Personal Guarantee
XI.     Effective Date
XII.    Investigation Notice
XIII.   Federal Crime Control Act
XIV.    Confidentiality

**Schedules**

A. Commission Schedule — Primary Company

B. Appointment Application

AGL / Bechtel 000528

## RECITALS

Representative ("REPRESENTATIVE") has executed an Appointment Application requesting appointments with one or more life insurance subsidiaries of American International Group, Inc.

The Appointment Application designates one of the life insurers as a Primary Appointing Company (the "Primary Company").

This Agreement together with the Appointment Application and Commission Schedules for each separate life insurer that appoints REPRESENTATIVE comprise the REPRESENTATIVE's contract with each of the insurers that appoints REPRESENTATIVE.

Execution of this Agreement by the Primary Company and the REPRESENTATIVE evidences their Agreement to transact business in accordance with the terms and conditions set forth in this Agreement.

If REPRESENTATIVE requested appointment with one or more affiliates of the Primary Company in the Appointment Application, or a subsequent amendment to that form, REPRESENTATIVE's execution of this Agreement evidences REPRESENTATIVE's Agreement to transact business with each affiliated insurer in accordance with the terms and conditions set forth in this Agreement. Each affiliated insurer that appoints REPRESENTATIVE and sends a company commission schedule to REPRESENTATIVE has agreed to transact business with REPRESENTATIVE according to the terms and conditions of this Agreement.

## DEFINITIONS

A. Primary Company – the Primary Company is designated in the Appointment Application as the Primary Company. The Primary Company's responsibilities include executing the REPRESENTATIVE Agreement, performing background checks and providing convention credits and other sales incentives, if any, to REPRESENTATIVE.

B. Affiliated Company – the Affiliated Company(ies) is any other life insurance subsidiary of American International Group, Inc. that is identified in the Appointment Application, appoints REPRESENTATIVE and provides a company commission schedule as evidence of its Agreement to transact business with REPRESENTATIVE according to the terms of this Agreement.

C. Insurer – the term Insurer as used in this Agreement refers to each of the life insurance companies that appoints REPRESENTATIVE, including the Primary Company.

D. Jurisdiction – Eligibility for, or receipt of, override compensation on another Representative's business.

E. Nonpublic Personal Information: "Nonpublic Personal Information" of customers or consumers ("NPI") includes, but is not limited to, names, addresses, account balances, account numbers, account activity, social security numbers, taxpayer identification numbers, and sensitive financial and health information. NPI in cludes information on each party's forms or in a database of any kind, information created by each party, information collected by or on behalf of a party, and personally identifiable information derived from NPI. Reference to NPI of Company or REPRESENTATIVE shall include NPI collected by or on behalf of American International Group, Inc., its successors, subsidiaries, affiliates agents or contractors. There may be instances where each party will have the same NPI which may be subject to different privacy policies and procedures according to the notices provided to the customer or consumer by the respective parties to the Agreement.

F. Protected Health Information: The terms "Protected Health Information" and "PHI" shall have the meaning set forth in 45 C.F.R. Sec. 164.501 as may be amended. Other terms shall have the same meanings as set forth in the applicable definition of the Health Insurance Portability and Accessibility Act (HIPAA), as amended, Privacy Rule or other regulations.

## I, AUTHORIZED ACTS

A. The REPRESENTATIVE is authorized to conduct Insurer's business for the Insurer's products covering such classes of risks as the Insurer may authorize and in those states where the product is approved and REPRESENTATIVE is licensed and appointed as required by state law. If REPRESENTATIVE is a corporation, then the principal(s) of such corporation must also be licensed individually, if required pursuant to appropriate state law.

B. The REPRESENTATIVE is authorized to collect and promptly remit to the Insurer the first premium on business produced by the REPRESENTATIVE in accordance with the Insurer's rules and regulations.

C. The REPRESENTATIVE will promptly deliver issued policies in accordance with Insurer's policies and procedures.

D. All monies, settlements, or documents received by the REPRESENTATIVE for, or on behalf of, the Insurer shall be received by the REPRESENTATIVE in a fiduciary capacity and immediately paid over or delivered to the Insurer, except as may be otherwise directed in writing by the Insurer.

AGL / Bechtel 000529

## II. LIMITATION OF AUTHORITY

The REPRESENTATIVE is without authority to perform any act or thing other than that expressly granted in this Agreement and expressly agrees not to perform any of the following acts:

1. Make, modify, alter or discharge any policy.
2. Extend the time payment of any premium.
3. Waive any forfeiture.
4. Guarantee dividends or interest rates.
5. Incur any debt or liability in the name of the Insurer.
6. Withhold, commingle or convert to the use of the REPRESENTATIVE or the benefit of others, any monies, securities, policies or receipts belonging to the Insurer, the applicant, or the insured, or fail to promptly submit to the Insurer any applications for policies.
7. Accept or deposit any check or draft for premiums made payable to other than the Insurer.
8. Unless in the best interest of the policyowner, directly or indirectly induce or attempt to induce any policyowners of Insurer to relinquish, surrender, replace or lapse their policies.

## III. ADVERTISING / USE OF LOGO

REPRESENTATIVE may, at REPRESENTATIVE's expense, advertise Insurer's products, provided the text of all advertising, including any form of sales/promotional material such as, but not limited to business cards, stationery or other indications of agency under this Agreement and including the use of the names "American International Group, Inc.," "AIG," "American General," their logos or the name of any Insurer is approved in writing by the company before use.

## IV. RELATIONSHIP

The relationship between the Insurer and the REPRESENTATIVE shall be that of principal and independent contractor, and nothing contained herein shall be construed as creating the relationship of employer and employee for any purpose, including tax purposes. REPRESENTATIVE agrees to be responsible for all taxes as a self-employed independent contractor. The REPRESENTATIVE shall be free to exercise independent judgment as to the time and manner in which the REPRESENTATIVE shall perform the services authorized under this Agreement. Any material supplied by the Insurer is for the purpose of supporting the activities of the REPRESENTATIVE.

## V. COMPENSATION

A. Subject to the provisions hereof and the rules of the Insurer, the full compensation of the REPRESENTATIVE shall be payable at the applicable rate set forth in the Schedule of Commission in effect at the date the first full premium is received by the Insurer, which Schedule of Commission and all amendments, supplements and replacements thereof and therein are hereby made a part of this Agreement.

B. Commission is subject to change at any time by written notice by the Insurer to the REPRESENTATIVE, but no such change shall affect commissions on any policy issued prior to the effective date of such change.

C. If commission rates are not now shown in the Schedule of Commission, including conversions, replacements or the exercise of re-entry provisions or, if special premium rate quotations are made, commission rates shall be such as may be fixed by the Insurer as of the time when issue is effective in accordance with rates and practices of the Insurer then in effect.

D. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall lapse because of nonpayment of premium and shall be replaced or reinstated, any commissions on the new or reinstated policy shall be payable only at the sole discretion of the Insurer.

E. To be entitled to commissions, if any, the REPRESENTATIVE's name or the name of another Representative under your jurisdiction must appear as soliciting agent on the application for insurance. Disputes respecting commissions shall be subject to decision and settlement by the Insurer and the Insurer's decision shall be final and binding upon the parties involved.

F. Whenever, in the judgment of the Insurer, it shall become advisable to recall any policy issued before delivery thereof is made, the REPRESENTATIVE shall promptly refund to the Insurer any commissions received on account of such policy. Whenever, after delivery, the Insurer shall effect or procure the surrender, rescission or cancellation of any policy and refund premiums paid thereon, the Insurer shall have the right to charge back commissions and demand that the REPRESENTATIVE repay such commissions to the Insurer. If the Insurer shall refund or waive the premium or premiums under the provisions of any disability waiver of premium rider, the REPRESENTATIVE shall lose all rights to commission and persistency fees as applied to such refunded or waived premiums, and shall repay any amounts advanced. An Insurer may include in its Commission Schedule, which is incorporated as a part of this Agreement, guidelines describing more specifically the circumstances under which it will charge back commissions on certain products. In the absence of such guidelines, the Insurer's rights shall be as described in this Section V. Compensation.

G. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall be converted or replaced, any commissions on the new policy shall be subject to adjustment and payable only at the sole discretion of the Insurer.

AGL / Bechtel 000530

H. Except where prohibited by any State, the REPRESENTATIVE is responsible for all license fees, including those of its Representatives. The Insurer's discretion shall govern with respect to whether the Insurer shall charge to the REPRESENTATIVE's commission or other compensation account the cost of obtaining and renewing the REPRESENTATIVE's and its Representatives' license or licenses and/or appointment fees. This practice is subject to change at the discretion of the Insurer.

I. Policy applications for any Insurer will be issued and commissions paid by the Insurer.

## VI. VESTING

A. As long as this Agreement remains in effect, all first year and renewal commissions shall be paid as they accrue; however, any such payments are subject to the schedule of commissions in effect at the date the first full premium is received by the Insurer, the provisions and rules of the Insurer regarding minimum first year and renewal commissions required to issue a check.

B. During any consecutive 12-month period following the termination of this Agreement, total renewal commissions are less than the minimum required by the Insurer, vesting automatically terminates and no additional commission payments will be due from the Insurer.

C. In the event this Agreement is terminated by the death of the REPRESENTATIVE, all first year and renewal commissions shall be paid as they accrue, subject only to the terms and conditions of paragraphs A and B immediately above. In the absence of a properly executed beneficiary designation on file with the insurer, all such payments, if any, shall be made to the surviving spouse and at the death of the surviving spouse to the estate of said spouse. If the REPRESENTATIVE dies leaving no surviving spouse, such monies will be paid to the estate of the REPRESENTATIVE; provided however, that if the REPRESENTATIVE is a corporation or a partnership, all such payments will be paid to said corporation or partnership.

## VII. GENERAL PROVISIONS

A. The Insurer may make such changes and decisions as it deems advisable in the conduct of its business, including the discontinuance of any policy form or the withdrawal from any territory, and the Insurer shall incur no liability to the REPRESENTATIVE by reason of its doing so.

B. The Insurer shall have the right to test market any of its products on a select basis and at the discretion of the Insurer.

C. The REPRESENTATIVE shall indemnify and hold the Insurer harmless against or from any and all expense, costs, causes of action, and damages including without limitation, reasonable attorney fees, resulting from or growing out of any unauthorized or negligent act of commission or omission by the REPRESENTATIVE or its employees, directors, officers, or Representatives under its jurisdiction. This provision shall survive termination of this Agreement.

D. The Insurer shall have a prior right and offset to all commissions and fees payable hereunder toward any indebtedness and/or other obligations due from the REPRESENTATIVE or anyone under the Jurisdiction of the REPRESENTATIVE to any Primary Company and/or Affiliated Company/ies with interest at the legal rate. This prior right and offset shall not be extinguished by the termination of this Agreement. Following the termination of any Representative under the Jurisdiction of the REPRESENTATIVE, should the amount in any commission account of that Representative be insufficient to repay any amount due the Insurer, the debit will become the responsibility of the REPRESENTATIVE, in accordance with the Insurer's then current debit collection procedure.

E. Neither the Agreement, any duties or delegation under this Agreement, nor the commissions or fees accruing hereunder, nor any interest herein, nor any right or claim created hereby or arising by reason of the REPRESENTATIVE acting hereunder, shall be assignable, except upon the written consent of the Insurer.

F. Forbearance or failure of the Insurer to insist upon performance of this Agreement or to enforce its rights hereunder, shall not constitute a waiver of its rights or privileges hereunder or of its subsequent right to insist upon such performance.

G. This Agreement, including the Appointment Application and any Commission Schedule(s) incorporated as part of the Agreement, contains all promises, inducements and representations between the parties. This Agreement supersedes any and all previous Agreements between the parties herein pertaining to the solicitation of the Insurer's products and the payment of monies to the REPRESENTATIVE provided, however, that rights or obligations which have already accrued (and would survive termination) under any previous contract between the Insurer and the REPRESENTATIVE shall not be hereby impaired.

H. The Insurer reserves the right to decline or modify any application for insurance.

I. This Agreement shall not be effective until executed by the Primary Company. Once this Agreement is effective with the Primary Company, it may become effective with Affiliated Company(ies) as described herein.

AGL / Bechtel 000531

J.  Should the REPRESENTATIVE, at any time, violate any provision of Section II of this Agreement, entitled Limitation of Authority, or commit any fraud upon Insurer or its policyholders; have a license as agent or broker revoked for cause after notice and hearing by a state Insurance department or otherwise act to prejudice materially the interests of Insurer, the REPRESENTATIVE shall, at the option of the Insurer, forfeit any and all rights to all commissions and monies that the REPRESENTATIVE might otherwise have under this Agreement, vested or not. It is expressly agreed that termination of this Agreement shall not terminate this provision.

K.  The REPRESENTATIVE agrees to maintain complete and accurate records of the marketing and sale of the Insurer's products. The Insurer reserves the right to inspect such records and other documents in each REPRESENTATIVE's files that relate to the marketing, attempted sale or sale of the Insurer's products. If the Insurer chooses to inspect such records, it will endeavor to do so during normal business hours and after giving reasonable notice, unless, in the judgment of the Insurer, unusual circumstances require inspection at other times or inspection without prior notice. This provision shall survive termination of this Agreement for a period of two (2) years.

L.  For as long as this Agreement is in force, the REPRESENTATIVE will maintain Errors and Omissions (E&O) coverage and will provide the Insurer annually proof of such E&O coverage in a manner acceptable to the Insurer.

M.  If the REPRESENTATIVE is served with a regulatory inquiry or legal papers involving Insurer business, the REPRE-SENTATIVE shall immediately notify the Insurer by sending to that Insurer's Compliance Officer, a copy of the papers, served by overnight delivery, by the end of the business day next following the day of receipt by the REPRESENTATIVE.

N.  The REPRESENTATIVE is responsible for assuring that any Representative under the Jurisdiction of the REPRESEN-TATIVE: (1) become fully informed as to the provisions and benefits of each product offered by the Insurer for which the Representative conducts Insurer business; (2) represent such products adequately and fairly to prospective purchasers; and (3) act in compliance with the Insurer's policies and procedures as set out in the Customer Service and  Compliance Manual, Operations Manual, or otherwise communicated to the REPRESENTATIVE, including, without limitation, those regarding suitability of sales inquiries and compliance with the Insurer's principles and code of ethical market conduct.

O.  When the Insurer assigns to the REPRESENTATIVE any agency not recruited by the REPRESENTATIVE, then the Insurer may reassign that agency to another upline of the Insurer's choice at any time and without the necessity of a release from the REPRESENTATIVE. If the Insurer wishes to remove any agency recruited by the REPRESENTATIVE from the Jurisdiction of the REPRESENTATIVE, the Insurer will negotiate a release; however, such release will not be unreasonably withheld by the REPRESENTATIVE.

P.  REPRESENTATIVE is not entitled to participate in any REPRESENTATIVE benefit programs except those which are provided by the Primary Company.  REPRESENTATIVE is not eligible to participate in, or to receive any benefits from, any programs provided by the Affiliate Company/ies.

Q.  Disputes arising under this Agreement shall be  subject to the laws of the state where the Insurer  engaged in the dispute is located.

R.  The area within which the REPRESENTATIVE shall have the right to represent the Insurer is not assigned exclusively to the REPRESENTATIVE.

S.  REPRESENTATIVE agrees to conform to all regulations of the Insurance Department and the Insurance laws in the state(s) in which the REPRESENTATIVE is conducting Insurer's business.

T.  REPRESENTATIVE understands and agrees that (i) the Primary Company may amend the Agreement or the Company's policies, rules and procedures, in order to comply with changes in laws or regulations, or, as the Company deems appropriate related to changes in laws or regulations, through communication of any such amendment to REPRESENTATIVE, and (ii) For purposes of any such amendment, communication may include, but not be limited to, posting of amendment information on the Primary Company's websites or other means of making such information known or available to the agent.

## VIII. TERMINATION

A.  This Agreement shall automatically terminate upon the death of REPRESENTATIVE if REPRESENTATIVE is an individual or upon dissolution of REPRESENTATIVE if REPRESENTATIVE is a corporation or a partnership.

B.  This Agreement shall terminate upon the revocation or non-renewal of the REPRESENTATIVE's license.

C.  This Agreement may be terminated with or without cause by any Insurer (subject to provisions D and E below) or the REPRESENTATIVE by sending written notice of such termination to the last known address of the other party.

D.  Upon termination, the REPRESENTATIVE shall immediately pay in cash to the Insurer all sums that are due
or become due hereunder and shall immediately deliver to the Insurer all materials connected with the
business of the Insurer and belonging to the Insurer. Such materials include, but are not limited to, rate
cards, letters, records, computer software, general supplies or any and all other indications of agency
provided by the Insurer. It is expressly agreed that termination of this Agreement does not release the
REPRESENTATIVE from continuing liability to the Insurer for immediate repayment of any and all unearned
first year commissions or bonuses.

E.  Termination of this Agreement by the Primary Company terminates all contracts with Affiliated Company/ies
without specific notice to the REPRESENTATIVE required by the Insurer. However, any Affiliated Company
may terminate its agency relationship with the REPRESENTATIVE, which will not, of itself, terminate the
Primary Company agency relationship. Upon termination, the Insurer may assign a servicing agency;
however, such assignment will not of itself affect the vesting of existing business.

F.  Termination of this Agreement automatically terminates any previous Agreement to represent the Insurer
that terminated the Agreement.

## IX. AMENDMENT

This contract cannot be changed by any oral promise or statement and no written modification will bind the
Insurer unless approved by the President of the Insurer making the modification.

## X. PERSONAL GUARANTEE

Each and every individual who signs this Agreement warrants that they have authority to bind the entity on whose
behalf they are signing.

## XI. EFFECTIVE DATE

The agreed effective date will be the date that this Agreement to represent is signed and acknowledged by the
Primary Company as hereinafter specified.

## XII. INVESTIGATION NOTICE

The undersigned hereby authorizes the Primary and Affiliated Company/ies to conduct an investigation concern-
ing character, credit reputation and personal traits and releases those contacted and the Insurer from any liability
with respect to the content of the information provided and any resulting action by the Insurer including the
sharing of such information or the termination of this Agreement to represent.

## XIII. FEDERAL CRIME CONTROL ACT

A. Undersigned warrants it:

1. has not been convicted of any criminal felony involving dishonesty or breach of trust or

2. has obtained written authorization to engage in the business of insurance from the Insurance Department in
the state where REPRESENTATIVE resides which REPRESENTATIVE agrees to produce upon insurer request.

B. The REPRESENTATIVE agrees to update the representations in the Confidential History/Background Informa-
tion Section of Part 4 of the Appointment Application by notifying the Primary Company in writing within thirty
(30) days, if there should be a change in the response to any question in the Information Section of Part 4 of the
Appointment Application.

## XVI. PRIVACY CONTROL & SECURITY

A.  "Protected Health Information" and "Nonpublic Personal Information" shall be collectively called the
"information" in this Section, XVI, Privacy Control and Security.

B.  All information which any party obtains as a result of this relationship shall not be collected, or used, dis-
closed, reused or redisclosed to any third party, except in carry out the purposes for which the information
was disclosed. The REPRESENTATIVE shall maintain the confidentiality of information consistent with the
Company's notices of privacy practices, policies and procedures, provided that such use or disclosure would
not violate any applicable laws, rules or regulations if done by the Company.

C.  The REPRESENTATIVE shall use commercially reasonable efforts and appropriate safeguards to maintain the
integrity, confidentiality, and security of PHI and to prevent the unauthorized use or disclosure of PHI and to

AGL / Bechtel 000533

comply with the security standards or the HIPAA security regulations.  Upon Company request Agent will provide to the Company access to and documentation regarding any safeguards.

D.   Each party shall be permitted to disclose relevant aspects of the other parties' Information to its officers, agents, subcontractors and employees only to the extent that such disclosure is reasonably necessary for the performance of its duties and obligations under the Agreement; provided that such party shall take all reasonable measures to ensure that the Information of another party is not disclosed or reproduced in contravention of each of the obligations of this Agreement by such party's officers, agents, subcontractors and employees.  The obligations of this Agreement are personal to each party.

E.   The REPRESENTATIVE shall report promptly within seven (7) days to the Company's Privacy Officer in writing any use or disclosure of Information that is not permitted by the Agreement or any addendum, of which the REPRESENTATIVE becomes aware.  REPRESENTATIVE'S report shall identify:  (i) the nature of the unauthorized use or disclosure, (ii) the Information used or disclosed, (iii) who made the unauthorized use or received the unauthorized disclosure, (iv) what REPRESENTATIVE has done or shall do to mitigate any deleterious effect of the unauthorized use or disclosure, (v) what corrective action REPRESENTATIVE has taken or shall take to prevent future similar unauthorized use or disclosure, and (vi) any other information as reasonably requested by the Company's Privacy Officer.

F.   The REPRESENTATIVE shall require all of its employees, representatives, subcontractors or agents that receive or have access to Information to agree to adhere to the same restrictions and conditions on the use and/or disclosure of Information that apply herein, including the obligation to return or destroy the Information as provided for below.

G.   The obligations in this Agreement shall not restrict any disclosure by any party pursuant to any applicable state or federal laws, or by request or order of any court or government agency.  The REPRESENTATIVE shall immediately notify Company upon receipt by the REPRESENTATIVE of any request from the Department of Health and Human Services for the REPRESENTATIVE'S internal practices, books, and records relating to the use and disclosure of Information.

H.   Within ten (10) days of receiving a written request from Company, the REPRESENTATIVE shall provide to the Company such information as is requested by the Company, if any, to permit the Company to respond to a request by an individual for access to, an amendment of, or an accounting of the disclosures of the individual's PHI in accordance with 45 C.F.R. Secs.  164.524, 164.526, and 164.528.  If an individual contacts the REPRESENTATIVE directly about access to, amendment of, or an accounting of disclosures of his/her PHI, the REPRESENTATIVE will forward such request immediately to the Company and not provide such access, amendment, or disclosure.  Notwithstanding anything herein to the contrary, REPRESENTATIVE shall make reasonable efforts to cooperate with the Company in responding to any such requests and enabling the Company to comply with federal laws and regulations regarding the timing of response to such requests.

I.   This Section XVI, Privacy Protection and Security, will survive the termination or expiration of this Agreement.  Upon termination of the Agreement, the REPRESENTATIVE shall return or destroy (with the Company's written permission) all Information that REPRESENTATIVE maintains in any form pursuant to the Agreement, and retain no copies of such information.  However, if the Company determines that such return or destruction is not feasible, REPRESENTATIVE will continue to extend the protections of this Addendum to such PHI and limit further use of the Information to the purposes that make the return or destruction not feasible.  The respective rights and obligations of each party pursuant to this subsection shall survive the termination of the Agreement.

AGL81056-1106

AGL / Bechtel 000534

**AIG** AMERICAN GENERAL  *Scan* **Licensing and Contracting Change Form**

*LCCONTMAINT*
*3UW73*

AIG Life Brokerage
A division of the American International Companies.®

## Part 1   Change Request

### Type of Change Request

☐ Compensation Change   ☐ Contract Level Change   ☐ Second Contract   ☑ Transfer   ☐ Other   ☐ USL

Comments: Agent moving to new IMO Kevin Bechtel / Life Brokerage Partners LLC

## Part 2  Individual and Principal of Corporation.   This is Required Information.

Please Print Clearly

Social Security Number: **Redacted** - __ __ - __ __ __ __     Agent Number: 3UW73

Name: Bechtel     Hans
      Last Name        First Name        Middle Initial

Date of Birth: **Redacted**  _____   Sex: ☑ Male   ☐ Female
      month      day      year

Resident/Home: 2974 Pine Forest Dr.
                                    Physical Address

Palm Harbor      FL      34684
      City                        State      Zip

Resident/Home Phone Number: _____     E-Mail _____

Business Address: 3982 Tampa Road   Oldsmar FL 34677
      Physical Address      City      State      Zip

Business Phone Number: 727-791-9080      Fax Number: 813-792-6187

☐ I am an officer of the below corporation.

## Part 3   Corporate Applicants Required Information.

Please Print Clearly      Individual Applicants Do Not Complete This Section

Tax ID Number _____

Corporate Name: _____

Corporate Address: _____

_____
      City      State      Zip

Corporate Phone Number: _____     State Incorporated: _____

Fax Number: _____     E-Mail: _____

Primary Officer for Corporate Records: _____

Background information reported on page – should provide information for the Officer of the corporation.

AGLC100204      1      Rev:03AG

*NONE*

**AIG** **AMERICAN GENERAL**

AIG Life Brokerage
A division of the American International Companies.®

## Part 4   Recruiter Section - IMO/BGA Only. *Complete ONLY when address used is NOT the above business address*

Social Security Number: **Redacted** ___ - __ - ____

Primary mailing address, phone contact, e-mail and faxes will be communicated to the following:

☑ All Home Office Mail and other Communication will be directed to other than the above. Please direct to:

Agency Name: Life Brokerage Partners LLC          Agency Code Number: _____

Business Address: 3982 Tampa Rd.          Commission Address: 3982 Tampa Rd.

Oldsmar   FL   34677                    Oldsmar   FL   34677
_____          _____
City        State        ZIP                City        State        ZIP

Fax Number: 727-712-1459          Phone Number: 727-791-9080

E-Mail Address: vnally@lifebrokeragepartners.com          ☐ Please check when commission check is
mailed directly to agent's business address.

## Part 5   Licensing and State Appointment Request

Attach copies of licenses for all requested state appointments. Provide appropriate fees for nonresident appointments.

Applicant Name: **Hans Bechtel**
_____

Licensed for: ☑ Life   ☐ Health     Contracted as: ☑ Individual   ☐ Agency

Resident State: FL ____   Resident License Number: _____

Nonresident Appointment State(s): DE, TX
_____
Attach applicable fees and licenses for states listed above.

*FLORIDA residents must specify the Florida county where their business office is located:* _____

*NON-RESIDENT FLORIDA agents soliciting in Florida must list the county(s) in Florida in which they intend to personally solicit:*
_____

## Part 6   Variable Licensing - Complete ONLY when variable appointment is requested.

Please complete the following ONLY when requesting variable appointment.

Who is your Broker/Dealer? _____

CRD Number: _____

Circle all current NASD licenses that you hold:   6   7   22   24   26   63   Other: _____

### Independent Wholesaler Election

Some broker-dealers may permit third-party wholesaling firms to offer certain services and support to registered representatives in order to facilitate sales of American General Life Insurance Company (AGL) variable universal life products. These firms are referred to by AGL as Independent Wholesalers (IW). In order for you to sell AGL's variable universal life insurance products through an IW, an IW agreement must be in place with the BGA/IMO and your broker-dealer must be informed, pursuant to NASD Rule 3030, of your IW election. Additionally, this IW Election Form must be submitted to AIG Life Brokerage, which documents your IW election. If you wish to obtain support through an IW, please indicate your election below.

☐ IW Election: _____
(Name of IW Firms and Code Number)

AGL:100204                                2                                Rev.0306

AGL / Bechtel 000536

**AIG** **AMERICAN GENERAL**

AIG Life Brokerage
A division of the American International Companies.®

## Part 7  AGL Commission Section - Must be completed.

Social Security Number  **Redacted**

Contract Level Requested  ☐ IMO/BGA  ☐ MGA  ☐ MGA 1  ☐ GA  ☑ GA 1  ☐ GA 2  ☐ Agent/Producer

### Requested Commission Level for American General Life

Please note that any change to the compensation of the agents in your downline will directly affect your own commission payout. For example, if you raise the First Year compensation level for your agents' Life Brokerage products, your overwrites will correspondingly decrease. If you are unsure how a change will affect you and/or your agent, please contact the Commissions Department prior to submitting this form.

| | | Current Level (existing agents only) | Requested Level | |
|---|---|---|---|---|
| Life Products: | First Year | | | *PLEASE NOTE:* Commission level changes will affect policies with an application-signed date later than the effective date of the commission change. |
| | Renewal | | | |
| | Productivity Bonus | | | |
| | | ☐ Retro back to Jan. 1 of current year | ☐ Non Retro Policies on go-forward basis only | |
| Specialty Products: (Street Max = J) | First Year/Renewals | | | |
| Annuity Products: | First Year | | | |
| A & H: | First Year | | | |
| | Renewal Level | | | |
| Variable Products: | IW Overwrite | | | |
| | Renewal Level | | | |

Please indicate if you wish this change to apply to pending policies: ☐ No  ☑ Yes.
If you answered yes, please attach a list of policies with this request.
**Annualization:** Available on a limited basis. Please attach the completed annualization form when requesting. Please note: Annualization changes will affect policies with an application-signed date later than the effective date of the annualization request.

## Part 8  USL Commission Section if applicable.

☐ United States Life - Please attach appropriate signed Commission Schedules

Contract Level Requested:  ☐ GA  ☐ GA1  ☐ GA2  ☐ Producer

GA1: Override _____%           GA2:  ERA_____%

ERA _____%

Mail Commission Statements to: ☐ GA  ☐ GA1  ☐ GA2  ☐ Producer

*PLEASE NOTE: Commission level changes will affect policies with an application-signed date later than the effective date of the commission change.*

## Part 9  Signature of Recruiter/IMO

The undersigned [recommending representative or General Agent] by executing this applicant recommends the applicant to American General Affiliates as a suitable person to represent the companies. The recommending individual or General Agent also agrees to supervise and assume responsibility for the applicant if appointed by American General Affiliates, in accordance with the terms of his/her Contract.

Signature: _____          Date: 3 , 1 , 07
                  Signature of Agency

Agency Name  Gary A Richardson              Date: 3 , 1 , 07
                  Print Name of Agency

AGLC100204                             3                          Rev0306

AGL / Bechtel 000537

AGL / Bechtel 000538

## AGENCY AGREEMENT

*Each life insurance company's products are separately underwritten and independently supported by the representative company. The below listed companies are members of the American International Group, Inc.*

FOR

Last Name Wechsler   First Name Stephen   Middle Initial B

If Representative is a Corporation, the full Corporate name must appear above, and an authorized officer must sign and indicate the officer's title.

Individual
Social Security Number _____ **Redacted** _____

Corporation
Tax Identification Number _____

Representative

Signature _____   Title _____

American General Life Companies

Contract Date _____
To be completed by Home Office          Home Office Authorized Signator

American General Life Insurance Company, Houston, TX
A division of the American International Companies ®

4G181051-1105

**WE KNOW LIFE.®**

AIG  **AMERICAN GENERAL**
AIG Life Brokerage

AGL / Bechtel 000539

**TABLE OF CONTENTS**

**Paragraph**
Recitals
Definitions

I.      Authorized Acts
II.     Limitation of Authority
III.    Advertising
IV.     Relationship
V.      Compensation
VI.     Vesting
VII.    General Provisions
VIII.   Termination
IX.     Amendment
X.      Personal Guarantee
XI.     Effective Date
XII.    Investigation Notice
XIII.   Federal Crime Control Act
XIV.    Confidentiality

**Schedules**

A. Commission Schedule – Primary Company

B. Appointment Application

AGL / Bechtel 000540

## RECITALS

Representative ("REPRESENTATIVE") has executed an Appointment Application requesting appointments with one or more life insurance subsidiaries of American International Group, Inc.

The Appointment Application designates one of the life insurers as a Primary Appointing Company (the "Primary Company").

This Agreement together with the Appointment Application and Commission Schedules for each separate life insurer that appoints REPRESENTATIVE comprise the REPRESENTATIVE's contract with each of the insurers that appoints REPRESENTATIVE.

Execution of this Agreement by the Primary Company and the REPRESENTATIVE evidences their Agreement to transact business in accordance with the terms and conditions set forth in this Agreement.

If REPRESENTATIVE requested appointment with one or more affiliates of the Primary Company in the Appointment Application, or a subsequent amendment to that form, REPRESENTATIVE's execution of this Agreement evidences REPRESENTATIVE's Agreement to transact business with each affiliated insurer in accordance with the terms and conditions set forth in this Agreement. Each affiliated insurer that appoints REPRESENTATIVE and sends a company commission schedule to REPRESENTATIVE has agreed to transact business with REPRESENTATIVE according to the terms and conditions of this Agreement.

## DEFINITIONS

A. **Primary Company** – the Primary Company is designated in the Appointment Application as the Primary Company. The Primary Company's responsibilities include executing the REPRESENTATIVE Agreement, performing background checks and providing convention credits and other sales incentives, if any, to REPRESENTATIVE.

B. **Affiliated Company** – the Affiliated Company(ies) is any other life insurance subsidiary of American International Group, Inc. that is identified in the Appointment Application, appoints REPRESENTATIVE and provides a company commission schedule as evidence of its Agreement to transact business with REPRESENTATIVE according to the terms of this Agreement.

C. **Insurer** – the term Insurer as used in this Agreement refers to each of the life insurance companies that appoints REPRESENTATIVE, including the Primary Company.

D. **Jurisdiction** – Eligibility for, or receipt of, override compensation on another Representative's business.

E. **Nonpublic Personal Information:** "Nonpublic Personal Information" of customers or consumers ("NPI") includes, but is not limited to, names, addresses, account balances, account numbers, account activity, social security numbers, taxpayer identification numbers, and sensitive financial and health information. NPI  includes information on each party's forms or in a database of any kind, information created by each party, information collected by or on behalf of a party, and personally identifiable information derived from NPI. Reference to NPI of Company or REPRESENTATIVE shall include NPI collected by or on behalf of American International Group, Inc., its successors, subsidiaries, affiliates agents or contractors. There may be instances where each party will have the same NPI which may be subject to different privacy policies and procedures according to the notices provided to the customer or consumer by the respective parties to this Agreement

F. **Protected Health Information:** The terms "Protected Health Information" and "PHI" shall have the meaning set forth in 45 C.F.R. Sec. 164.501 as may be amended. Other terms shall have the same meanings as set forth in the applicable definition of the Health Insurance Portability and Accessibility Act (HIPAA), as amended, Privacy Rule or other regulations.

## I. AUTHORIZED ACTS

A. The REPRESENTATIVE is authorized to conduct Insurer's business for the Insurer's products covering such classes of risks as the Insurer may authorize and in those states where the product is approved and REPRESENTATIVE is licensed and appointed as required by state law.  If REPRESENTATIVE is a corporation, then the principal(s) of such corporation must also be licensed individually, if required pursuant to appropriate state law.

B. The REPRESENTATIVE is authorized to collect and promptly remit to the Insurer the first premium on business produced by the REPRESENTATIVE in accordance with the Insurer's rules and regulations.

C. The REPRESENTATIVE will promptly deliver issued policies in accordance with Insurer's policies and procedures.

D. All monies, settlements, or documents received by the REPRESENTATIVE for, or on behalf of, the Insurer shall be received by the REPRESENTATIVE in a fiduciary capacity and immediately paid over or delivered to the Insurer, except as may be otherwise directed in writing by the Insurer.

AGL / Bechtel 000541

## II. LIMITATION OF AUTHORITY

The REPRESENTATIVE is without authority to perform any act or thing other than that expressly granted in this Agreement and expressly agrees not to perform any of the following acts:

1. Make, modify, alter or discharge any policy.
2. Extend the time payment of any premium.
3. Waive any forfeiture.
4. Guarantee dividends or interest rates.
5. Incur any debt or liability in the name of the Insurer.
6. Withhold, commingle or convert to the use of the REPRESENTATIVE or the benefit of others, any monies, securities, policies or receipts belonging to the Insurer, the applicant, or the Insured, or fail to promptly submit to the Insurer any applications for policies.
7. Accept or deposit any check or draft for premiums made payable to other than the Insurer.
8. Unless in the best interest of the policyowner, directly or indirectly induce or attempt to induce any policyowners of Insurer to relinquish, surrender, replace or lapse their policies.

## III. ADVERTISING / USE OF LOGO

REPRESENTATIVE may, at REPRESENTATIVE's expense, advertise Insurer's products, provided the text of all advertising, including any form of sales/promotional material such as, but not limited to business cards, stationery or other indications of agency under this Agreement and including the use of the names "American International Group, Inc.," "AIG," "American General," their logos or the name of any Insurer is approved in writing by the company before use.

## IV. RELATIONSHIP

The relationship between the Insurer and the REPRESENTATIVE shall be that of principal and independent contractor, and nothing contained herein shall be construed as creating the relationship of employer and employee for any purpose, including tax purposes, REPRESENTATIVE agrees to be responsible for all taxes as a self-employed independent contractor. The REPRESENTATIVE shall be free to exercise independent judgment as to the time and manner in which the REPRESENTATIVE shall perform the services authorized under this Agreement. Any material supplied by the Insurer is for the purpose of supporting the activities of the REPRESENTATIVE.

## V. COMPENSATION

A. Subject to the provisions hereof and the rules of the Insurer, the full compensation of the REPRESENTATIVE shall be payable at the applicable rate set forth in the Schedule of Commission in effect at the date the first full premium is received by the Insurer, which Schedule of Commission and all amendments, supplements and replacements thereof and thereto are hereby made a part of this Agreement.

B. Commission is subject to change at any time by written notice by the Insurer to the REPRESENTATIVE, but no such change shall affect commissions on any policy issued prior to the effective date of such change.

C. If commission rates are not now shown in the Schedule of Commission, including conversions, replacements or, the exercise of re-entry provisions or, if special premium rate quotations are made, commission rates shall be such as may be fixed by the Insurer as of the time when issue is effective in accordance with rates and practices of the Insurer then in effect.

D. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall lapse because of nonpayment of premium and shall be replaced or reinstated, any commissions on the new or reinstated policy shall be payable only at the sole discretion of the Insurer.

E. To be entitled to commissions, if any, the REPRESENTATIVE's name or the name of another Representative under your jurisdiction must appear as soliciting agent on the application for insurance. Disputes respecting commissions shall be subject to decision and settlement by the Insurer and the Insurer's decision shall be final and binding upon the parties involved.

F. Whenever, in the judgment of the Insurer, it shall become advisable to recall any policy issued before delivery thereof is made, the REPRESENTATIVE shall promptly refund to the Insurer any commissions received on account of such policy, Whenever, after delivery, the Insurer shall effect or procure the surrender, rescission or cancellation of any policy and refund premiums paid thereon, the Insurer shall have the right to charge back commissions and demand that the REPRESENTATIVE repay such commissions to the Insurer. If the Insurer shall refund or waive the premium or premiums under the provisions of any disability waiver of premium rider, the REPRESENTATIVE shall lose all right to commission and persistency fees as applied to such refunded or waived premiums, and shall repay any amounts advanced. An Insurer may include in its Commission Schedule, which is incorporated as a part of this Agreement, guidelines describing more specifically the circumstances under which it will charge back commissions on certain products. In the absence of such guidelines, the Insurer's rights shall be as described in this Section V. Compensation.

G. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall be converted or replaced, any commissions on the new policy shall be subject to adjustment and payable only at the sole discretion of the Insurer.

AGL / Bechtel 000542

H. Except where prohibited by any State, the REPRESENTATIVE is responsible for all license fees, including those of its Representatives. The Insurer's discretion shall govern with respect to whether the Insurer shall charge to the REPRESENTATIVE's commission or other compensation account the cost of obtaining and renewing the REPRESENTATIVE's and its Representatives' license or licenses and/or appointment fees. This practice is subject to change at the discretion of the Insurer.

I. Policy applications for any Insurer will be issued and commissions paid by the Insurer.

## VI. VESTING

A. As long as this Agreement remains in effect, all first year and renewal commissions shall be paid as they accrue; however, any such payments are subject to the schedule of commissions in effect at the date the first full premium is received by the Insurer, the provisions and rules of the Insurer regarding minimum first year and renewal commissions required to issue a check.

B. During any consecutive 12-month period following the termination of this Agreement, total renewal commissions are less than the minimum required by the Insurer, vesting automatically terminates and no additional commission payments will be due from the Insurer.

C. In the event this Agreement is terminated by the death of the REPRESENTATIVE, all first year and renewal commissions shall be paid as they accrue, subject only to the terms and conditions of paragraphs A and B immediately above. In the absence of a properly executed beneficiary designation on file with the Insurer, all such payments, if any, shall be made to the surviving spouse and at the death of the surviving spouse to the estate of said spouse. If the REPRESENTATIVE dies leaving no surviving spouse, such monies will be paid to the estate of the REPRESENTATIVE; provided however, that if the REPRESENTATIVE is a corporation or a partnership, all such payments will be paid to said corporation or partnership.

## VII. GENERAL PROVISIONS

A. The Insurer may make such changes and decisions as it deems advisable in the conduct of its business, including the discontinuance of any policy form or the withdrawal from any territory, and the Insurer shall incur no liability to the REPRESENTATIVE by reason of its doing so.

B. The Insurer shall have the right to test market any of its products on a select basis and at the discretion of the Insurer.

C. The REPRESENTATIVE shall indemnify and hold the Insurer harmless against or from any and all expense, costs, causes of action, and damages including without limitation, reasonable attorney fees, resulting from or growing out of any unauthorized or negligent act of commission or omission by the REPRESENTATIVE or its employees, directors, officers, or Representatives under its jurisdiction. This provision shall survive termination of this Agreement.

D. The Insurer shall have a prior right and offset to all commissions and fees payable hereunder toward any indebtedness and/or other obligations due from the REPRESENTATIVE or anyone under the jurisdiction of the REPRESENTATIVE to any Primary Company and/or Affiliated Company/ies with interest at the legal rate. This prior right and offset shall not be extinguished by the termination of this Agreement. Following the termination of any Representative under the jurisdiction of the REPRESENTATIVE, should the amount in any commission account of that Representative be insufficient to repay any amount due the Insurer, the debit will become the responsibility of the REPRESENTATIVE, in accordance with the Insurer's then current debit collection procedure.

E. Neither the Agreement, any duties or delegation under this Agreement, nor the commissions or fees accruing hereunder, nor any interest herein, nor any right or claim created hereby or arising by reason of the REPRESENTATIVE acting hereunder, shall be assignable, except upon the written consent of the Insurer.

F. Forbearance or failure of the Insurer to insist upon performance of this Agreement or to enforce its rights hereunder, shall not constitute a waiver of its rights or privileges hereunder or of its subsequent right to insist upon such performance.

G. This Agreement, including the Appointment Application and any Commission Schedule(s) incorporated as part of the Agreement, contains all promises, inducements and representations between the parties. This Agreement supersedes any and all previous Agreements between the parties hereto pertaining to the solicitation of the Insurer's products and the payment of monies to the REPRESENTATIVE provided, however, that rights or obligations which have already accrued (and would survive termination) under any previous contract between the Insurer and the REPRESENTATIVE shall not be hereby impaired.

H. The Insurer reserves the right to decline or modify any application for insurance.

I. This Agreement shall not be effective until executed by the Primary Company. Once this Agreement is effective with the Primary Company, it may become effective with Affiliated Company(ies) as described herein.

AGL / Bechtel 000543

J.  Should the REPRESENTATIVE, at any time, violate any provision of Section II of this Agreement, entitled Limitation of Authority, or commit any fraud upon Insurer or its policyholders; have a license as agent or broker revoked for cause after notice and hearing by a state insurance department or otherwise act to prejudice materially the interests of Insurer, the REPRESENTATIVE shall, at the option of the Insurer, forfeit any and all rights to all commissions and monies that the REPRESENTATIVE might otherwise have under this Agreement, vested or not. It is expressly agreed that termination of this Agreement shall not terminate this provision.

K.  The REPRESENTATIVE agrees to maintain complete and accurate records of the marketing and sale of the Insurer's products. The Insurer reserves the right to inspect such records and other documents in each REPRESENTATIVE's files that relate to the marketing, attempted sale or sale of the Insurer's products. If the Insurer chooses to inspect such records, it will endeavor to do so during normal business hours and after giving reasonable notice, unless, in the judgment of the Insurer, unusual circumstances require inspection at other times or inspection without prior notice. This provision shall survive termination of this Agreement for a period of two (2) years.

L.  For as long as this Agreement is in force, the REPRESENTATIVE will maintain Errors and Omissions (E&O) coverage and will provide the Insurer annually proof of such E&O coverage in a manner acceptable to the Insurer.

M.  If the REPRESENTATIVE is served with a regulatory inquiry or legal papers involving Insurer business, the REPRE-SENTATIVE shall immediately notify the Insurer by sending to that Insurer's Compliance Officer, a copy of the papers, served by overnight delivery, by the end of the business day next following the day of receipt by the REPRESENTATIVE.

N.  The REPRESENTATIVE is responsible for assuring that any Representative under the jurisdiction of the REPRESEN-TATIVE: (1) become fully informed as to the provisions and benefits of each product offered by the Insurer for which the Representative conducts Insurer business; (2) represent such products adequately and fairly to prospective purchasers; and (3) act in compliance with the Insurer's policies and procedures as set out in the Customer Service and  Compliance Manual, Operations Manual, or otherwise communicated to the REPRESENTATIVE, including, without limitation, those regarding suitability of sales inquiries and compliance with the Insurer's principles and code of ethical market conduct.

O.  When the Insurer assigns to the REPRESENTATIVE any agency not recruited by the REPRESENTATIVE, then the Insurer may reassign that agency to another upline of the Insurer's choice at any time and without the necessity of a release from the REPRESENTATIVE. If the Insurer wishes to remove any agency recruited by the REPRESENTATIVE from the jurisdiction of the REPRESENTATIVE, the Insurer will negotiate a release; however, such release will not be unreasonably withheld by the REPRESENTATIVE.

P.  REPRESENTATIVE is not entitled to participate in any REPRESENTATIVE benefit programs except those which are provided by the Primary Company. REPRESENTATIVE is not eligible to participate in, or to receive any benefits from, any programs provided by the Affiliate Company/ies.

Q.  Disputes arising under this Agreement shall be  subject to the laws of the state where the Insurer  engaged in the dispute is located.

R.  The area within which the REPRESENTATIVE shall have the right to represent the Insurer is not assigned exclusively to the REPRESENTATIVE.

S.  REPRESENTATIVE agrees to conform to all regulations of the Insurance Department and the insurance laws in the state(s) in which the REPRESENTATIVE is conducting Insurer's business.

T.  REPRESENTATIVE understands and agrees that (i) the Primary Company may amend the Agreement or the Company's policies, rules and procedures, in order to comply with changes in laws or regulations, or, as the Company deems appropriate related to changes in laws or regulations, through communication of any such amendment to REPRESENTATIVE, and (ii) For purposes of any such amendment, communication may include, but not be limited to, posting of amendment information on the Primary Company's websites or other means of making such information known or available to the agent.

**VIII. TERMINATION**

A.  This Agreement shall automatically terminate upon the death of REPRESENTATIVE if REPRESENTATIVE is an individual or upon dissolution of REPRESENTATIVE if REPRESENTATIVE is a corporation or a partnership.

B.  This Agreement shall terminate upon the revocation or non-renewal of the REPRESENTATIVE's license.

C.  This Agreement may be terminated with or without cause by any Insurer (subject to provisions D and E below) or the REPRESENTATIVE by sending written notice of such termination to the last known address of the other party.

AGL / Bechtel 000544

D.  Upon termination, the REPRESENTATIVE shall immediately pay in cash to the Insurer all sums that are due or become due hereunder and shall immediately deliver to the Insurer all materials connected with the business of the Insurer and belonging to the Insurer. Such materials include, but are not limited to, rate cards, letters, records, computer software, general supplies or any and all other indications of agency provided by the Insurer. It is expressly agreed that termination of this Agreement does not release the REPRESENTATIVE from continuing liability to the Insurer for immediate repayment of any and all unearned first year commissions or bonuses.

E.  Termination of this Agreement by the Primary Company terminates all contracts with Affiliated Company/ies without specific notice to the REPRESENTATIVE required by the Insurer. However, any Affiliated Company may terminate its agency relationship with the REPRESENTATIVE, which will not, of itself, terminate the Primary Company agency relationship. Upon termination, the Insurer may assign a servicing agency; however, such assignment will not of itself affect the vesting of existing business.

F.  Termination of this Agreement automatically terminates any previous Agreement to represent the Insurer that terminated the Agreement.

## IX. AMENDMENT

This contract cannot be changed by any oral promise or statement and no written modification will bind the Insurer unless approved by the President of the Insurer making the modification.

## X. PERSONAL GUARANTEE

Each and every individual who signs this Agreement warrants that they have authority to bind the entity on whose behalf they are signing.

## XI. EFFECTIVE DATE

The agreed effective date will be the date that this Agreement to represent is signed and acknowledged by the Primary Company as hereinafter specified.

## XII. INVESTIGATION NOTICE

The undersigned hereby authorizes the Primary and Affiliated Company/ies to conduct an investigation concerning character, credit reputation and personal traits and releases those contacted and the Insurer from any liability with respect to the content of the information provided and any resulting action by the Insurer including the sharing of such information or the termination of this Agreement to represent.

## XIII. FEDERAL CRIME CONTROL ACT

A. Undersigned warrants is:

1. has not been convicted of any criminal felony involving dishonesty or breach of trust or

2. has obtained written authorization to engage in the business of insurance from the Insurance Department in the state where REPRESENTATIVE resides which REPRESENTATIVE agrees to produce upon Insurer request.

B.  The REPRESENTATIVE agrees to update the representations in the Confidential History/Background Information Section of Part 4 of the Appointment Application by notifying the Primary Company in writing within thirty (30) days, if there should be a change in the response to any question in the Information Section of Part 4 of the Appointment Application.

## XVI. PRIVACY CONTROL & SECURITY

A.  "Protected Health Information" and "Nonpublic Personal Information" shall be collectively called the "Information" in this Section, XVI, Privacy Control and Security.

B.  All information which any party obtains as a result of this relationship shall not be collected, or used, disclosed, reused or redisclosed to any third party, except to carry out the purposes for which the information was disclosed. The REPRESENTATIVE shall maintain the confidentiality of information consistent with the Company's notices of privacy practices, policies and procedures, provided that such use or disclosure would not violate any applicable laws, rules or regulations if done by the Company.

C.  The REPRESENTATIVE shall use commercially reasonable efforts and appropriate safeguards to maintain the integrity, confidentiality, and security of PHI and to prevent the unauthorized use or disclosure of PHI and to

AGL / Bechtel 000545

comply with the security standards or the HIPAA security regulations.  Upon Company request Agent will provide to the Company access to and documentation regarding any safeguards.

D.   Each party shall be permitted to disclose relevant aspects of the other parties' information to its officers, agents, subcontractors and employees only to the extent that such disclosure is reasonably necessary for the performance of its duties and obligations under the Agreement; provided that such party shall take all reasonable measures to ensure that the information of another party is not disclosed or reproduced in contravention of each of the obligations of this Agreement by such party's officers, agents, subcontractors and employees.  The obligations of this Agreement are personal to each party.

E.   The REPRESENTATIVE shall report promptly within seven (7) days to the Company's Privacy Officer in writing any use or disclosure of Information that is not permitted by the Agreement or any addendum, of which the REPRESENTATIVE becomes aware.  REPRESENTATIVE'S report shall identify: (i) the nature of the unauthorized use or disclosure, (ii) the Information used or disclosed, (iii) who made the unauthorized use or received the unauthorized disclosure, (iv) what REPRESENTATIVE has done or shall do to mitigate any deleterious effect of the unauthorized use or disclosure, (v) what corrective action REPRESENTATIVE has taken or shall take to prevent future similar unauthorized use or disclosure, and (vi) any other information as reasonably requested by the Company's Privacy Officer.

F.   The REPRESENTATIVE shall require all of its employees, representatives, subcontractors or agents that receive or have access to Information to agree to adhere to the same restrictions and conditions on the use and/or disclosure of Information that apply herein, including the obligation to return, or destroy the Information as provided for below.

G.   The obligations in this Agreement shall not restrict any disclosure by any party pursuant to any applicable state or federal laws, or by request or order of any court or government agency.  The REPRESENTATIVE shall immediately notify Company upon receipt by the REPRESENTATIVE of any request from the Department of Health and Human Services for the REPRESENTATIVE'S internal practices, books, and records relating to the use and disclosure of Information.

H.   Within ten (10) days of receiving a written request from Company, the REPRESENTATIVE shall provide to the Company such information as is requested by the Company, if any, to permit the Company to respond to a request by an individual for access to, an amendment of, or an accounting of the disclosures of the individual's PHI in accordance with 45 C.F.R. Secs. 164.524, 164.526, and 164.528.  If an individual contacts the REPRESENTATIVE directly about access to, amendment of, or an accounting of disclosures of his/her PHI, the REPRESENTATIVE will forward such request immediately to the Company and not provide such access, amendment, or disclosure.  Notwithstanding anything herein to the contrary, REPRESENTATIVE shall make reasonable efforts to cooperate with the Company in responding to any such requests and enabling the Company to comply with federal laws and regulations regarding the timing of response to such requests.

I.   This Section XVI, Privacy Protection and Security, will survive the termination or expiration of this Agreement.  Upon termination of the Agreement, the REPRESENTATIVE shall return or destroy (with the Company's written permission) all Information that REPRESENTATIVE maintains in any form pursuant to the Agreement, and retain no copies of such Information.  However, if the Company determines that such return or destruction is not feasible, REPRESENTATIVE will continue to extend the protections of this Addendum to such PHI and limit further use of the Information to the purposes that make the return or destruction not feasible.  The respective rights and obligations of each party pursuant to this subsection shall survive the termination of the Agreement.

AGL / Bechtel 000546

# AIG  AMERICAN GENERAL

**Appointment Application**

AIG Life Brokerage
A division of the American International Companies.℠

## Part 12   Upline Data – To be completed by individual recruiting applicant.

Applicant Name: **Bruce Burns**
Please Print

Applicant Social Security Number: **Redacted**

Direct Upline Name: **Gary A Richardson**
Please Print

Agency Code Number: **OPU67**

## Part 13   AGL Commission Section – Must be completed.

Contract Level Requested   ☐ IMO/BGA   ☐ MGA   ☐ GA   ☑ Agent/Producer

Commission Level for American General Life

| | | | |
|---|---|---|---|
| Brokerage Life Products: | First Year Level: | S | *If First Year is selected, Renewal* |
| | Renewal Level | D | *Level must also be indicated.* |
| (HO Approval) | Productivity Bonus Level | O | |
| Supplemental Life Products: | First Year/Renewal Level | J | *If selected, must select Brokerage Life Products Compensation Levels listed above.* |
| AGL Annuity Deferred & Immediate: | First Year/Renewal Level | D | |
| A & H: | First Year Level | D | *If First Year is selected, Renewal* |
| | Renewal Level | D | *Level must also be indicated.* |

## Part 14   Additional Forms Section

☐ Annualization:  Please attach annualization form when requesting annualization. (Available on a limited basis.)

☐ Electronic Funds Transfer (EFT)   Please attach EFT form and a copy of a voided check when requesting to receive commissions electronically.

Appointment, Bonus and Annualization require Home Office Approval.

AGLD1058                                               5                                               Rev0305

AGL / Bechtel 000547

 **AMERICAN GENERAL**

**Appointment Application**

AIG Life Brokerage
A division of the American International Companies®

## Part 1   Individual and Principal of Corporation.   This is Required Information.

Please Print Clearly

Social Security Number: **Redacted**

Name: **BURNS**          **BRUCE**          **F**
        Last Name          First Name          Middle Initial

Date of Birth: **Redacted**          Sex: ☒ Male   ☐ Female
        month   day   year

Resident/Home: **1514 Richter Drive**          IL   **60510**
                        Physical Address          State   Zip

**Batavia**
City

Resident/Home Phone Number: **630-761-8019**   E-Mail **bruce@wholesalelife.com**

Business Address: **1001 E Wilson St Ste 100, Batavia IL 60510**
                        Physical Address          City          State          Zip

Business Phone Number: **630-879-5085**   Fax Number **630-879-8809**

☐ I am an officer of the below corporation.

## Part 2   Corporate Applicants Required Information.

Please Print Clearly          **Individual Applicants Do Not Complete This Section**

Tax ID Number

Corporate Name:

Corporate Address:
_____
                City                                    State          Zip

Corporate Phone Number:          State Incorporated:

Fax Number:          E-Mail:

Primary Officer for Corporate Records:

Background information reported on page -- should provide information for the Officer of the corporation.

## Part 3   Recruiter Section - IMO/BGA Only. *Complete ONLY when address used is NOT the above business address*

Primary mailing address, phone contact, e-mail and faxes will be communicated to the following:

☐ All Home Office Mail and other Communication will be directed to other than the above. Please direct to:

Agency Name: **Life Brokerage Equity Group**          Agency Code Number:

Business Address: **2983 Gulf -to- Bay Blvd #330** Commission Address: **2963 Gulf -to- Bay Blvd #330**

**Clearwater FL 33759**                              **Clearwater FL 33759**
        City          State          Zip                        City          State          Zip

Fax Number: **727-451-0567**          Phone Number: **727-791-9080**

E-Mail Address: **vnally@lbeg.net**          ☐ Please check when commission check is
                                                                mailed directly to agent's business address.

AGLR1058          Rev0306

**Appointment Application**


**AIG AMERICAN GENERAL**

AIG Life Brokerage
A division of the American International Companies.®

## Part 4   Licensing and State Appointment Request

Attach copies of licenses for all requested state appointments. Provide appropriate fees for nonresident appointments.

Social Security Number: **Redacted**

Applicant Name: Bruce F Buens

Licensed for: ☒ Life   ☐ Health      Contracted as: ☒ Individual   ☐ Agency

Resident State: IL    ·Resident License Number:

Nonresident Appointment State(s): DE
                                  Attach applicable fees and licenses for states listed above.

*FLORIDA residents must specify the Florida county where their business office is located:*

*NON-RESIDENT FLORIDA agents soliciting in Florida must list the county(s) in Florida in which they intend to personally solicit:*

## Part 5   Variable Licensing - Complete ONLY when variable appointment is requested.

Please complete the following ONLY when requesting variable appointment.

Who is your Broker/Dealer?

CRD Number:

Circle all current NASD licenses that you hold:   6   7   22   24   26   63   Other:

### Independent Wholesaler Election

Some broker-dealers may permit third-party wholesaling firms to offer certain services and support to registered representatives in order to facilitate sales of American General Life Insurance Company (AGL) variable universal life products. These firms are referred to by AGL as Independent Wholesalers (IW). In order for you to sell AGL's variable universal life insurance products through an IW, an IW agreement must be in place with the BGA/MO and  your broker-dealer must be informed, pursuant to NASD Rule 3030, of your IW election. Additionally, this IW Election Form must be submitted to AIG Life Brokerage, which documents your IW election. If you wish to obtain support through an IW, please indicate your election below.

☐ IW Election:  _____
                     (Name of IW Firms and Code Number)

## Part 6   Errors and Omissions Insurance Coverage

Attach copy of E & O Certificate.

AGLB1008                                         ½                                    Rev0305



**AMERICAN GENERAL**

**Appointment Application**

AIG Life Brokerage
A division of the American International Companies.®

## Part 7   Background Information Required On All Applicants

If this is a corporate application, the questions should be answered by and about the agency principal.

Social Security Number: **Redacted**

### CONFIDENTIAL HISTORY/BACKGROUND INFORMATION

Please provide complete details for any "yes" answers in the Remarks section. Attach additional documentation as necessary.

1. Have you ever been convicted of or plead guilty or no contest to:
   a. Any Felony? ☐ Yes ☑ No
   b. Any Misdemeanor? ☐ Yes ☑ No
   c. A violation of federal or state securities or investment related regulations? ☐ Yes ☑ No

2. Are you currently under investigation by any legal or regulatory authority? ☐ Yes ☑ No

3. Do you now owe money to any life or health insurance company? ☐ Yes ☑ No

4. Have you or a firm in which you were a partner, officer or Director been declared bankrupt or been party to a bankruptcy or receivership proceeding, or have you had a salary garnished or had liens or judgements against you? ☐ Yes ☑ No

5. Has any insurance company or securities broker-dealer terminated your contract or permitted you to resign for reason other than lack of sales? ☐ Yes ☑ No

6. Have you ever been the subject of a consumer-initiated complaint or proceeding by any self-regulatory body or any securities commodities or insurance regulatory body or organization or employer? ☐ Yes ☑ No

7. Has a bonding company ever denied, paid out on or revoked a bond for you? ☐ Yes ☑ No

8. Have you ever had a claim filed against your professional liability or errors and omissions insurance coverage? ☐ Yes ☑ No

9. Has any insurance department, government agency or self-regulatory authority ever denied, suspended, revoked, censured or barred your license or registration or disciplined you with fines or by restricting your activities? ☐ Yes ☑ No

---

**REMARKS SECTION: Details of "yes"**

_____

_____

_____

_____

_____

_____

---

AGL / Bechtel 000550

03/27/2006 13:53          727-461-0567              Venessa Nally                              PAGE 8/23

 **AMERICAN GENERAL**                                    **Appointment Application**

**AIG Life Brokerage**
A division of the American International Companies.®

### Part 8   Signature of Individual -or- Principal of Corporation

Social Security Number:          Redacted

I have read and received, as of the date indicated below, the notice concerning investigative consumer reports, as required by law. I understand that in signing this form, I hereby authorize the American General Life Companies that I have requested appointments with (hereinafter collectively referred to as the "American General Affiliates") to investigate my background, including my credit history and interviews with former employers and/or primary insurance company. I authorize the American General Affiliates and individuals named in the application to give the American General Affiliates any information regarding me that they have available. I agree that if any of my answers to the questions in Part 7 change, I will notify, in writing, American General Affiliates within 10 business days of the incident which would cause an answer to change. I understand that falsification of information or failure to update the answers on this application may result in termination of appointment(s) with all American General Affiliates. In addition, I hereby authorize the American General Affiliates to report information about earnings and debit balances to any credit bureau or similar organization.
I further authorize American General Affiliates, to verify my previous employment and securities registration history through the CRD system.
I hereby authorize American General Affiliates to share background, licensing and applicant data with their affiliates. I acknowledge that I have received and reviewed the "Compliance Manual" for the American General Life Companies, and/or "Operations Manual" and I agree to abide by those principles, as amended or supplemented from time to time, in representing any of the Companies that appoint me.

Date: 3 ' 1 ' 06          Signature: X _____
                                    Signature of Individual -or- Principal of Corporation

### Part 9   Signature of Recruiter

The undersigned [recommending representative or General Agent] by executing this applicant recommends the applicant to American General Affiliates as a suitable person to represent the companies. The recommending individual or General Agent also agrees to supervise and assume responsibility for the applicant if appointed by American General Affiliates, in accordance with the terms of his/her Contract.

Signature: _____          Date: 3 L 06
          Signature of Recruiter

Print Name: Gary Richardson          Agent/Agency Code # OPU67
           Print Name of Recruiter                              Required

### Part 10   Home Office Section

Signature: _____          Date: ___/___/___
          (Additional signatures, if required, RVP)

Print Name: _____          Regional Code Number _____

Home Office Approval: _____          Date: ___/___/___
                     (if required)

- - - - - - - - - - - - - - - - - Remove and leave Part 11 with applicant - - - - - - - - - - - - - - -

### Part 11   Fair Credit Reporting Act - Notice of Proposed Investigative Consumer Report

Pursuant to the Fair Credit Reporting Act, this notice is to inform you that as a component of our contracting and appointing process, each company with which you have requested an appointment may request an investigative consumer report which may include information related to your character, general reputation, personal characteristics, and mode of living. You have the right to request in writing, within a reasonable period of time after receipt of this notice, a complete disclosure of the scope of the investigation requested and a written summary of your rights under the Fair Credit Reporting Act. Send your request to: Licensing and Contracting Department, 750 W. Virginia St. Milwaukee, WI 53204; Disclosure information must be in writing and mailed to you, along with the written summary of your rights, within five (5) business days after receipt of your written request. Also each company with which you have requested an appointment may share the information contained in the investigative report and other information in your file with its affiliates, unless you send a written request to the above-described address directing that this information not be disclosed or shared with affiliates.

AGLR1058                                  4                                              Rev0305

# AGENCY AGREEMENT

*Each life insurance company's products are separately underwritten and independently supported by the representative company. The below listed companies are members of the American International Group, Inc.*

Last Name __BURNS__   FOR  First Name __BRUCE__   Middle Initial __E__

If Representative is a Corporation, the full Corporate name must appear above, and an authorized officer must sign and indicate the officer's title.

Individual
Social Security Number _____ **Redacted**

Corporation
Tax Identification Number _____

Representative

Signature _____  Title _____

American General Life Companies

04032006
Contract Date
To be completed by Home Office          Home Office Authorized Signator

This Agency Agreement may not be used to contract banks, credit unions or thrifts to AIG Annuity Insurance Company and, if submitted for that purpose, will not be accepted. This Agency Agreement may not be used to replace an in force AIG Annuity Insurance Company Agency contract and, if submitted for that purpose, will not be accepted.

AIG Annuity Insurance Company, Amarillo, TX *
American General Life Insurance Company, Houston, TX
A division of the American International Companies. ®

AGL81824-0904

**WE KNOW LIFE.**™

AIG AMERICAN GENERAL.
AIG Life Brokerage



**TABLE OF CONTENTS**

**Paragraph**
Recitals
Definitions

I.      Authorized Acts
II.     Limitation of Authority
III.    Advertising
IV.     Relationship
V.      Compensation
VI.     Vesting
VII.    General Provisions
VIII.   Termination
IX.     Amendment
X.      Personal Guarantee
XI.     Effective Date
XII.    Investigation Notice
XIII.   Federal Crime Control Act
XIV.    Confidentiality

**Schedules**

A. Commission Schedule – Primary Company

B. Appointment Application

AGL / Bechtel 000553

## RECITALS

Representative ("REPRESENTATIVE") has executed an Appointment Application requesting appointments with one or more life insurance subsidiaries of American International Group, Inc.

The Appointment Application designates one of the life insurers as a Primary Appointing Company (the "Primary Company").

This Agreement together with the Appointment Application and Commission Schedules for each separate life insurer that appoints REPRESENTATIVE comprise the REPRESENTATIVE's contract with each of the insurers that appoints REPRESENTATIVE.

Execution of this Agreement by the Primary Company and the REPRESENTATIVE evidences their Agreement to transact business in accordance with the terms and conditions set forth in this Agreement.

If REPRESENTATIVE requested appointment with one or more affiliates of the Primary Company in the Appointment Application, or a subsequent amendment to that form, REPRESENTATIVE's execution of this Agreement evidences REPRESENTATIVE's Agreement to transact business with each affiliated insurer in accordance with the terms and conditions set forth in this Agreement. Each affiliated insurer that appoints REPRESENTATIVE and sends a company commission schedule to REPRESENTATIVE has agreed to transact business with REPRESENTATIVE according to the terms and conditions of this Agreement.

## DEFINITIONS

A. Primary Company – the Primary Company is designated in the Appointment Application as the Primary Company. The Primary Company's responsibilities include executing the REPRESENTATIVE Agreement, performing background checks and providing convention credits and other sales incentives, if any, to REPRESENTATIVE.

B. Affiliated Company – the Affiliated Company(ies) is any other life insurance subsidiary of American International Group, Inc. that is identified in the Appointment Application, appoints REPRESENTATIVE and provides a company commission schedule as evidence of its Agreement to transact business with REPRESENTATIVE according to the terms of this Agreement.

C. Insurer – the term Insurer as used in this Agreement refers to each of the life insurance companies that appoints REPRESENTATIVE, including the Primary Company.

D. Jurisdiction – Eligibility for, or receipt of, override compensation on another Representative's business.

E. Nonpublic Personal Information: "Nonpublic Personal Information" of customers or consumers ("NPI") includes, but is not limited to, names, addresses, account balances, account numbers, account activity, social security numbers, taxpayer identification numbers, and sensitive financial and health information. NPI In cludes information on each party's forms or in a database of any kind, information created by each party, information collected by or on behalf of a party, and personally identifiable information derived from NPI. Reference to NPI of Company or REPRESENTATIVE shall include NPI collected by or on behalf of American International Group, Inc., its successors, subsidiaries, affiliates agents or contractors. There may be instances where each party will have the same NPI which may be subject to different privacy policies and procedures according to the notices provided to the customer or consumer by the respective parties to the Agreement.

F. Protected Health Information: The terms "Protected Health Information" and "PHI" shall have the meaning set forth in 45 C.F.R. Sec. 164.501 as may be amended. Other terms shall have the same meanings as set forth in the applicable definition of the Health Insurance Portability and Accessibility Act (HIPAA), as amended, Privacy Rule or other regulations.

## I. AUTHORIZED ACTS

A. The REPRESENTATIVE is authorized to conduct Insurer's business for the Insurer's products covering such classes of risks as the Insurer may authorize and in those states where the product is approved and REPRESENTATIVE is licensed and appointed as required by state law. If REPRESENTATIVE is a corporation, then the principal(s) of such corporation must also be licensed individually, if required pursuant to appropriate state law.

B. The REPRESENTATIVE is authorized to collect and promptly remit to the Insurer the first premium on business produced by the REPRESENTATIVE in accordance with the Insurer's rules and regulations.

C. The REPRESENTATIVE will promptly deliver issued policies in accordance with Insurer's policies and procedures.

D. All monies, settlements, or documents received by the REPRESENTATIVE for, or on behalf of, the Insurer shall be received by the REPRESENTATIVE in a fiduciary capacity and immediately paid over or delivered to the Insurer, except as may be otherwise directed in writing by the Insurer.

AGL / Bechtel 000554

## II. LIMITATION OF AUTHORITY

The REPRESENTATIVE is without authority to perform any act or thing other than that expressly granted in this Agreement and expressly agrees not to perform any of the following acts:

1. Make, modify, alter or discharge any policy.
2. Extend the time payment of any premium.
3. Waive any forfeiture.
4. Guarantee dividends or interest rates.
5. Incur any debt or liability in the name of the Insurer.
6. Withhold, commingle or convert to the use of the REPRESENTATIVE or the benefit of others, any monies, securities, policies or receipts belonging to the Insurer, the applicant, or the Insured, or fail to promptly submit to the Insurer any applications for policies.
7. Accept or deposit any check or draft for premiums made payable to other than the Insurer.
8. Unless in the best interest of the policyowner, directly or indirectly induce or attempt to induce any policyowners of Insurer to relinquish, surrender, replace or lapse their policies.

## III. ADVERTISING / USE OF LOGO

REPRESENTATIVE may, at REPRESENTATIVE's expense, advertise Insurer's products, provided the text of all advertising, including any form of sales/promotional material such as, but not limited to business cards, stationary or other indications of agency under this Agreement and including the use of the names "American International Group, Inc.," "AIG," "American General," their logos or the name of any Insurer is approved in writing by the company before use.

## IV. RELATIONSHIP

The relationship between the Insurer and the REPRESENTATIVE shall be that of principal and independent contractor, and nothing contained herein shall be construed as creating the relationship of employer and employee for any purpose, including tax purposes. REPRESENTATIVE agrees to be responsible for all taxes as a self-employed independent contractor. The REPRESENTATIVE shall be free to exercise independent judgment as to the time and manner in which the REPRESENTATIVE shall perform the services authorized under this Agreement. Any material supplied by the Insurer is for the purpose of supporting the activities of the REPRESENTATIVE.

## V. COMPENSATION

A. Subject to the provisions hereof and the rules of the Insurer, the full compensation of the REPRESENTATIVE shall be payable at the applicable rate set forth in the Schedule of Commission in effect at the date the first full premium is received by the Insurer, which Schedule of Commission and all amendments, supplements and replacements thereof and thereto are hereby made a part of this Agreement.

B. Commission is subject to change at any time by written notice by the Insurer to the REPRESENTATIVE, but no such change shall affect commissions on any policy issued prior to the effective date of such change.

C. If commission rates are not now shown in the Schedule of Commission, including conversions, replacements or, the exercise of re-entry provisions or, if special premium rate quotations are made, commission rates shall be such as may be fixed by the Insurer as of the time when issue is effective in accordance with rates and practices of the Insurer then in effect.

D. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall lapse because of nonpayment of premium and shall be replaced or reinstated, any commissions on the new or reinstated policy shall be payable only at the sole discretion of the Insurer.

E. To be entitled to commissions, if any, the REPRESENTATIVE's name or the name of another Representative under your jurisdiction must appear as soliciting agent on the application for insurance. Disputes respecting commissions shall be subject to decision and settlement by the Insurer and the Insurer's decision shall be final and binding upon the parties involved.

F. Whenever, in the judgment of the Insurer, it shall become advisable to recall any policy issued before delivery thereof is made, the REPRESENTATIVE shall promptly refund to the Insurer any commissions received on account of such policy. Whenever, after delivery, the Insurer shall elect or procure the surrender, rescission or cancellation of any policy and refund premiums paid thereon, the Insurer shall have the right to charge back commissions and demand that the REPRESENTATIVE repay such commissions to the Insurer. If the Insurer shall refund or waive the premium or premiums under the provisions of any disability waiver of premium rider, the REPRESENTATIVE shall lose all rights to commission and persistency fees as applied to such refunded or waived premiums, and shall repay any amounts advanced. An Insurer may include in its Commission Schedule, which is incorporated as a part of this Agreement, guidelines describing more specifically the circumstances under which it will charge back commissions on certain products. In the absence of such guidelines, the Insurer's rights shall be as described in this Section V, Compensation.

G. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall be converted or replaced, any commissions on the new policy shall be subject to adjustment and payable only at the sole discretion of the Insurer.

H. Except where prohibited by any State, the REPRESENTATIVE is responsible for all license fees, including those of its Representatives. The Insurer's discretion shall govern with respect to whether the Insurer shall charge to the REPRESENTATIVE's commission or other compensation account the cost of obtaining and renewing the REPRESENTATIVE's and its Representatives' license or licenses and/or appointment fees. This practice is subject to change at the discretion of the Insurer.

I. Policy applications for any Insurer will be issued and commissions paid by the Insurer.

## VI. VESTING

A. As long as this Agreement remains in effect, all first year and renewal commissions shall be paid as they accrue; however, any such payments are subject to the schedule of commissions in effect at the date the first full premium is received by the Insurer, the provisions and rules of the Insurer regarding minimum first year and renewal commissions required to issue a check.

B. During any consecutive 12-month period following the termination of this Agreement, total renewal commissions are less than the minimum required by the Insurer, vesting automatically terminates and no additional commission payments will be due from the Insurer.

C. In the event this Agreement is terminated by the death of the REPRESENTATIVE, all first year and renewal commissions shall be paid as they accrue, subject only to the terms and conditions of paragraphs A and B immediately above. In the absence of a properly executed beneficiary designation on file with the Insurer, all such payments, if any, shall be made to the surviving spouse and at the death of the surviving spouse to the estate of said spouse. If the REPRESENTATIVE dies leaving no surviving spouse, such monies will be paid to the estate of the REPRESENTATIVE; provided however, that if the REPRESENTATIVE is a corporation or a partnership, all such payments will be paid to said corporation or partnership.

## VII. GENERAL PROVISIONS

A. The Insurer may make such changes and decisions as it deems advisable in the conduct of its business, including the discontinuance of any policy form or the withdrawal from any territory, and the Insurer shall incur no liability to the REPRESENTATIVE by reason of its doing so.

B. The Insurer shall have the right to test market any of its products on a select basis and at the discretion of the Insurer.

C. The REPRESENTATIVE shall indemnify and hold the Insurer harmless against or from any and all expense, costs, causes of action, and damages including without limitation, reasonable attorney fees, resulting from or growing out of any unauthorized or negligent act of commission or omission by the REPRESENTATIVE or its employees, directors, officers, or Representatives under its jurisdiction. This provision shall survive termination of this Agreement.

D. The Insurer shall have a prior right and offset to all commissions and fees payable hereunder toward any indebtedness and/or other obligations due from the REPRESENTATIVE or anyone under the jurisdiction of the REPRESENTATIVE to any Primary Company and/or Affiliated Company/ies with interest at the legal rate. This prior right and offset shall not be extinguished by the termination of this Agreement. Following the termination of any Representative under the jurisdiction of the REPRESENTATIVE, should the amount in any commission account of that Representative be insufficient to repay any amount due the Insurer, the debit will become the responsibility of the REPRESENTATIVE, in accordance with the Insurer's then current debit collection procedure.

E. Neither the Agreement, any duties or delegation under this Agreement, nor the commissions or fees accruing hereunder, nor any interest herein, nor any right or claim created hereby or arising by reason of the REPRESENTATIVE being hereunder, shall be assignable, except upon the written consent of the Insurer.

F. Forbearance or failure of the Insurer to insist upon performance of this Agreement or to enforce its rights hereunder, shall not constitute a waiver of its rights or privileges hereunder or of its subsequent right to insist upon such performance.

G. This Agreement, including the Appointment Application and any Commission Schedule(s) incorporated as part of the Agreement, contains all promises, inducements and representations between the parties. This Agreement supersedes any and all previous Agreements between the parties herein pertaining to the solicitation of the Insurer's products and the payment of monies to the REPRESENTATIVE provided, however, that rights or obligations which have already accrued (and would survive termination) under any previous contract between the Insurer and the REPRESENTATIVE shall not be hereby impaired.

H. The Insurer reserves the right to decline or modify any application for insurance.

I. This Agreement shall not be effective until executed by the Primary Company. Once this Agreement is effective with the Primary Company, it may become effective with Affiliated Company(ies) as described herein.

AGL / Bechtel 000556



J. Should the REPRESENTATIVE, at any time, violate any provision of Section II of this Agreement, entitled Limitation of Authority, or commit any fraud upon Insurer or its policyholders; have a license as agent or broker revoked for cause after notice and hearing by a state insurance department or otherwise act to prejudice materially the interests of Insurer, the REPRESENTATIVE shall, at the option of the Insurer, forfeit any and all rights to all commissions and monies that the REPRESENTATIVE might otherwise have under this Agreement, vested or not. It is expressly agreed that termination of this Agreement shall not terminate this provision.

K. The REPRESENTATIVE agrees to maintain complete and accurate records of the marketing and sale of the Insurer's products. The Insurer reserves the right to inspect such records and other documents in each REPRESENTATIVE's files that relate to the marketing, attempted sale or sale of the Insurer's products. If the Insurer chooses to inspect such records, it will endeavor to do so during normal business hours and after giving reasonable notice. In the judgment of the Insurer, unusual circumstances require inspection at other times or inspection without prior notice. This provision shall survive termination of this Agreement for a period of two (2) years.

L. For as long as this Agreement is in force, the REPRESENTATIVE will maintain Errors and Omissions (E&O) coverage and will provide the Insurer annually proof of such E&O coverage in a manner acceptable to the Insurer.

M. If the REPRESENTATIVE is served with a regulatory inquiry or legal papers involving Insurer business, the REPRE-SENTATIVE shall immediately notify the Insurer by sending to that Insurer's Compliance Officer, a copy of the papers, served by overnight delivery, by the end of the business day next following the day of receipt by the REPRESENTATIVE.

N. The REPRESENTATIVE is responsible for ensuring that any Representative under the jurisdiction of the REPRESEN-TATIVE: (1) become fully informed as to the provisions and benefits of each product offered by the Insurer for which the Representative conducts Insurer business; (2) represent such products adequately and fairly to prospective purchasers; and (3) act in compliance with the Insurer's policies and procedures as set out in the Customer Service and Compliance Manual, Operations Manual, or otherwise communicated to the REPRESENTATIVE, including, without limitation, those regarding suitability of sales inquiries and compliance with the Insurer's principles and code of ethical market conduct.

O. When the Insurer assigns to the REPRESENTATIVE any agency not recruited by the REPRESENTATIVE, then the Insurer may reassign that agency to another upline of the Insurer's choice at any time and without the necessity of a release from the REPRESENTATIVE. If the Insurer wishes to remove any agency recruited by the REPRESENTATIVE from the jurisdiction of the REPRESENTATIVE, the Insurer will negotiate a release; however, such release will not be unreasonably withheld by the REPRESENTATIVE.

P. REPRESENTATIVE is not entitled to participate in any REPRESENTATIVE benefit programs except those which are provided by the Primary Company. REPRESENTATIVE is not eligible to participate in, or to receive any benefits from, any programs provided by the Affiliate Company/ies.

Q. Disputes arising under this Agreement shall be subject to the laws of the state where the Insurer engaged in the dispute is located.

R. The area within which the REPRESENTATIVE shall have the right to represent the Insurer is not assigned exclusively to the REPRESENTATIVE.

S. REPRESENTATIVE agrees to conform to all regulations of the Insurance Department and the insurance laws in the state(s) in which the REPRESENTATIVE is conducting Insurer's business.

T. REPRESENTATIVE understands and agrees that (i) the Primary Company may amend the Agreement or the Company's policies, rules and procedures, in order to comply with changes in laws or regulations, or, as the Company deems appropriate related to changes in laws or regulations, through communication of any such amendment to REPRESENTATIVE, and (ii) for purposes of any such amendment, communication may include, but not be limited to, posting of amendment information on the Primary Company's websites or other means of making such information known or available to the agent.

VIII. TERMINATION

A. This Agreement shall automatically terminate upon the death of REPRESENTATIVE if REPRESENTATIVE is an individual or upon dissolution of REPRESENTATIVE if REPRESENTATIVE is a corporation or a partnership.

B. This Agreement shall terminate upon the revocation or non-renewal of the REPRESENTATIVE's license.

C. This Agreement may be terminated with or without cause by any Insurer (subject to provisions D and E below) or the REPRESENTATIVE by sending written notice of such termination to the last known address of the other party.

AGL / Bechtel 000557



D.  Upon termination, the REPRESENTATIVE shall immediately pay in cash to the Insurer all sums that are due or become due hereunder and shall immediately deliver to the Insurer all materials connected with the business of the Insurer and belonging to the Insurer. Such materials include, but are not limited to, rate cards, letters, records, computer software, general supplies or any and all other indications of agency provided by the Insurer. It is expressly agreed that termination of this Agreement does not release the REPRESENTATIVE from continuing liability to the Insurer for immediate repayment of any and all unearned first year commissions or bonuses.

E.  Termination of this Agreement by the Primary Company terminates all contracts with Affiliated Company/ies without specific notice to the REPRESENTATIVE required by the Insurer. However, any Affiliated Company may terminate its agency relationship with the REPRESENTATIVE, which will not, of itself, terminate the Primary Company agency relationship. Upon termination, the Insurer may assign a servicing agency; however, such assignment will not of itself affect the vesting of existing business.

F.  Termination of this Agreement automatically terminates any previous Agreement to represent the Insurer that terminated the Agreement.

## IX. AMENDMENT

This contract cannot be changed by any oral promise or statement and no written modification will bind the Insurer unless approved by the President of the Insurer making the modification.

## X. PERSONAL GUARANTEE

Each and every individual who signs this Agreement warrants that they have authority to bind the entity on whose behalf they are signing.

## XI. EFFECTIVE DATE

The agreed effective date will be the date that this Agreement to represent is signed and acknowledged by the Primary Company as hereinafter specified.

## XII. INVESTIGATION NOTICE

The undersigned hereby authorizes the Primary and Affiliated Company/ies to conduct an investigation concerning character, credit reputation and personal traits and releases those contacted and the Insurer from any liability with respect to the content of the information provided and any resulting action by the Insurer including the sharing of such information or the termination of this Agreement to represent.

## XIII. FEDERAL CRIME CONTROL ACT

A. Undersigned warrants it:

1. has not been convicted of any criminal felony involving dishonesty or breach of trust or

2. has obtained written authorization to engage in the business of insurance from the Insurance Department in the state where REPRESENTATIVE resides which REPRESENTATIVE agrees to produce upon Insurer request.

B. The REPRESENTATIVE agrees to update the representations in the Confidential History/Background Information Section of Part 4 of the Appointment Application by notifying the Primary Company in writing within thirty (30) days, if there should be a change in the response to any question in the Information Section of Part 4 of the Appointment Application.

## XVI. PRIVACY CONTROL & SECURITY

A.  "Protected Health Information" and "Nonpublic Personal Information" shall be collectively called the "Information" in this Section, XVI, Privacy Control and Security.

B.  All information which any party obtains as a result of this relationship shall not be collected, or used, disclosed, retained or redisclosed to any third party, except to carry out the purposes for which the information was disclosed. The REPRESENTATIVE shall maintain the confidentiality of information consistent with the Company's notices of privacy practices, policies and procedures, provided that such use or disclosure would not violate any applicable laws, rules or regulations if done by the Company.

C.  The REPRESENTATIVE shall use commercially reasonable efforts and appropriate safeguards to maintain the integrity, confidentiality, and security of PHI and to prevent the unauthorized use or disclosure of PHI and to

AGL / Bechtel 000558



comply with the security standards or the HIPAA security regulations. Upon Company request Agent will provide to the Company access to and documentation regarding any safeguards.

D.  Each party shall be permitted to disclose relevant aspects of the other parties' information to its officers, agents, subcontractors and employees only to the extent that such disclosure is reasonably necessary for the performance of its duties and obligations under the Agreement provided that such party shall take all reasonable measures to assure that the information of another party is not disclosed or reproduced in contravention of each of the obligations of this Agreement by such party's officers, agents, subcontractors and employees. The obligations of this Agreement are personal to each party.

E.  The REPRESENTATIVE shall report promptly within seven (7) days to the Company's Privacy Officer in writing any use or disclosure of Information that is not permitted by the Agreement or any addendum, of which the REPRESENTATIVE becomes aware. REPRESENTATIVE's report shall identify: (i) the nature of the unauthorized use or disclosure, (ii) the Information used or disclosed, (iii) who made the unauthorized use or received the unauthorized disclosure, (iv) what REPRESENTATIVE has done or shall do to mitigate any deleterious effect of the unauthorized use or disclosure, (v) what corrective action REPRESENTATIVE has taken or shall take to prevent future similar unauthorized use or disclosure, and (vi) any other information as reasonably requested by the Company's Privacy Officer.

F.  The REPRESENTATIVE shall require all of its employees, representatives, subcontractors or agents that receive or have access to Information to agree to adhere to the same restrictions and conditions on the use and/or disclosure of Information that apply herein, including the obligation to return or destroy the Information as provided for below.

G.  The obligations in this Agreement shall not restrict any disclosure by any party pursuant to any applicable state or federal laws, or by request or order of any court or government agency. The REPRESENTATIVE shall immediately notify Company upon receipt by the REPRESENTATIVE of any request from the Department of Health and Human Services for the REPRESENTATIVE'S internal practices, books, and records relating to the use and disclosure of Information.

H.  Within ten (10) days of receiving a written request from Company, the REPRESENTATIVE shall provide to the Company such information as is requested by the Company, if any, to permit the Company to respond to a request by an individual for access to, an amendment of, or an accounting of the disclosures of the individual's PHI in accordance with 45 C.F.R. Secs. 164.524, 164.526, and 164.528. If an individual contacts the REPRESENTATIVE directly about access to, amendment of, or an accounting of disclosures of his/her PHI, the REPRESENTATIVE will forward such request immediately to the Company and not provide such access, amendment, or disclosure. Notwithstanding anything herein to the contrary, REPRESENTATIVE shall make reasonable efforts to cooperate with the Company in responding to any such requests and enabling the Company to comply with federal laws and regulations regarding the timing of response to such requests.

I.  This Section XVI, Privacy Protection and Security, will survive the termination or expiration of this Agreement. Upon termination of the Agreement, the REPRESENTATIVE shall return or destroy (with the Company's written permission) all Information that REPRESENTATIVE maintains in any form pursuant to the Agreement, and retain no copies of such Information. However, if the Company determines that such return or destruction is not feasible, the REPRESENTATIVE will continue to extend the protections of this Addendum to such PHI and limit further use of the Information to the purposes that make the return or destruction not feasible. The respective rights and obligations of each party pursuant to this subsection shall survive the termination of this Agreement.

AGL / Bechtel 000559

AUG-30-2005 TUE 12:45 PM  INSURANCE DESIGN GROUP    FAX NO. 561+994+3433        P. 06

## AGENCY AGREEMENT

*Each life insurance company's products are separately underwritten and independently supported by the representative company. The below listed companies are members of the American International Group, Inc.*

Last Name **Berkowitz**   FOR   First Name **Brian**   Middle Initial **J**

If Representative is a Corporation, the full Corporate name must appear above, and an authorized officer must sign and indicate the officer's title.

Individual
Social Security Number ___ **Redacted** ___

Corporation
Tax Identification Number _____

Representative
Signature _____   Title **Agent**

American General Life Companies

Contract Date _____        Home Office Authorized Signator
To be completed by Home Office

This Agency Agreement may not be used to contract banks, credit unions or thrifts to AIG Annuity
Insurance Company and, if submitted for that purpose, will not be accepted. This Agency Agreement may
not be used to replace an in force AIG Annuity Insurance Company Agency contract and, if submitted for
that purpose, will not be accepted.

AIG Annuity Insurance Company, Amarillo, TX
American General Life Insurance Company, Houston, TX
A division of the American International Companies

**WE KNOW LIFE.℠**

**AIG** AMERICAN
GENERAL
AIG Life Brokerage

AGL / Bechtel 000560

**TABLE OF CONTENTS**

**Paragraph**
Recitals
Definitions

| | |
|---|---|
| I. | Authorized Acts |
| II. | Limitation of Authority |
| III. | Advertising |
| IV. | Relationship |
| V. | Compensation |
| VI. | Vesting |
| VII. | General Provisions |
| VIII. | Termination |
| IX. | Amendment |
| X. | Personal Guarantee |
| XI. | Effective Date |
| XII. | Investigation Notice |
| XIII. | Federal Crime Control Act |
| XIV. | Confidentiality |

**Schedules**

A. Commission Schedule – Primary Company

B. Appointment Application

## RECITALS

Representative ("REPRESENTATIVE") has executed an Appointment Application requesting appointments with one or more life insurance subsidiaries of American International Group, Inc.

The Appointment Application designates one of the life insurers as a Primary Appointing Company (the "Primary Company").

This Agreement together with the Appointment Application and Commission Schedules for each separate life insurer that appoints REPRESENTATIVE comprise the REPRESENTATIVE's contract with each of the insurers that appoints REPRESENTATIVE.

Execution of this Agreement by the Primary Company and the REPRESENTATIVE evidences their Agreement to transact business in accordance with the terms and conditions set forth in this Agreement.

If REPRESENTATIVE requested appointment with one or more affiliates of the Primary Company in the Appointment Application, or a subsequent amendment to that form, REPRESENTATIVE's execution of this Agreement evidences REPRESENTATIVE's Agreement to transact business with each affiliated insurer in accordance with the terms and conditions set forth in this Agreement. Each affiliated insurer that appoints REPRESENTATIVE and sends a company commission schedule to REPRESENTATIVE has agreed to transact business with REPRESENTATIVE according to the terms and conditions of this Agreement.

## DEFINITIONS

A. Primary Company – the Primary Company is designated in the Appointment Application as the Primary Company. The Primary Company's responsibilities include executing the REPRESENTATIVE Agreement, performing background checks and providing convention credits and other sales incentives, if any, to REPRESENTATIVE.

B. Affiliated Company – the Affiliated Company(ies) is any other life insurance subsidiary of American International Group, Inc. that is identified in the Appointment Application, appoints REPRESENTATIVE and provides a company commission schedule as evidence of its Agreement to transact business with REPRESENTATIVE according to the terms of this Agreement.

C. Insurer – the term Insurer as used in this Agreement refers to each of the life insurance companies that appoints REPRESENTATIVE, including the Primary Company.

D. Jurisdiction – Eligibility for, or receipt of, override compensation on another Representative's business.

E. Nonpublic Personal Information: "Nonpublic Personal Information" of customers or consumers ("NPI") includes, but is not limited to, names, addresses, account balances, account numbers, account activity, social security numbers, taxpayer identification numbers, and sensitive financial and health information. NPI includes information on each party's forms or in a database of any kind, information created by each party, information collected by or on behalf of a party, and personally identifiable information derived from NPI. Reference to NPI of Company or REPRESENTATIVE shall include NPI collected by or on behalf of American International Group, Inc., its successors, subsidiaries, affiliates agents or contractors. There may be instances where each party will have the same NPI which may be subject to different privacy policies and procedures according to the notices provided to the customer or consumer by the respective parties to the Agreement.

F. Protected Health Information: The terms "Protected Health Information" and "PHI" shall have the meaning set forth in 45 C.F.R. Sec. 164.501 as may be amended. Other terms shall have the same meanings as set forth in the applicable definition of the Health Insurance Portability and Accountability Act (HIPAA), as amended, Privacy Rule or other regulations.

## I. AUTHORIZED ACTS

A. The REPRESENTATIVE is authorized to conduct Insurer's business for the Insurer's products covering such classes of risks as the Insurer may authorize and in those states where the product is approved and REPRESENTATIVE is licensed and appointed as required by state law. If REPRESENTATIVE is a corporation, then the principal(s) of such corporation must also be licensed individually, if required pursuant to appropriate state law.

B. The REPRESENTATIVE is authorized to collect and promptly remit to the Insurer the first premium on business produced by the REPRESENTATIVE in accordance with the Insurer's rules and regulations.

C. The REPRESENTATIVE will promptly deliver issued policies in accordance with Insurer's policies and procedures.

D. All monies, settlements, or documents received by the REPRESENTATIVE for, or on behalf of, the Insurer shall be received by the REPRESENTATIVE in a fiduciary capacity and immediately paid over or delivered to the Insurer, except as may be otherwise directed in writing by the Insurer.

AGL / Bechtel 000562

## II. LIMITATION OF AUTHORITY

The REPRESENTATIVE is without authority to perform any act or thing other than that expressly granted in this Agreement and expressly agrees not to perform any of the following acts:

1. Make, modify, alter or discharge any policy.
2. Extend the time payment of any premium.
3. Waive any forfeiture.
4. Guarantee dividends or interest rates.
5. Incur any debt or liability in the name of the Insurer.
6. Withhold, commingle or convert to the use of the REPRESENTATIVE or the benefit of others, any monies, securities, policies or receipts belonging to the Insurer, the applicant, or the insured, or fail to promptly submit to the Insurer any applications for policies.
7. Accept or deposit any check or draft for premiums made payable to other than the Insurer.
8. Unless in the best interest of the policyowner, directly or indirectly induce or attempt to induce any policyowners of Insurer to relinquish, surrender, replace or lapse their policies.

## III. ADVERTISING / USE OF LOGO

REPRESENTATIVE may, at REPRESENTATIVE's expense, advertise Insurer's products, provided the text of all advertising, including any form of sales/promotional material such as, but not limited to business cards, stationery or other indications of agency under this Agreement and including the use of the names "American International Group, Inc.," "AIG," "American General," their logos or the name of any Insurer is approved in writing by the company before use.

## IV. RELATIONSHIP

The relationship between the Insurer and the REPRESENTATIVE shall be that of principal and independent contractor, and nothing contained herein shall be construed as creating the relationship of employer and employee for any purpose, including tax purposes. REPRESENTATIVE agrees to be responsible for all taxes as a self-employed independent contractor. The REPRESENTATIVE shall be free to exercise independent judgment as to the time and manner in which the REPRESENTATIVE shall perform the services authorized under this Agreement. Any material supplied by the Insurer is for the purpose of supporting the activities of the REPRESENTATIVE.

## V. COMPENSATION

A. Subject to the provisions hereof and the rules of the Insurer, the full compensation of the REPRESENTATIVE shall be payable at the applicable rate set forth in the Schedule of Commission in effect at the date the first full premium is received by the Insurer, which Schedule of Commission and all amendments, supplements and replacements thereof and thereto are hereby made a part of this Agreement.

B. Commission is subject to change at any time by written notice by the Insurer to the REPRESENTATIVE, but no such change shall affect commissions on any policy issued prior to the effective date of such change.

C. If commission rates are not now shown in the Schedule of Commission, including conversions, replacements or, the exercise of re-entry provisions or, if special premium rate quotations are made, commission rates shall be such as may be fixed by the Insurer as of the time when issue is effective in accordance with rates and practices of the Insurer then in effect.

D. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall lapse because of nonpayment of premium and shall be replaced or reinstated, any commissions on the new or reinstated policy shall be payable only at the sole discretion of the Insurer.

E. To be entitled to commissions, if any, the REPRESENTATIVE's name or the name of another Representative under your jurisdiction must appear as soliciting agent on the application for insurance. Disputes respecting commissions shall be subject to decision and settlement by the Insurer and the Insurer's decision shall be final and binding upon the parties involved.

F. Whenever, in the judgment of the Insurer, it shall become advisable to recall any policy issued before delivery thereof is made, the REPRESENTATIVE shall promptly refund to the Insurer any commissions received on account of such policy. Whenever, after delivery, the Insurer shall effect or procure the surrender, rescission or cancellation of any policy and refund premiums paid thereon, the Insurer shall have the right to charge back commissions and demand that the REPRESENTATIVE repay such commissions to the Insurer. If the Insurer shall refund or waive the premium or premiums under the provisions of any disability waiver of premium rider, the REPRESENTATIVE shall lose all rights to commission and persistency fees as applied to such refunded or waived premiums, and shall repay any amounts advanced. An Insurer may include in its Commission Schedule, which is incorporated as a part of this Agreement, guidelines describing more specifically the circumstances under which it will charge back commissions on certain products. In the absence of such guidelines, the Insurer's rights shall be as described in this Section V. Compensation.

G. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall be converted or replaced, any commissions on the new policy shall be subject to adjustment and payable only at the sole discretion of the Insurer.

AGL / Bechtel 000563

H. Except where prohibited by any State, the REPRESENTATIVE is responsible for all license fees, including those of its Representatives. The Insurer's discretion shall govern with respect to whether the Insurer shall charge to the REPRESENTATIVE's commission or other compensation account the cost of obtaining and renewing the REPRESENTATIVE's and its Representatives' license or licenses and/or appointment fees. This practice is subject to change at the discretion of the Insurer.

I. Policy applications for any Insurer will be issued and commissions paid by the Insurer.

## VI. VESTING

A. As long as this Agreement remains in effect, all first year and renewal commissions shall be paid as they accrue; however, any such payments are subject to the schedule of commissions in effect at the date the first full premium is received by the Insurer, the provisions and rules of the Insurer regarding minimum first year and renewal commissions required to issue a check.

B. During any consecutive 12-month period following the termination of this Agreement, total renewal commissions are less than the minimum required by the Insurer, vesting automatically terminates and no additional commission payments will be due from the Insurer.

C. In the event this Agreement is terminated by the death of the REPRESENTATIVE, all first year and renewal commissions shall be paid as they accrue, subject only to the terms and conditions of paragraphs A and B immediately above. In the absence of a properly executed beneficiary designation on file with the Insurer, all such payments, if any, shall be made to the surviving spouse and at the death of the surviving spouse to the estate of said spouse. If the REPRESENTATIVE dies leaving no surviving spouse, such monies will be paid to the estate of the REPRESENTATIVE provided however, that if the REPRESENTATIVE is a corporation or a partnership, all such payments will be paid to said corporation or partnership.

## VII. GENERAL PROVISIONS

A. The Insurer may make such changes and decisions as it deems advisable in the conduct of its business, including the discontinuance of any policy form or the withdrawal from any territory, and the Insurer shall incur no liability to the REPRESENTATIVE by reason of its doing so.

B. The Insurer shall have the right to test market any of its products on a select basis and at the discretion of the Insurer.

C. The REPRESENTATIVE shall indemnify and hold the Insurer harmless against or from any and all expense, costs, causes of action, and damages including without limitation, reasonable attorney fees, resulting from or growing out of any unauthorized or negligent act of commission or omission by the REPRESENTATIVE or its employees, directors, officers, or Representatives under its jurisdiction. This provision shall survive termination of this Agreement.

D. The Insurer shall have a prior right and offset to all commissions and fees payable hereunder toward any indebtedness and/or other obligations due from the REPRESENTATIVE or anyone under the jurisdiction of the REPRESENTATIVE to any Primary Company and/or Affiliated Company/ies with interest at the legal rate. This prior right and offset shall not be extinguished by the termination of this Agreement. Following the termination of any Representative under the jurisdiction of the REPRESENTATIVE, should the amount in any commission account of that Representative be insufficient to repay any amount due the Insurer, the debit will become the responsibility of the REPRESENTATIVE, in accordance with the Insurer's then current debit collection procedure.

E. Neither the Agreement, any duties or delegation under this Agreement, nor the commissions or fees accruing hereunder, nor any interest herein, nor any right or claim created hereby or arising by reason of the REPRESENTATIVE acting hereunder, shall be assignable, except upon the written consent of the Insurer.

F. Forbearance or failure of the Insurer to insist upon performance of this Agreement or to enforce its rights hereunder, shall not constitute a waiver of its rights or privileges hereunder or of its subsequent right to insist upon such performance.

G. This Agreement, including the Appointment Application and any Commission Schedule(s) incorporated as part of the Agreement, contains all promises, inducements and representations between the parties. This Agreement supersedes any and all previous Agreements between the parties herein pertaining to the solicitation of the Insurer's products and the payment of monies to the REPRESENTATIVE provided, however, that rights or obligations which have already accrued (and would survive termination) under any previous contract between the Insurer and the REPRESENTATIVE shall not be hereby impaired.

H. The Insurer reserves the right to decline or modify any application for insurance.

I. This Agreement shall not be effective until executed by the Primary Company. Once this Agreement is effective with the Primary Company, it may become effective with Affiliated Company/ies as described herein.

AGL / Bechtel 000564

J.  Should the REPRESENTATIVE, at any time, violate any provision of Section II of this Agreement, entitled Limitation of Authority, or commit any fraud upon Insurer or its policyholders; have a license as agent or broker revoked for cause after notice and hearing by a state insurance department or otherwise act to prejudice materially the interests of Insurer, the REPRESENTATIVE shall, at the option of the Insurer, forfeit any and all rights to all commissions and monies that the REPRESENTATIVE might otherwise have under this Agreement, vested or not. It is expressly agreed that termination of this Agreement shall not terminate this provision.

K.  The REPRESENTATIVE agrees to maintain complete and accurate records of the marketing and sale of the Insurer's products. The Insurer reserves the right to inspect such records and other documents in each REPRESENTATIVE's files that relate to the marketing, attempted sale or sale of the Insurer's products. If the Insurer chooses to inspect such records, it will endeavor to do so during normal business hours and after giving reasonable notice, unless, in the judgment of the Insurer, unusual circumstances require inspection at other times or inspection without prior notice. This provision shall survive termination of this Agreement for a period of two (2) years.

L.  For as long as this Agreement is in force, the REPRESENTATIVE will maintain Errors and Omissions (E&O) coverage and will provide the Insurer annually proof of such E&O coverage in a manner acceptable to the Insurer.

M.  If the REPRESENTATIVE is served with a regulatory inquiry or legal papers involving Insurer business, the REPRE-SENTATIVE shall immediately notify the Insurer by sending to that Insurer's Compliance Officer, a copy of the papers, served by overnight delivery, by the end of the business day next following the day of receipt by the REPRESENTATIVE.

N.  The REPRESENTATIVE is responsible for assuring that any Representative under the Jurisdiction of the REPRESEN-TATIVE: (1) become fully informed as to the provisions and benefits of each product offered by the Insurer for which the Representative conducts Insurer business; (2) represent such products adequately and fairly to prospective purchasers; and (3) act in compliance with the Insurer's policies and procedures as set out in the Customer Service and   Compliance Manual, Operations Manual, or otherwise communicated to the REPRESENTATIVE, including, without limitation, those regarding suitability of sales inquiries and compliance with the Insurer's principles and code of ethical market conduct.

O.  When the Insurer assigns to the REPRESENTATIVE any agency not recruited by the REPRESENTATIVE, then the Insurer may reassign that agency to another upline of the Insurer's choice at any time and without the necessity of a release from the REPRESENTATIVE. If the Insurer wishes to remove any agency recruited by the REPRESENTATIVE from the Jurisdiction of the REPRESENTATIVE, the Insurer will negotiate a release; however, such release will not be unreasonably withheld by the REPRESENTATIVE.

P.  REPRESENTATIVE is not entitled to participate in any REPRESENTATIVE benefit programs except those which are provided by the Primary Company.  REPRESENTATIVE is not eligible to participate in, or to receive any benefits from, any programs provided by the Affiliate Company/ies.

Q.  Disputes arising under this Agreement shall be  subject to the laws of the state where the Insurer  engaged in the dispute is located.

R.  The area within which the REPRESENTATIVE shall have the right to represent the Insurer is not assigned exclusively to the REPRESENTATIVE.

S.  REPRESENTATIVE agrees to conform to all regulations of the Insurance Department and the insurance laws in the state(s) in which the REPRESENTATIVE is conducting Insurer's business.

T.  REPRESENTATIVE understands and agrees that (i) the Primary Company may amend the Agreement or the Company's policies, rules and procedures, in order to comply with changes in laws or regulations, or, as the Company deems appropriate related to changes in laws or regulations, through communication of any such amendment to REPRESENTATIVE, and (ii) for purposes of any such amendment, communication may include, but not be limited to, posting of amendment information on the Primary Company's websites or other means of making such information known or available to the agent.


VIII. TERMINATION

A.  This Agreement shall automatically terminate upon the death of REPRESENTATIVE if REPRESENTATIVE is an individual or upon dissolution of REPRESENTATIVE if REPRESENTATIVE is a corporation or a partnership.

B.  This Agreement shall terminate upon the revocation or non-renewal of the REPRESENTATIVE's license.

C.  This Agreement may be terminated with or without cause by any Insurer (subject to provisions D and E below) or the REPRESENTATIVE by sending written notice of such termination to the last known address of the other party.

D.   Upon termination, the REPRESENTATIVE shall immediately pay in cash to the Insurer all sums that are due or become due hereunder and shall immediately deliver to the Insurer all materials connected with the business of the Insurer and belonging to the Insurer. Such materials include, but are not limited to, rate cards, letters, records, computer software, general supplies or any and all other indications of agency provided by the Insurer. It is expressly agreed that termination of this Agreement does not release the REPRESENTATIVE from continuing liability to the Insurer for immediate repayment of any and all unearned first year commissions or bonuses.

E.   Termination of this Agreement by the Primary Company terminates all contracts with Affiliated Company/ies without specific notice to the REPRESENTATIVE required by the Insurer. However, any Affiliated Company may terminate its agency relationship with the REPRESENTATIVE, which will not, of itself, terminate the Primary Company agency relationship. Upon termination, the Insurer may assign a servicing agency; however, such assignment will not of itself affect the vesting of existing business.

F.   Termination of this Agreement automatically terminates any previous Agreement to represent the Insurer that terminated the Agreement.

## IX. AMENDMENT

This contract cannot be changed by any oral promise or statement and no written modification will bind the Insurer unless approved by the President of the Insurer making the modification.

## X. PERSONAL GUARANTEE

Each and every individual who signs this Agreement warrants that they have authority to bind the entity on whose behalf they are signing.

## XI. EFFECTIVE DATE

The agreed effective date will be the date that this Agreement to represent is signed and acknowledged by the Primary Company as hereinafter specified.

## XII. INVESTIGATION NOTICE

The undersigned hereby authorizes the Primary and Affiliated Company/ies to conduct an investigation concerning character, credit reputation and personal traits and releases those contacted and the Insurer from any liability with respect to the content of the information provided and any resulting action by the Insurer including the sharing of such information or the termination of this Agreement to represent.

## XIII. FEDERAL CRIME CONTROL ACT

A. Undersigned warrants is:

1.  has not been convicted of any criminal felony involving dishonesty or breach of trust or

2.  has obtained written authorization to engage in the business of insurance from the Insurance Department in the state where REPRESENTATIVE resides which REPRESENTATIVE agrees to produce upon Insurer request.

B.  The REPRESENTATIVE agrees to update the representations in the Confidential History/Background Information Section of Part 4 of the Appointment Application by notifying the Primary Company in writing within thirty (30) days, if there should be a change in the response to any question in the Information Section of Part 4 of the Appointment Application.

## XVI. PRIVACY CONTROL & SECURITY

A.  "Protected Health Information" and "Nonpublic Personal Information" shall be collectively called the "Information" in this Section, XVI, Privacy Control and Security.

B.  All information which any party obtains as a result of this relationship shall not be collected, or used, disclosed, reused or redisclosed to any third party, except to carry out the purposes for which the information was disclosed. The REPRESENTATIVE shall maintain the confidentiality of information consistent with the Company's notices of privacy practices, policies and procedures, provided that such use or disclosure would not violate any applicable laws, rules or regulations if done by the Company.

C.  The REPRESENTATIVE shall use commercially reasonable efforts and appropriate safeguards to maintain the integrity, confidentiality, and security of PHI and to prevent the unauthorized use or disclosure of PHI and to

comply with the security standards or the HIPAA security regulations.  Upon Company request Agent will provide to the Company access to and documentation regarding any safeguards.

D.  Each party shall be permitted to disclose relevant aspects of the other parties' Information to its officers, agents, subcontractors and employees only to the extent that such disclosure is reasonably necessary for the performance of its duties and obligations under the Agreement provided that such party shall take all reasonable measures to ensure that the Information of another party is not disclosed or reproduced in contravention of each of the obligations of this Agreement by such party's officers, agents, subcontractors and employees.  The obligations of this Agreement are personal to each party.

E.  The REPRESENTATIVE shall report promptly within seven (7) days to the Company's Privacy Officer in writing any use or disclosure of Information that is not permitted by the Agreement or any addendum, of which the REPRESENTATIVE becomes aware. REPRESENTATIVE's report shall identify; (i) the nature of the unauthorized use or disclosure, (ii) the Information used or disclosed, (iii) who made the unauthorized use or received the unauthorized disclosure, (iv) what REPRESENTATIVE has done or shall do to mitigate any deleterious effect of the unauthorized use or disclosure, (v) what corrective action REPRESENTATIVE has taken or shall take to prevent future similar unauthorized use or disclosure, and (vi) any other Information as reasonably requested by the Company's Privacy Officer.

F.  The REPRESENTATIVE shall require all of its employees, representatives, subcontractors or agents that receive or have access to Information to agree to adhere to the same restrictions and conditions on the use and/or disclosure of Information that apply herein, including the obligation to return or destroy the Information as provided for below.

G.  The obligations in this Agreement shall not restrict any disclosure by any party pursuant to any applicable state or federal laws, or by request or order of any court or government agency.  The REPRESENTATIVE shall immediately notify Company upon receipt by the REPRESENTATIVE of any request from the Department of Health and Human Services for the REPRESENTATIVE'S internal practices, books, and records relating to the use and disclosure of Information.

H.  Within ten (10) days of receiving a written request from Company, the REPRESENTATIVE shall provide to the Company such Information as is requested by the Company, if any, to permit the Company to respond to a request by an individual for access to, an amendment of, or an accounting of the disclosures of the individual's PHI in accordance with 45 C.F.R. Secs. 164.524; 164.526, and 164.528.  If an individual contacts the REPRESENTATIVE directly about access to, amendment of, or an accounting of disclosures of his/her PHI, the REPRESENTATIVE will forward such request immediately to the Company and not provide such access, amendment, or disclosure.  Notwithstanding anything herein to the contrary, REPRESENTATIVE shall make reasonable efforts to cooperate with the Company in responding to any such requests and enabling the Company to comply with federal laws and regulations regarding the timing of response to such requests.

I.  This Section XVI, Privacy Protection and Security, will survive the termination or expiration of this Agreement.  Upon termination of the Agreement, the REPRESENTATIVE shall return or destroy (with the Company's written permission) all Information that REPRESENTATIVE maintains in any form pursuant to the Agreement, and retain no copies of such Information.  However, if the Company determines that such return or destruction is not feasible, REPRESENTATIVE will continue to extend the protections of this Addendum to such PHI and limit further use of the Information to the purposes that make the return or destruction not feasible.  The respective rights and obligations of each party pursuant to this subsection shall survive the termination of the Agreement.

AGL 1016-0164

AGL / Bechtel 000567

## AGENCY AGREEMENT

*Each life insurance company's products are separately underwritten and independently supported by the representative company. The below listed companies are members of the American International Group, Inc.*

FOR

Last Name __BIRCHLER__          First Name __CRAIG__          Middle Initial __A__.

If Representative is a Corporation, the full Corporate name must appear above, and an authorized officer must sign and indicate the officer's title.

Individual
Social Security Number ___Redacted___

Corporation
Tax Identification Number _____

Representative

Signature _____          Title __INDIVIDUAL__
     Agent Signature

American General Life Companies

Contract Date _____
To be completed by Home Office          Home Office Authorized Signator

This Agency Agreement may not be used to contract banks, credit unions or thrifts to AIG Annuity Insurance Company and, if submitted for that purpose, will not be accepted. This Agency Agreement may not be used to replace an in force AIG Annuity Insurance Company Agency contract and, if submitted for that purpose, will not be accepted.

AIG Annuity Insurance Company, Amarillo, TX *
American General Life Insurance Company, Houston, TX
A division of the American International Companies®

AGL81056-0104

**WE KNOW LIFE.℠**

**AIG** AMERICAN GENERAL

AIG Life Brokerage

AGL / Bechtel 000568

**TABLE OF CONTENTS**

**Paragraph**
Recitals
Definitions

I.      Authorized Acts
II.     Limitation of Authority
III.    Advertising
IV.     Relationship
V.      Compensation
VI.     Vesting
VII.    General Provisions
VIII.   Termination
IX.     Amendment
X.      Personal Guarantee
XI.     Effective Date
XII.    Investigation Notice
XIII.   Federal Crime Control Act
XIV.    Confidentiality

**Schedules**

A. Commission Schedule – Primary Company

B. Appointment Application

AGL / Bechtel 000569

## RECITALS

Representative ("REPRESENTATIVE") has executed an Appointment Application requesting appointments with one or more life insurance subsidiaries of American International Group, Inc.

The Appointment Application designates one of the life insurers as a Primary Appointing Company (the "Primary Company").

This Agreement together with the Appointment Application and Commission Schedules for each separate life insurer that appoints REPRESENTATIVE comprise the REPRESENTATIVE's contract with each of the insurers that appoints REPRESENTATIVE.

Execution of this Agreement by the Primary Company and the REPRESENTATIVE evidences their Agreement to transact business in accordance with the terms and conditions set forth in this Agreement.

If REPRESENTATIVE requested appointment with one or more affiliates of the Primary Company in the Appointment Application, or a subsequent amendment to that form, REPRESENTATIVE's execution of this Agreement evidences REPRESENTATIVE's Agreement to transact business with each affiliated insurer in accordance with the terms and conditions set forth in this Agreement. Each affiliated insurer that appoints REPRESENTATIVE and sends a company commission schedule to REPRESENTATIVE has agreed to transact business with REPRESENTATIVE according to the terms and conditions of this Agreement.

## DEFINITIONS

A. Primary Company – the Primary Company is designated in the Appointment Application as the Primary Company. The Primary Company's responsibilities include executing the REPRESENTATIVE Agreement, performing background checks and providing convention credits and other sales incentives, if any, to REPRESENTATIVE.

B. Affiliated Company – the Affiliated Company(ies) is any other life insurance subsidiary of American International Group, Inc. that is identified in the Appointment Application, appoints REPRESENTATIVE and provides a company commission schedule as evidence of its Agreement to transact business with REPRESENTATIVE according to the terms of this Agreement.

C. Insurer—the term Insurer as used in this Agreement refers to each of the life insurance companies that appoints REPRESENTATIVE, including the Primary Company.

D. Jurisdiction – Eligibility for, or receipt of, override compensation on another Representative's business.

E. Nonpublic Personal Information: "Nonpublic Personal Information" of customers or consumers ("NPI") includes, but is not limited to, names, addresses, account balances, account numbers, account activity, social security numbers, taxpayer identification numbers, and sensitive financial and health information. NPI includes information on each party's forms or in a database of any kind, information created by each party, information collected by or on behalf of a party, and personally identifiable information derived from NPI. Reference to NPI of Company or REPRESENTATIVE shall include NPI collected by or on behalf of American International Group, Inc., its successors, subsidiaries, affiliates agents or contractors. There may be instances where each party will have the same NPI which may be subject to different privacy policies and procedures according to the notices provided to the customer or consumer by the respective parties to the Agreement.

F. Protected Health Information: The terms "Protected Health Information" and "PHI" shall have the meaning set forth in 45 C.F.R. Sec. 164.501 as may be amended. Other terms shall have the same meanings as set forth in the applicable definition of the Health Insurance Portability and Accessibility Act (HIPAA), as amended, Privacy Rule or other regulations.

## I. AUTHORIZED ACTS

A. The REPRESENTATIVE is authorized to conduct Insurer's business for the Insurer's products covering such classes of risks as the Insurer may authorize and in those states where the product is approved and REPRESENTATIVE is licensed and appointed as required by state law. If REPRESENTATIVE is a corporation, then the principal(s) of such corporation must also be licensed individually, if required pursuant to appropriate state law.

B. The REPRESENTATIVE is authorized to collect and promptly remit to the Insurer the first premium on business produced by the REPRESENTATIVE in accordance with the Insurer's rules and regulations.

C. The REPRESENTATIVE will promptly deliver issued policies in accordance with Insurer's policies and procedures.

D. All monies, settlements, or documents received by the REPRESENTATIVE for, or on behalf of, the Insurer shall be received by the REPRESENTATIVE in a fiduciary capacity and immediately paid over or delivered to the Insurer, except as may be otherwise directed in writing by the Insurer.

AGL / Bechtel 000570

## II. LIMITATION OF AUTHORITY

The REPRESENTATIVE is without authority to perform any act or thing other than that expressly granted in this Agreement and expressly agrees not to perform any of the following acts:

1. Make, modify, alter or discharge any policy.
2. Extend the time payment of any premium.
3. Waive any forfeiture.
4. Guarantee dividends or interest rates.
5. Incur any debt or liability in the name of the Insurer.
6. Withhold, commingle or convert to the use of the REPRESENTATIVE or the benefit of others, any monies, securities, policies or receipts belonging to the Insurer, the applicant, or the insured, or fail to promptly submit to the Insurer any applications for policies.
7. Accept or deposit any check or draft for premiums made payable to other than the Insurer.
8. Unless in the best interest of the policyowner, directly or indirectly induce or attempt to induce any policyowners of Insurer to relinquish, surrender, replace or lapse their policies.

## III. ADVERTISING / USE OF LOGO

REPRESENTATIVE may, at REPRESENTATIVE's expense, advertise Insurer's products, provided the text of all advertising, including any form of sales/promotional material such as, but not limited to business cards, stationery or other indications of agency under this Agreement and including the use of the names "American International Group, Inc.," "AIG," "American General," their logos or the name of any Insurer is approved in writing by the company before use.

## IV. RELATIONSHIP

The relationship between the Insurer and the REPRESENTATIVE shall be that of principal and independent contractor, and nothing contained herein shall be construed as creating the relationship of employer and employee for any purpose, including tax purposes. REPRESENTATIVE agrees to be responsible for all taxes as a self-employed independent contractor. The REPRESENTATIVE shall be free to exercise independent judgment as to the time and manner in which the REPRESENTATIVE shall perform the services authorized under this Agreement. Any material supplied by the Insurer is for the purpose of supporting the activities of the REPRESENTATIVE.

## V. COMPENSATION

A. Subject to the provisions hereof and the rules of the Insurer, the full compensation of the REPRESENTATIVE shall be payable at the applicable rate set forth in the Schedule of Commission in effect at the date the first full premium is received by the Insurer, which Schedule of Commission and all amendments, supplements and replacements thereof and thereto are hereby made a part of this Agreement.

B. Commission is subject to change at any time by written notice by the Insurer to the REPRESENTATIVE, but no such change shall affect commissions on any policy issued prior to the effective date of such change.

C. If commission rates are not now shown in the Schedule of Commission, including conversions, replacements or, the exercise of re-entry provisions or, if special premium rate quotations are made, commission rates shall be such as may be fixed by the Insurer as of the time when issue is effective in accordance with rules and practices of the Insurer then in effect.

D. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall lapse because of nonpayment of premium and shall be replaced or reinstated, any commissions on the new or reinstated policy shall be payable only at the sole discretion of the Insurer.

E. To be entitled to commissions, if any, the REPRESENTATIVE's name or the name of another Representative under your jurisdiction must appear as soliciting agent on the application for insurance. Disputes respecting commissions shall be subject to decision and settlement by the Insurer and the Insurer's decision shall be final and binding upon the parties involved.

F. Whenever, in the judgment of the Insurer, it shall become advisable to recall any policy issued before delivery thereof is made, the REPRESENTATIVE shall promptly refund to the Insurer any commissions received on account of such policy. Whenever, after delivery, the Insurer shall effect or procure the surrender, rescission or cancellation of any policy and refund premiums paid thereon, the Insurer shall have the right to charge back commissions and demand that the REPRESENTATIVE repay such commissions to the Insurer. If the Insurer shall refund or waive the premium or premiums under the provisions of any disability waiver of premium rider, the REPRESENTATIVE shall lose all rights to commission and persistency fees as applied to such refunded or waived premiums, and shall repay any amounts advanced. An Insurer may include in its Commission Schedule, which is incorporated as a part of this Agreement, guidelines describing more specifically the circumstances under which it will charge back commissions on certain products. In the absence of such guidelines, the Insurer's rights shall be as described in this Section V, Compensation.

G. In the event any policy on which the REPRESENTATIVE is entitled to commissions shall be converted or replaced, any commissions on the new policy shall be subject to adjustment and payable only at the sole discretion of the Insurer.

AGL / Bechtel 000571

H. Except where prohibited by any State, the REPRESENTATIVE is responsible for all license fees, including those of its Representatives. The Insurer's discretion shall govern with respect to whether the Insurer shall charge to the REPRESENTATIVE's commission or other compensation account the cost of obtaining and renewing the REPRESENTATIVE's and its Representatives' license or licenses and/or appointment fees. This practice is subject to change at the discretion of the Insurer.

I. Policy applications for any Insurer will be issued and commissions paid by the Insurer.

## VI. VESTING

A. As long as this Agreement remains in effect, all first year and renewal commissions shall be paid as they accrue; however, any such payments are subject to the schedule of commissions in effect at the date the first full premium is received by the Insurer, the provisions and rules of the Insurer regarding minimum first year and renewal commissions required to issue a check.

B. During any consecutive 12-month period following the termination of this Agreement, vesting automatically terminates and no additional commission payments will be due from the Insurer.

C. In the event this Agreement is terminated by the death of the REPRESENTATIVE, all first year and renewal commissions shall be paid as they accrue, subject only to the terms and conditions of paragraphs A and B immediately above. In the absence of a properly executed beneficiary designation on file with the Insurer, all such payments, if any, shall be made to the surviving spouse and at the death of the surviving spouse to the estate of said spouse. If the REPRESENTATIVE dies leaving no surviving spouse, such monies will be paid to the estate of the REPRESENTATIVE; provided however, that if the REPRESENTATIVE is a corporation or a partnership, all such payments will be paid to said corporation or partnership.

## VII. GENERAL PROVISIONS

A. The Insurer may make such changes and decisions as it deems advisable in the conduct of its business, including the discontinuance of any policy form or the withdrawal from any territory, and the Insurer shall incur no liability to the REPRESENTATIVE by reason of its doing so.

B. The Insurer shall have the right to test market any of its products on a select basis and at the discretion of the Insurer.

C. The REPRESENTATIVE shall indemnify and hold the Insurer harmless against or from any and all expense, costs, causes of action, and damages including without limitation, reasonable attorney fees, resulting from or growing out of any unauthorized or negligent act of commission or omission by the REPRESENTATIVE or its employees, directors, officers, or Representatives under its jurisdiction. This provision shall survive termination of this Agreement.

D. The Insurer shall have a prior right and offset to all commissions and fees payable hereunder toward any indebtedness and/or other obligations due from the REPRESENTATIVE or anyone under the jurisdiction of the REPRESENTATIVE to any Primary Company and/or Affiliated Company/ies with interest at the legal rate. This prior right and offset shall not be extinguished by the termination of this Agreement. Following the termination of any Representative under the jurisdiction of the REPRESENTATIVE, should the amount in any commission account of that Representative be insufficient to repay any amount due the Insurer, the debit will become the responsibility of the REPRESENTATIVE, in accordance with the Insurer's then current debit collection procedure.

E. Neither the Agreement, any duties or delegation under this Agreement, nor the commissions or fees accruing hereunder, nor any interest herein, nor any right or claim created hereby or arising by reason of the REPRESENTATIVE acting hereunder, shall be assignable, except upon the written consent of the Insurer.

F. Forbearance or failure of the Insurer to insist upon performance of this Agreement or to enforce its rights hereunder, shall not constitute a waiver of its rights or privileges hereunder or of its subsequent right to insist upon such performance.

G. This Agreement, including the Appointment Application and any Commission Schedule(s) incorporated as part of the Agreement, contains all promises, inducements and representations between the parties. This Agreement supersedes any and all previous Agreements between the parties herein pertaining to the solicitation of the Insurer's products and the payment of monies to the REPRESENTATIVE provided, however, that rights or obligations which have already accrued (and would survive termination) under any previous contract between the Insurer and the REPRESENTATIVE shall not be hereby impaired.

H. The Insurer reserves the right to decline or modify any application for insurance.

I. This Agreement shall not be effective until executed by the Primary Company. Once this Agreement is effective with the Primary Company, it may become effective with Affiliated Company(ies) as described herein.

AGL / Bechtel 000572

J. Should the REPRESENTATIVE, at any time, violate any provision of Section II of this Agreement, entitled Limitation of Authority, or commit any fraud upon Insurer or its policyholders; have a license as agent or broker revoked for cause after notice and hearing by a state insurance department or otherwise act to prejudice materially the interests of Insurer, the REPRESENTATIVE shall, at the option of the Insurer, forfeit any and all rights to all commissions and monies that the REPRESENTATIVE might otherwise have under this Agreement, vested or not. It is expressly agreed that termination of this Agreement shall not terminate this provision.

K. The REPRESENTATIVE agrees to maintain complete and accurate records of the marketing and sale of the Insurer's products. The Insurer reserves the right to inspect such records and other documents in each REPRESENTATIVE's files that relate to the marketing, attempted sale or sale of the Insurer's products. If the Insurer chooses to inspect such records, it will endeavor to do so during normal business hours and after giving reasonable notice, unless, in the judgment of the Insurer, unusual circumstances require inspection at other times or inspection without prior notice. This provision shall survive termination of this Agreement for a period of two (2) years.

L. For as long as this Agreement is in force, the REPRESENTATIVE will maintain Errors and Omissions (E&O) coverage and will provide the Insurer annually proof of such E&O coverage in a manner acceptable to the Insurer.

M. If the REPRESENTATIVE is served with a regulatory inquiry or legal papers involving Insurer business, the REPRE-SENTATIVE shall immediately notify the Insurer by sending to that Insurer's Compliance Officer, a copy of the papers, served by overnight delivery, by the end of the business day next following the day of receipt by the REPRESENTATIVE.

N. The REPRESENTATIVE is responsible for assuring that any Representative under the jurisdiction of the REPRESEN-TATIVE: (1) become fully informed as to the provisions and benefits of each product offered by the Insurer for which the Representative conducts Insurer business; (2) represent such products adequately and fairly to prospective purchasers; and (3) act in compliance with the Insurer's policies and procedures as set out in the Customer Service and   Compliance Manual, Operations Manual, or otherwise communicated to the REPRESENTATIVE, including, without limitation, those regarding suitability of sales inquiries and compliance with the Insurer's principles and code of ethical market conduct.

O. When the Insurer assigns to the REPRESENTATIVE any agency not recruited by the REPRESENTATIVE, then the Insurer may reassign that agency to another upline of the Insurer's choice at any time and without the necessity of a release from the REPRESENTATIVE. If the Insurer wishes to remove any agency recruited by the REPRESENTATIVE from the Jurisdiction of the REPRESENTATIVE, the Insurer will negotiate a release; however, such release will not be unreasonably withheld by the REPRESENTATIVE.

P. REPRESENTATIVE is not entitled to participate in any REPRESENTATIVE benefit programs except those which are provided by the Primary Company. REPRESENTATIVE is not eligible to participate in, or to receive any benefits from, any programs provided by the Affiliate Company/ies.

Q. Disputes arising under this Agreement shall be subject to the laws of the state where the Insurer engaged in the dispute is located.

R. The area within which the REPRESENTATIVE shall have the right to represent the Insurer is not assigned exclusively to the REPRESENTATIVE.

S. REPRESENTATIVE agrees to conform to all regulations of the Insurance Department and the insurance laws in the state(s) in which the REPRESENTATIVE is conducting Insurer's business.

T. REPRESENTATIVE understands and agrees that (i) the Primary Company may amend the Agreement or the Company's policies, rules and procedures, in order to comply with changes in laws or regulations, or, as the Company deems appropriate related to changes in laws or regulations, through communication of any such amendment to REPRESENTATIVE, and (ii) for purposes of any such amendment, communication may include, but not be limited to, posting of amendment information on the Primary Company's websites or other means of making such information known or available to the agent.

## VIII. TERMINATION

A. This Agreement shall automatically terminate upon the death of REPRESENTATIVE if REPRESENTATIVE is an individual or upon dissolution of REPRESENTATIVE if REPRESENTATIVE is a corporation or a partnership.

B. This Agreement shall terminate upon the revocation or non-renewal of the REPRESENTATIVE's license.

C. This Agreement may be terminated with or without cause by any Insurer (subject to provisions D and E below) or the REPRESENTATIVE by sending written notice of such termination to the last known address of the other party.

AGL / Bechtel 000573

D.   Upon termination, the REPRESENTATIVE shall immediately pay in cash to the Insurer all sums that are due or became due hereunder and shall immediately deliver to the Insurer all materials connected with the business of the Insurer and belonging to the Insurer. Such materials include, but are not limited to, rate cards, letters, records, computer software, general supplies or any and all other indications of agency provided by the Insurer. It is expressly agreed that termination of this Agreement does not release the REPRESENTATIVE from continuing liability to the Insurer for immediate repayment of any and all unearned first year commissions or bonuses.

E.   Termination of this Agreement by the Primary Company terminates all contracts with Affiliated Company/ies without specific notice to the REPRESENTATIVE required by the Insurer. However, any Affiliated Company may terminate its agency relationship with the REPRESENTATIVE, which will not, of itself, terminate the Primary Company agency relationship. Upon termination, the Insurer may assign a servicing agency; however, such assignment will not of itself affect the vesting of existing business.

F.   Termination of this Agreement automatically terminates any previous Agreement to represent the Insurer that terminated the Agreement.

## IX. AMENDMENT

This contract cannot be changed by any oral promise or statement and no written modification will bind the Insurer unless approved by the President of the Insurer making the modification.

## X. PERSONAL GUARANTEE

Each and every individual who signs this Agreement warrants that they have authority to bind the entity on whose behalf they are signing.

## XI. EFFECTIVE DATE

The agreed effective date will be the date that this Agreement to represent is signed and acknowledged by the Primary Company as hereinafter specified.

## XII. INVESTIGATION NOTICE

The undersigned hereby authorizes the Primary and Affiliated Company/ies to conduct an investigation concerning character, credit reputation and personal traits and releases those contracted and the Insurer from any liability with respect to the content of the information provided and any resulting action by the Insurer including the sharing of such information or the termination of this Agreement to represent.

## XIII. FEDERAL CRIME CONTROL ACT

A. Undersigned warrants it:

1. has not been convicted of any criminal felony involving dishonesty or breach of trust or

2. has obtained written authorization to engage in the business of insurance from the Insurance Department in the state where REPRESENTATIVE resides which REPRESENTATIVE agrees to produce upon Insurer request.

B. The REPRESENTATIVE agrees to update the representations in the Confidential History/Background Information Section of Part 4 of the Appointment Application by notifying the Primary Company in writing within thirty (30) days, if there should be a change in the response to any question in the Information Section of Part 4 of the Appointment Application.

## XVI. PRIVACY CONTROL & SECURITY

A.   "Protected Health Information" and "Nonpublic Personal Information" shall be collectively called the "Information" in this Section, XVI. Privacy Control and Security.

B.   All Information which any party obtains as a result of this relationship shall not be collected, or used, disclosed, reused or redisclosed to any third party, except to carry out the purposes for which the Information was disclosed. The REPRESENTATIVE shall maintain the confidentiality of Information consistent with the Company's notices of privacy practices, policies and procedures, provided that such use or disclosure would not violate any applicable laws, rules or regulations if done by the Company.

C.   The REPRESENTATIVE shall use commercially reasonable efforts and appropriate safeguards to maintain the integrity, confidentiality, and security of PHI and to prevent the unauthorized use or disclosure of PHI and to

AGL / Bechtel 000574

comply with the security standards or the HIPAA security regulations.  Upon Company request Agent will provide to the Company access to and documentation regarding any safeguards.

D.  Each party shall be permitted to disclose relevant aspects of the other parties' Information to its officers, agents, subcontractors and employees only to the extent that such disclosure is reasonably necessary for the performance of its duties and obligations under the Agreement provided that such party shall take all reasonable measures to ensure that the information of another party is not disclosed or contained in contravention of each of the obligations of this Agreement by such party's officers, agents, subcontractors and employees.  The obligations of this Agreement are personal to each party.

E.  The REPRESENTATIVE shall report promptly within seven (7) days to the Company's Privacy Officer in writing any use or disclosure of Information that is not permitted by the Agreement or any addendum, of which the REPRESENTATIVE becomes aware. REPRESENTATIVE'S report shall identify: (i) the nature of the unauthorized use or disclosure, (ii) the information used or disclosed, (iii) who made the unauthorized use or received the unauthorized disclosure, (iv) what REPRESENTATIVE has done or shall do to mitigate any deleterious effect of the unauthorized use or disclosure, (v) what corrective action REPRESENTATIVE has taken or shall take to prevent future similar unauthorized use or disclosure, and (vi) any other information as reasonably requested by the Company's Privacy Officer.

F.  The REPRESENTATIVE shall require all of its employees, representatives, subcontractors or agents that receive or have access to Information to agree to adhere to the same restrictions and conditions on the use and/or disclosure of Information that apply herein, including the obligation to return or destroy the Information as provided for below.

G.  The obligations in this Agreement shall not restrict any disclosure by any party pursuant to any applicable state or federal laws, or by request or order of any court or government agency.  The REPRESENTATIVE shall immediately notify Company upon receipt by the REPRESENTATIVE of any request from the Department of Health and Human Services for the REPRESENTATIVE'S internal practices, books, and records relating to the use and disclosure of Information.

H.  Within ten (10) days of receiving a written request from Company, the REPRESENTATIVE shall provide to the Company such Information as is requested by the Company, if any, to permit the Company to respond to a request by an individual for access to, an amendment of, or an accounting of the disclosures of the individual's PHI in accordance with 45 C.F.R. Secs. 164.524, 164.526, and 164.528.  If an individual contacts the REPRESENTATIVE directly about access to, amendment of, or an accounting of disclosures of his/her PHI, the REPRESENTATIVE will forward such request immediately to the Company and not provide such access, amendment, or disclosure.  Notwithstanding anything herein to the contrary, REPRESENTATIVE shall make reasonable efforts to cooperate with the Company in responding to any such requests and enabling the Company to comply with federal laws and regulations regarding the timing of response to such requests.

I.  This Section XVI, Privacy Protection and Security, will survive the termination or expiration of this Agreement.  Upon termination of the Agreement, the REPRESENTATIVE shall return or destroy (with the Company's written permission) all Information that REPRESENTATIVE maintains in any form pursuant to the Agreement, and retain no copies of such Information.  However, if the Company determines that such return or destruction is not feasible, REPRESENTATIVE will continue to extend the protections of this Addendum to such PHI and limit further use of the Information to the purposes that make the return or destruction not feasible.  The respective rights and obligations of each party pursuant to this subsection shall survive the termination of the Agreement.

AGL1105F-0304